**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| RENE GARCIA, individually and on behalf of all others similarly situated, ) ) ) | |
| Plaintiff, ) ) | Consolidated Case No: 1:24-cv-11688 |
| v. ) ) | |
| SET FORTH, INC., ) ) | Honorable Martha M. Pacold |
| Defendant. ) ) | |

**PLAINTIFF ORLANDO SALAS'S MOTION FOR APPOINTMENT OF
ELIZABETH A. FEGAN AND THOMAS E. LOESER
AS INTERIM CO-LEAD COUNSEL**

I. **INTRODUCTION**

Fast-moving and high stakes data breach litigation requires focused, efficient leadership with a record of success. Pursuant to this Court's January 15, 2025 Minute Entry (ECF 25) and Fed. R. Civ. P. 23(g), Plaintiff Orlando Salas moves for appointment of his counsel—Chicago native Elizabeth A. Fegan and Thomas E. Loeser—as Interim Class Counsel for the proposed class members. The appointment of Ms. Fegan and Mr. Loeser is in the best interests of the class for several fundamental reasons.

First, the gravity of the data at stake calls for experienced and effective leadership. *See* Fed. R. Civ. P. 23(g)(2). As a veteran leader of successful privacy and other complex class actions in this District, these are precisely the attributes that Ms. Fegan and her firm would bring to this complex litigation. For example, the Honorable John Z. Lee *sua sponte* appointed Ms. Fegan as Co-Lead Counsel in *In re: TikTok, Inc., Consumer Privacy Litig.*, MDL No. 2948, No. 20 C 4699 (N.D. Ill.), which resulted in a groundbreaking $92 million settlement -- considered one of the

1

largest privacy class action settlements ever achieved. As a result of the *Tik Tok* settlement, and with the approval of class action settlements exceeding $14 billion in its five years in existence, Fegan Scott was named Consumer Protection Law Firm of the Year at the National Law Journal's 2023 Elite Trial Lawyers Awards. Like Ms. Fegan, Mr. Loeser has been involved in many of the largest and most complex consumer class cases in the United States. Mr. Loeser is and has been a technology lawyer for over 25 years and he is the only former federal cyber-prosecutor in the plaintiffs' class action bar. In the past year alone, Mr. Loeser has been appointed to leadership in the two largest MDL data breach cases (*In re 2022 T-Mobile Data Breach* and *In re AT&T Data Breach*), and he was recently appointed to leadership in *In re Consumer Vehicle Driving Data Tracking Litigation,* a complex privacy case concerning GM's secret tracking and monetization of vehicle owners' driving habits.

Second, with just one Chicago-based Defendant, leadership should be comprised of no more than two-to-three Co-Lead Counsel to avoid burdening the class with unnecessary costs. And this team should promote diversity together with the skills and experience necessary to successfully litigate and efficiently manage this data breach class action. As a woman-owned firm based in Chicago, Fegan Scott has demonstrated its ability to work effectively and collegially with defense counsel and members of the Plaintiff's bar, while also zealously advocating for the interests of the class. Cotchett, Pitre & McCarthy has always sought to hire and advance persons with backgrounds and experiences that are underrepresented in the legal community. These efforts have made CPM a diverse workforce that can better represent the diverse classes it represents. At present, CPM firmwide is 66% female and 47% persons of color. Our attorneys are just under 50% female and 25% persons of color. CPM's Seattle office, where Mr. Loeser is the co-managing

2

partner, is 75% female and just under 40% persons of color. Plaintiff thus respectfully requests that this court appoints Elizabeth A. Fegan and Thomas E. Loeser as Interim co-Lead Counsel.[1]

## II. BACKGROUND

On May 21, 2024, Set Forth and its business partner Centrex discovered suspicious activity from an unauthorized user on their systems (the "Data Breach"). The information hacked included customer names, addresses, and/or social security numbers. Over 1.5 million customers' information was included in the breached information according to Defendant's Data Breach Notice. Approximately thirty cases arising from the Data Breach have been filed in this District. On January 15, 2025, this Court entered an order consolidating all 30 cases before it and setting a deadline for applications for leadership. ECF 25.

## III. ARGUMENT

### A. Elizabeth A. Fegan of Fegan Scott LLC and Thomas E. Loeser of Cotchett Pitre & McCarthy LLP are best able to represent the interests of the class whose data was stolen.

