IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| IN RE: SET FORTH DATA SECURITY BREACH LITIGATION | )<br>)<br>)<br>)<br>) Consolidated Case No: 1:24-cv-11688<br>)<br>)<br>) Honorable Martha M. Pacold<br>)<br>)<br>) |

**MEMORANDUM OF LAW IN SUPPORT OF
DEFENDANT SET FORTH, LLC D/B/A FORTH'S
<u>MOTION TO COMPEL ARBITRATION</u>**

**TABLE OF CONTENTS**

INTRODUCTION .................................................................................................................... 1

FACTUAL BACKGROUND .................................................................................................. 1

LEGAL STANDARD .............................................................................................................. 3

ARGUMENT ........................................................................................................................... 4

    I.    The Court Must Compel Arbitration of Plaintiffs' Claims ..................................... 4

        A.    The Account Agreement's Arbitration Clause Is Valid And Enforceable Under California Law ............................................................. 5

        B.    This Court Should Not Reach Whether Plaintiffs' Claims Arise Under the Arbitration Agreement Because The Issue Of Arbitrability Has Been Delegated To The Arbitrator, But Plaintiffs' Claims Plainly Fall Within the Arbitration Agreement. ............ 8

    II.    This Court Must Stay This Action During the Pendency of Arbitration Proceedings ........................................................................................................ 12

CONCLUSION ...................................................................................................................... 12

# **TABLE OF AUTHORITIES**

**Cases**

*Am. Express Co. v. Italian Colors Rest.*,
   570 U.S. 228 (2013) ................................................................................................................ 4

*Amtax Holdings 463, LLC v. KDF Communities-Hallmark, LLC*,
   No. 8:17-cv-01899-JLS-AS, 2018 WL 4743386 (C.D. Cal. Jan. 09, 2018) ............................ 9

*AT&T Mobility LLC v. Concepcion*,
   563 U.S. 333 (2011) ............................................................................................................ 4, 7

*Blanton v. Domino's Pizza Franchising LLC*,
   962 F.3d 842 (6th Cir. 2020) ................................................................................................... 9

*Bottero v. Hoya Corp.*,
   No. 14-cv-02528, 2015 WL 3809266 (N.D. Cal. June 18, 2015) ........................................... 6

*Brennan v. Opus Bank*,
   796 F.3d 1125 (9th Cir. 2015) ................................................................................................. 9

*Carlile v. Russ Berrie & Co.*,
   No. SACV08-0887 AG(RNBX), 2008 WL 4534281 (C.D. Cal. Oct. 6, 2008) ...................... 6

*Carter v. Rent-A-Ctr., Inc.*,
   718 F. App'x 502 (9th Cir. 2017) ............................................................................................ 7

*Chun Choe v. T-Mobile USA, Inc.*,
   No. SA CV 18-0648-DOC, 2018 WL 6141574 (C.D. Cal. 2018) ......................................... 11

*Cloudera, Inc. v. Databricks, Inc.*,
   1:21-CV-00108-ELR, 2021 WL 1846578 (N.D. Ga. Feb. 18, 2021) ...................................... 9

*Commonwealth Edison Co. v. Gulf Oil Corp.*,
   541 F.2d 1263 (7th Cir. 1976) ................................................................................................. 9

*CompuCredit Corp. v. Greenwood*,
   565 U.S. 95 (2012) .................................................................................................................. 4

*Conrad v. Ace Prop. & Cas. Ins. Co.*,
   532 F.3d 1000 (9th Cir. 2008) ............................................................................................... 10

*Corp. v. Ortho Diagnostics Sys., Inc.*,
   207 F.3d 1126 (9th Cir. 2000) ......................................................................................... 10, 11

*Cruz v. Fitness Alliance LLC*,
  No. CV-24-02926-PHX-JJT , 2025 WL 1936651 (D. Ariz. 2025) ............................................ 7

*Double Sunrise Inc. v. Morrison Mgmt. Specialists Inc.*,
  149 F.Supp.2d 1039 (N.D. Ill. 2001) .................................................................................... 11

