**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISON**

| | | |
|---|---|---|
| IN RE: SET FORTH DATA SECURITY | ) | |
| BREACH LITIGATION | ) | |
| | ) | |
| | ) | |
| | ) | Consolidated Case No: 1:24-cv-11688 |
| | ) | |
| | ) | |
| | ) | Honorable Martha M. Pacold |
| | ) | |
| | ) | |
| | ) | |

**MEMORANDUM OF LAW IN SUPPORT OF**
**DEFENDANTS' MOTION TO DISMISS**

**TABLE OF CONTENTS**

INTRODUCTION ................................................................................................ 1

FACTUAL ALLEGATIONS ............................................................................... 1

LEGAL STANDARD .......................................................................................... 3

ARGUMENT ....................................................................................................... 3

    I.      Illinois Law Governs Plaintiffs' Common Law Claims ............................... 3

    II.     Plaintiffs' Claims Should Be Dismissed For Failure To State A Claim. ............... 5

        A. The Claims Against Centrex Should be Dismissed Because Plaintiffs do not Allege any Relationship with, or Conduct Attributable to, Centrex ................. 5

        B. Plaintiffs' Claims Against Forth Fail to State a Claim for Relief ..................... 6

        1. Plaintiffs Fail to State a Claim for Negligence ................................... 6

            a.    Plaintiffs' Conclusory Allegations Fail to Establish Forth Breached any Duty in Connection with the Security Incident ...................... 6

            b. The Economic Loss Doctrine Bars Plaintiffs' Negligence Claim ............ 8

        2. Plaintiffs Fail to State a Claim for Breach of Implied Contract ........................ 9

            a.    The Consolidated Class Action Complaint does not Plausibly Allege the Existence of an Implied Contract ...................... 9

            b.    Plaintiffs Allege no Actual Monetary Damages ................................... 12

        3. Plaintiffs' Unjust Enrichment Claim Should be Dismissed Because Unjust Enrichment is not a Standalone Cause of Action and Because the Complaint does not Plausibly Allege Plaintiffs Provided a Benefit to Forth ................... 14

        4. Plaintiffs' Declaratory Judgment Claim Should be Dismissed Because the Declaratory Judgment Act does not Create an Independent Cause of Action . 17

        5. Ewing's ICFA Claim Should be Dismissed .................................................... 17

            a.    Ewing Lacks Statutory Standing Under the ICFA .............................. 17

            b.    Ewing has not Suffered any Economic Injuries Proximately Caused by the Security Incident ............................................................................. 18

6. Ewing's IUDTPA Claim Fails Because she did not Receive any Communication from Forth and Cannot Identify any Ongoing or Future Harm Related to Forth's Challenged Conduct ........................................................ 21

7. Meza and Adam's CCPA Claim Should be Dismissed Because Forth is not a "Business" Under that Statute ......................................................................... 22

8. Meza and Adam's CCRA Claim Should be Dismissed Because they have not Suffered any Actual Damages Related to Forth's Notification ...................... 24

9. Meza and Adam Fail to State a UCL Claim ..................................................... 25

    a.   The UCL does not Apply to Conduct Emanating from Illinois ........... 25

    b.   Meza and Adam Lack UCL Statutory Standing................................... 26

    c.   Meza and Adam Have an Adequate Remedy at Law........................... 28

    d.   Meza and Adam's Allegations of Unlawful Conduct are Impermissibly Conclusory............................................................................................ 29

    e.   Meza is not Entitled to UCL Restitution .............................................. 30

CONCLUSION ........................................................................................................ 30

## <u>TABLE OF AUTHORITIES</u>

**CASES**

*Adler v. William Blair & Co.*,
  648 N.E.2d 226 (Ill. App. Ct. 1995)........................................................................ 19, 20

*Anderson v. Kimpton Hotel & Rest. Group, LLC*,
  No. 19-cv-01860, 2019 WL 3753308 (N.D. Cal. Aug. 8, 2019) .......................................... 7, 8

*Arroyo v. Baldwin*,
  No. 19-CV-0027-NJR, 2019 WL 2357307 (S.D. Ill. June 4, 2019) .......................................... 5

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) .................................................................................................... 3

*Auto-Owners Ins. Co. v. Websolv Computing, Inc.*,
  580 F.3d 543 (7th Cir. 2009)........................................................................................ 4

*Avery v. State Farm Mut. Auto. Ins. Co.*,
  216 Ill.2d 100 (Ill. 2005) ........................................................................................... 12

*Baba v. Hewlett-Packard Co.*,
  2010 WL 2486353 (N.D. Cal. June 16, 2010) .......................................................... 29

*Bell Atlantic Corp. v. Twombly*,
  550 U.S. 544 (2007) .................................................................................................... 3

*Bird v. First Alert, Inc.*,
  No. C 14-3585 PJH, 2014 WL 7248734 (N.D. Cal. Dec. 19, 2014 ................................... 28, 29

*Brown v. State Farm Mut. Auto. Ins. Co.*,
  No. 23 C 6065, 2025 WL 81340 (N.D. Ill. Jan. 13, 2025)........................................... 14

*Cole v. Solairus Aviation LLC*,
  No. 25-CV-03035-RFL, 2025 WL 2249740 (N.D. Cal. Aug. 6, 2025) ................................... 27

*De Bouse v. Bayer*,
  922 N.E.2d 309 (2009)........................................................................................ 19, 20

*Dieffenbach v. Barnes & Nobels, Inc.*,
  887 F.3d 826 (7th Cir. 2018)................................................................................ 12, 13

*Doe v. Fertility Centers of Illinois, S.C.*,
  No. 21 C 579, 2022 WL 972295 (N.D. Ill. Mar. 31, 2022) ............................................ 10, 11

*Doe v. Meta Platforms, Inc.*,
   No. 22-CV-03580-WHO, 2023 WL 5837443 (N.D. Cal. Sept. 7, 2023)................................. 26

*Ehret v. Uber Techs., Inc.*,
   68 F. Supp. 3d 1121 (N.D. Cal. 2014) ..................................................................... 25

*Ennenga v. Starns*,
   677 F.3d 766 (7th Cir. 2012)..................................................................................... 4

*Ewert v. eBay, Inc.*,
   602 F. App'x 357 (9th Cir. 2015) ........................................................................... 30

*Flores v. Aon Corp.*,
   2023 IL App (1st) 230140 ............................................................................... *passim*

*Fox v. Iowa Health Sys.*,
   399 F. Supp. 3d 780 (W.D. Wis. 2019)..................................................................... 9

*Frazier v. U.S. Bank Nat. Ass'n*,
   No. 11 C 8775, 2013 WL 1337263 (N.D. Ill. Mar. 29, 2013) ................................. 17

*Gardiner v. Walmart Inc.*,
   No. 20-CV-04618-JSW, 2021 WL 2520103 (N.D. Cal. Mar. 5, 2021) ...................... 7

*Gardner v. Health Net, Inc.*,
   No. CV 10-2140 PA (CWx), 2010 WL 11597979 (C.D. Cal. Aug. 12, 2010) ......... 28

*Giasson v. MRA - Mgmt. Ass'n, Inc.*,
   777 F. Supp. 3d 913 (E.D. Wis. 2025) ............................................................ 10, 11

*Gibson v. Jaguar Land Rover N. Am., LLC*,
   No. CV 20-00769, 2020 WL 5492990 (C.D. Cal. Sept. 9, 2020)....................... 28, 29

*Griffey v. Magellan Health Inc.*,
   562 F. Supp. 3d 34 (D. Ariz. 2021)......................................................................... 26

*Griffey v. Magellan Health Inc.*,
   No. CV-20-01282-PHX-MTL, 2022 WL 1811165 (D. Ariz. June 2, 2022) ............ 24

*Griffith v. TikTok, Inc.*,
   No. 5:23-cv-00964-SB-E.2023 WL 9019035 (C.D. Cal. Dec. 13, 2023) ............... 26

*Guajardo v. Skechers USA, Inc.*,
   No. 419CV04104SLDJEH, 2021 WL 4302532 (C.D. Ill. Sept. 21, 2021)............... 21

*Hannant v. Culbertson*,
No. 4:24-CV-04164-SLD-RLH, 2025 WL 2413894 (C.D. Ill. Aug. 20, 2025).................. 12, 14

*Hernandez-Silva v. Infrastructure, Inc.*,
2025 WL 2233210 (C.D. Cal. Aug. 4, 2025) ...................................................... 24, 26

*Hummel v. Teijin Auto. Techs., Inc.*,
No. 23-CV-10341, 2023 WL 6149059 (E.D. Mich. Sept. 20, 2023) ......................................... 7

*Huynh v. Quora, Inc.*,
508 F. Supp. 3d 633 (N.D. Cal. 2020) .............................................................. 28, 29

*In re Accellion*,
2024 WL 333893 (N.D. Cal. Jan. 29, 2024) ...................................................... 22

*In re Adobe Sys., Inc. Priv. Litig.*,
66 F. Supp. 3d 1197 (N.D. Cal. 2014) .............................................................. 25, 26

*In re Arthur J. Gallagher Data Breach Litig.*,
631 F. Supp. 3d 573 (N.D. Ill. 2022) .................................................................. *passim*

*In re Boeing 737 MAX Pilots Litig.*,
638 F. Supp. 3d 838 (N.D. Ill. 2022) ................................................................. 8

*In re Chicago Flood Litigation*,
176 Ill. 2d 179 (1997)................................................................................ 8

*In re Lurie Children's Hosp. Data Sec. Litig.*,
No. 24-cv-05503, 2025 WL 2754760 (N.D. Ill. Sep. 27, 2025) ....................................... *passim*

*In re Mack Indus., Ltd.*,
No. 17cv09308, 2020 WL 6708874 (Bankr. N.D. Ill. Nov. 16, 2020) ...................................... 5

*In re Mednax Servs., Inc., Customer Data Sec. Breach Litig.*,
603 F. Supp. 3d 1183 (S.D. Fla. 2022)....................................................... 4, 5, 10, 12

*In re Michaels Stores Pin Pad Litig.*,
830 F. Supp. 2d 518 (N.D. Ill. 2011) ............................................................... 8, 9