Selecting interim lead class counsel means selecting counsel "best able to represent the interests of the class." Fed. R. Civ. P. 23(g)(2)-(3). Courts generally look to the criteria set forth for class counsel in Rule 23(g)(1)(A) and (B). Rule 23(g)(1)(A) and (B) calls for consideration of prospective interim lead class counsel's work on the case to date; relevant experience in litigating class actions in relevant claims and areas of law; and the resources that counsel can bring and commit to bringing to bear. *See* Fed. R. Civ. P. 23(g)(1)(A)(i)-(iv). *See also* Manual for Complex Litigation (Fourth) ("Manual"), § 21.272 ("In the 'selection from competing counsel' approach,

---

[1] Ms. Fegan and Mr. Loeser have worked many cases with other attorneys seeking to co-lead and be appointed to a large (26-firm) structure in this case. And those five attorneys seeking co-leadership positions in addition to Ms. Fegan and Mr. Loeser are all well-qualified and deserving. While Ms. Fegan and Mr. Loeser would be delighted to work with any of these talented lawyers, a handful, not dozens of lawyers and their firms is the right amount.

3

… [t]he lawyer best able to represent the class's interests may emerge from an examination of the factors."). No one factor is determinative. *Molinari v. Fin. Asset Mgmt. Sys.*, No. 18 C 1526, 2020 U.S. Dist. LEXIS 134045, at *21 (N.D. Ill. July 29, 2020). The Court's discretion is broad; it may also consider any "matter pertinent to counsel's ability to fairly and adequately represent the interests of the class," Fed. R. Civ. P. 23(g)(1)(B), including diversity. *In re Fairlife Milk Prods. Mktg. & Sales Pracs. Litig.*, MDL No. 2909, 2020 U.S. Dist. LEXIS 10291, at *7 (N.D. Ill. Jan. 22, 2020).[2]

In addition, the Manual and the Bolch Judicial Institute, Duke Law School Guidelines and Best Practices for Large and Mass-Tort MDLs (2d ed. Sept. 2018) ("Duke Best Practices")[3] provide additional guidance for appointment of lead counsel. Applying criteria from the Manual and the Duke Best Practices: (i) helps to ensure that leadership groups are "not [ ] so large as to defeat the purpose of making such appointments"; (ii) establishes factors for assessing counsel's qualifications, resources, and ability to command the respect of the bar; and (iii) confirms that the proposed team will "fairly represent all plaintiffs, keeping in mind the benefits of diversity of experience, skills, and backgrounds." *See* Manual, § 10.221; Duke Best Practices at 38.

The overarching goal of appointment is to make litigation more efficient. *In re Data Sec. Cases v. Nelnet Servicing, LLC*, 2023 U.S. Dist. LEXIS 15332, at *27 (D. Neb. Jan. 30, 2023)

---

[2] *See also* Guideline 1, Inclusivity and Excellence: Guidelines and Best Practices for Judges Appointing Lawyers to Leadership Positions in MDL and Class-Action Litigation, James F. Humphreys Complex Litigation Center George Washington Law School (March 15, 2021) ("GW Best Practices"), at 1 ("The judge should recognize that diversity enhances the quality of the decision-making process and results, and should make appointments consistent with the diversity of our society and justice system.").

[3] Available at https://judicialstudies.duke.edu/wp-content/uploads/2018/09/MDL-2nd-Edition-2018-For-Posting.pdf (last visited February 5, 2025).

(holding that the court "must balance desire to create a 'dream team' with several co-lead firms against the competing considerations of efficiency and economy" and selecting to appoint leadership group that was more likely to prevent the duplication of efforts among counsel) (citation omitted); *see also* Manual for Complex Lit. § 10.221. As a result, independent examination by the Court into appropriate leadership is critical. Manual for Complex Lit. § 10.224.

Where, as here, more than one attorney or law firm seeks appointment as class counsel, the selection of lead counsel is based on qualifications, not a popularity contest[4]; the Court must itself endeavor to select counsel "best able to represent the interests" of the purported class. *In re Plasma-Derivative Protein Therapies Antitrust Litig.*, No. 09 C 7666, 2010 U.S. Dist. LEXIS 34882, at *22-23 (N.D. Ill. Apr. 7, 2010) (citing Fed. R. Civ. P. 23(g)(2)). Here, Ms. Fegan and Mr. Loeser readily satisfy Rule 23(g)'s criteria and the recommendations set forth in the Manual and the Best Practices.