*Emigrant Mortg. Co., Inc. v. Chicago Fin. Servs., Inc.*,
  898 N.E.2d 1069 (Ill. App. Ct. 2007) ..................................................................................... 5

*Epic Sys. Corp. v. Lewis*,
  584 U.S. 497 (2018) ................................................................................................................ 4

*Foote v. All Elite Wrestling, LLC*,
  No. 3:24-cv-1206-HES-MCR, 2025 WL 1913228 (M.D. Fl. June 11, 2025) ......................... 10

*Gennarelli v. Charter Commn's, Inc.*,
  No. 2:19-cv-09635-JLS-ADS, 2021 WL 4826612 (C.D. Cal. 2021) ....................................... 7

*Green Tree Fin. Corp.-Ala. v. Randolph*,
  531 U.S. 79 (2000) .................................................................................................................. 3

*Gunn v. Cont'l Cas. Co.*,
  968 F.3d 802 (7th Cir. 2020) .................................................................................................. 5

*Henry Schein, Inc. v. Archer & White Sales, Inc.*,
  586 U.S. 63 (2019) .................................................................................................................. 8

*Jackson v. Payday Fin. LLC*,
  764 F.3d 765 (7th Cir. 2014) .................................................................................................. 5

*Jennings v. Ed Napleton Elmhurst Imports Inc.*,
  No. 1:23-CV-14099, 2025 WL 461433 (N.D. Ill. Feb. 11, 2025) ............................................ 3

*KPMG LLP v. Cocchi*,
  565 U.S. 18 (2011) .................................................................................................................. 4

*Lease Mgmt. Equip. Corp. v. DFO P'ship*,
  910 N.E2d 709 (Ill. Ct. App. 2009) ....................................................................................... 10

*Lucas v. Michael Kors (USA), Inc.*,
  No. CV181608MWFMRWX, 2018 WL 6177225 (C.D. Cal. Aug. 20, 2018) .......................... 6

*Mareslian v. Wells Fargo & Co.*,
  514 F. Supp. 3d 1166 (N.D. Cal. 2021) .............................................................................. 6, 7

*Merit Ins. Co. v. Leatherby Ins. Co.*,
  581 F.2d 137 (7th Cir. 1978) .................................................................................................. 12

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*,
  460 U.S. 1 (1983) .................................................................................................................... 11

*Oracle Am., Inc. v. Myriad Group A.G.*,
  724 F.3d 1069 (9th Cir. 2013) .................................................................................................. 9

*Rock Hemp Corp. v. Dunn*,
  51 F.4th 693 (7th Cir. 2022) ..................................................................................................... 4

*Rodgers-Rouzier v. Am. Queen Steamboat Operating Co., LLC*,
  104 F.4th 978 (7th Cir. 2024) ................................................................................................... 5

*Serrano v. Macys W. Stores, Inc.*,
  No. CV202434MWFJEMX, 2020 WL 6083439 (C.D. Cal. July 9, 2020) ............................... 7

*Sha-Poppin Gourmet Popcorn LLC v. JP Morgan Chase Bank, N.A.*,
  553 F. Supp. 3d 452 (N.D Ill. 2021) ......................................................................................... 8

*Simula, Inc. v. Autoliv, Inc.*,
  175 F.3d 716 (9th Cir. 1999) .................................................................................................. 10

*Smith v. Spizziri*,
  601 U.S. 472 (2024) ........................................................................................................... 4, 12

*Sweet Dreams Unlimited, Inc. v. Dial-A-Mattress Int'l, Ltd.*,
  1 F.3d 639 (7th Cir. 1993) ................................................................................................ 10, 11

*Tinder v. Pinkerton Sec.*,
  305 F.3d 728 (7th Cir. 2002) .................................................................................................... 3

*United Steelworkers of Am. v. Warrior & Gulf Nav. Co.*,
  363 U.S. 574 (1960) ................................................................................................................ 11