*In re Mondelez Data Breach Litig.*,
No. 23-cv-3999, 2024 WL 2817489 (N.D. Ill. June 3, 2024) ........................................... 15, 16

*In re NCB Mgmt. Servs.*,
748 F. Supp. 3d 262 (E.D. Pa. 2024) .................................................. 22, 23, 25, 26

*In re Sonic Corp. Customer Data Sec. Breach Litig. (Fin. Institutions)*,
  No. 1:17-md-2807, 2020 WL 3577341 (N.D. Ohio July 1, 2020)............................................ 30

*In re Sony Gaming Networks*,
  996 F. Supp. 2d 942 (S.D. Cal 2014) ............................................................................ 24, 25

*Irwin v. Jimmy John's Franchise, LLC*,
  175 F. Supp. 3d 1064 (C.D. Ill. 2016).......................................................................... 15, 16

*Juenger v. Deaconess Health Sys., Inc.*,
  No. 3:24-CV-2332-NJR, 2025 WL 2780221 (S.D. Ill. Sept. 30, 2025) ................................. 14

*Kawasaki Heavy Indus., Ltd. v. Bombardier Recreational Prods., Inc.*,
  660 F.3d 988 (7th Cir. 2011)............................................................................................ 2

*Lau v. Gen Digital Inc.*,
  No. 22-CV-08981-JST, 2023 WL 10553772 (N.D. Cal. Sept. 13, 2023)................................ 27

*Lippitt v. Raymond James Fin. Servs., Inc.*,
  340 F.3d 1033 (9th Cir. 2003)....................................................................................... 25

*Liston v. King.com, Ltd.*,
  254 F. Supp. 3d 989 (N.D. Ill. 2017) ........................................................................... 17, 18

*Longnecker-Wells v. Benecard Services, Inc.*,
  658 Fed. App'x 659 (3d Cir. 2016)............................................................................... 11, 12

*Loza v. Wells Fargo Bank, N.A.*,
  No. CV 20-1354, 2020 WL 13281409 (C.D. Cal. Apr. 21, 2020)............................................ 24

*Maag v. U.S. Bank, Nat'l Ass'n*,
  2021 WL 5605278 (S.D. Cal. Apr. 8, 2021) ............................................................................ 7

*Mackey v. Belden, Inc.*,
  No. 4:21-CV-00149-JAR, 2021 WL 3363174 (E.D. Mo. Aug. 3, 2021)................................. 4, 5

*MacNeil Auto. Prods., Ltd. v. Cannon Auto. Ltd.*,
  715 F.Supp.2d 786 (N.D. Ill. 2010) .................................................................................... 18

*Metaquotes Ltd. v. Metaquotes Software Corp.*,
  No. 8:22-CV-00462-SB-DFM, 2023 WL 3506413 (C.D. Cal. May 17, 2023) ....................... 30

*Moore v. City of Chicago*,
  No. 02 C 5130, 2004 WL 1385827 (N.D. Ill. June 17, 2004).................................................... 5

*Morales v. Conifer Revenue Cycle Sols., LLC*,
  No. 2:23-CV-01987-AB-AGR, 2025 WL 1096396 (C.D. Cal. Mar. 31, 2025) ...................... 24

*Nazzaro v. Tecta Am. Corp.*,
  No. 25 C 448, 2025 WL 2604790 (N.D. Ill. Sept. 9, 2025) ................................................... 4, 5

*Olson v. Ferrara Candy Co.*,
  2025 IL App (1st) 241126 ............................................................................... 10, 11, 12, 19

*Oman v. Delta Air Lines, Inc.*,
  889 F.3d 1075 (9th Cir. 2018) ............................................................................................ 25

*Omidi v. Wal-Mart Stores, Inc.*,
  2020 WL 1332594 (S.D. Cal. Mar. 23, 2020) ........................................................................ 30

*Perdue v. Hy-Vee, Inc.*,
  455 F. Supp. 3d 749 (C.D. Ill. 2020) .......................................................... 4, 9, 15, 16

*Potter v. Clark*,
  497 F.2d 1206 (7th Cir. 1974) ................................................................................................. 5

*Ramirez v. LexisNexis Risk Sols.*,
  729 F. Supp. 3d 838 (N.D. Ill. 2024) ................................................................................... 17

*Resnick v. AvMed, Inc.*,
  693 F.3d 1317 (11th Cir. 2012) ............................................................................................ 14

*Rodriguez v. ByteDance, Inc.*,
  No. 23 CV 4953, 2025 WL 672951 (N.D. Ill. Mar. 3, 2025) ........................................... 26, 27

*Sapan v. Auth. Tax Servs., LLC*,
  No. 13CV2782, 2014 WL 12493282 (S.D. Cal. July 15, 2014). ............................................ 27

*Schroeder v. United States*,
  569 F.3d 956 (9th Cir. 2009) ................................................................................................ 28

*Shah v. Capital One*,
  768 F. Supp. 3d 1033 (N.D. Cal. 2025) ............................................................................... 26

*Sieving v. Continental Cas. Co.*,
  535 F. Supp. 762 (N.D. Ill. 2021) ........................................................................................ 17

*Sonner v. Premier Nutrition Corp.*,
  971 F. 3d 834 (9th Cir. 2020) .......................................................................................... 28, 29

*Springmeyer v. Marriott Int'l, Inc.*,
    2021 WL 809894 (D. Md. Mar. 3, 2021) ............................................................. 7

*Sullivan v. Oracle Corp.*,
    51 Cal.4th 1191 (2011) ........................................................................................ 25

*Thrasher-Lyon v. Ill. Framers Ins. Co.*,
    861 F. Supp. 2d 898 (N.D. Ill. 2012) ................................................................. 18

*Toretto v. Donnelley Fin. Sols., Inc.*,
    583 F. Supp. 3d 570 (S.D.N.Y. 2022) .......................................................... 25, 26

*Utility Audit, Inc. v. Horace Mann Serv. Corp.*,
    383 F.3d 683 (7th Cir. 2004) .............................................................................. 16

*W. Side Salvage, Inc. v. RSUI Indem. Co.*,
    215 F. Supp. 3d 728 (S.D. Ill. 2016) .................................................................... 4

*Weekes v. Cohen Cleary P.C.*,
    No. CV 23-10817-NMG, 2024 WL 1159642 (D. Mass. Mar. 15, 2024) ................ 10

*Wilkes v. AccuStaff, Inc.*,
    42 F. Supp. 2d 842 (N.D. Ill. 1999) ..................................................................... 4

*Wittmeyer v. Heartland Alliance for Human Needs & Rts.*,
    2024 WL 182211 (N.D. Ill. Jan. 17, 2024) ............................................... 12, 19, 20

**STATUTES**

815 Ill. Comp. Stat. 505/1 ........................................................................................ 17

815 Ill. Comp. Stat. 510/3 ........................................................................................ 21

Cal. Civ. Code § 1798.140 ................................................................................... 22, 23

Cal. Civ. Code § 1798.150 ........................................................................................ 22

Cal. Civ. Code § 1798.82 .......................................................................................... 24

Defendants Set Forth, LLC ("Forth") and Centrex Software, Inc. ("Centrex") submit this memorandum in support of their Motion to Dismiss the Consolidated Class Action Complaint.

## INTRODUCTION

Like myriad private and government entities before it, Forth unfortunately discovered in May 2024 that it had been the victim of a criminal cyberattack (the "Security Incident" or "Incident"). Forth responded by immediately identifying and correcting the vulnerability that led to the Incident, engaging third-party specialists to determine the scope of the Incident, and notifying federal law enforcement. Forth then provided notification of the Incident as required by law. Still, Plaintiffs sued Forth and its customer Centrex, but the claims asserted all fail as a matter of law.

## FACTUAL ALLEGATIONS

Forth "provides online account management services for debt relief service providers," Compl. ¶ 34, including a customer relationship management ("CRM") platform (the "Forth Platform") that Forth's customers—businesses offering various types of financial services—use to manage their relationships with their own customers, often individual consumers, Dkt.85 ("Compl.") ¶ 35. Centrex is one of Forth's customers, and Centrex resells (on a "white label" basis) "customer relationship management (CRM) solutions powered by the Set Forth platform." Compl. ¶ 35.

On May 21, 2024, Forth became aware of the existence of unauthorized activity on the Forth Platform by a third-party criminal actor. Compl. ¶ 1. Following an internal investigation, Forth determined that certain personal identifying information ("PII") stored on the Forth Platform may have been exposed during the Incident. Compl. ¶ 1. On November 8, 2024, Forth notified approximately 1.5 million individuals potentially impacted by the Security Incident that their "name, address, and/or social security number" "may have been affected," but that there was no

evidence of misuse.  Compl. ¶ 1, Ex. A at 1.  Forth also offered free credit monitoring services to those potentially impacted.  Compl. Ex. A at 3.

Plaintiffs are nine "current and former customers of Defendants or Defendants' clients" who claim to have been impacted by the Security Incident.  Compl. ¶ 36.  Of the nine Plaintiffs, only four—Bellefeuille, Girven, Gravely, and Adam—allege they had a relationship with Forth and provided Forth with their PII (the "Customer Plaintiffs").[1]  Compl. ¶¶ 145, 210, 227, 256.  The remaining five Plaintiffs—Blue, Cooper, Ewing, Meza, and Moses (the "Non-Customer Plaintiffs")—either allege nothing about their relationship to Defendants, Compl. ¶ 159 (Blue), or allege they do "not recall contracting directly with Defendants" and are generally "unsure of how [Defendants] obtained" access to their PII, Compl. ¶¶ 174, 191, 242, 271.  No Plaintiff alleges they had a relationship with Centrex, nor do any of their specific factual allegations concern Centrex.

Plaintiffs allege the Security Incident caused numerous purported "actual injuries."  All Plaintiffs generically allege they suffered emotional damages, *e.g.*, Compl. ¶¶ 154, 169, 186, 205, 222, 237, 251, 268, 279, as well as "(i) invasion of privacy; (ii) theft of PII; (iii) lost or diminished value of PII; (iv) lost time and opportunity costs associated with attempting to mitigate the actual consequences of the [Security Incident]; (v) loss of benefit of the bargain; (vi) lost opportunity costs associated with attempting to mitigate the actual consequences of the [Security Incident]; (vii) statutory damages; (viii) nominal damages; and (ix) the continued and certainly increased risk to [their] PII,"  Compl. ¶¶ 153, 168, 185, 204, 221, 236, 250, 260, 278.