### 1. Ms. Fegan's track record in this District demonstrates her extensive knowledge and experience litigating complex class actions.

With nearly 30 years of experience representing plaintiffs in complex and class action litigation, Ms. Fegan founded Fegan Scott LLC in 2019 as a Chicago-based nationwide class action law firm after 15 years as Managing Partner of Hagens Berman's Chicago office. *See* www.feganscott.com; Exhibit A, Fegan Scott Firm Resume. In the relatively short existence of Fegan Scott, Ms. Fegan has recovered more than $14 billion on behalf of class members:

- *In re Aqueous Film-Forming Foams (AFFF) Prods. Liab. Litig.*, MDL No. 2873, No. 2:18-mn-2873 (D.S.C.) (Gergel, J.): as appointed Co-Class Counsel, Ms. Fegan obtained final approval of combined $13.5 billion settlement for public water systems in *Dupont* and *3M* class actions;

---

[4] *In re: Shop-Vac Mktg. & Sales Pracs. Litig.*, No. 4:12-md-2380, 2013 U.S. Dist. LEXIS 7023, at *10-11 (M.D. Pa. Jan. 17, 2013) ("[A]ppointment of counsel is not supposed to be a popularity contest, and the number of attorneys supporting a given candidacy is not included among the factors.") (internal quotations omitted).

- *Zakikhani, et al. v. Hyundai Motor Company, et al.,* No. 8:20-cv-01584 (C.D. Cal.) (Blumenfeld, Jr., J.): as appointed Co-Lead Counsel, Ms. Fegan achieved final approval of class settlement valued between $300 and $650 million;

- *In re: TikTok, Inc., Consumer Privacy Litig.*, MDL No. 2948, No. 20-cv-4699 (N.D. Ill.) (Lee, J.): Ms. Fegan was *sua sponte* appointed Co-Lead Counsel by the Court and subsequently obtained final approval of a $92 million class settlement;

- *In re Kia Hyundai Vehicle Theft Marketing, Sales Pracs., and Prods. Liab. Litig.*, MDL No. 3052, No. 8:22-ml-03052 (C.D. Cal.) (Selna, J.): Ms. Fegan was *sua sponte* appointed interim Class Counsel, subsequently appointed Co-Lead Counsel, and has obtained final approval of $200 million class settlement (appeal of final approval pending).

While her experience ranges from student-athlete concussion injury litigation to her work for sexual abuse survivors in the Harvey Weinstein litigation, her work as Co-Lead counsel in *In re: TikTok, Inc., Consumer Privacy Litig.* uniquely qualifies her as Interim Class Counsel here. Like *In re: TikTok, Inc., Consumer Privacy Litig.*, the data at issue in this case poses a serious risk for the misuse of sensitive information. Ms. Fegan understands the importance of working effectively to litigate a timely resolution of this matter in light of the sensitive nature of protecting financial information.

Having successfully led some of the most complex and historic class actions in recent times, Ms. Fegan has built a reputation as a smart, tenacious, and skillful litigator. Most recently, Ms. Fegan was asked to represent certain public water systems during negotiations of the largest drinking water class action settlements ever achieved in *In re Aqueous Film-Forming Foams Prods. Liab. Litig.*, MDL No. 2873 (D.S.C.). The Honorable Richard M. Gergel recently granted final approval to the two class settlements (in which the Court appointed Ms. Fegan as Class

Counsel), totaling more than $13.5 billion, explaining that "class counsel [] have negotiated the best possible deal" and complimenting Class Counsel as some of the "best lawyers in America."[5]

While the above cases are examples of Ms. Fegan's work as lead class counsel, the successes are the result of her litigation ethic: zealous advocacy with a core commitment to professionalism. For example, when appointing Ms. Fegan *sua sponte* as Co-Lead Counsel in *In re: TikTok, Inc., Consumer Privacy Litig.* after other attorneys had formed competing coalitions, Judge Lee explained:

> Ms. Fegan demonstrated to me during her work in the *NCAA Student-Athlete Concussion MDL* that she is very astute, hard-working and, perhaps most important of all in this circumstance, fair and level-headed.

No. 20-cv-4699, Transcript of Proceedings, at 12:22-25 (Sept. 24, 2020) (copy available upon request). Upon final approval of the groundbreaking $92 million *TikTok* settlement, one of the largest privacy class action settlements ever achieved, the National Law Journal recognized the firm she founded, Fegan Scott LLC, as Consumer Protection Law Firm of the Year in its 2023 Elite Trial Lawyers Awards.