*Villalpando v. Transguard Ins. Co. of Am.*,
  17 F. Supp. 3d 969 (N.D. Cal. 2014) ........................................................................................ 6

*Wallens v. Milliman Fin. Risk Mgmt. LLC*,
  509 F. Supp. 3d 1204 (C.D. Cal. 2020) .................................................................................... 6

*Wynn-Resorts, Ltd. v. Alt.-Pac. Cap., Inc.*,
  497 F. App'x 740 (9th Cir. 2012) ............................................................................................. 9

*Young v. Shipt, Inc.*,
    563 F. Supp. 3d 832 (N.D. Ill. 2021) ....................................................................................... 3

*Zurich Am. Ins. Co. v. Watts Indus.*,
    466 F.3d 577 (7th Cir. 2006) ................................................................................................... 3

**Statutes**

9 U.S.C. § 2 ...................................................................................................................................... 4

9 U.S.C. § 3 .................................................................................................................................... 12

**Other Authorities**

JAMS Comprehensive Arbitration Rule 11 ................................................................................... 8

Defendant Set Forth, LLC, d/b/a Forth, by counsel, and under the Federal Arbitration Act, hereby submits this memorandum in support of its Motion to Compel Arbitration.

## INTRODUCTION

Plaintiffs Janice Adam ("Adam") and Joel Bellefeuille, Jr. ("Bellefeuille" and collectively with Adam, "Plaintiffs") assert claims relating to a cyberattack perpetrated on Defendant Set Forth, LLC ("Forth"), in which a cybercriminal gained access to Forth's systems and may have accessed certain information associated with Plaintiffs (the "Security Incident"). Plaintiffs purport to represent various classes of individuals seeking damages from Forth. But both Adam and Bellefeuille signed Account Agreements with Forth when they became customers of Forth's custodial debt-settlement related services. Those Account Agreements contain valid arbitration agreements requiring Plaintiffs to arbitrate on an individual basis all claims arising between them and Forth, including the claims they assert in this case. Plaintiffs' claims must therefore be compelled to individual arbitrations, and their claims must be stayed pending the outcome of those arbitrations.

## FACTUAL BACKGROUND

Forth is a technology and service provider whose business includes licensing its proprietary customer relationship management platform (the "Forth Platform") to other companies, including companies providing consumer debt settlement services ("Debt Relief Service Providers"). *See* Declaration of Richard Anderlick ("Anderlick Dec.") (attached hereto as Exhibit 1) ¶ 4. Debt Relief Service Providers act as intermediaries between consumers burdened by debt and their creditors, negotiating payment plans on the consumers' behalf and facilitating payment transactions, thereby permitting consumers to avoid bankruptcy while repaying a portion of their debt obligations, which are deemed satisfied upon completion of the repayment plan. Anderlick Dec. ¶ 4. Debt Relief Service Providers use Forth's Platform to manage their relationships with

1

the individual consumers who engage the Debt Relief Service Providers for assistance. Anderlick Dec. ¶ 5. When an individual consumer engages a Debt Relief Service Provider that uses Forth's Platform, the consumer executes an account agreement with Forth governing the use of that Platform, pursuant to which they can access the Forth Platform in connection with their individualized debt settlement programs ("Account Agreements"). Anderlick Dec. ¶ 5.

Plaintiff Joel Bellefeuille is an individual who claims to have "used the Set Forth software platform," Compl. ¶ 145, and alleges he "provide[d] his PII to Defendants" "[i]n order and as a condition to obtain debt relief services from Defendants." Dkt.85 ("Compl.") ¶¶ 145, 149. Plaintiff Janice Adam alleges she "was a client of Set Forth and provided her PII" to Forth. Compl. ¶ 256. ████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████
██████████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████

███████████████████████████████████████
███████████████████████████████████████
███████████████████████████████████████
███████████████████████████████████████
███████████████████████████████████████
███████████████████████████████████████
████████████████████

Notwithstanding the Arbitration Agreement, Bellefeuille and Adam (among others) filed this putative class action alleging that the Security Incident resulted in the unauthorized access and exfiltration of their PII. *See generally* Compl. Plaintiffs assert several common law claims against Forth on behalf of a putative nationwide class, with Adam further seeking to assert additional statutory claims on behalf of a California-based subclass. Both Plaintiffs also name Centrex Software, Inc., as a Defendant—but no Plaintiff, including Bellefeuille and Adam—claims to have any relationship with Centrex. *See* Compl. ¶¶ 145–283.