---

[1] Forth has contemporaneously moved to compel arbitration of the claims asserted by Bellefeuille and Adam, who executed individual contracts with Forth for payment administration services provided by Forth related to Plaintiffs' debt settlement negotiations.  The arguments made herein with respect to Bellefeuille and Adam's claims against Forth are made in the alternative and are not a waiver of Forth's right to compel arbitration of those claims.  *See Kawasaki Heavy Indus., Ltd. v. Bombardier Recreational Prods., Inc.*, 660 F.3d 988, 995 (7th Cir. 2011).

Six Plaintiffs allege they experienced an increase in spam phone calls and/or text messages following the Security Incident. Compl. ¶¶ 151, 166, 219, 234, 248, 265. Certain Plaintiffs also allege actual misuse of their PII after the Security Incident, including receipt of various "notifications" and attempted fraudulent charges, but none allege these events are specifically linked to the Security Incident. Compl. ¶¶ 150, 165, 179–182, 196–200, 216–218, 232–233, 247, 261–264, 276. No Plaintiff alleges he or she took advantage of the credit monitoring offered by Forth. *See* Compl. Ex. A at 3 (referencing credit monitoring offer).

Plaintiffs assert nine claims for relief—(1) negligence, (2) breach of implied contract, (3) unjust enrichment, (4) declaratory judgment, and violations of the (5) Illinois Consumer Fraud Act ("ICFA"), (6) Illinois Uniform Deceptive Trade Practices Act ("IUDTPA"), (7) California Consumer Privacy Act ("CCPA"), (8) California Customer Records Act ("CCRA"), and (9) California Unfair Competition Law ("UCL")—and seek damages, injunctive relief, and attorney fees. Compl. ¶¶ 294–421.

## LEGAL STANDARD

To survive a 12(b)(6) motion, a complaint must "state a claim to relief that is plausible on its face" and "raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007). A claim is "plausible" when the plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Those allegations must be "more than labels and conclusions, [or] a formulaic recitation of the elements." *Twombly*, 550 U.S. at 555.

## ARGUMENT

## I.   Illinois Law Governs Plaintiffs' Common Law Claims

A federal court sitting in diversity "applies the choice-of-law rules of the forum state to determine which state's substantive law applies." *Auto-Owners Ins. Co. v. Websolv Computing,*

*Inc.*, 580 F.3d 543, 547 (7th Cir. 2009). Illinois applies "very similar" choice of law rules for tort and contract claims, based on the Restatement (Second) of Conflict of Laws. *W. Side Salvage, Inc. v. Rsui Indem. Co.*, 215 F. Supp. 3d 728, 735 (S.D. Ill. 2016), *aff'd*, 878 F.3d 219 (7th Cir. 2017). For each, courts consider the residence of the parties and the place where the underlying events occurred (*i.e.*, where the alleged harm occurred or where the contract was negotiated or performed). *See Ennenga v. Starns*, 677 F.3d 766, 774 (7th Cir. 2012) (tort claims); *Wilkes v. Accustaff, Inc.*, 42 F. Supp. 2d 842, 844 (N.D. Ill. 1999) (contract claims).

"Generally, the law of the place of injury controls unless some other jurisdiction has a more significant relationship with the occurrence and with the parties." *Perdue v. Hy-Vee, Inc.*, 455 F. Supp. 3d 749, 759 (C.D. Ill. 2020). In data breach cases, however, "[t]he place of injury factor doesn't offer much guidance because data breaches are difficult to 'place' in any physical location." *Nazzaro v. Tecta Am. Corp.*, No. 25 C 448, 2025 WL 2604790, at *3 (N.D. Ill. Sep. 9, 2025) (citation omitted). Thus, courts have routinely held a data breach occurs where the defendant is located or developed the security procedures that were compromised in the course of the breach. *See, e.g.*, *id.* (applying Illinois law at pleading stage because defendant's "principal place of business is in Illinois"); *In re Mednax Servs.*, 603 F. Supp. 3d 1183, 1199 (S.D. Fla. 2022) (breach of cloud-stored data "occurred" in Florida "where the data was maintained, multiple Defendants are domiciled, and Defendants' security procedures allegedly broke down"), *rev'd in part on other grounds*, No. 21-MD-02994-RAR, 2022 WL 3550045 (S.D. Fla. Aug. 18, 2022); *Mackey v. Belden, Inc.*, No. 4:21-CV-00149-JAR, 2021 WL 3363174, at *3 (E.D. Mo. Aug. 3, 2021) (same, with respect to Missouri law).

Plaintiffs' common law claims are subject to Illinois law because Illinois has the most "significant relationship" to this dispute. *See W. Side Salvage*, 215 F. Supp. 3d at 735. This lawsuit

involves a Security Incident on the Forth Platform, which Forth "provides" to its clients "and their customers," and which Centrex in turn offers "to its own clients." Compl. ¶¶ 34–35. Forth is headquartered in Illinois, Compl. ¶ 28, making Illinois where the data on the Platform "was maintained" and where Forth developed its "security procedures," *see In re Mednax Servs.*, 603 F. Supp. at 1199. Thus, the Security Incident "occurred" in Illinois, and Illinois law therefore applies.[2] *See id.; Nazzaro*, 2025 WL 2604790, at *3; *Mackey,* 2021 WL 3363174, at *3.

**II.    Plaintiffs' Claims Should Be Dismissed For Failure To State A Claim.**

   **A.    The Claims Against Centrex Should be Dismissed Because Plaintiffs do not Allege any Relationship with, or Conduct Attributable to, Centrex**

The failure of a complaint to "associate facts with named defendants is a failure to state a claim." *Arroyo v. Baldwin*, No. 19-CV-0027-NJR, 2019 WL 2357307, at *1 (S.D. Ill. June 4, 2019). Therefore, "[i]f a complaint mentions a defendant in the caption, but alleges no action on his/her part, that defendant should be dismissed from the action even under liberal pleading requirements." *Moore v. City of Chicago*, No. 02 C 5130, 2004 WL 1385827, at *2 (N.D. Ill. June 17, 2004); *see also Potter v. Clark*, 497 F.2d 1206, 1207 (7th Cir. 1974) (affirming dismissal of complaint that did not include "any allegation of any act on the part of the defendant"). A plaintiff may not "simply lump defendants together in all the allegations of the complaint," but rather "must provide a plausible factual basis to distinguish the conduct of each of the defendants." *In re Mack Indus., Ltd.*, Nos. 17 B 09308 & 19 A 00372, 2020 WL 6708874, at *10 (Bankr. N.D. Ill. Nov. 16, 2020) (citation omitted).

Here, the Complaint contains no allegations that implicate Centrex. As the Complaint recognizes, Forth and Centrex are different companies, related only to the extent Centrex offers

---

[2] Although Bellefeuille and Adam's claims are governed by the Account Agreement identifying California law as the governing law, those claims must be compelled to arbitration for the reasons set forth in the contemporaneously filed motion to compel arbitration.

services "powered by the Set Forth platform." Compl. ¶ 35 (citation omitted). But not a *single* Plaintiff alleges to have been a customer of Centrex or to have had any relationship with Centrex. *See generally* Compl. ¶¶ 145–283. No Plaintiff alleges receiving a notification from Centrex, and only Forth's notification letters are attached to the Complaint. *See* Compl. Exs. A, C–K. [3] Nor do any of Plaintiffs' claims identify any conduct on the part of Centrex, specifically, that could give rise to liability on Centrex's part. For instance, Plaintiffs' unjust enrichment claim alleges "Plaintiffs . . . conferred a monetary benefit on Defendants in the form of fees paid for debt relief services," Compl. ¶ 335, and their implied contract claim alleges "Defendants required Plaintiffs . . . to provide their PII" "[a]s a condition of using Defendants' services," Compl. ¶ 325. These allegations are only plausible (if at all) with respect to Forth, given the absence of any allegations that Plaintiffs had a relationship with Centrex. The claims against Centrex must be dismissed.[4]

## B. Plaintiffs' Claims Against Forth Fail to State a Claim for Relief

### 1. Plaintiffs Fail to State a Claim for Negligence

To state a negligence claim under Illinois law, a plaintiff must plausibly allege: (1) the defendant owed a duty of care; (2) the defendant breached that duty; and (3) the breach was the proximate cause of the plaintiff's injuries. *See Flores v. AON Corp.*, 2023 IL App (1st) 230140, ¶ 23. Plaintiffs' negligence claim is wholly conclusory and barred by the economic loss doctrine.

#### a. Plaintiffs' Conclusory Allegations Fail to Establish Forth Breached any Duty in Connection with the Security Incident

The requirement that a complaint include "sufficient factual matter" from which a "*plausible*" claim for relief may be inferred applies in full force in data breach cases. *Hummel v.*

---

[3] Exhibit B to the Complaint appears to be an online post by Centrex President Trey Merkel discussing the "Centrex Software Security Incident," but no Plaintiff alleges seeing this online post and, even if they had, this would still not state a claim against Centrex given the lack of any association between any Plaintiff and Centrex.

[4] In any case, the claims against Centrex fail for the reasons set forth below with respect to Forth.