Ms. Fegan's accomplishments and successes have been widely recognized. She has been named, *inter alia*, one of America's Top 200 Lawyers, Forbes (2024); Sports/Gaming/Entertainment Law Trailblazer, The National Law Journal (2022); Midwest Trailblazer, The American Lawyer (2022); Illinois Super Lawyer, Super Lawyers Magazine (annually 2016-2024); 500 Leading Plaintiff Consumer Lawyers, Lawdragon (annually 2019-2024); Top 50 Women in Law Honoree, Chicago Daily Law Bulletin/Chicago Lawyer (2021); and Woman of Influence 2017, Best Lawyers, Business Edition (Spring 2017).

---

[5] *In re Aqueous Film-Forming Foams Prods. Liab. Litig.*, MDL No. 2873 (D.S.C.), Transcript of Proceedings, at 14:15, 114:19-21 (Feb. 2, 2024) (copy available upon request).

Moreover, Ms. Fegan's experience justifies an appointment which supports diversity in leadership. Diversity of gender, race, and ethnicity leads to better results in all business contexts,[6] including in the prosecution of class actions.[7] In appointing class counsel, courts have routinely recognized "the value of a legal team that is diverse across axes of gender, race, and other aspects of identity." *Sky Fed. Credit Union v. Fair Isaac Corp.* (*In re: FICO Antitrust Litig.*), No. 1:20-CV-02114, 2021 U.S. Dist. LEXIS 189371, at *14-15 (N.D. Ill. Sept. 30, 2021).

Courts in this District and nationwide have sought to advance these commendable shared goals by appointing qualified attorneys of diverse backgrounds to leadership positions in class actions. *See In re: Fairlife Milk Prods. Mktg. & Sales Pracs. Litig.*, No. 19-cv-3924, 2020 U.S. Dist. LEXIS 10291, at *6 (N.D. Ill. Jan. 22, 2020) ("The judge's primary responsibility in the selection process is to ensure that the lawyers appointed to leadership positions are capable and experienced and that they will responsibly and fairly represent all plaintiffs, keeping in mind the benefits of diversity of experience, skills, and backgrounds.") (quoting Duke Best Practices at 38). *See also In re: Robinhood Outage Litig.*, No. 20-cv-01626-JD, 2020 U.S. Dist. LEXIS 236487, at *6 (N.D. Cal. July 14, 2020) (declining to appoint interim class counsel because the Court was "concerned about a lack of diversity in the proposed lead counsel"); *In re: Google Play Developer Antitrust Litig.*, No. 3:20-cv-05792-JD, ECF 79 (N.D. Cal. Dec. 11, 2020) ("The attention to the Court's concerns about making lead counsel opportunities available to a diverse slate of law firms and attorneys was another positive aspect of the proposal"); *Owens v. FirstEnergy Corp.*, No. 2:20-

---

[6] *See, e.g.*, Hunt, Layton, and Prince, Why diversity matters, McKinsey (Jan. 2015); Barta, Kleiner, and Neumann, Is there a payoff from top-team diversity?, McKinsey (Apr. 2012).

[7] Guideline 1, GW Best Practices, at 1 ("The judge should recognize that diversity enhances the quality of the decision-making process and results, and should make appointments consistent with the diversity of our society and justice system.")

cv-03785, 2020 U.S. Dist. LEXIS 219573, at *40 (S.D. Ohio Nov. 23, 2020) (noting "[t]he Court looks favorably upon . . . a diverse leadership team") (citation omitted)).

Ms. Fegan is a fierce advocate for gender equity within the legal profession, authoring "An Opportunity or Landmine: Promoting Gender Diversity From The Bench" (The Federal Lawyer, May 2016), participating in The Duke Judicial Law Center's Distinguished Lawyers conference on "Guidelines and Best Practices Addressing Chronic Failure to Diversify Leadership Positions in the Practice of Law," and regularly mentoring and supporting her female colleagues for MDL leadership and committee positions. Ms. Fegan's experience is more than sufficient to justify the Court's decision to support diversity in leadership.