## **LEGAL STANDARD**

Courts review motions to compel arbitration under a quasi-summary judgment standard. *Tinder v. Pinkerton Sec.*, 305 F.3d 728, 735 (7th Cir. 2002). Movants initially bear the burden of establishing a valid agreement to arbitrate that covers the scope of the dispute. *Zurich Am. Ins. Co. v. Watts Indus.*, 466 F.3d 577, 580 (7th Cir. 2006). Then, "[t]he party opposing arbitration bears the burden of establishing why the arbitration provision should not be enforced." *Young v. Shipt, Inc.*, 563 F. Supp. 3d 832, 836 (N.D. Ill. 2021) (citing *Green Tree Fin. Corp.-Ala. v. Randolph*, 531 U.S. 79, 91–92 (2000)). In considering those issues, the court is permitted to consider evidence "beyond the pleadings." *Jennings v. Ed Napleton Elmhurst Imports Inc.*, No. 1:23-CV-14099, 2025 WL 461433, at *3 (N.D. Ill. Feb. 11, 2025) (citation omitted).

3

**ARGUMENT**

**I.    The Court Must Compel Arbitration of Plaintiffs' Claims**

Section 2 of the Federal Arbitration Act ("FAA") mandates that a binding arbitration agreement in a contract "evidencing a transaction involving commerce . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."  9 U.S.C. § 2; *see also AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 336 (2011).  The FAA "reflect[s] both a liberal federal policy favoring arbitration and the fundamental principle that arbitration is a matter of contract," such that "courts must place arbitration agreements on an equal footing with other contracts and enforce them according to their terms." *Id.* (citations omitted); *see also Epic Sys. Corp. v. Lewis*, 584 U.S. 497, 505–06 (2018); *Am. Express Co. v. Italian Colors Rest.*, 570 U.S. 228, 233 (2013); *CompuCredit Corp. v. Greenwood*, 565 U.S. 95, 98 (2012).

Considering this "liberal federal policy favoring arbitration," *Concepcion*, 563 U.S. at 336 (citation omitted), "[a] court must enforce an arbitration clause where (1) there is a valid agreement to arbitrate, (2) the claims fall within the scope of the agreement, and (3) the opposing party refused to arbitrate."  *Rock Hemp Corp. v. Dunn*, 51 F.4th 693, 702 (7th Cir. 2022).  Once a court determines that a party has agreed to arbitrate a dispute, it has no discretion to proceed with the case and must compel arbitration while staying the case pending the outcome of that proceeding. *Smith v. Spizziri*, 601 U.S. 472, 475–76 (2024); *see also KPMG LLP v. Cocchi*, 565 U.S. 18, 21-22 (2011) (the FAA "requires courts to enforce the bargain of the parties to arbitrate" and "leaves no place for the exercise of discretion by a district court, but instead mandates that district courts *shall* direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed" (citations omitted)).

4

In their Account Agreements, Bellefeuille and Adam assented to a valid and enforceable Arbitration Agreement covering the scope of the present dispute. This Court need not even reach the question of whether their claims fall within the Arbitration Agreement's scope because the incorporation of specific arbitration rules such as JAMS Rules constitutes clear and unmistakable evidence that the parties intended to delegate questions of arbitrability to the arbitrator. But even if the parties had not so delegated, Bellefeuille's and Adam's claims clearly fall within the broad scope of the Arbitration Agreement. Accordingly, their claims should be compelled to individual arbitration and all proceedings stayed pending resolution of their individual arbitration proceedings.