*Teijin Auto. Techs., Inc.*, No. 23-cv-10341, 2023 WL 6149059, *7 (E.D. Mich. Sep. 20, 2023) (citation omitted) (emphasis added). Accordingly, courts routinely dismiss data breach claims— for negligence or otherwise—where the plaintiff fails to allege *with specificity* the steps the defendant should have taken to prevent the underlying incident. *See, e.g.*, *Anderson v. Kimpton Hotel & Rest. Grp., LLC*, No. 19-cv-01860-MMC, 2019 WL 3753308, *4–5 (N.D. Cal. Aug. 8, 2019) (dismissing data breach claims where the plaintiffs did not "allege any facts to support [their] conclusory allegations" that the defendant "failed to act in a 'reasonable' and 'appropriate' manner and failed to take 'obligatory,' 'sufficient,' and 'adequate' steps to protect plaintiffs' PII"); *Springmeyer v. Marriott Int'l, Inc.*, No. 20-cv-867-PWG, 2021 WL 809894, *3 (D. Md. Mar. 3, 2021) ("[M]ere repetition of conclusory and nonspecific allegations of [the defendant's] alleged shortcomings does not overcome the need to plead sufficient facts relating to what it did or did not do that led to the injuries."); *Maag v. U.S. Bank, Nat'l Ass'n*, No. 21-cv-00031-H-LL, 2021 WL 5605278, *2 (S.D. Cal. Apr. 8, 2021) (allegations that defendant "failed to effectively monitor its systems for security vulnerabilities" insufficient to state a claim); *Gardiner v. Walmart Inc.*, No. 20-cv-04618-JSW, 2021 WL 2520103, *6 (N.D. Cal. Mar. 5, 2021) ("Plaintiff's vague allegations do not establish how Walmart failed to take reasonable measures to protect [the] customer's data."). Courts have rejected the idea that the existence of a successful cyberattack "create[s] strict liability in data breach cases." *Hummel*, 2023 WL 6149059, at *5.

Here, Plaintiffs' negligence claim must be dismissed because it rests on conclusory, boilerplate allegations that have no relation to any of Forth's data security practices. While the Complaint alleges Defendants had a duty to exercise reasonable care in collecting and maintaining Plaintiffs' PII, Compl. ¶¶ 297–302, the Complaint does not contain any specific allegations about *how* Defendants breached that duty. For instance, while the Complaint suggests Forth failed to,

*inter alia,* "adopt . . . adequate security measures," "adequately monitor the security of" its system, "comply with . . . applicable industry standards," and "detect [the Security Incident] in a timely manner," Compl. ¶¶ 304, 309, the Complaint does not identify any *specific* steps Plaintiffs believe Forth should have taken to avoid or more quickly detect the Security Incident, any *specific* industry standards Forth could have, but failed to, employ, or any way in which Forth's response to the incident was unsatisfactory. Indeed, the Complaint contains no description of the Security Incident itself and/or how Forth's purported failures gave rise to the Security Incident. Put another way, there is no alleged factual link between Plaintiffs' conclusory allegations of breached "industry standards" for data security and the specific Security Incident in this case. Thus, the negligence claim must be dismissed. *See Anderson,* 2019 WL 3753308, at *5.

### b. The Economic Loss Doctrine Bars Plaintiffs' Negligence Claim

Even if the negligence claim were plausibly pled, it is barred by the economic loss doctrine, which prohibits recovery in tort for "purely economic losses"—*i.e.*, losses "incurred without any personal injury or property damage." *In re Chicago Flood Litig.*, 680 N.E.2d 265, 275 (Ill. 1997) (citation omitted).[5] In the data breach context, courts have characterized the types of damages Plaintiffs allege here—including "an increase in spam calls; lost time; loss in the value of their private [ ] information; and damages caused by the violation of their privacy rights, attempted and/or actual identity theft and fraud, statutory violations, and being placed at increased risk of identity theft and fraud in the future"—as "economic damages" subject to the economic loss

---

[5] There are only three exceptions, none applicable here: "(1) where plaintiff sustains personal injury or property damage resulting from a sudden or dangerous occurrence; (2) where plaintiff's damages were proximately caused by defendant's intentional, false representation; and (3) where plaintiff's damages were proximately caused by the negligent misrepresentation of a defendant in the business of supplying information for the guidance of others in business transactions." *In re Michaels Stores Pin Pad Litig.*, 830 F. Supp. 2d 518, 528 (N.D. Ill. 2011); *see also In re Boeing 737 MAX Pilots Litig.*, 638 F. Supp. 3d 838, 862 (N.D. Ill. 2022) ("[T]he economic loss doctrine under Illinois law does not recognize an exception for special relationships.").

doctrine. *Fox v. Iowa Health Sys.*, 399 F. Supp. 3d 780, 794–95 (W.D. Wis. 2019). Accordingly, courts in this district and elsewhere have relied on Illinois' economic loss doctrine to dismiss negligence claims in the data breach context. *See, e.g.*, *id.* at 794; *In re Michaels Stores Pin Pad Litig.*, 830 F. Supp. 2d at 526–28 (applying economic loss rule to bar negligence claims related to data breach that caused the plaintiffs to allegedly suffer actual damages related to "the costs associated with the increased risk of identity theft" and "monetary losses from unauthorized bank account" activity); *Perdue*, 455 F. Supp. 3d at 761 (dismissing tort claims related to a data breach that caused the plaintiffs to lose "time and an ability to use or access funds").

Plaintiffs' negligence claim is barred by the economic loss doctrine because their alleged damages are all economic in nature. For instance, Plaintiffs allege the Security Incident caused the value of their PII to diminish and caused them to lose the benefit of the bargain, time and money, and opportunity costs. Compl. ¶ 319. Certain Plaintiffs allege they experienced an increase in spam phone calls or incurred fraudulent charges to their financial accounts. *See, e.g.*, Compl. ¶¶ 216, 234. None of those alleged injuries involve personal injury or property damage, making them economic damages to which the economic loss rule applies. *See Fox*, 399 F. Supp. 3d at 795. Because Plaintiffs cannot pursue economic damages through a negligence claim, *see id.*; *In re Michaels Stores Pin Pad Litig.*, 830 F. Supp. 2d at 528, and because none of the exceptions to the economic loss doctrine apply, Plaintiffs' negligence claim must be dismissed.

### 2. Plaintiffs Fail to State a Claim for Breach of Implied Contract

Plaintiffs' implied contract claim fails because the Complaint does not allege the mutual assent required to establish a contract, and because Plaintiffs have not alleged actual damages.

### a. The Consolidated Class Action Complaint does not Plausibly Allege the Existence of an Implied Contract

9

As with any contract, an implied contract requires "a meeting of the minds or mutual assent as to the terms of the contract." *In re Gallagher Data Breach Litig.,* 631 F. Supp. 3d 573, 591 (N.D. Ill. 2022) (citation omitted). Therefore, while "[a]n implied contract can be created as a result of the parties' actions," *Olson v. Ferrara Candy Co.*, 2025 IL App (1st) 241126, ¶ 59, those actions must demonstrate an "implied understanding" between the parties as to the relevant contract term, *In re Gallagher Data Breach Litig.*, 631 F. Supp. 3d at 591.

In this context, an "implied understanding," *id.*, arises only when plaintiffs "provided their information in reliance on the promises" made by the defendant, *Olson*, 2025 IL App (1st) 241126, ¶ 60, but does not exist where the plaintiffs "had no direct dealings with Defendants and were unaware of Defendants' existence until they received notice from them of the Data Breach," *In re Gallagher Data Breach Litig.*, 631 F. Supp. 3d at 591; *see also Doe v. Fertility Centers of Ill., S.C.*, No. 21 C 579, 2022 WL 972295, at *4 (N.D. Ill. Mar. 31, 2022) (dismissing implied contract claim where plaintiff "was unaware of [defendant's] existence . . . and thus could not have reached any implied understanding with [defendant]"); *Giasson v. MRA – The Mgmt. Ass'n, Inc.*, 777 F. Supp. 3d 913, 935–36 (E.D. Wis. 2025) (dismissing implied contract claim where plaintiff alleged she did "not know whether she 'directly contracted with Defendant,'" or "how and why Defendant obtained . . . her PII," but elsewhere alleged she "was required to provide her PII[ ] as a condition of receiving services"). Even where a plaintiff had direct dealings with a defendant that required the provision of PII, mutual assent is not plausibly pleaded where the plaintiff fails to allege "either party ever discussed the manner of safeguarding the PII." *Weekes v. Cohen Cleary P.C.*, 723 F. Supp. 3d 97, 104 (D. Mass. 2024); *In re Mednax Servs.*, 603 F. Supp. 3d at 1221 n.20 (dismissing implied contract claim because a party's "[u]nilateral and subjective expectations in a transaction cannot be inferred to coalesce into the meeting of the minds required to establish an implied

contract"); *Longnecker-Wells v. Benecard Services, Inc.*, 658 Fed. App'x 659, 662–63 (3d Cir. 2016) (same); *cf. Olson*, 2025 IL App (1st) 241126, ¶ 60 (requiring reliance on statements made in privacy policies to state an implied contract claim in data breach case).

Plaintiffs' implied contract claim fails because Plaintiffs have not identified any facts from which it can be inferred that the parties mutually assented to the terms of any implied contract. Plaintiffs allege an implied contract exists because, "[a]s a condition of using Defendants' services, Defendants required Plaintiffs and Class Members to provide their PII," and in doing so "implied an assent to safeguard and protect their PII," particularly in light of certain representations made in Forth's Privacy Policy. Compl. ¶¶ 325–327. That claim is discredited by the allegations of the five Non-Customer Plaintiffs who allege they have *no relationship* with Forth and no idea how Forth obtained their PII. Compl. ¶¶ 159, 174, 191, 242, 271. As to those five Plaintiffs, there certainly was no "meeting of the minds," as required to create an implied contract. *In re Gallagher Data Breach Litig.*, 631 F. Supp. at 591; *see also Doe*, 2022 WL 972295, at *4; *Giasson,* 777 F. Supp. 3d at 936.

The Customer Plaintiffs also fail to allege the mutual assent required. Despite alleging they were customers of Forth and provided their PII to Forth in exchange for Forth's services, Compl. ¶¶ 145, 149, 210, 227, 256, they do not allege they did so in reliance on any representations about Forth's data security practices. While the Complaint points to Forth's "Privacy Policies" as the source of representations Forth made about data security, Compl. ¶ 327, not a single Customer Plaintiff alleges seeing or being aware of these purported representations—let alone deciding to contract with Forth in reliance on any specific statements regarding data security. Because Plaintiffs fail to allege they provided their information to Forth in reliance on any such statements, they have not plausibly alleged any implied contract including a data security guarantee. *See*

11

*Olson*, 2025 IL App (1st) 241126, ¶ 60; *Weekes*, 723 F. Supp. 3d at 104; *Longenecker-Wells*, 658 F. App'x at 662–63; *In re Mednax Servs.*, 603 F. Supp. 3d at 1221 n.20.