### 2. Mr. Loeser is uniquely suited to lead this litigation because of his diverse expertise in data privacy.

Mr. Loeser is the Co-Managing Partner of the Seattle office of Cotchett Pitre & McCarthy ("CPM"), where he represents consumers in nationwide class action cases and individuals in *qui tam* whistleblower cases. *See* Exhibit B, CPM Resume. Mr. Loeser is an AV Preeminent rated SuperLawyer and member of Lawdragon's 500 Leading Lawyers in America and the National Trial Lawyers Top 100 Trial Lawyers. He is also a 25-year technology lawyer with hard-science and high-technology bona fides. Mr. Loeser worked in technology for several years *before* attending law school, including coding for the Treasury at Microsoft and product and financial analysis at the Hewlett-Packard Company. His law career began in Silicon Valley as a technology lawyer in 1999.

In 2002, Mr. Loeser became an AUSA in Los Angeles and then a member of the Cyber and Intellectual Property Crimes Section. This entailed months of training in the investigation and prosecution of hacking, computer intrusion, computer-based crimes, online fraud, malware, and data breach cases, including detecting and investigating trojan programs and working with coding

9

and technology experts to reverse-engineer software used as vehicles for fraudulent practices. Mr. Loeser has a deep understanding of the technological parameters of software and computerized fraud, and his unique experience working closely within government agencies at the forefront of the cyber-war gives him perspective and insight that will benefit the class. Many of Mr. Loeser's cyber-prosecutor colleagues work at firms that are retained by corporations like Defendants. It is fitting that the class should have the same level of critical expertise in the prosecution of this case that Defendant and its affiliates will have in their defense.

Mr. Loeser has succeeded in highly technical class cases, including the *Dieselgate* litigation against Volkswagen and Bosch, where on behalf of Volkswagen dealers he spearheaded discovery and expert work concerning the complex software that was used to cheat EPA emissions tests. Other notable appointments include *In re Carrier IQ, Inc.*, *In re: T-Mobile I* and *II, In re: AT&T,* and *Sheikh v. Tesla*, where Mr. Loeser was appointed class counsel. The Tesla case centered on the highly complex automated driving software installed in Tesla's vehicles. At final approval of an equally complex settlement in that case, Judge Beth Labson Freeman remarked on the record:

> I will reiterate that Class Counsel has demonstrated over many years, superior experience and capability in handling class actions of this sort. It's not simple, you make it look easy, and that is the art of what you do, Mr. Loeser, and the Court certainly appreciates the good work in this case, and in recognition of the many cases that your firm has handled over the years.[8]

Mr. Loeser was also recently appointed to the Plaintiff's Steering Committee in *In re Consumer Vehicle Driving Data Tracking Litigation*, a highly complex nationwide MDL involving complex vehicle traffic information that was being used by insurers to unfairly raise consumer's insurance rates.

---

[8] *Sheikh v. Tesla, Inc.*, No. 5:17-cv-02193-BLF (N.D. Cal.) (Oct. 17, 2018 Hr'g Tr. at 12).

Finally, in determining whether to appoint an attorney to a leadership position in a complex nationwide class action that will involve many lawyers working together, a lawyers' education and experience in *leadership* itself is necessarily important. Prior to law school, Mr. Loeser completed an MBA, including a two-year curriculum of Human Resource Management of Business. He then applied the theory of management and leadership to positions at the Hewlett Packard Company where his team had members across the country and across the globe. As an attorney, Mr. Loeser has led teams of associates, paralegals and investigators within and across multiple firms for over 20 years. As a student and practitioner of leadership, Mr. Loeser will help create an inclusive, efficient and effective team to lead this case to a just and fair result.

### B. Ms. Fegan, Mr. Loeser, and their firms are committed to devoting significant time, energy, and resources to the case.

The best predictor of the time and resources an attorney or law firm will devote to a case is what they have delivered in the past.[9] Both Fegan Scott and CPM have records of excellence. Based in Chicago, Fegan Scott is a nationwide class action law firm with additional offices in New York, Pennsylvania, and Washington D.C. *See* Exhibit A, Fegan Scott Resume. Likewise, CPM has offices in San Francisco, Los Angeles, New York, and Seattle. *See* Exhibit B, CPM Resume. Both firms' extensive track records are a testament to their willingness to commit ample resources to staff and finance the prosecution of this litigation for as many years as necessary to ensure that class members receive the greatest amount of relief possible. As their resumes demonstrate, Fegan Scott and CPM have a record of successfully leading and funding complex consumer class action