### A. The Account Agreement's Arbitration Clause Is Valid And Enforceable Under California Law

"An arbitration agreement is just a type of contract, and the FAA does not itself provide a substantive law governing the formation or general interpretation of contracts, so ordinary state contract law always fills in crucial gaps in any arbitration agreement." *Rodgers-Rouzier v. Am. Queen Steamboat Operating Co., LLC*, 104 F.4th 978, 991 (7th Cir. 2024) (citation omitted).[1] Where a contract contains a choice of law clause, "the law designated in the choice of law clause [is] used to determine the validity of the forum selection [or arbitration] clause." *Jackson v. Payday Fin. LLC*, 764 F.3d 765, 775 (7th Cir. 2014). The Account Agreements here provide that they "shall be governed by and construed in accordance with the laws of the State of California,"

---

[1] Federal courts sitting in diversity apply the forum state's choice-of-law rules. *See Gunn v. Cont'l Cas. Co.*, 968 F.3d 802, 808 (7th Cir. 2020). Illinois law honors choice of law provisions, so long as the provision does not contravene public policy and there is some relationship between the law selected and the parties to the transaction. *Emigrant Mortg. Co., Inc. v. Chicago Fin. Servs., Inc.*, 898 N.E.2d 1069, 1074 (Ill. App. Ct. 2007).

Anderlick Dec. Ex. A § 18, Ex. B § 18, Ex. C § 18, Ex. D § 18, Ex. E § 18, so California law applies to this inquiry.

To form a binding contract under California law, "there must be offer, acceptance, consideration, and mutual consent between the parties." *Bottero v. Hoya Corp.*, No. 14-cv-02528, 2015 WL 3809266, at *4 (N.D. Cal. June 18, 2015). "The rule in California is that when a person with the capacity of reading and understanding an instrument signs it, he is, in the absence of fraud or imposition, bound by its contents." *Villalpando v. Transguard Ins. Co. of Am.*, 17 F. Supp. 3d 969, 983 (N.D. Cal. 2014) (citation omitted). Thus, one who "signs an instrument which on its face is a contract is deemed to assent to all its terms and cannot avoid the terms of a contract on the ground that he or she failed to read it before signing." *Mareslian v. Wells Fargo & Co.*, 514 F. Supp. 3d 1166, 1173 (N.D. Cal. 2021) (citation omitted).

Courts applying California law therefore routinely hold that plaintiffs are bound to arbitration agreements they sign, *see e.g., id.* (enforcing arbitration agreement where plaintive "manifested his assent to the terms" of a contract "[b]y signing" it)*; Wallens v. Milliman Fin. Risk Mgmt. LLC*, 509 F. Supp. 3d 1204, 1212 (C.D. Cal. 2020) (deeming as valid and enforceable an arbitration agreement signed by plaintiff despite plaintiff being "unaware of the scope or existence of the arbitration agreement" (citation omitted)); *Carlile v. Russ Berrie & Co.,* No. SACV08-0887 AG(RNBX), 2008 WL 4534281, *2 (C.D. Cal. Oct. 6, 2008) (enforcing arbitration agreement against signatory who "did not consider the legal consequences of signing" the agreement and was admittedly "ignorant of the arbitral nature of the proceedings" (citation omitted)). This is true even when the contract was signed electronically. *See, e.g.*, *Lucas v. Michael Kors (USA), Inc*., No. CV181608MWFMRWX, 2018 WL 6177225, *7 (C.D. Cal. Aug. 20, 2018) (compelling arbitration against plaintiff who electronically signed contract containing arbitration clause);

6

*Serrano v. Macys W. Stores, Inc.*, No. CV202434MWFJEMX, 2020 WL 6083439, *3 (C.D. Cal. July 9, 2020) (same); *see also Cruz v. Fitness Alliance LLC*, No. CV-24-02926-PHX-JJT, 2025 WL 1936651, *3 (D. Ariz. 2025) (collecting cases across jurisdictions holding "that electronic signatures . . . are legally binding" in the arbitration context).