### b. Plaintiffs Allege no Actual Monetary Damages

"[T]o successfully make a breach of implied contract claim, a plaintiff must [also] allege actual monetary damages." *Olson*, 2025 IL App (1st) 241126, ¶ 63. Actual monetary damages require "an actual loss or measurable damages resulting from the breach," *Avery v. State Farm Mut. Auto. Ins. Co.*, 835 N.E.2d 801, 832 (Ill. 2005), which is most obviously understood as "[m]oney out of pocket," *Dieffenbach v. Barnes & Noble, Inc.*, 887 F.3d 826, 830 (7th Cir. 2018). "[T]he alleged diminution in value of plaintiffs' personal information [does not] amount[ ] to actual monetary damages," *Flores*, 2023 IL App (1st) 230140, ¶ 34, nor does "lost time responding to a data breach," *id.*, or an increase in "spam messages and targeted marketing," *id.* ¶ 15; *see also Wittmeyer v. Heartland All. for Human Needs & Rts.*, No. 23 CV 182211, 2024 WL 182211, at *5 (N.D. Ill. Jan. 17, 2024) (dismissing implied contract claim where only harm alleged was that plaintiff's "credit report showed that someone had opened up an account in her name for car insurance" and plaintiff had to spend time to address that unauthorized activity), or "emotional" and other "intangible harms," *Hannant v. Culbertson*, No. 4:24-cv-04164-SLD-RLH, 2025 WL 2413894, at *16 (C.D. Ill. Aug. 20, 2025) (characterizing "emotional harms," "overpayment," and "diminution in value of [ ] data" "plainly insufficient" for an implied contract claim and deeming "privacy harms and increased risk of future harm" the type of "intangible harms [that] are not the sort of 'actual or measurable damages' which can support an implied contract claim").

Based on those standards, the claims of Bellefeuille, Blue, Ewing, Meza, and Gravely must be dismissed for failure to allege actual monetary damages. Bellefeuille's implied contract claim fails because he alleges he was reimbursed for the fraudulent charge he experienced and therefore

suffered no loss. Compl. ¶ 150. Blue does not allege her receipt of two credit cards "that she never applied for," a "cell phone bill in her name for an unknown telephone number," and a credit report listing an "address she did not recognize" Compl. ¶¶ 163–165, caused her to suffer any actual financial harm. Ewing, for her part, does not identify any monetary loss associated with her allegations of attempted fraud following a personal loan application, Compl. ¶¶ 196–202, and there is no financial cost associated with Meza's receipt of "notifications that her PII was found on the dark web," Compl. ¶ 247. Although Gravely alleges she was notified of "attempt[s] to charge her Chime account" and debit card, she never alleges a fraudulent transaction was successful. Compl. ¶¶ 232–233.

The only exceptions are Adam, who allegedly "suffered multiple fraudulent charges to her debit card," incurred "travel expenses" related thereto, and enrolled in credit monitoring, Compl. ¶¶ 261–263; Cooper,[6] who alleges his "Cashapp account was hacked and $12,000 [ ] withdrawn," Compl. ¶ 180; Girven,[7] who alleges she "purchase[d] additional storage due to the excessive spam emails and text messages she has received since the [Incident]," Compl. ¶ 219; and Moses, who alleges she "incurred unauthorized charges . . . on her Truist account," Compl. ¶ 276. Although economic in nature, the Complaint contains no allegations plausibly connecting these harms to the Security Incident—as opposed to any other data breach or other routine, unrelated event (such as the voluntary disclosure of a phone number that leads to an increase in spam messages and, consequently, the need to purchase additional storage). Nor does the Complaint contain any

---

[6] Cooper's other allegations—that his "email and phone have been hacked" and that his "credit report lists charges that he never made," Compl. ¶¶ 181–182—do not constitute actual "out of pocket" damages, *Dieffenbach*, 887 F.3d at 830, for the purposes of an implied contract claim.

[7] Girven's other allegations—that she experienced two fraudulent charges that were subsequently "reversed" and/or "cancel[led]" and was "notified that her PII is on the dark web," Compl. ¶¶ 216–218—similarly do not constitute "out of pocket" damages, *Dieffenbach*, 887 F.3d at 830, for the purposes of an implied contract claim.

allegations about how the specific data elements stored within Forth's platform could have led to these types of harms. Notably absent from the Complaint, for instance, are allegations that Forth ever had access to Plaintiffs' debit card information (as would be required to create a causal link between the Security Incident and Adam's allegations about fraudulent debit card charges and travel expenses, Compl. ¶¶ 261–263), or log-in information to fintech platforms (as would be required to create such link with respect to Cooper's allegations about his Cashapp account, Compl. ¶ 180). All that remains is an insufficient alleged coincidence in timing. *See Resnick v. AvMed, Inc.*, 693 F.3d 1317, 1326 (11th Cir. 2012) ("Generally, to prove that a data breach caused identity theft, the pleadings must include allegations of a nexus between the two instances beyond allegations of time and sequence.").

### 3. Plaintiffs' Unjust Enrichment Claim Should be Dismissed Because Unjust Enrichment is not a Standalone Cause of Action and Because the Complaint does not Plausibly Allege Plaintiffs Provided a Benefit to Forth

Plaintiffs' unjust enrichment claim suffers from two fatal flaws. As an initial matter, "[u]njust enrichment is not an independent cause of action" under Illinois law, *Flores,* 2023 IL App (1st) 230140, ¶ 37, but rather a theory of recovery, *Brown v. State Farm Mut. Auto. Ins. Co.*, No. 23 C 6065, 2025 WL 81340, at *8 (N.D. Ill. Jan. 13, 2025). Thus where—as here—a standalone claim for unjust enrichment is premised on the same allegedly unlawful conduct underlying other claims, the unjust enrichment claim must be dismissed. *See Juenger v. Deaconess Health Sys., Inc.*, No. 3:24-CV-2332-NJR, 2025 WL 2780221, at *6 (S.D. Ill. Sep. 30, 2025) (dismissing unjust enrichment claims raised "as a standalone action" where such claim "rests on the same improper conduct alleged in another claim" (citation omitted)); *Hannant*, 2025 WL 2413894, at *17 (same).

Moreover, to recover damages in the form of unjust enrichment, "[p]laintiffs must

plausibly allege that [d]efendants unjustly retained a benefit, resulting in a detriment to [p]laintiffs." *In re Gallagher Data Breach Litig.*, 631 F. Supp. 3d at 591. In the data breach context, courts have rejected arguments that a defendant "unjustly retained a benefit" from plaintiffs' PII, because the provision of PII by a plaintiff to a defendant is "an administrative necessity for providing [ ] services," not an independent benefit supporting an unjust enrichment claim. *Flores*, 2023 IL App (1st) 230140, ¶ 38; *see also In re Mondelez Data Breach Litig.*, Nos. 23 C 3999 & 23 C 4249, 2024 WL 2817489, at *6 (N.D. Ill. June 3, 2024) (dismissing claim because the exposed personal information was entrusted to defendants only in the ordinary course of plaintiffs' employment). Relatedly, courts have explained there is no "benefit" from a plaintiff's payment for a defendant's goods or services where the plaintiff paid for the particular good or service without "any separate outlay for data security." *In re Lurie Child.'s Hosp. Data Sec. Litig.*, No. 24-cv-05503, 2025 WL 2754760, at *12 (N.D. Ill. Sep. 27, 2025); *Perdue*, 455 F. Supp. 3d at 766 ("Plaintiffs have not alleged that any specific portion of their payments went toward data protection . . . ."); *Irwin v. Jimmy John's Franchise, LLC*, 175 F. Supp. 3d 1064, 1072 (C.D. Ill. 2016) ("[The plaintiff] paid for food products. She did not pay for a side order of data security and protection . . . .").

Here, Plaintiffs have not plausibly alleged a benefit to Defendants that can support a claim for unjust enrichment. Plaintiffs allege they "conferred a monetary benefit on Defendants in the form of fees paid for debt relief services," and that "it would be unjust and unfair for Defendants to retain money belonging to Plaintiffs." Compl. ¶¶ 335, 339; *see also* Compl. ¶ 340 (seeking restitution "in the amount of the difference between the price [Plaintiffs] paid for Defendants' services as promised and the actually diminished value of Set Forth's debt relief services"). Plaintiffs alternatively appear to suggest that Defendants also received "the benefit of the PII they

received from Plaintiffs and the Class for which they profited during the course of their business." Compl. ¶ 336. Neither allegation suffices.

The Non-Customer Plaintiffs plainly did not provide any "monetary" benefit to Forth in the form of fees paid for "debt relief services," as they do not allege they had any relationship with Forth. Compl. ¶ 335. The Customer Plaintiffs also did not provide the requisite benefit to Forth. Although the Customer Plaintiffs allegedly purchased Forth's services, Compl. ¶¶ 145, 210, 227, 256, they do not allege the "fees" or "money" paid to Forth contained "any separate outlay for data security," *Lurie*, 2025 WL 2754760, at *12; *Perdue*, 455 F. Supp. 3d at 766; *Irwin*, 175 F. Supp. 3d at 1072. Rather, the Customer Plaintiffs paid for—and received—debt settlement related services. The Customer Plaintiffs' unjust enrichment claim must also be dismissed because their receipt of Forth's services is subject to their Account Agreements, which expressly govern the data-security responsibilities underlying Plaintiffs' claims. *See Util. Audit, Inc. v. Horace Mann Serv. Corp.*, 383 F.3d 683, 688–89 (7th Cir. 2004) ("When two parties' relationship is governed by contract, they may not bring a claim of unjust enrichment unless the claim falls outside the contract.").

Finally, to the extent Plaintiffs generally assert Forth's receipt of PII in connection with its business operations can sustain a claim for unjust enrichment, that argument fails because the receipt of data would be administrative in nature and not the product of any separately bargained for data security for which compensation would be reasonably expected. *See, e.g.*, *Flores,* 2023 IL App (1st) 230140, ¶ 38; *In re Mondelez Data Breach Litig.*, 2024 WL 2817489, at *6.