---

[9] *See, e.g., Holcomb v. Hosp. Sisters Health Sys.*, No. 3:16-cv-03282, 2017 U.S. Dist. LEXIS 226100, at *8 (C.D. Ill. Jan. 18, 2017) (court considered the "track records" of counsel in determining whether counsel "have significant resources to devote to [the] matter"); *see also In re: Insulin Pricing Litig.*, No. 3:17-cv-0699, 2017 U.S. Dist. LEXIS 150919, at *10 (D.N.J. Sept. 18, 2017) (appointing counsel who had "successfully tried similar claims against comparable defendants" in previous cases).

cases against some of the largest and most well-funded corporations in the world. Their commitment to this litigation will be no different.

Fegan Scott and CPM will staff this case in an efficient manner to ensure that the putative class receives the highest quality of representation without causing overbilling, which is inevitable when there are too many "co-lead" and "committee" cooks in the kitchen.[10] As the need arises, Ms. Fegan and Mr. Loeser will be supported by numerous highly talented attorneys and staff from their firms. Ms. Fegan and Mr. Loeser have ensured their availability to commit the time, as well as finances, required in this litigation.

### C. Ms. Fegan and Mr. Loeser's work to date demonstrate their commitment to class members.

The work that Ms. Fegan, Mr. Loeser, and their firms have performed thus far demonstrates their commitment to this case. To start, before filing complaints on behalf of Plaintiff and the proposed class, they conducted thorough investigations that included: analyzing reports about the data breach; interviewing numerous affected class members about their experiences and reviewing their documents; researching the most meritorious claims to bring against Defendant by reviewing and analyzing Defendant's privacy policies; and preliminarily consulting with experts. Based on their investigation, including a thorough analysis of public records, they have identified several potential witnesses and categories of documents to pursue in discovery. As a result, Ms. Fegan and

---

[10] *See Bentley v. United of Omaha Life Ins. Co.*, No. CV 15-7870-DMG (AJWx), 2020 U.S. Dist. LEXIS 126603, at *11 (C.D. Cal. Mar. 13, 2020) ("When there is a proliferation of attorneys working on a case, as there was here, the potential for duplicative work and overbilling is a legitimate concern."); *In re: Gerber Prods. Co. Heavy Metals Baby Food Litig.*, No. 1:21-cv-269 (MSN/JFA), 2022 U.S. Dist. LEXIS 85405, at *23-24 (E.D. Va. May 10, 2022) ("A four-person co-lead structure […] has the potential for inefficiencies and cumbersome decision making.") (citation omitted).

Mr. Loeser are able to, in short order, file a detailed consolidated complaint that will withstand any motion to dismiss.

### D. The appointment of no more than two-to-three lawyers as Co-Lead Counsel is efficient and proportionate to the needs of the case.

While this case is complex and will require significant investments of time and resources, a leadership structure of two-to-three Co-Lead Counsel is sufficient to lead a single Defendant data breach case with a known class size. To be precise, the class is currently estimated at approximately 1.5 million members, a number which, while significant, does not justify a massive, multi-tiered leadership structure. The use of a lean structure will increase efficiency and substantially reduce costs for the proposed class by minimizing duplication and inefficiencies often present in large leadership structures. Courts have approved two-lead structures in cases of similar size and scope. *See, e.g.*, *In re Gallagher Data Breach Ligation*, Case No. 1:21-cv-04056 (N.D. Ill. Aug. 26, 2021), ECF 17 (appointing two co-lead counsel in a data breach impacting 3 million individuals).

Ms. Fegan and Mr. Loeser have worked together for decades, having been Partners at Hagens Berman, a well-regarded national class action firm. Their skillsets are complimentary, and they can and will manage this case effectively and efficiently. Should the Court decide to appoint additional lead counsel, Chicago natives Ms. Borelli, Ms. Carroll and Mr. Klinger and their proposed co-lead counsel are all excellent candidates, but this is not a case that requires all of them. A leadership structure comprised of more than three lead lawyers and complex leadership tiers is unnecessary, a waste of class resources, and will overcomplicate and hamper litigation strategy, decision-making, and any negotiated resolution. While this case is not an MDL but a consolidated case with numerous parties seeking leadership, this case mimics many of the issues that commonly plague large MDLs. As courts recognize, "there is a fine line in an MDL between establishing (a) an organizational structure that promotes the efficient delegation of work, and (b) an elaborate