Here, the Arbitration Agreement contained in Bellefeuille's and Adam's Account Agreements is valid under California law and fully enforceable. ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ *See Mareslian*, 514 F. Supp. 3d at 1173; *Wallens*, 509 F. Supp. 3d at 1212; *Carlile,* 2008 WL 4534281, at *2; *Lucas,* 2018 WL 6177225, at *7; *Serrano*, 2020 WL 6083439, at *3. And Forth's "mutual promise[] to forego a judicial determination"—in addition to its provision of debt management services—constitutes valid consideration. *Gennarelli v. Charter Commn's, Inc.*, No. 2:19-cv-09635-JLS-ADS, 2021 WL 4826612, *4 (C.D. Cal. Apr. 22, 2021) ("[T]he parties' mutual promises to forego a judicial determination and to arbitration their disputes provide consideration for each other." (citation omitted)). There can, therefore, be no dispute that the Account Agreements contain a valid and enforceable Arbitration Agreement that binds Plaintiffs Bellefeuille and Adam to arbitration here.[2]

---

[2] The Arbitration Agreement's class action waiver is also enforceable. *See Concepcion*, 563 U.S. at 644 (holding that class action waivers are enforceable); *Carter v. Rent-A-Ctr., Inc.*, 718 F. App'x 502, 504 (9th Cir. 2017) (evaluating California state law and holding that the FAA has "foreclos[ed] any argument that a class action waiver, by itself, is unconscionable under state law or that an arbitration agreement is unconscionable solely because it contains a class action waiver.").

7

> **B.** **This Court Should Not Reach Whether Plaintiffs' Claims Arise Under the Arbitration Agreement Because The Issue Of Arbitrability Has Been Delegated To The Arbitrator, But Plaintiffs' Claims Plainly Fall Within the Arbitration Agreement.**
>
>> **1. The Arbitration Agreement Delegates Questions of Arbitrability To The Arbitrator**

"[I]f a valid agreement exists, and if the agreement delegates the arbitrability issue to the arbitrator, a court may not decide the arbitrability issue." *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 586 U.S. 63, 69 (2019).

Here, the parties clearly and unmistakably delegated arbitrability to the arbitrator by expressly incorporating the JAMS Comprehensive Arbitration Rules and Procedures within the Arbitration Agreement. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ JAMS Rule 11, in turn, provides that "[j]urisdictional and arbitrability disputes, including disputes over the formation, existence, validity, interpretation or scope of the agreement under which Arbitration is sought, and who are proper Parties to the Arbitration, shall be submitted to and ruled on by the Arbitrator. The Arbitrator has the authority to determine jurisdiction and arbitrability issues a preliminary matter." JAMS Comprehensive Arbitration Rule 11(b).[3]

"[E]very federal court of appeals to consider the question . . . has found that the incorporation of the AAA Rules (or similarly worded arbitral rules) provides clear and unmistakable evidence that the parties agreed to arbitrate arbitrability." *Sha-Poppin Gourmet Popcorn LLC v. JP Morgan Chase Bank, N.A.*, 553 F. Supp. 3d 452, 458 (N.D Ill. 2021) (cleaned

---

[3] Available at https://www.jamsadr.com/rules-comprehensive-arbitration#Rule-11.

8

up); *see also Blanton v. Domino's Pizza Franchising LLC*, 962 F.3d 842, 846 (6th Cir. 2020) (collecting federal appellate cases demonstrating wide-spread agreement on this point). The Ninth Circuit, for its part, has unequivocally held that the incorporation of arbitral rules into a contract constitutes "clear and unmistakable evidence that the parties agreed the arbitrator would decide arbitrability," *Brennan v. Opus Bank*, 796 F.3d 1125, 1130 (9th Cir. 2015) (citation omitted), including the incorporation of JAMS rules, *Wynn-Resorts, Ltd. v. Alt.-Pac. Cap., Inc.*, 497 F. App'x 740, 742 (9th Cir. 2012), and other arbitral rules, *see Oracle Am., Inc. v. Myriad Group A.G.*, 724 F.3d 1069 (9th Cir. 2013) (incorporation of UNCITRAL arbitration rules constituted valid delegation). The Seventh Circuit, for its part, has recognized that an "agreement of the parties to have any arbitration governed by the rules of the AAA incorporate[s] those rules into the agreement." *Commonwealth Edison Co. v. Gulf Oil Corp.*, 541 F.2d 1263, 1272 (7th Cir. 1976).