16

### 4. Plaintiffs' Declaratory Judgment Claim Should be Dismissed Because the Declaratory Judgment Act does not Create an Independent Cause of Action

While Plaintiffs attempt to plead a freestanding claim for a "declaratory judgment," it is well settled that the Declaratory Judgment Act "does not create an independent cause of action. It provides only an additional form of relief." *Sieving v. Continental Cas. Co.*, 535 F. Supp. 3d 762, 774 (N.D. Ill. 2021) (citation omitted). Courts also dismiss declaratory judgment claims where, as here, the requested declaratory relief is redundant of the other claims. *See, e.g.*, *id.*; *Frazier v. U.S. Bank Nat. Ass'n*, No. 11 C 8775, 2013 WL 1337263, at *12 (N.D. Ill. Mar. 29, 2013).

### 5. Ewing's ICFA Claim Should be Dismissed

Turning to the statutory claims, Ewing begins by invoking the ICFA. To plead a private claim for a violation of ICFA, a plaintiff must allege: (1) a deceptive act or unfair practice by the defendant; (2) the defendant's intent that the plaintiff rely on the deception; (3) the occurrence of the deception in the course of conduct involving trade or commerce; (4) actual damage to the plaintiff; and (5) that the damage was proximately caused by the deception. *Flores*, 2023 IL App (1st) 230140, ¶ 41; *Liston v. King.com, Ltd.*, 254 F. Supp. 3d 989, 1005 (N.D. Ill. 2017). But Ewing lacks standing to raise an ICFA claim, did not suffer any actual damages proximately caused by Defendants' conduct, and cannot identify a future or ongoing harm resulting therefrom.

#### a. Ewing Lacks Statutory Standing Under the ICFA

"To have standing to bring a claim under the ICFA, a plaintiff must either be a consumer or satisfy the consumer nexus test." *Ramirez v. LexisNexis Risk Sols.*, 729 F. Supp. 3d 838, 846 (N.D. Ill. 2024). A "consumer" is "any person who purchases or contracts for the purchase of merchandise not for resale in the ordinary course of his trade or business but for his use or that of a member of his household." 815 Ill. Comp. Stat. 505/1(e). Here, even assuming that Forth is in

the business of offering "merchandise" under the ICFA (which it is not), Ewing alleges she "does not recall contracting with Defendants and is unsure how they obtained her PII," Compl. ¶ 191, so she is necessarily not a consumer under the statute. *Liston*, 254 F. Supp. 3d at 1005.

Turning to the consumer nexus test, a plaintiff may also establish standing by claiming to "have suffered damages resulting from conduct that is either directed toward the market or otherwise implicates consumer protection concerns." *MacNeil Auto. Prods., Ltd. v. Cannon Auto. Ltd.,* 715 F. Supp. 2d 786, 792 (N.D. Ill. 2010). Ewing's claim also fails under that test, because she never claims Forth's allegedly deceptive or unfair conduct was "directed toward the market" generally. *Id.* While Ewing challenges Forth's "generalized course of conduct" and alleges "the public was and is at risk" from such conduct, Compl. ¶¶ 363–364, the rest of the Complaint makes clear Forth's data security representations were made only to its own customers (of which Ewing was not one), and its data security practices were directed—at most—to individuals engaged in debt relief programs, rather than the consumer market in general. Nor does Ewing allege the challenged conduct implicates consumer protection concerns—instead of alleging that the conduct "would confuse or deceive consumers," she alleges only that Forth's data security practices "harmed consumers," which is insufficient to establish standing under the consumer nexus test's consumer protection prong. *MacNeil*, 715 F. Supp. 2d at 793; *see also Thrasher-Lyon v. Ill. Farmers Ins. Co.*, 861 F. Supp. 2d 898, 912 (N.D. Ill. 2012) (dismissing ICFA claim where plaintiff failed to allege how defendant's "actions or representations concerned consumers other than Plaintiff or how their actions involved consumer protection concerns.").

### b. Ewing has not Suffered any Economic Injuries Proximately Caused by the Security Incident

The ICFA only "provides remedies for purely economic injuries," so "[t]he failure to allege specific economic damages precludes a claim brought under the Consumer Fraud Act." *Olson*,

2025 IL App (1st) 241126, ¶ 67. Actual misuse and identity theft constitute compensable economic damages, *In re Gallagher Data Breach Litig.*, 631 F. Supp. 3d at 587–88, but emotional harms, lost time, increased spam messages, and the risk of identity theft and fraud are not actionable under the ICFA, *Flores*, 2023 IL App (1st) 230140, ¶ 42; *see also Wittmeyer*, 2024 WL 182211, at *6.

Further, "as in any other tort, to sustain a cause of action under the Consumer Fraud Act, the plaintiffs must [ ] allege that damages were proximately caused" by the defendant's actions. *Adler v. William Blair & Co.*, 648 N.E.2d 226, 234 (Ill. App. Ct. 1995). To establish causation in the context of a deceptive action, "the plaintiff must actually be deceived by a statement or omission that is made by the defendant. If a consumer has neither seen nor heard any such statement, then she cannot have relied on the statement and, consequently, cannot prove proximate causation." *De Bouse v. Bayer*, 922 N.E.2d 309, 316 (Ill. 2009); *see also Lurie*, 2025 WL 2754760, at *14 (dismissing ICFA claim where plaintiffs did not allege they "ever visited [defendant's] website" where allegedly deceptive statements about defendant's data security procedures were posted). Such allegations must be sufficiently particularized to meet the standard of Rule 9(b). *Id.*

Ewing's ICFA claim fails because she has not alleged any "specific economic damages" at all. *Olson*, 2025 IL App (1st) 241126, ¶ 67. The only specific harms Ewing alleges result from events in July 2024 related to an application Ewing made "for a $5,000 personal loan from Lightstream Loan Company," Compl. ¶ 196, that resulted in suspicious bank activity in Ewing's bank account after a customer service representative of the loan company "*request[ed] her banking information.*" Compl. ¶¶ 196–197 (emphasis added). Those allegations lack any relation to Forth or the Security Incident. Regardless, Ewing notably does not allege she ever *lost* any money, as required to state an ICFA claim. *Olson*, 2025 IL App (1st) 241126, ¶ 67. Ewing's other alleged harms—*i.e.*, emotional harms, Compl. ¶ 205, invasion of privacy, lost value of PII, lost time and

opportunity costs related to mitigation attempts, loss of benefit of the bargain, and threat of future harm, Compl. ¶ 204, do not constitute actual economic damages compensable under the ICFA, *Flores*, 2023 IL App (1st) 230140, ¶¶ 42–43; *see also Wittmeyer*, 2024 WL 182211, at *6.

Ewing's claim independently fails because she has not alleged any of her harms were proximately caused by any "deceptive or unlawful" conduct by Forth. *Adler*, 648 N.E.2d at 234. Ewing alleges Forth violated ICFA by (1) falsely "assur[ing]" Defendants that their PII would be secured," Compl. ¶ 356, (2) failing to follow FTC guidelines related to recommended data security practices, Compl. ¶ 358, and (3) violating the Illinois Personal Information Protection Act ("PIPA") "by failing to immediately notify" Plaintiffs of the Security Incident, Compl. ¶ 359. As to the first two contentions, Ewing—as a Non-Consumer Plaintiff—never alleges she received any sort of communication from Forth relating to data security or otherwise. In the absence of any such communication or omission that could have "actually [ ] deceived" Ewing, she has not adequately alleged proximate causation, as this claim requires. *De Bouse*, 235 Ill. 2d at 554; *Lurie*, 2025 WL 2754760, at *14. And, to the extent Ewing argues Forth's "fail[ure] to immediately notify" plaintiffs "that their PII was exposed" constituted a violation of the PIPA, which, in turn, constitutes an "unlawful practice" under the ICFA, Compl. ¶ 359, Ewing fails to allege any harm caused by Forth's allegedly delayed notification—rather than by the Security Incident itself. *See Lurie*, 2025 WL 2754760, at *14 (dismissing ICFA claim based on PIPA violations with respect to plaintiffs who "fail[ed] plausibly to identify what pecuniary harms they could have avoided had the known of the Data Breach earlier.").

20

### 6. Ewing's IUDTPA Claim Fails Because she did not Receive any Communication from Forth and Cannot Identify any Ongoing or Future Harm Related to Forth's Challenged Conduct

Plaintiffs' IUDTPA claim fails for similar reasons as her ICFA claim.  The IUDTPA provides that "[a] person likely to be damaged by a deceptive trade practice of another may be granted injunctive relief upon terms that the court considers reasonable."  815 Ill. Comp. Stat. 510/3.  The IUDPTA, like the ICFA, requires a plaintiff to have received "a deceptive misrepresentation or omission" from the defendant.  *Guajardo v. Skechers USA, Inc.*, No. 419CV04104SLDJEH, 2021 WL 4302532, at *5 (C.D. Ill. Sept. 21, 2021).  But like her ICFA claim, Ewing's IUDTPA claim must be dismissed because although she alleges Forth "[mis]represent[ed]" and "misleadingly advertised" its services and security measures, Compl. ¶¶ 370–371, she does not allege ever receiving any communication from Forth prior to the Security Incident, as set forth above.  *See supra* p.18–20.

Furthermore, "injunctive relief is the only remedy available under the IUDTPA."  *Lurie*, 2025 WL 2754760, at *15.  To state a claim for relief, therefore, "a plaintiff must allege ongoing or future harm" related to the allegedly deceptive or unfair trade practice itself.  *Id.*  (dismissing IUDTPA claim because Plaintiff "fail[ed] to plead an ongoing or future harm related to [Defendant's] representations of its data security measures since the Data Breach had already occurred and Plaintiffs' PII and PHI has already been exposed.").  Ewing's IUDTPA claim must also be dismissed because she does not allege any "ongoing or future" harm related to Forth's conduct sufficient to support a claim for injunctive relief.  *See id.*  While Ewing alleges she has "suffered and will continue to suffer injury" in the form of "losses of money or property," "time and expenses related to monitoring" her account for fraud, "an increased, imminent risk of fraud," and "loss of value" of her PII, Compl. ¶ 374, none of these allegations sufficiently identify a risk

of *future* harm associated with Forth's data security measures. Just as in *Lurie*, the Security Incident here has "already occurred," and her PII has allegedly "already been exposed," *Lurie*, at *15, so the future-oriented harms Ewing alleges relate to "the risk of harm . . . from" the Security Incident itself, not to any harm she faces if Forth "continues to misrepresent its protective measures," *id.* (citation omitted).