inter-firm bureaucracy that impedes progress and generates fees." *In re: Navistar Maxxforce Engines Mktg., Sales Pracs. & Prods. Liab. Litig.*, No. 14-cv-10318, 2015 U.S. Dist. LEXIS 34662, at *11 (N.D. Ill. Mar. 5, 2015). Any proposed structure of more than three co-leads will cross that line and be "so large as to defeat the purpose of making such appointments." *Haynie v. Cornell Univ.*, No. 3:20-CV-467 (MAD/ML), 2020 U.S. Dist. LEXIS 188766, at *5 (N.D.N.Y. Oct. 13, 2020) (quoting *In re LIBOR-Based Fin. Instruments Antitrust Litig.*, No. 11 MD 2262, 2011 U.S. Dist. LEXIS 122735, *14 (S.D.N.Y. Oct. 18, 2011)).

In light of the class size, the claims at issue, and the single Chicago-based Defendant, there is simply no need to appoint a sprawling leadership structure. While Ms. Fegan and Mr. Loeser have communicated with other counsel in this matter in an attempt to establish consensus, they believe a proposal of more than two dozen attorneys is grossly disproportionate to the scope of this case; no amount of management, billing procedures, or monitoring could prevent unnecessary and duplicative work under this framework.[11] Ultimately, the proposed class will bear the brunt of a bloated leadership team billing, litigating their claims, and traveling to Chicago from out of state, when the same work could be done just as well by a lean two-to-three person Co-Lead team, especially with Ms. Fegan based in Chicago. Simply put, a nimbler team of experienced lawyers

---

[11] Structures of more than a dozen attorneys and firms, while uncommon, are more appropriate in cases with multiple defendants or large class sizes. *See, e.g.*, *In re: AT&T Inc. Customer Data Security Breach Litigation*, MDL Docket No.: 3:24-md-03114-E (N.D. Tex.), ECF 165 (appointing one lead counsel, three executive committee members, and six Plaintiff's Steering Committee ("PSC") members to lead data breach involving an estimated 76 million class members); *In re Data Breach Sec. Litig. Against Caesars Ent., Inc.*, No. 2:23-cv-01447-ART-BNW, 2024 U.S. Dist. LEXIS 104130, at *24 (D. Nev. June 12, 2024) (appointing two co-leads and six member PSC in data breach MDL impacting more than 65 million people); *In re: Moveit Customer Data Security Breach Litigation*, MDL No. 1:23-md-03083-ADB (D. Mass.), ECF 649 (appointing 8 lead counsel and 12 committee leads for data breach allegedly impacting more than 60 million individuals); *In re: T-Mobile Customer Data Security Breach Litigation*, Case No. 4:21-MD-03019-BCW (W.D. Mo.), ECF 102 (appointing three lead counsel, one liaison counsel, and eight person Plaintiff's Executive Committee in data breach affecting more than 75 million customers).

is warranted here.

## IV. CONCLUSION

Ms. Fegan and Mr. Loeser meet each of the requirements of Rule 23(g) and possess the experience necessary to prosecute this class action litigation in a fair, efficient, and successful manner. Their proposed leadership structure is appropriately tailored to the specific needs of this case, where critical financial data is at stake, but the class size is not so large as to require an unwieldy oversized leadership team. Should the need arise, Ms. Fegan and Mr. Loeser are willing to work with other plaintiffs' counsel while managing costs and maintaining efficiency. Accordingly, Plaintiff respectfully requests that the Court grant his motion, appoint Ms. Fegan and Mr. Loeser as Interim Class Counsel, and grant such other and further relief as the Court deems just and proper under the circumstances.

Dated: February 5, 2025

Respectfully submitted,

By: */s/ Elizabeth A. Fegan*

Elizabeth A. Fegan
Megan E. Shannon
**FEGAN SCOTT LLC**
150 S. Wacker Drive, 24th Floor
Chicago, IL 60606
Telephone: (312) 741-1019
Facsimile: (312) 264-0100
beth@feganscott.com
megan@feganscott.com

*/s/ Thomas E. Loeser*
Thomas E. Loeser
**COTCHETT PITRE & MCCARTHY LLP**
1809 7th Avenue, Suite 1610
Seattle, WA 98101
Telephone: (206) 802-1272
Facsimile: (650) 697-0577
tloeser@cpmlegal.com