Courts across the country have accordingly compelled arbitration of the gateway question of arbitrability where—as here—the underlying agreement incorporates JAMS rules. *See, e.g.*, *Amtax Holdings 463, LLC v. KDF Communities-Hallmark, LLC*, No. 8:17-cv-01899-JLS-AS, 2018 WL 4743386, *5 (C.D. Cal. Jan. 09, 2018) ("[T]he incorporation of the JAMS rules constitutes 'clear and unmistakable evidence' of the parties' intent to delegate arbitrability to the arbitrator."); *Sha-Poppin*, 553 F. Supp. 3d at 459 (holding that arbitration agreement's express incorporation of JAMS Rules "clearly and unmistakably delegates arbitrability to the arbitrator"); *Cloudera, Inc. v. Databricks, Inc.*, No. 1:21-CV-00108-ELR, 2021 WL 1846578, *4 (N.D. Ga. Feb. 18, 2021) (enforcing decision of contracting parties and "reserve[ing] gateway questions of arbitrability to the arbitrator" in light of an arbitration agreement incorporating JAMS arbitration rules); *Foote v. All Elite Wrestling, LLC*, No. 3:24-cv-1206-HES-MCR, 2025 WL 1913228, *2

9

(M.D. Fl. June 11, 2025) ("Incorporating the JAMS rules and procedures validly delegates arbitrability to the arbitrator.").

In accordance with the overwhelming weight of authority, the Arbitration Agreement's express incorporation of the JAMS Rules here constitutes clear and unmistakable evidence of the parties' intent to delegate threshold questions of arbitrability to the arbitrator, not this Court.

### 2. In Any Event, This Dispute Here Falls Within the Arbitration Agreement

Even if this Court were to reach the question of arbitrability of the present dispute, however, Plaintiffs' claims plainly fall within the broad scope of the Arbitration Agreement.

As an initial matter, where "the language [of a contract] is clear an unambiguous, the court will enforce the contract as written and may not create ambiguity where none exist." *Conrad v. Ace Prop. & Cas. Ins. Co.*, 532 F.3d 1000, 1005 (9th Cir. 2008); *see also Lease Mgmt. Equip. Corp. v. DFO P'ship*, 910 N.E2d 709, 716 (Ill. Ct. App. 2009) (same). Arbitration agreements extending to any claims "arising out of or relating to" the contract containing the arbitration agreement are routinely characterized as "broad and far reaching," *Corp. v. Ortho Diagnostics Sys., Inc.*, 207 F.3d 1126, 1131 (9th Cir. 2000), and "reach[ing] every dispute between the parties having a significant relationship to the contract and all disputes having their origin or genesis in the contract," *Simula, Inc. v. Autoliv, Inc.*, 175 F.3d 716, 721 (9th Cir. 1999); *see also Sweet Dreams Unlimited, Inc. v. Dial-A-Mattress Int'l, Ltd.*, 1 F.3d 639, 642 (7th Cir. 1993) ("[A]ny dispute between contracting parties that is in any way connected with their contract could be said to 'arise out of' their agreement and thus be subject to arbitration under a provision employing this language.").

"To determine whether a claim falls within the scope of an arbitration agreement, the focus is on the factual underpinnings of the claim rather than the legal theory alleged in the complaint."