### 7. Meza and Adam's CCPA Claim Should be Dismissed Because Forth is not a "Business" Under that Statute

Meza and Adam assert a claim under the CCPA, which provides a cause of action to "any consumer whose nonencrypted and nonredacted personal information . . . is subject to an unauthorized access and exfiltration . . . as a result of the business' violation of the duty to implement and maintain reasonable security procedures and practices appropriate to the nature of the information to protect the personal information." Cal. Civ. Code § 1798.150(a)(1). The CCPA applies to "business[es]," which are limited under the statute to those entities that "(1) collect PII and (2) determine why and how . . . the PII should be processed." *In re Accellion, Inc. Data Breach Litig.*, 713 F. Supp. 3d 623, 640 (N.D. Cal. 2024). The statute defines "processing" as "any operation or set of operations that are performed on personal information or on sets of personal information." Cal. Civ. Code § 1798.140(y).

Based on the foregoing, courts have dismissed CCPA claims when the plaintiffs did not sufficiently allege the defendant "process[ed]" the information, as required by Cal. Civ. Code §§ 1798.140(d), (y). *In re NCB Mgmt. Servs., Inc. Data Breach Litig.*, 748 F. Supp. 3d 262 (E.D. Pa. 2024), is instructive. There, plaintiffs were customers of defendant's business clients, and defendant obtained plaintiffs' PII when those business clients contracted with defendant to collect outstanding balances on plaintiffs' accounts. *See id.* at 268, 287. Defendant suffered a data breach that potentially exposed those plaintiffs' PII, and plaintiffs sued for, among other things, violations

of the CCPA. *Id.* at 270. Although the court found that the complaint plausibly alleged that defendant "collected" plaintiffs' PII because it alleges defendant "obtained" and "received" that PII from its business customers, plaintiffs had not plausibly alleged defendant subsequently "processed" that information. *Id.* at 288. Specifically, the court explained that "[t]he complaint lacks any allegations about 'determinations' that NCB made regarding why and how plaintiffs' PII was to be processed," *id.*, and as such dismissed the CCPA claim for failure to allege defendant was a "business" subject to its terms. *Id.*

Meza and Adam's CCPA claim should similarly be dismissed because they fail to plausibly allege Defendants are "businesses" to which the CCPA applies. Plaintiffs allege only that Defendants are "businesses" because Forth has "gross revenues in excess of $25 million," Compl. ¶ 378 (referencing Cal. Civ. Code § 1798.140(d)(1)(A)), and because Centrex "annually buys, sells, or shares [PII] of [over] 100,000" customers, Compl. ¶ 379 (referencing Cal. Civ. Code § 1798.140(d)(1)(B)). But Plaintiffs never allege either Defendant satisfies the threshold condition for being a "business" under the CCPA—that the entity "collects" and "processes" PII. *See* Cal. Civ. Code § 1798.140(d). The only factual allegations concerning Defendants' use of Plaintiffs PII is that "Defendants' *maintained* [such] PII" on Forth's system "in a form that allowed criminals to access it," Compl. ¶ 382—an allegation that falls short of plausibly demonstrating that either Defendant subjected the PII to "any operation or set of operations." Cal. Civ. Code § 1798.140(y) (defining "processing"). Because the Complaint does not identify "determinations" Forth made concerning their PII, the claim fails.[8] *NCB Mgmt. Servs.*, 748 F. Supp. 3d at 288.

---

[8] Even if Centrex were properly a defendant in this case, the CCPA claim against it should be dismissed for the additional reason that Plaintiffs failed to provide Centrex timely, pre-suit notification as required by California Civil Code Section 1798.150(b), which requires notification to be sent at least thirty days prior to filing suit to recover statutory damages. Cal. Civ. Code § 1798.150(b). Neither Plaintiff complied with that requirement, instead alleging that their counsel "will send a CCPA notice letter to Defendant Centrex's

### 8. Meza and Adam's CCRA Claim Should be Dismissed Because they have not Suffered any Actual Damages Related to Forth's Notification

Meza and Adam also assert a claim under the CCRA, which imposes data breach notification requirements on certain types of business. Cal. Civ. Code § 1798.82(a). To state a claim under the CCRA, the defendant-business must: (1) discover or be notified of the breach; and (2) unreasonably delay in disclosing that breach. *See id.*; *Loza v. Wells Fargo Bank, N.A.*, No. CV 20-1354, 2020 WL 13281409, at *11 (C.D. Cal. Apr. 21, 2020). To recover actual damages under the CCRA, "a plaintiff must allege actual damages flowing from the unreasonable delay (and not the intrusion itself) in order to recover actual damages." *In re Sony Gaming Networks and Cust. Data Sec. Breach Litig.*, 996 F. Supp. 2d 942, 1010 (S.D. Cal 2014); *see also Anderson*, 2019 WL 3753308, at *5 (dismissing CCRA claim where plaintiff alleged in a conclusory fashion that defendant did not implement and maintain reasonable security procedures and practices).

Here, Meza and Adam's claim should be dismissed for failure to plausibly allege actual damages. As to Meza, she fails to allege the existence of any "actual damages" at all—pointing to an increase in spam phone calls and texts, and "notifications that her PII is for sale on the dark web" as her primary examples of harm. But neither of those claimed harms constitute the type of "actual" damages sufficient to state a CCRA claim. *See Morales v. Conifer Revenue Cycle Sols., LLC*, No. 2:23-CV-01987-AB-AGR, 2025 WL 1096396, at *5 (C.D. Cal. Mar. 31, 2025) (holding increase in spam texts "do[es] not constitute compensable damage[]"); *Hernandez-Silva v. Infrastructure, Inc.*, 2025 WL 2233210, at *6 (C.D. Cal. Aug. 4, 2025) (allegation of loss of PII insufficient to establish economic harm). But even if those damages *were* cognizable, they are at most attributable to the Security Incident itself—not any purported delay in Forth's notifications

---

registered agent via certified mail," Compl. ¶¶ 388–389, requiring dismissal of their claim to the extent it seeks statutory damages, *see Griffey v. Magellan Health Inc.*, No. CV-20-01282-PHX-MTL, 2022 WL 1811165, at *6 (D. Ariz. June 2, 2022).

about the Security Incident. Adam similarly fails to allege any harm caused by the timing of the notification, requiring dismissal. *See Sony Gaming Networks*, 996 F. Supp. 2d at 1010.

### 9. Meza and Adam Fail to State a UCL Claim

Meza and Adam plead a claim under the UCL, which provides a private cause of action to a plaintiff that has "suffered injury in fact and . . . lost money or property as a result of [ ] unfair competition." *In re Adobe Sys., Inc. Priv. Litig.*, 66 F. Supp. 3d 1197, 1223 (N.D. Cal. 2014) (citation omitted). Once standing is established, "a plaintiff must show either an (1) 'unlawful, unfair, or fraudulent business act or practice,' or (2) 'unfair, deceptive, untrue or misleading advertising.'" *Lippitt v. Raymond James Fin. Servs., Inc.*, 340 F.3d 1033, 1043 (9th Cir. 2003).

### a. The UCL does not Apply to Conduct Emanating from Illinois

"[T]here is a strong presumption against the extra-territorial application of California law," *Ehret v. Uber Techs., Inc.*, 68 F. Supp. 3d 1121, 1129–30 (N.D. Cal. 2014) (citation omitted), which "applies to the UCL in full force." *Sullivan v. Oracle Corp.*, 254 P.3d 237, 248 (Cal. 2011). "[I]f the conduct that 'creates liability' occurs in California, [then] California law properly governs that conduct." *Oman v. Delta Air Lines, Inc.*, 889 F.3d 1075, 1079 (9th Cir. 2018) (citation omitted). But "if the liability-creating conduct occurs outside of California, California law generally should not govern that conduct[.]" *Id.* Thus, courts have routinely invoked the presumption against extraterritoriality to allow application of the UCL only "when the liability-causing conduct emanated from California," even when raised by a California-resident. *NCB Mgmt. Servs.*, 748 F. Supp. 3d at 283 (collecting cases); *In re Gallagher Data Breach Litig.*, 631 F. Supp. 3d at 596 (dismissing claims brought by California residents in a data breach case where the allegedly wrongful conduct—"implementing poor security measures"—allegedly facilitated "a ransomware attack to Defendants' internal servers—presumably located at their headquarters in Illinois"); *Toretto v. Donnelley Fin. Sols., Inc.*, 583 F. Supp. 3d 570, 605–06 (S.D.N.Y. 2022)

(same).

Meza and Adam's UCL claim is barred by the presumption against extraterritoriality because they have not alleged any misconduct in California. *See generally*, Compl. ¶¶ 409–421. Plaintiffs' allegations demonstrate that the "conduct allegedly creating liability," *In re Gallagher Data Breach Litig.*, 631 F. Supp. 3d. at 596—failing to implement reasonable security protocols, timely discovery the vulnerability, and timely notify plaintiffs of Incident—occurred at Forth's headquarters in Illinois. This Court should reject the request to apply the UCL to conduct that did not emanate from California. *See id.*; *Torreto*, 583 F. Supp. 3d at 605–06; *Griffey v. Magellan Health Inc.*, 562 F. Supp. 3d 34, 60 (D. Ariz. 2021); *NCB Mgmt. Servs.*, 748 F. Supp. 3d at 283.

### b. Meza and Adam Lack UCL Statutory Standing

To have standing under the UCL, a plaintiff must have "suffered injury in fact and . . . lost money or property as a result of the unfair competition." *In re Adobe Sys.*, 66 F. Supp. 3d at 1223 (citation omitted). This economic injury requirement "renders standing under [the UCL] substantially narrower than federal standing under article III.'" *Griffith v. TikTok, Inc.*, No. 5:23-cv-00964-SB-E, 2023 WL 9019035, at *5 (C.D. Cal. Dec. 13, 2023) (citation omitted).