10

*Chun Choe v. T-Mobile USA, Inc.*, No. SA CV 18-0648-DOC, 2018 WL 6131574, *3 (C.D. Cal. 2018) (citation omitted); *Double Sunrise Inc. v. Morrison Mgmt. Specialists Inc.*, 149 F.Supp.2d 1039, 1043 (N.D. Ill. 2001) (same). Moreover, once the validity of the agreement has been determined, "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration," *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.,* 460 U.S. 1, 24–25 (1983). Thus, if the arbitration agreement is broad and lacks "any express provision excluding a particular grievance from arbitration . . . only the most forceful evidence of a purpose to exclude the claim from arbitration can prevail." *United Steelworkers of Am. v. Warrior & Gulf Nav. Co.*, 363 U.S. 574, 585 (1960).

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

███████████████████████████████████████ Those are precisely the types of phrases that federal appellate courts have held—time and time again—to be "broad and far reaching." *Corp.*, 207 F.3d at 1131; *Sweet Dreams Unlimited, Inc*, 1 F.3d at 642. Bellefeuille's and Adam's claims in this lawsuit clearly ████████████████████████ their Account Agreements because the claims all relate to Plaintiffs' provision of PII accessed during the Security Incident to Forth as a condition of obtaining the services governed by the Account Agreements. In other words, the "factual underpinnings" of these claims, *Chun Choe*, 2018 WL 6141574, at *3 (citation omitted)—both common law and statutory—have at minimum a "significant relationship to the" Account Agreement, *Corp.*, 207 F.3d at 1131, including most specifically ████████

██████████████████████████████████████████████████████

▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬ (which Plaintiffs specifically invoke in support of their negligence and implied contract claims). *See, e.g.*, Compl. ¶¶ 304, 327.

Because this dispute falls within the Arbitration Agreement's broad scope, Bellefeuille's and Adam's claims must be compelled to individual arbitration.

## II. This Court Must Stay This Action During the Pendency of Arbitration Proceedings

Under Section 3 of the FAA, if a lawsuit is brought "upon any issue referrable to arbitration," the Court "shall on application of one of the parties stay the trial . . . until such arbitration is complete." 9 U.S.C. § 3. Under these circumstances, a stay is mandatory. *See Smith*, 601 U.S. at 476–77; *Merit Ins. Co. v. Leatherby Ins. Co.*, 581 F.2d 137, 142 (7th Cir. 1978) ("If the agreement to arbitrate is valid the court has no further power or discretion to address the issues raised in the complaint but must order arbitration.").

Accordingly, Forth respectfully requests that this Court stay this lawsuit with respect to Plaintiffs Adam and Bellefeuille until the arbitration proceedings addressing their individual claims are complete. *See* 9 U.S.C. § 3. Such a stay is mandatory under Section 3 of the FAA, and it will also conserve the resources of both the parties and this Court, while maintaining this Court's jurisdiction to adjudicate a motion to confirm or vacate any award resulting from the underlying jurisdiction, should such an award be issued.

## CONCLUSION

This Court should compel arbitration of Plaintiff Bellefeuille and Adam's claims and stay this case with respect to those Plaintiffs pending the resolution of arbitration proceedings.

Dated: January 26, 2026

Respectfully submitted,

*s/ Seth M. Erickson*_____
Seth M. Erickson
TROUTMAN PEPPER LOCKE LLP

12

111 S. Wacker, Suite 4100
Chicago, IL 60606
Telephone:  (312) 759-5930
seth.erickson@troutman.com

Ronald I. Raether, Jr. (*pro hac vice*)
TROUTMAN PEPPER LOCKE LLP
100 Spectrum Center Drive, Suite 1500
Irvine, CA 92614
Telephone: (949) 622-2722
Ronald.Raether@troutman.com

Joshua Daniel Davey
TROUTMAN PEPPER LOCKE LLP
301 S. College St., 34th Floor
Charlotte, NC 28202
Telephone: (704) 916-1503
Joshua.Davey@troutman.com

Timothy J. St. George
TROUTMAN PEPPER LOCKE LLP
1001 Haxall Point
Richmond, VA 23219
Telephone: (804) 697-1254
Timothy.St.George@troutman.com

*Attorneys for Defendants Set Forth, LLC* d/b/a *Forth and Centrex Software, Inc.*

13