In data breach cases, an alleged "diminution in value" of a plaintiff's PII does not constitute an economic injury under the UCL, *Hernandez-Silva*, 2025 WL 2233210, at *6 (no standing based on alleged loss of private data and diminution of its value), *Shah v. Capital One Fin. Corp.*, 768 F. Supp. 3d 1033, 1048 (N.D. Cal. 2025) (allegation that plaintiffs experienced a diminution of the value of their private and personal information would not confer standing), especially where the Complaint does not allege the plaintiff "intended to derive economic value from the PII," *Doe v. Meta Platforms, Inc.*, 690 F. Supp. 3d 1064, 1091 (N.D. Cal. 2023); *see also Rodriguez v. ByteDance, Inc.*, No. 23 CV 4953, 2025 WL 672951, *12 (N.D. Ill. Mar. 3, 2025) (dismissing UCL claim where plaintiffs failed to allege they "tried to sell their data and have received a lesser

26

price for it," nor that they "intended to sell their data on the personal-data market."). Nor are "loss of time," or an increase in spam communications economic harms. *See, e.g.*, *Cole v. Solairus Aviation LLC*, No. 25-CV-03035-RFL, 2025 WL 2249740, *5 (N.D. Cal. Aug. 6, 2025).

Here, Meza does not allege the loss of "money or property" as required to establish statutory standing. The "diminution in value" of her PII does not confer standing because Meza does not allege any intention to derive a financial benefit from her PII. *Doe*, 690 F. Supp. 3d at 1091; *Rodriguez*, 2025 WL 672951, at *12; *Cole*, 2025 WL 2249740, at *5. The "additional time" Meza allegedly spent to "monitor [her]financial accounts" similarly fails to constitute an "economic injury" of the type required to confer standing under the UCL. *See Cole*, 2025 WL 2249740, at *5; *Sapan v. Auth. Tax Servs., LLC*, No. 13CV2782, 2014 WL 12493282, *4 (S.D. Cal. July 15, 2014). Meza's allegation that she experienced an increase in spam phone calls and text messages, Compl. ¶ 248, does not involve any economic harms as required by the UCL, either. *See Sapan*, 2014 WL 12493282, at *4. Meza's only other specific allegation of harm is that she has "received numerous notifications that her PII was found on the dark web," Compl. ¶ 247—an allegation that also fails to identify any kind of actual economic harm of the type required to have standing under the UCL. *See Lau v. Gen Digit. Inc.*, No. 22-CV-08981-JST, 2023 WL 10553772, *7 (N.D. Cal. Sept. 13, 2023) (dismissing UCL claim for lack of statutory standing where plaintiffs did not provide any "specific allegations regarding the value of the information," including no allegation that "they ever attempted or intended to participate in the market for" or "otherwise derive economic value from" the information allegedly disclosed), *aff'd sub nom. Karwowski v. Gen Digit., Inc.*, No. 24-7213, 2025 WL 3002610 (9th Cir. Oct. 27, 2025).

Adam's UCL must be compelled to arbitration, so the Court need not reach the sufficiency of her allegations at all. But in any event, Adam's allegations that she "suffered multiple fraudulent

27

charges to her debit card" and incurred "travel expenses" related thereto, Compl. ¶¶ 261–264, do not confer statutory standing because those allegations are not tethered to the Security Incident, given that Adam has not plausibly alleged that any debit card information was exposed during the breach. *See supra* pp.13–14. Nor does Adam's allegation that she enrolled in credit monitoring, Compl. ¶ 263, confer statutory standing, because Forth's breach notification expressly offered Adam the opportunity to enroll in credit monitoring at Forth's own expense. *See Gardner v. Health Net, Inc.*, No. CV 10-2140 PA (CWx), 2010 WL 11597979, at *12 (C.D. Cal. Aug. 12, 2010) (no UCL standing where defendant offered credit monitoring services to plaintiff).

### c. Meza and Adam Have an Adequate Remedy at Law

The UCL sounds in equity, but "equitable relief is not appropriate where an adequate remedy exists at law." *Schroeder v. United States*, 569 F.3d 956, 963 (9th Cir. 2009). Therefore, to state a claim under the UCL, a plaintiff "must establish they lack an adequate remedy at law before securing equitable restitution for past harm under the UCL[.]" *Sonner v. Premier Nutrition Corp.*, 971 F.3d 834, 844 (9th Cir. 2020). "For this reason, courts generally require plaintiffs seeking equitable relief to allege some facts suggesting that damages are insufficient to make them whole," *Gibson v. Jaguar Land Rover N. Am., LLC*, No. CV 20-00769, 2020 WL 5492990, *3–4 (C.D. Cal. Sept. 9, 2020), and dismiss UCL claims where such allegations are lacking, *see, e.g.*, *id.*; *Sonner*, 971 F.3d at 844; *Bird v. First Alert, Inc.*, No. C 14-3585 PJH, 2014 WL 7248734, *5 (N.D. Cal. Dec. 19, 2014). This principle extends in full to claims for injunctive relief. *Huynh v. Quora, Inc.*, 508 F. Supp. 3d 633, 662 (N.D. Cal. 2020) (collecting cases and dismissing UCL claim for injunction mandating that defendant "provide updated information about exactly what was exposed" in a data breach and "institute industry-standard practices for protection of its users' data" because "the potential harm caused by both actions may be remedies by money damages").

Here, the UCL claim must be dismissed because Plaintiffs have not alleged an inadequate

remedy at law.  In fact, Plaintiffs request compensatory damages throughout the Complaint, in several of their other legal claims and in their prayer for relief.  Considering those plainly adequate legal remedies (which Plaintiffs themselves invoke), there is no basis for this Court to exercise its equitable jurisdiction under the UCL.  *See Sonner*, 971 F.3d at 844; *Gibson*, 2020 WL 5492990, at *3–4; *Bird*, 2014 WL 7249734, at *5.  Nor does Plaintiffs' request for injunctive relief provide a basis for UCL relief given that Plaintiffs' claim is based on allegations of past misconduct, for which Plaintiffs also seek monetary damages.  *See Huynh*, 508 F. Supp. 3d at 662.

### d.  Meza and Adam's Allegations of Unlawful Conduct are Impermissibly Conclusory

To adequately allege a violation of the UCL's unlawful prong, a plaintiff must "must identify the particular section of the statute that was violated and must describe with reasonable particularity the facts supporting the violation." *Baba v. Hewlett-Packard Co.*, 2010 WL 2486353, *6 (N.D. Cal. June 16, 2010) (internal quotations omitted); *see Razuki v. Caliber Home Loans, Inc.*, No. 17cv1718-LAB (WVG), 2018 WL 6018361, *1–2 (S.D. Cal. Nov. 15, 2018) (dismissing UCL claim where plaintiff failed to plead "what made [defendant's] security measures unreasonable" or how defendant failed to "comply with industry standards").  Here, Meza and Adam's "unlawful" prong claim is premised on alleged negligence and violations of the CCRA, CCPA, as well as other, unspecified "federal law and regulations, including the FTC Act."  Compl. ¶ 412.  But Plaintiff fail to state a claim for negligence, the CCRA, and the CCPA, *see supra* pp.6–9, 22–25, so the UCL claim fails on these grounds as well.  *See Razuki*, 2018 WL 60618361, at *2. As for "federal laws and regulations, including the FTC Act," Plaintiffs allegations do not specify any specific statutory provisions Defendants' violated, let alone explain how Plaintiffs violated those provisions.  Notably, the FTC Act—the only federal law specifically invoked—does not prescribe any specific data security standards. *In re Sonic Corp. Customer Data Sec. Breach Litig.*

29

*(Fin. Insts.)*, No. 1:17-md-2807, 2020 WL 3577341, *6 (N.D. Ohio July 1, 2020). Therefore, the UCL claim should be dismissed to the extent it relies on the statute's "unlawful" prong.

### e. Meza is not Entitled to UCL Restitution

The UCL's remedies for private individuals are limited to restitution and injunctive relief. *Huynh*, 508 F. Supp. 3d at 661. Restitution seeks 'to restore the status quo by returning to the plaintiff funds in which he or she has an ownership interest," *Ewert v. eBay, Inc.*, 602 F. App'x 357, 359 (9th Cir. 2015) (citation omitted); *Metaquotes Ltd. v. Metaquotes Software Corp.*, No. 8:22-CV-00462-SB-DFM, 2023 WL 3506413, at *16 (C.D. Cal. May 17, 2023) (plaintiffs "not entitled to restitution under the UCL" because they "did not pay money to Defendant").

Here, Meza cannot maintain a UCL claim because she cannot be entitled to any restitution from Forth. Meza does not allege she contracted with Forth or paid for its services in any way. *See* Compl. ¶¶ 242–255. Because Meza has not alleged any "ownership interest," *Omidi v. Wal-Mart Stores, Inc.*, No. 14cv00857 JAH-BLM, 2020 WL 1332594, *7 (S.D. Cal. Mar. 23, 2020), in any money or property that could theoretically be restituted to her, her UCL claim—to the extent it seeks "full restitution of all monies [Forth] received through [its] wrongful conduct," Compl. ¶ 421—must be dismissed on this independent basis, *see Metaquotes*, 2023 WL 3506413, at *16.

### CONCLUSION

Defendants respectfully request that this Court grant Defendants' Motion to Dismiss.


Dated: January 26, 2026                    Respectfully submitted,


*s/ Seth M. Erickson*
Seth M. Erickson
**TROUTMAN PEPPER LOCKE LLP**
111 S. Wacker, Suite 4100
Chicago, IL 60606
Telephone: (312) 759-5930
seth.erickson@troutman.com

Ronald I. Raether, Jr. (*pro hac vice*)
**TROUTMAN PEPPER LOCKE LLP**
100 Spectrum Center Drive, Suite 1500
Irvine, CA 92614
Telephone: (949) 622-2722
Ronald.Raether@troutman.com

Joshua Daniel Davey (*pro hac vice*)
**TROUTMAN PEPPER LOCKE LLP**
301 S. College St., 34th Floor
Charlotte, NC 28202
Telephone: (704) 916-1503
Joshua.Davey@troutman.com

Timothy J. St. George (*pro hac vice*)
**TROUTMAN PEPPER LOCKE LLP**
1001 Haxall Point
Richmond, VA 23219
Telephone: (804) 697-1254
Timothy.Stgeorge@troutman.com

*Attorneys for Set Forth LLC, d/b/a Forth and Centrex Software, Inc.*