# IN THE UNITED STATES DISTRICT COURT

# FOR THE NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| IN RE: SET FORTH DATA SECURITY BREACH LITIGATION | Consolidated Case No: 1:24-cv-11688 |
| | Honorable Martha M. Pacold |
| | **PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS** |
| | **JURY TRIAL DEMANDED** |
| | This document relates to: all cases |

i

## TABLE OF CONTENTS

INTRODUCTION ........................................................................................................... 1

FACTUAL BACKGROUND ........................................................................................... 2

LEGAL STANDARD ...................................................................................................... 5

ARGUMENT ................................................................................................................... 5

I.     Illinois Law Governs Plaintiffs' Common Law Claims ........................................ 5

II.    Plaintiffs State a Claim Against Centrex .............................................................. 6

III.   Plaintiffs State a Claim for Negligence ................................................................ 9

     1.    Plaintiffs Sufficiently Allege Defendants' Breach of Duty ............................... 9

     2.    The Economic Loss Doctrine Does Not Bar Plaintiffs' Claims ...................... 10

IV.   Plaintiffs State a Claim for Breach of Implied Contract ..................................... 11

     1.    Plaintiffs Allege Mutual Assent ..................................................................... 11

     2.    Plaintiffs Allege Monetary Damages ............................................................. 13

V.    Plaintiffs State a Claim for Unjust Enrichment .................................................. 14

VI.   Plaintiffs State a Claim for Declaratory Judgment ............................................. 15

VII.  Plaintiff Ewing States a Claim for Violation of ICFA ........................................ 16

     1.    Plaintiff Ewing Has Standing ......................................................................... 16

     2.    Plaintiff Ewing Alleges Economic Injury Proximately Caused by Defendants' Conduct 17

VIII. Plaintiff Ewing States a Claim for Violation of the IUDTPA ........................... 19

IX.   Plaintiffs Meza and Adam State a Claim for Violation of the CCPA .......................... 20

X.    Plaintiffs Meza and Adam State a Claim for Violation of the CCRA............................ 23

XI.   Plaintiffs Meza and Adam State a Claim for Violation of the UCL ............................ 24

     1.    The UCL Applies to Claims Brought by California Residents ...................... 24

     2.    Plaintiffs Meza and Adam Have Statutory Standing .................................... 26

     3.    Plaintiffs Do Not Have an Adequate Remedy at Law ................................. 28

4.   Plaintiffs Allege Unlawful Conduct Under the UCL ..................................................... 30

5.   Plaintiff Meza's UCL Claim Survives Regardless of Restitution ................................ 30

CONCLUSION .................................................................................................................... 32

# TABLE OF AUTHORITIES

Cases

*Adams v. City of Indianapolis*,
   742 F.3d 720 (7th Cir. 2014)............................................................................ 5

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009)...................................................................................... 5

*Auto-Owners Ins. Co. v. Websolv Computing, Inc.*,
   580 F.3d 543 (7th Cir. 2009).......................................................................... 6

*Baton v. Ledger SAS*,
   21-CV-02470-EMC, 2025 WL 416360 (N.D. Cal. Feb. 6, 2025)...................... 15, 30

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007)...................................................................................... 5

*Brooks v. Thomson Reuters Corp.*,
   2021 WL 3621837 (N.D. Cal. Aug. 16, 2021)................................................ 29, 31

*Brown v. Google LLC*,
   685 F. Supp. 3d 909 (N.D. Cal. 2023) ........................................................... 27

*Calhoun v. Google LLC*,
   526 F. Supp. 3d 605 (N.D. Cal. 2021) ........................................................... 27

*Castillo v. Seagate Tech., LLC*,
   16-CV-01958-RS, 2016 WL 9280242 (N.D. Cal. Sept. 14, 2016) ...................... 12

*Collyer v. Catalina Snacks Inc.*,
   712 F. Supp. 3d 1276 (N.D. Cal. 2024) ......................................................... 29

*Cottle v. Plaid, Inc.*,
   536 F. Supp. 3d 461 (N.D. Cal. 2021) ........................................................... 15

*Darne v. Ford Motor Co.*,
   13 C 03594, 2015 WL 9259455 (N.D. Ill. Dec. 18, 2015) ............................... 19

*Dieffenbach v. Barnes & Noble, Inc.*,
   887 F.3d 826 (7th Cir. 2018).......................................................................... 13, 18

*Doe v. GoodRx Holdings, Inc.*,
   23-CV-00501-AMO, 2025 WL 2052302 (N.D. Cal. July 22, 2025) .................. 25

*Doe v. Meta Platforms, Inc.*,
   690 F. Supp. 3d 1064 (N.D. Cal. 2023) ......................................................... 25

*Dominion Nutrition, Inc. v. Cesca*,
    467 F. Supp. 2d 870 (N.D. Ill. 2006) ..................................................... 13

*Downers Grove Volkswagen, Inc. v. Wigglesworth Imports, Inc.*,
    190 Ill. App. 3d 524 (2d Dist. 1989) ..................................................... 17

*Evans v. City of Chi.*,
    No. 04 C 3570, 2004 U.S. Dist. LEXIS 28511 (N.D. Ill. Nov. 30, 2004) ................................. 7

*Fed. Nat'l Mortgage Ass'n v. Obradovich*,
    14-CV-04664, 2016 WL 1213920 (N.D. Ill. Mar. 29, 2016) ................................. 18

*Flores v. Aon Corp.*,
    2023 IL App (1st) 230140, 242 N.E.3d 340 ..............................10, 11, 12

*Garcia v. JPMorgan Chase Bank, N.A.*,
    No. 2:24-cv-06402-WLH-AGR, 2026 LX 40038 (C.D. Cal. Feb. 25, 2026)........................ 21

*Gittings-Barrera v. Mem'l Hosp. Ass'n*,
    4:24-CV-04167-SLD-RLH, 2025 WL 2776142 (C.D. Ill. Sep. 26, 2025) .............................. 14

*Guy v. Convergent Outsourcing, Inc.*,
    No. C22-1558 MJP, 2023 U.S. Dist. LEXIS 125332 (W.D. Wash. July 20, 2023) ................. 20

*Hameed-Bolden v. Forever 21 Retail, Inc.*,
    CV1803019SJOJPRX, 2018 WL 6802818 (C.D. Cal. Oct. 1, 2018) ................................. 27

*Hentze v. Unverfehrt*,
    237 Ill. App. 3d 606 (1992)................................................................. 14

*HPI Health Care Servs., Inc. v. Mt. Vernon Hosp., Inc.*,
    131 Ill. 2d 145, 545 N.E.2d 672 (1989) ..................................................... 14

*Hummel v. Teijen Automotive Technologies*, *Inc.*,
    2023 WL 6149059 (E.D. Mich. Sept. 20, 2023) ......................................... 9

*Huynh v. Quora, Inc.*,
    508 F. Supp. 3d 633 (N.D. Cal. 2020) ..................................................... 28

*In re Adobe Sys. Privacy Litig.*,
    66 F. Supp. 3d 1197 (N.D. Cal. 2014) ..............................................23, 25

*In re Anthem, Inc. Data Breach Litig.*,
    2016 WL 3029783 (N.D. Cal. May 27, 2016) ......................................... 27

*In re Blackbaud, Inc., Customer Data Breach Litig.*,
    3:20-MN-02972-JMC, 2021 WL 3568394 D.S.C. Aug. 12, 2021) ......................... 22

*In re Capital One Consumer Data Sec. Breach Litig.*,
    488 F. Supp. 3d 374 (E.D. Va. 2020) ................................................................ 15, 30

*In re Experian Data Breach Litig.*,
    SACV 15-1592 AG (DFMx), 2016 WL 7973595 (C.D. Cal. Dec. 29, 2016) ........................ 15

*In re Fortra File Transfer Software Data Sec. Breach Litig.*,
    749 F. Supp. 3d 1240 (S.D. Fla. Sept. 18, 2024) ................................................ 20

*In re Gallagher*,
    631 F. Supp. 3d ................................................................ 23, 24, 26

*In re Joint E. & S. Dist. Asbestos Litig.*,
    14 F.3d 726 (2d Cir. 1993) ................................................................ 15

*In re Kemper Sports Mgmt. Data Breach Litig.*,
    No. 24-CV-8503, 2026 WL 25820 (N.D. Ill. Jan. 5, 2026) ............................... 9, 11, 14

*In re Lurie Children's Hosp. Data Sec. Litig.*,
    No. 24-cv-05503, 2025 WL 2754760 (N.D. Ill. Sept. 27, 2025) ...................... 5, 12, 19

*In re Mednax Servs., Inc. Customer Data Sec. Breach Litig.*,
    603 F. Supp. 3d 1183 (S.D. Fla. 2022) ................................................................ 27

*In re Mondelez Data Breach Litig.*,
    No. 23 C 3999, 2024 WL 2817489 (N.D. Ill. June 3, 2024) ...................... 5, 9, 11, 28

*In re MOVEit Customer Data Sec. Breach Litig.*,
    No. 23-MD-3083-ADB-PGL, 2025 WL 2179475 (D. Mass. July 31, 2025) .................... 20, 24

*In re Solara Med. Supplies, LLC Customer Data Sec. Breach Litig.*,
    613 F. Supp. 3d 1284 (S.D. Cal. 2020) ................................................................ 23

*In re Yahoo! Inc. Customer Data Sec. Breach Litig.*,
    16-MD-02752-LHK, 2017 WL 3727318 (N.D. Cal. Aug. 30, 2017) ...................... 23, 28, 29

*Jimenez v. OE Fed. Credit Union*,
    24-CV-02746-JST, 2025 WL 2402137 (N.D. Cal. Aug. 19, 2025) ................................ 22

*Johnson v. 90 Degree Benefits, Inc.*,
    No. 25-cv-687, 2026 U.S. Dist. LEXIS 14586 (E.D. Wis. Jan. 27, 2026) ...................... 26

*Juarez v. Arcadia Fin., Ltd.*,
    152 Cal. App. 4th 889 (2007) ................................................................ 31

*Junhan Jeong v. Nexo Fin. LLC*,
    2022 WL 174236 (N.D. Cal. Jan. 19, 2022) ................................................................ 29

*Kirsten v. California Pizza Kitchen, Inc.*,
   221CV09578DOCKES, 2022 WL 16894503 (C.D. Cal. July 29, 2022) ................................ 26

*Kwikset Corp. v. Superior Ct.*,
   51 Cal. 4th 310 (2011) ...................................................................................... 26, 31

*Liston v. King.com, Ltd.*,
   254 F. Supp. 3d 989 (N.D. Ill. May 23, 2017) ........................................................ 16

*Lozada v. Advocate Health & Hosps. Corp.*,
   2018 IL App (1st) 180320-U.............................................................................. 12, 13

*MacNeil Auto. Prods. v. Cannon Auto. Ltd.*,
   715 F. Supp. 2d 786 (N.D. Ill. May 25, 2010) ........................................................ 17

*Marriott*,
   440 F. Supp. 3d at 461 ...................................................................................... 27

*Mehta v. Robinhood Fin. LLC*,
   21-CV-01013-SVK, 2021 WL 6882377 (N.D. Cal. May 6, 2021) ........................................... 30

*Merix Pharm. Corp. v. EMS Acquisition Corp.*,
   09C5871, 2010 WL 481247 (N.D. Ill. Feb. 4, 2010).................................................... 13

*Miller v. NextGen Healthcare, Inc.*,
   742 F. Supp. 3d 1304 (N.D. Ga. 2024) ............................................................... 21, 22

*Mirfasihi v. Fleet Mortg. Corp.*,
   450 F.3d 745 (7th Cir. 2006)................................................................................. 6

*Morales v. Conifer Revenue Cycle Sols., LLC*,
   2:23-CV-01987-AB-AGR, 2025 WL 1096396 (C.D. Cal. Mar. 31, 2025)............................ 24

*Nazzaro v. Tecta Am. Corp.*,
   2025 WL 2604790 (N.D. Ill. Sept. 9, 2025) ........................................................ 6, 11

*Olson v. Ferrara Candy Co.*,
   2025 IL App (1st) 241126 ......................................................................... 10, 16, 19

*Owens v. Smith, Gambrell & Russell Int'l, LLP*,
   No. 23-cv-01789, 2024 WL 3914663 (C.D. Cal. May 30, 2024) ........................................ 30

*Pactiv LLC v. Perez*,
   20-CV-01296, 2021 WL 4439393 (N.D. Ill. Sept. 28, 2021).................................... 13

*Patterson v. Burge*,
   328 F. Supp. 2d 878 (N.D. Ill. 2004) ...................................................................... 7

*Popp v. Cash Station, Inc.*,
    244 Ill. App. 3d 87, 613 N.E.2d 1150 (1st Dist. 1992) ............................................................. 19

*Raintree Homes, Inc. v. Village of Long Grove*,
    209 Ill. 2d 248, 807 N.E.2d 439 (2004) ..................................................................................... 14

*Reyes v. City of Chicago*,
    585 F. Supp. 2d 1010 (N.D. Ill. 2008) ......................................................................................... 5

*Robles v. City of Chicago*,
    354 F. Supp. 3d 873 (N.D. Ill. 2019) ........................................................................................... 7

*Saccameno v. Ocwen Loan Servicing, LLC*,
    372 F. Supp. 3d 609, 632 (N.D. Ill. Mar. 1, 2019) ................................................................... 16

*Sexton v. Bd. of Educ.*,
    No. 25 cv 344, 2025 WL 3539127 (N.D. Ill. Dec. 10, 2025) ..................................................... 7

*Sieving v. Cont'l Cas. Co.*,
    535 F. Supp. 3d 762 (N.D. Ill. 2021) ......................................................................................... 15

*Smith v. RecordQuest, LLC*,
    989 F.3d 513 (7th Cir. 2021) ....................................................................................................... 11

*Sonner v. Premier Nutrition Corp.*,
    971 F.3d 834 (9th Cir. 2020) ................................................................................................ 28, 29

*Speyer v. Avis Rent A Car Sys., Inc.*,
    415 F. Supp. 2d 1090 (S.D. Cal. 2005) ..................................................................................... 25

*State Farm Fire & Cas. Co. v. Superior Court*,
    45 Cal. App. 4th 1093 (1996) ..................................................................................................... 30

*Steiner v. Vi-Jon Inc.*,
    723 F. Supp. 3d 784 (N.D. Cal. 2024) ....................................................................................... 29

*Thrasher-Lyon v. Ill. Farmers Ins. Co.*,
    861 F. Supp. 2d 898 (N.D. Ill. Mar. 20, 2012) ......................................................................... 17

*Toretto v. Donnelley Fin. Sols., Inc.*,
    583 F. Supp. 3d 570 (S.D.N.Y. 2022) ....................................................................................... 26

*Trew v. Volvo Cars of N. Am., LLC*,
    CIV-S-051379DFLPAN, 2006 WL 306904 (E.D. Cal. Feb. 8, 2006) ..................................... 31

*Valiente v. Simpson Imports, Ltd.*,
    717 F. Supp. 3d 888 (N.D. Cal. 2024) ....................................................................................... 28

*Volling v. Antioch Rescue Squad*,
   999 F. Supp. 2d 991 (N.D. Ill. 2013) ........................................................... 8

*Warren v. Whole Foods Mkt. California, Inc.*,
   2022 WL 2644103 (N.D. Cal. July 8, 2022) ................................................ 29

*Wittmeyer v. Heartland All. for Hum. Needs & Rts.*,
   2024 WL 182211 (N.D. Ill. Jan. 17, 2024) ..............................................11, 12

*Worix v. MedAssets, Inc.*,
   869 F. Supp. 2d 893 (N.D. Ill. Apr. 24, 2012) ........................................... 18

Statutes

815 Illinois Compiled Statutes 510/2(a) ......................................................... 19

Cal. Bus. & Prof. Code § 17200 ....................................................................... 24

California Civil Code § 1798 .............................................................. 20, 21, 22

**INTRODUCTION**

Defendants Set Forth and Centrex collected and stored the Social Security numbers and other highly sensitive personal information of more than 1.5 million consumers seeking debt-relief services. In exchange, they promised to safeguard that information using reasonable security measures. They failed to do so.

In May 2024, cybercriminals gained access to Defendants' systems and exfiltrated a vast trove of personally identifiable information ("PII"), including names, addresses, dates of birth, and Social Security numbers. Yet Defendants did not notify victims of the Data Breach until nearly six months later. During that time, Plaintiffs and Class Members were left unaware that their most sensitive personal information had been compromised—depriving them of the opportunity to take timely steps to protect themselves. Defendants do not dispute that their systems were compromised or that the Breach exposed consumers' Social Security numbers and other sensitive information.

The consequences have been real and immediate. Plaintiffs allege fraudulent charges, hacked financial accounts, and unauthorized activity appearing on credit reports. Others received dark web alerts, fraudulent communications, and other warning signs of identity theft. Plaintiffs and Class Members have spent substantial time and effort mitigating the fallout from the Breach and now face a continuing risk of identity theft and financial fraud.

None of this should have happened. Companies that collect large volumes of financial and identity information are well-known targets for cyberattacks. Defendants nevertheless failed to implement basic security safeguards—such as adequate monitoring, encryption, and access controls—that could have prevented the attack.

Defendants' motion asks the Court to disregard these well-pled allegations and resolve factual disputes in Defendants' favor. That is not the law. At the pleading stage, Plaintiffs need

only plausibly allege that Defendants failed to safeguard their personal information and that Plaintiffs were harmed as a result. Because the Complaint easily satisfies that standard, this Court should deny Defendants' motion to dismiss.

## FACTUAL BACKGROUND

Set Forth provides "online account management for debt relief service providers and their customers" that collects and stores an extensive database of "highly sensitive PII about its current and former consumers and its clients' current and former consumers." ¶¶ 34, 61-62.[1] Centrex, one of Set Forth's clients, also collects and stores the PII of its customers and clients' customers and resells Set Forth's customer relationship management ("CRM") platform to its own clients. ¶¶ 35, 61-62. Plaintiffs and Class Members are current and former customers of Defendants or Defendants' clients who were required to provide their PII to Defendants to obtain debt relief services. ¶¶ 36, 144.

In collecting and maintaining Plaintiffs' and Class Members' PII, Defendants agreed to safeguard that information in accordance with internal policies, industry standards, and state and federal laws. ¶¶ 37-40. Defendants induced Plaintiffs and Class Members to provide their PII by promising in their Privacy Policies to make security a "top priority," "protect [consumer] personal information from unauthorized access and use," and "use security measures that comply with federal law." *Id.*

Plaintiffs and Class Members provided their PII to Defendants with the reasonable expectation—and on the mutual understanding—that Defendants would comply with these obligations and keep their PII confidential and secure from unauthorized access, including as set

---

[1] All ¶ citations refer to paragraphs of Plaintiffs' Consolidated Class Action Complaint. Dkt. No. 85.

forth in their Privacy Policies. ¶ 40. Defendants failed to do so.

On May 21, 2024, an unauthorized user gained access to documents on Defendants' systems. The compromised information included customer names, addresses, dates of birth, and Social Security numbers. ¶ 41. Defendants did not inform Plaintiffs or Class Members of the Data Breach until November 8, 2024. ¶ 1. Even then, Defendants' Notice Letter omitted basic details about the attack that would have helped victims mitigate their harm, including "the identities of the cybercriminals who perpetrated the Data Breach; the date(s) of the Data Breach; and any details of the root cause or the vulnerabilities exploited by the Data Breach." ¶¶ 43, 45, 50. The Notice Letter also failed to specify if Defendants inquired "whether any Class Members have suffered misuse of their data; whether Class Members should report misuse of their data to Defendants; and whether Defendants have set up any mechanism for Class Members to report any misuse of their data." ¶ 51. Defendants never provided additional details about the Data Breach. Instead, Set Forth later removed the Breach notice from its website and disabled the support website referenced in the Notice Letter. ¶ 44.

By obtaining, collecting, using, and deriving a benefit from Plaintiffs' and Class Members' Private Information, Defendants assumed legal and equitable duties to safeguard that information. Defendants knew—or should have known—that they were likely targets of a cyberattack because companies involved in debt relief and financial services store highly sensitive PII and are frequent targets of cybercriminals. ¶¶ 66-73. But they failed to take adequate measures to protect Plaintiffs' and Class Members' PII stored on their computer servers, including failing to conduct adequate security monitoring and failing to encrypt sensitive data. ¶¶ 54, 55, 59, 60.

As a direct result of Defendants' failures, cybercriminals infiltrated their systems and gained access to Plaintiffs' and Class Members' PII. Consequently, Plaintiffs have already

experienced misuse of their PII following the Data Breach. For example, Plaintiff Cooper's CashApp account was hacked and $12,000 was withdrawn from his account (¶ 180), Plaintiff Moses incurred an unauthorized $400 charge on her Truist account (¶ 276), and Plaintiff Cooper's and Plaintiff Adam's credit reports list unauthorized charges. ¶¶ 181, 264. Plaintiffs Adam, Bellefeuille, Ewing, Given, and Gravely incurred fraudulent charges on their accounts. ¶¶ 179, 196-200, 216-17, 232-33, 261. As a result of the attempted fraudulent charges, Plaintiff Adam incurred out-of-pocket costs in the form of travel expenses to and from her bank to obtain new debit cards. ¶ 262. Plaintiffs also allege numerous additional injuries resulting from the Data Breach, including dark web alerts, inaccurate information appearing on credit reports, increased spam calls, emails, and texts, invasion of privacy, diminished value of their PII, and loss of benefit of the bargain. ¶¶ 108, 144, 151, 153, 165, 166, 168, 185, 204, 218, 219, 221, 234, 236, 247, 248, 250, 260, 264, 265, 278. Plaintiffs have been forced to spend time and effort mitigating the actual and potential consequences of the Data Breach on their daily lives, including placing credit freezes and fraud alerts with credit reporting agencies, contacting their financial institutions, and closely reviewing and monitoring bank accounts and credit reports for unauthorized activity. ¶¶ 152, 167, 184, 203, 220, 235, 249, 266, 277. Plaintiffs have also suffered emotional distress from the theft of their PII. ¶¶ 154, 169, 186, 205, 222, 237, 251, 268, 279. In addition to the harms already suffered, Plaintiffs and Class Members face a substantial risk of being targeted in future phishing, data intrusion, and other illegal schemes through the misuse of their PII, since cybercriminals can use the stolen PII to carry out targeted schemes against Plaintiffs and Class Members. ¶¶ 8, 76, 108, 153, 168, 185, 204, 221, 236, 250, 260, 278.

Plaintiffs seek to hold Defendants responsible for the damages inflicted upon them and over one million other similarly situated Class Members as a result of Defendants' deficient

security practices, negligence, and delayed Breach notification—which deprived victims of the opportunity to protect themselves sooner.

## LEGAL STANDARD

A Rule 12(b)(6) motion should be granted only if, after accepting all allegations as true and construing the pleadings in the light most favorable to the plaintiffs, the defendant demonstrates that plaintiffs have failed to plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Adams v. City of Indianapolis*, 742 F.3d 720, 728 (7th Cir. 2014) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "This pleading standard does not necessarily require a complaint to contain detailed factual allegations." *In re Lurie Children's Hosp. Data Sec. Litig.*, No. 24-cv-05503, 2025 WL 2754760, at *8 (N.D. Ill. Sept. 27, 2025). "On a motion to dismiss, defendants have the burden of demonstrating the legal insufficiency of the complaint—not the plaintiffs or the court." *Reyes v. City of Chicago*, 585 F. Supp. 2d 1010, 1017 (N.D. Ill. 2008).[2]

## ARGUMENT

### I.      Illinois Law Governs Plaintiffs' Common Law Claims

"When a federal court hears a case in diversity, it does not necessarily apply the substantive law of the forum state; rather, it applies the choice-of-law rules of the forum state to determine

---

[2] Defendants do not expressly move for dismissal based on Rule 12(b)(1). To the extent Defendants argue that claims against Centrex should be dismissed because Plaintiffs' injuries are not traceable to its conduct, that argument challenges Plaintiffs' standing and is governed by Rule 12(b)(1). "Where a defendant seeks dismissal under Rule 12(b)(1) for failure to set forth allegations sufficient to establish standing on the face of the complaint, courts must accept all well-pleaded factual allegations as true and draw all reasonable inferences in favor of the plaintiff." *In re Mondelez Data Breach Litig.*, No. 23 C 3999, 2024 WL 2817489, at *1 (N.D. Ill. June 3, 2024) (citations omitted).

which state's substantive law applies." *Auto-Owners Ins. Co. v. Websolv Computing, Inc.*, 580 F.3d 543, 547 (7th Cir. 2009). But courts "do not worry about conflict of laws unless the parties disagree on which state's law applies." *Id.*

Here, the parties largely agree that Illinois law governs Plaintiffs' common law claims. Defendants agree that Illinois law applies to the claims of Plaintiffs Blue, Cooper, Ewing, Girven, Gravely, Meza, and Moses. *See* MTD at 3-5. Defendants contend that Plaintiffs Adam's and Bellefeuille's claims should be compelled to arbitration and, if not, that California law applies to those claims. *See* MTD at 5 n.2.[3] At this stage, however, it is premature to resolve any choice-of-law dispute. Courts in this District routinely decline to decide choice-of-law issues on a motion to dismiss because the analysis is fact intensive and requires a more developed record. *See Nazzaro v. Tecta Am. Corp.*, 2025 WL 2604790, at *3 (N.D. Ill. Sept. 9, 2025). As the Seventh Circuit has explained, "choice-of-law issues in nationwide class actions are rarely so uncomplicated that one can delineate clear winning and losing arguments at an early stage in the litigation." *Mirfasihi v. Fleet Mortg. Corp.*, 450 F.3d 745, 750 (7th Cir. 2006). Further discovery and briefing are therefore necessary to determine which state's substantive law ultimately applies to the common law claims of the nationwide class. *See Id.*; *Nazzaro*, 2025 WL 2604790, at *3.

In any event, Illinois has the most significant relationship to the Data Breach. Defendant Set Forth's principal place of business is in Illinois, and the alleged misconduct—including Defendants' failure to implement reasonable security measures—emanated from Illinois. *See* MTD at 3-5. Accordingly, Illinois law properly governs Plaintiffs' common law claims at this stage.

## II. Plaintiffs State a Claim Against Centrex

Defendants argue that the claims against Centrex should be dismissed for three reasons.

---

[3] Plaintiffs address this argument in their opposition to the motion to compel arbitration. Dkt. No. 107.

None has merit. First, Defendants contend that Plaintiffs fail to allege any conduct by Centrex giving rise to liability. MTD at 6. That is incorrect. The Complaint contains numerous allegations describing Centrex's role in collecting, storing, and safeguarding Plaintiffs' PII and its involvement in the events leading to the Data Breach. *See*, *e.g.*, ¶¶ 35, 37, 39, 40, 41, 44, 44 n.12, 54, 55, 101, 135, 295-97.

Defendants' argument rests on the mistaken premise that Plaintiffs may not plead allegations against "Defendants" collectively where multiple defendants engaged in the same misconduct. But courts routinely reject this argument at the pleading stage. As this Court has recognized, "allegations against 'the Defendants' adequately plead personal involvement where it is clear that they pertain to all of the defendants." *Robles v. City of Chicago*, 354 F. Supp. 3d 873, 875 (N.D. Ill. 2019); *see also Sexton v. Bd. of Educ.*, No. 25 cv 344, 2025 WL 3539127, at *3 (N.D. Ill. Dec. 10, 2025) ("a complaint can provide sufficient detail to put the defendants on notice if it directs every allegation at all defendants because the defendants do not have to speculate about which claims or allegations pertain to them, and they must defend against them all"). Courts likewise permit plaintiffs to plead defendants collectively where "the kind of complete, detailed specification that the individual defendants seek may need to await discovery." *Evans v. City of Chi.*, No. 04 C 3570, 2004 U.S. Dist. LEXIS 28511, at *5 (N.D. Ill. Nov. 30, 2004); s*ee also Patterson v. Burge*, 328 F. Supp. 2d 878, 888 (N.D. Ill. 2004) ("Federal notice pleading rules do not require [a plaintiff] to provide detailed explanations of how each particular defendant caused each of his injuries."). Plaintiffs' allegations easily satisfy that standard. *See* ¶¶ 35, 37, 39, 40, 41, 44, 44 n.12, 54, 55, 101, 135, 295-97.

Second, Defendants argue that Centrex should be dismissed because "[n]o Plaintiff alleges receiving a notification from Centrex, and only Set Forth's notification letters are attached to the

Complaint." MTD at 6. That argument ignores the Complaint's allegations regarding Defendants' coordinated response to the Breach. Set Forth operates the platform where the compromised data was stored, while Centrex resells "customer relationship management (CRM) solutions powered by the Set Forth platform" to its own clients. ¶ 35. After the breach, Set Forth sent coordinated notice letters on behalf of both Defendants to affected individuals. ¶¶ 42, 44 & n.12. By issuing a single notification, Defendants provided a unified call center and identity-protection service for affected customers. *See, e.g.*, ¶ 273 & Compl. Ex. K. The Complaint further alleges that the Breach notice was posted on Set Forth's website and that the support website referenced in the Notice Letter related to the joint Breach response. ¶ 44 & n.12. At the pleading stage, the Court must accept these allegations as true and draw all reasonable inferences in Plaintiffs' favor. *Volling v. Antioch Rescue Squad*, 999 F. Supp. 2d 991, 995 (N.D. Ill. 2013).

Third, Defendants argue that Centrex must be dismissed because no Plaintiff alleges a direct relationship with Centrex. MTD at 6. But Plaintiffs need not allege a direct contractual relationship with Centrex to state negligence-based claims arising from Centrex's role in storing and safeguarding their PII. Plaintiffs need only plausibly allege that Centrex possessed or controlled their PII and failed to protect it. The Complaint alleges precisely that. Plaintiffs allege that Centrex was the custodian of Plaintiff Moses's PII. ¶¶ 271–75. Plaintiff Moses received the joint breach notification sent by Set Forth. ¶¶ 42, 44 n.12, 273 n.64. When Plaintiff Moses contacted the call center listed in the notice, a representative informed her that Centrex was the custodian of her PII. Plaintiff Moses wrote "Centriz"—a phonetic spelling of Centrex—on her copy of the notice to memorialize that conversation. Compl. Ex. K; Decl. of Mary Moses ¶¶ 3-7.

These allegations more than suffice to plausibly connect Centrex to the Data Breach and the resulting disclosure of Plaintiffs' PII. Plaintiffs have therefore stated claims against Centrex.

### III.     Plaintiffs State a Claim for Negligence

"To state a negligence claim under Illinois law, plaintiffs must plausibly allege 'the existence of a duty owed by the defendant to the plaintiff, a breach of that duty, and injury proximately resulting from the breach.'" *In re Kemper Sports Mgmt. Data Breach Litig.*, No. 24-CV-8503, 2026 WL 25820, at *6 (N.D. Ill. Jan. 5, 2026) (citation omitted). Defendants argue that (1) Plaintiffs fail to plausibly allege a breach of duty and (2) the economic loss doctrine bars Plaintiffs' negligence claims. Both arguments mischaracterize the governing law and the facts alleged in the Complaint.

#### *1.   Plaintiffs Sufficiently Allege Defendants' Breach of Duty*

Plaintiffs plausibly allege that Defendants breached their duty. *See*, *e.g.*, ¶ 13 ("Defendants could have prevented this Breach by limiting access to only necessary employees requiring multi-factor authentication to verify credentials, encrypting data at rest and in transit, monitoring their systems for signs of unusual activity or the transfer of large volumes of data, and regularly rotating passwords."); ¶¶ 57-58 (identifying specific measures that Defendants failed to adopt but could and should have adopted to prevent the Data Breach); ¶ 106 (identifying the particular industry standards that Defendants failed to meet).

In the data breach context, courts routinely find that this level of detail is sufficient at the pleading stage. *See Mondelez Data Breach Litig.*, 2024 WL 2817489, at *6 ("Plaintiffs argue that [defendant's] arguments about breach and proximate cause turn on questions of fact that make a ruling inappropriate at the pleading stage, and the Court tends to agree."); *Hummel v. Teijen Automotive Technologies*, *Inc.*, 2023 WL 6149059, at *7 (E.D. Mich. Sept. 20, 2023) (finding allegation that defendant "could have prevented this Data Breach by properly securing and

encrypting the folder, files, and or date fields containing [Plaintiffs] PII" sufficient to survive motion to dismiss).

### 2. *The Economic Loss Doctrine Does Not Bar Plaintiffs' Claims*

Plaintiffs' claims are not barred by the economic loss doctrine. As the Illinois Court of Appeals recently reiterated, applying the economic loss doctrine (also known as the *Moorman* doctrine) to data breach cases "would stretch the applicability of the doctrine far beyond its products liability roots, given that there is no express contract between the parties and the injuries allegedly suffered by plaintiffs were not caused by any defect in the actual product of the transaction." *Flores v. Aon Corp.*, 2023 IL App (1st) 230140, 242 N.E.3d 340, ¶ 57. "If the duty arises outside of a contract between the parties, then recovery in tort for the negligent breach of that duty is not barred by the *Moorman* doctrine." *Id.* ¶ 56.

Rejecting the same argument Defendants advance here, the court in *Olson v. Ferrara Candy Co.*, 2025 IL App (1st) 241126, Appeal denied, 273 N.E.3d 805 (Ill. 2025) ¶ 44, explained that Illinois's economic loss doctrine is premised on courts' ability to "trust the commercial parties interested in a particular activity to work out the efficient allocation of risks among themselves in their contracts without having to resort to tort law." (citation omitted). The court declined to apply the doctrine even though none of its three traditional exceptions were satisfied because plaintiffs' "common law tort claim [was] based on [defendant's] common law duty to safeguard personal information rather than any express contractual duty." *Id.* ¶ 53 (citing *Flores*, 2023 IL App (1st) 230140, ¶ 57).

In light of *Olson* and *Flores*, the older district court decisions cited by Defendants— limiting the economic loss doctrine to professional malpractice cases—can no longer be viewed as controlling. *See* MTD at 8-9. "In the absence of guiding decisions by the state's highest court,

we consult and follow the decisions of intermediate appellate courts unless there is a convincing reason to predict the state's highest court would disagree." *Smith v. RecordQuest, LLC*, 989 F.3d 513, 517 (7th Cir. 2021). Federal courts have accordingly denied motions to dismiss negligence claims in data breach cases based on *Flores* and *Olson*. *Kemper Sports Mgmt. Data Breach Litig.*, 2026 WL 25820, at *6 (citing *Nazzaro*, 2025 WL 2604790, at *4-5; *Wittmeyer v. Heartland All. for Hum. Needs & Rts.*, 2024 WL 182211, at *3 (N.D. Ill. Jan. 17, 2024); *Mondelez Data Breach Litig.*, 2024 WL 2817489, at *4). Plaintiffs state a claim for negligence.

## IV. Plaintiffs State a Claim for Breach of Implied Contract

"Under Illinois law, a contract in fact can be implied from the facts and circumstances that demonstrate the parties' intent to be bound." *Flores*, 2023 IL App (1st) 230140, ¶ 31. "Unlike an express contract, in which the parties arrive at an agreement using words, agreement in an implied-in-fact contract is created through the actions and conduct of the parties." *Id.* Defendants argue that Plaintiffs fail to allege mutual assent and damages. They are mistaken.

### 1. Plaintiffs Allege Mutual Assent

In the data breach context, a plaintiff states a claim for a breach of implied contract by alleging that a defendant "made representations in its privacy policy that it would safeguard plaintiffs' personal information using reasonable security measures." *Id.* ¶ 32.

Defendants argue that because no Plaintiff viewed or relied on Defendants' Privacy Policies, there could not have been mutual assent. *See* MTD at 11. But Plaintiffs do not allege that "the Privacy Policy itself represents the contract." *Mondelez Data Breach Litig.*, 2024 WL 2817489, at *7. Rather, "the existence of a Privacy Policy . . . demonstrates [Defendants'] commitment to protecting personal information generally, and it is one of the circumstances that might support an inference of 'an implicit promise to protect [PII.]'" *Id.*; *see also Flores*, 2023 IL

App (1st) 230140, ¶ 34 (finding that plaintiffs' failure to allege review or reliance on a privacy policy "does not require dismissal . . . because the facts and circumstances between the parties [are] sufficient to imply a contract between them for the security of plaintiffs' personal information"); *Lurie Children's Hosp. Data Sec. Litig*., 2025 WL 2754760, at *11-12; *Wittmeyer*, 2024 WL 182211, at *5 (same). Plaintiffs' allegations that Defendants demonstrated a commitment to protecting PII in their Privacy Policies are sufficient. CCAC ¶¶ 37-39, 327.

Plaintiffs further allege that they were required to provide their most sensitive personal information to Defendants and that by "mandating that Plaintiffs and Class Members provide their PII as a condition of use, Defendants implied an assent to safeguard and protect their PII." ¶¶ 325-26. Thus, "it is implied from the relationship between the parties that defendant would take reasonable steps to ensure that plaintiffs' personal information would be protected from unauthorized disclosure." *Flores*, 2023 IL App (1st) 230140, ¶ 33. Indeed, "[i]t is difficult to imagine how, in our day and age of data and identity theft, the mandatory receipt of Social Security numbers or other sensitive personal information would not imply the recipient's assent to protect the information sufficiently." *Castillo v. Seagate Tech., LLC*, 16-CV-01958-RS, 2016 WL 9280242, at *9 (N.D. Cal. Sept. 14, 2016).

Even where plaintiffs do not allege detailed communications with a defendant beyond providing personal information, courts have held that such allegations may plausibly support an implied contract to safeguard that information. In *Lozada v. Advocate Health & Hospitals Corp.*, for example, the court held that allegations that plaintiffs provided personal information to the defendant and that the defendant accepted and stored that information supported an implied contract that the defendant would "do something to protect that information." *Lozada v. Advocate Health & Hosps. Corp.*, 2018 IL App (1st) 180320-U, ¶¶ 25-27. Plaintiffs adequately allege assent.

### 2. *Plaintiffs Allege Monetary Damages*

"Illinois law generally requires 'strict compliance with contractual term[s],' and failure to comply with such terms can create a breach with recoverable damages except when such a breach is immaterial." *Pactiv LLC v. Perez*, 20-CV-01296, 2021 WL 4439393, at *4 (N.D. Ill. Sept. 28, 2021). "Damages which naturally and generally result from a breach [of contract] are recoverable." *Lozada*, 2018 IL App (1st) 180320-U, ¶ 30. These damages include out-of-pocket costs. *See Dieffenbach v. Barnes & Noble, Inc.*, 887 F.3d 826, 830 (7th Cir. 2018).

Defendants acknowledge that Plaintiffs Adam, Cooper, Girven, and Moses incurred out-of-pocket charges but overstate what is required at the pleading stage. *See* MTD at 13 (citing ¶¶ 180, 219, 261-63, 276). Defendants contend that Plaintiffs failed to plausibly (1) connect their harm to the Data Breach or (2) allege how specific data elements in Defendants' databases could have led to their harm. But "[a] complaint need only allege damages; its failure to 'establish' them is no basis for dismissal. And neither is a defendant's self-serving and *ex ante* conclusion that the plaintiff will be unable to prove damages when the burden of doing so arrives in due course." *Merix Pharm. Corp. v. EMS Acquisition Corp.*, 09C5871, 2010 WL 481247, at *8 (N.D. Ill. Feb. 4, 2010).

Defendants also incorrectly argue that Plaintiffs Bellefeuille, Ewing, and Gravely do not allege any monetary damage. *See* MTD at 12. These plaintiffs allege identity theft (¶¶ 150, 196-200, 232-33), damages which "naturally and generally result from a breach of an agreement to keep sensitive data secure." *Lozada*, 2018 IL App (1st) 180320-U, ¶ 31.

Finally, Defendants argue that Plaintiffs Blue and Meza have not alleged monetary damages. But "injury is not required for a breach of contract." *Dominion Nutrition, Inc. v. Cesca*, 467 F. Supp. 2d 870, 882 (N.D. Ill. 2006). "The victim of such a breach, even if not injured, is

entitled to an award of nominal damages." *Id.* (citing *Hentze v. Unverfehrt*, 237 Ill. App. 3d 606 (1992); Restatement (Second) of Contracts § 346 cmt. b (1981)). Plaintiffs therefore state a claim for breach of implied contract.

## V.     Plaintiffs State a Claim for Unjust Enrichment

Illinois courts have recognized unjust enrichment as an independent cause of action. *See*, *e.g.*, *Raintree Homes, Inc. v. Village of Long Grove*, 209 Ill. 2d 248, 807 N.E.2d 439, 445 (2004); *HPI Health Care Servs., Inc. v. Mt. Vernon Hosp., Inc.*, 131 Ill. 2d 145, 545 N.E.2d 672, 679 (1989). And even where unjust enrichment is treated as derivative, "if [it] rests on the same improper conduct alleged in another claim, then the unjust enrichment claim will be tied to this related claim—and, of course, unjust enrichment will stand or fall with the related claim." *Kemper Sports Mgmt. Data Breach Litig.*, 2026 WL 25820, at *8 (citations omitted). Because Plaintiffs plausibly state claims for negligence and breach of implied contract, their unjust enrichment claim likewise survives.

Defendants' remaining arguments ask the Court to resolve factual disputes about the nature of the benefits Plaintiffs conferred and the circumstances under which Defendants received Plaintiffs' PII—issues that cannot be resolved on a motion to dismiss.

To separately state a claim for unjust enrichment, a plaintiff must allege that the defendant has unjustly retained a benefit to the plaintiff's detriment and that the defendant's retention of the benefit violates the fundamental principles of justice, equity, and good conscience. *HPI Health Care Servs.*, 131 Ill. 2d at 679; *see also Gittings-Barrera v. Mem'l Hosp. Ass'n*, 4:24-CV-04167-SLD-RLH, 2025 WL 2776142, at *11 (C.D. Ill. Sep. 26, 2025) (holding that a benefit provided in the form of personal information can plausibly support unjust enrichment).

Plaintiffs plausibly allege that they conferred a benefit on Defendants by providing their

valuable PII, which Defendants used in operating and profiting from their debt-relief services. ¶¶ 335-40. Plaintiffs also paid Defendants for those services with the reasonable understanding that a portion of those payments would fund adequate data security measures. *Id*. Yet Defendants failed to implement reasonable safeguards despite knowing that entities storing large volumes of sensitive financial information are prime targets for cyberattacks. ¶¶ 63-67.

Plaintiffs plausibly allege that Defendants unjustly retained the benefits of Plaintiffs' PII and payments while failing to provide the data security those benefits were meant to support.

## VI.     Plaintiffs State a Claim for Declaratory Judgment

"[A] court may only enter a declaratory judgment in favor of a party who has a substantive claim of right to such relief." *In re Joint E. & S. Dist. Asbestos Litig.*, 14 F.3d 726, 731 (2d Cir. 1993).  Courts routinely permit claims under the Declaratory Judgment Act, 28 U.S.C. §§ 2201 *et seq.*, to proceed in the wake of a data breach. For example, in *Experian*, the court held that because the plaintiffs had plausibly alleged a risk of future injury from the breach, the defendants' motion to dismiss a declaratory judgment claim should be denied. *In re Experian Data Breach Litig.*, SACV 15-1592 AG (DFMx), 2016 WL 7973595, at *7 (C.D. Cal. Dec. 29, 2016) (cited with approval by *Sieving v. Cont'l Cas. Co.*, 535 F. Supp. 3d 762, 774–75 (N.D. Ill. 2021).

Nor are Plaintiffs' claims for declaratory and injunctive relief duplicative of their other claims. At the pleading stage, courts regularly allow plaintiffs to pursue alternative remedies. *See Cottle v. Plaid, Inc.*, 536 F. Supp. 3d 461, 483 (N.D. Cal. 2021). That remains true even when the relief sought overlaps with other claims that survive dismissal. *See Baton v. Ledger SAS*, 740 F. Supp. 3d 847, 913 (N.D. Cal. 2024) (permitting declaratory judgment claim predicated on well-pled negligence claim); *In re Capital One Consumer Data Sec. Breach Litig.*, 488 F. Supp. 3d 374, 414-15 (E.D. Va. 2020) (permitting declaratory relief where plaintiffs alleged "the continued

inadequacy of defendants' security measures"). That is precisely what Plaintiffs allege here. Defendants' "data security measures remain inadequate," and Plaintiffs' PII is at risk. ¶ 347.[4] Plaintiffs state a claim for declaratory judgment.

## VII.    Plaintiff Ewing States a Claim for Violation of ICFA

"To plead a private cause of action for a violation of the Consumer Fraud Act, a plaintiff must allege (1) a deceptive act or practice by the defendant, (2) the defendant's intent that the plaintiff rely on the deception, (3) the occurrence of the deception in the course of conduct involving trade or commerce, and (4) actual damage to the plaintiff (5) proximately caused by the deception." *Olson*, 2025 IL App (1st) 241126, ¶ 67 (citation omitted). Defendants argue that Plaintiff Ewing lacks standing and fails to allege proximate causation. Both arguments fail.

### 1. *Plaintiff Ewing Has Standing*

Set Forth first asserts that it is not a business subject to the ICFA and that Plaintiff Ewing is not a consumer.[5] But, the ICFA defines "merchandise" to include "any objects, wares, goods, commodities, intangibles, real estate situated outside the State of Illinois, or services." *Liston v. King.com, Ltd.*, 254 F. Supp. 3d 989, 1006 (N.D. Ill. May 23, 2017) (quoting 815 Ill. Comp. Stat. § 505/1(b)). Defendants provide account management services for debt relief service providers and their customers. ¶ 34. Such services fall squarely within the statute's definition of "merchandise." *See Saccameno v. Ocwen Loan Servicing, LLC*, 372 F. Supp. 3d 609, 632, 635 (N.D. Ill. Mar. 1, 2019) (upholding ICFA claim against a company providing "borrower account management" services).

Defendants also contend that Plaintiff Ewing is neither a consumer nor satisfies the

---

[4] Even if this Court were to dismiss Plaintiffs' claim for equitable relief, Plaintiffs are not precluded from seeking declaratory relief. *See Garrard v. Rust-Oleum Corp.*, 575 F. Supp. 3d 995, 1004 (N.D. Ill. 2021).

[5] Defendants only make this argument with respect to Forth, not Centrex. *See* ¶¶ 353-67.

consumer nexus test. MTD at 18. A consumer is "any person who purchases or contracts for the purchase of merchandise not for resale in the ordinary course of his trade or business but for his use or that of a member of his household." 815 Ill. Comp. Stat. 505/1(e). Even if Plaintiff Ewing were not considered a consumer, she satisfies the consumer nexus test, which requires a plaintiff to "allege[] conduct [that] involves trade practices addressed to the market generally or otherwise implicates consumer protection concerns." *Downers Grove Volkswagen, Inc. v. Wigglesworth Imports, Inc.*, 190 Ill. App. 3d 524, 534, 546 N.E.2d 33 (2d Dist. 1989).Courts routinely find this test satisfied where misrepresentations are directed to the public. *See id.* (holding a consumer nexus was established where the "defendant published false information about its prices for services"). Plaintiff Ewing alleges that Defendants falsely represented that protecting consumer data was a priority on their websites. ¶¶ 38-39. Those representations were directed to the public and concerned the security of consumers' sensitive personal information—an issue squarely within ICFA's consumer protection purpose.

Defendants' reliance on *MacNeil Auto. Prods. v. Cannon Auto. Ltd.*, 715 F. Supp. 2d 786, 793 (N.D. Ill. May 25, 2010), and *Thrasher-Lyon v. Ill. Farmers Ins. Co.*, 861 F. Supp. 2d 898, 912 (N.D. Ill. Mar. 20, 2012), is therefore misplaced. In those cases, the alleged misrepresentations were directed only to the plaintiffs themselves, not to the market generally. *See id.*

### 2. *Plaintiff Ewing Alleges Economic Injury Proximately Caused by Defendants' Conduct*

Defendants' argument that Plaintiff Ewing fails to allege "specific economic damages" ignores the Complaint's detailed allegations of fraud and financial harm. MTD at 19-20. Plaintiff Ewing alleges "actual misuse and identity theft" in the form of fraudulent charges and other unauthorized activity related to her bank account. ¶¶ 196-201. As a result, her financial institution closed her account, leaving her unable to access funds and receive her paycheck. *Id.*; *see*

*Dieffenbach*, 887 F.3d at 830 (finding plaintiff suffered economic loss when she did not have access to funds for several days); *Perdue*, 455 F. Supp. 3d at 756, 769 (holding that fraudulent charges preventing access to bank funds were actual damages under the ICFA).

Furthermore, "[i]f the plaintiff has suffered an economic loss, noneconomic injuries are compensable." *Dieffenbach*, 887 F.3d at 830. A "combination of damages" including "a risk of future harm, the cost of credit monitoring, emotional distress, and lost wages" are compensable injuries under the ICFA. *Worix v. MedAssets, Inc.*, 869 F. Supp. 2d 893, 901 (N.D. Ill. Apr. 24, 2012). Plaintiff Ewing further alleges that she spent 10 to 20 hours addressing the fallout from the fraud, suffered emotional distress, and faces an increased risk of identity theft and fraud due to the Data Breach. ¶¶ 203-07. These allegations easily satisfy ICFA's damages requirement.

Defendants also argue that Plaintiff Ewing fails to allege proximate cause because she does not recall how Defendants obtained her PII and therefore could not have received a deceptive communication from them. But "an ICFA claim need not be based upon an allegation of a deceptive communication; the statute also prohibits unfair commercial conduct." *Fed. Nat'l Mortgage Ass'n v. Obradovich*, 14-CV-04664, 2016 WL 1213920, at *3 (N.D. Ill. Mar. 29, 2016).

Plaintiff Ewing alleges unfair commercial conduct in several ways. First, she alleges that she would not have provided her PII to Defendants, undertaken the services, or paid the amounts she did (or amounts paid on her behalf) had she known her PII would be maintained using inadequate data security systems. ¶ 209; *see also Perdue*, 455 F. Supp. 3d at 771 (finding proximate cause under ICFA when defendant "fail[ed] to disclose" that payment system was "not reasonably secure").[6] Second, Plaintiff Ewing alleges a two-month delay between the Data Breach and the

---

[6] Defendants argue that ICFA claims must survive heightened pleading. But "courts within this circuit have indicated that similar allegations relating to data breaches under the ICFA should be subject to the liberal

misuse of her data. *Compare* CCAC ¶¶ 196-201 with *Olson*, 2025 IL App (1st) 241126, ¶ 70. Finally, Plaintiff Ewing alleges that Defendants unreasonably delayed notifying Plaintiffs and Class Members about the Data Breach. Defendants rely on *Lurie Children's Hosp. Data Sec. Litig.*, 2025 WL 2754760, at *14, but ignore the court's observation that plaintiffs "who have already experienced incidents of identity theft, have a plausible claim that [defendant's] delayed notice caused them harm." Plaintiff Ewing plausibly alleges a violation of the ICFA.

### VIII.   Plaintiff Ewing States a Claim for Violation of the IUDTPA

The IUDTPA authorizes injunctive relief where a defendant engages in misleading trade practices that create a likelihood of confusion or misunderstanding. *See* 815 ILCS 510/2(a). As courts have recognized, the Act "provides injunctive relief for a plaintiff who can demonstrate that a defendant engaged in" such conduct, including "representing that goods or services are of a particular standard or quality" or otherwise creating "a likelihood of confusion or misunderstanding." *Darne v. Ford Motor Co*., 13 C 03594, 2015 WL 9259455, at *12 (N.D. Ill. Dec. 18, 2015)(citing 815 ILCS 510/2(a)). A consumer may seek injunctive relief under the Act if she can show that she is likely to be damaged in the future by the defendant's misleading trade practices. *See  Popp v. Cash Station, Inc.*, 244 Ill. App. 3d 87, 613 N.E.2d 1150 (1st Dist. 1992).

Defendants first recycle their flawed argument that Plaintiff Ewing did not receive any misrepresentations about their data security and therefore could not have been deceived. MTD at 21. But Plaintiff Ewing alleges that Defendants made specific public statements regarding their data security, including that they use security measures to "protect your personal information from unauthorized access and use." ¶¶ 38-39. Plaintiff Ewing further alleges that, as an end-user of

---

pleading rule of Federal Rule of Civil Procedure 8(a), rather than Rule 9(b)." *Sweet v. BJC Health Sys.*, 3:20-CV-00947-NJR, 2021 WL 2661569, at *6 (S.D. Ill. June 29, 2021).

Defendants' platforms, she relied on these promises. ¶ 40. This is sufficient. *See In re MOVEit Customer Data Sec. Breach Litig.*, No. 23-MD-3083-ADB-PGL, 2025 WL 2179475, at *37 (D. Mass. July 31, 2025);*Shannon v. Boise Cascade Corp.*, 208 Ill. 2d 517 (2004) (holding that "it is enough that [a] statement[] by the defendant be made with the intention that it reach the plaintiff and influence his action … and that he does rely upon it, to his damage.").

Defendants next argue that Plaintiff Ewing fails to allege an ongoing or future harm sufficient to support injunctive relief. MTD at 21-22. But the Complaint alleges an increased risk of future fraud and identity theft and seeks injunctive relief requiring Defendants to implement adequate safeguards to protect Plaintiffs' PII from future breaches. ¶¶ 126-28, 139-43, 207-08. These allegations are sufficient. *See In re Fortra File Transfer Software Data Sec. Breach Litig.*, 749 F. Supp. 3d 1240, 1273 (S.D. Fla. Sept. 18, 2024) (sustaining IUDTPA claim where plaintiffs alleged "the risk of another data breach occurring, as [defendant] still possesses their data while maintaining inadequate security"). Because Defendants continue to possess Plaintiffs' PII, the risk of future harm remains ongoing. ¶ 208. Plaintiff Ewing therefore states a claim under the IUDTPA.

## IX. Plaintiffs Meza and Adam State a Claim for Violation of the CCPA

The California Consumer Privacy Act ("CCPA") provides a private right of action to any California consumer whose nonencrypted "personal information" is disclosed as a result of a "business's violation of the duty to implement and maintain reasonable security procedures . . . ." Cal. Civ. Code § 1798.150(a)(1).[7]

---

[7] Defendants suggest in a footnote that Plaintiffs' claims for statutory damages should be dismissed as to Centrex because Plaintiffs allegedly failed to satisfy the CCPA's 30-day notice requirement. MTD at 23 n.8. That is incorrect. The Complaint does not seek CCPA statutory damages against Centrex. ¶¶ 391-92. Instead, on February 18, 2026, Plaintiffs Adam and Meza mailed CCPA notice letters to Centrex and, consistent with the statute, reserve the right to amend their complaint to seek statutory damages if Centrex fails to cure its violations within 30 days. *See Guy v. Convergent Outsourcing, Inc.*, No. C22-1558 MJP, 2023 U.S. Dist. LEXIS 125332, at *28 (W.D. Wash. July 20, 2023) (allowing amendment to seek CCPA

Defendants argue that they are not "businesses" under the CCPA. That argument fails. The CCPA defines a "business" as a legal entity "that collects consumers' personal information, or on the behalf of which such information is collected and that alone, or jointly with others, determines the purposes and means of the processing of consumers' personal information . . . ." Cal. Civ. Code § 1798.140(d)(1). Thus, an entity qualifies as a business if it (1) collects personal information and (2) determines the purposes and means of processing it—the "why and how." *See Miller v. NextGen Healthcare, Inc.*, 742 F. Supp. 3d 1304, 1327 (N.D. Ga. 2024).[8] Defendants did both.

First, Plaintiffs allege that Set Forth "stores a litany of highly sensitive PII about its current and former consumers and its clients' current and former consumers." ¶ 34. Similarly, "Centrex provides customer relationship management services powered by the Set Forth platform to its own clients who collect and upload consumer information." ¶ 35. These allegations are sufficient. *See NextGen*, 742 F. Supp. 3d at 1327. Defendants argue that they do not qualify as businesses, claiming that they merely maintained PII rather than collecting or processing it. MTD at 23. The Complaint alleges otherwise. ¶¶ 61-63 (alleging that Defendants "collect and store" Plaintiffs' highly sensitive PII in the normal course of their businesses).

The statute's plain text also contradicts Defendants' argument. The CCPA defines "collects" as "buying, renting, gathering, obtaining, receiving, or accessing any personal information pertaining to a consumer by any means" and includes "receiving information from the consumer, either actively or passively." Cal. Civ. Code § 1798.140(f). Given the CCPA's broad definition of "collects"—which includes obtaining, receiving, or accessing PII by any means—

---

statutory damages after expiration of 30-day cure period); *Garcia v. JPMorgan Chase Bank, N.A.*, No. 2:24-cv-06402-WLH-AGR, 2026 LX 40038, at *11-12 (C.D. Cal. Feb. 25, 2026) (same).

[8] The CCPA also requires a business to meet certain revenue or consumer thresholds and to do business in California—elements Defendants do not dispute.

Plaintiffs easily satisfy the collection requirement. *See NextGen*, 742 F. Supp. 3d at 1327.

Second, Plaintiffs plausibly allege that Defendants determine the purposes and means of processing consumers' PII. Plaintiffs allege that Defendants "acquir[e], collect[], and stor[e] a massive amount of PII of their customers and/or their clients' current and former customers," which they then use to provide services. ¶¶ 61-63. Set Forth provides online account management services for debt relief service providers and their customers. ¶ 34. Centrex provides CRM solutions powered by the Set Forth platform. ¶ 35. These are not passive or ministerial functions; they reflect operational decisions about how Plaintiffs' data is structured, stored, and used.

Under the CCPA, an entity qualifies as a business if it "alone, or jointly with others, determine[s] the purposes and means of the processing of consumers' [PII]." Cal. Civ. Code § 1798.140(d)(1). Processing includes "any operation or set of operations that are performed on personal information . . . whether or not by automated means." Cal. Civ. Code § 1798.140(y). By storing and managing Plaintiffs' PII in a centralized system and providing services built around that data, Defendants determined "why and how" Plaintiffs' information was processed.

Courts routinely hold that similar allegations satisfy the CCPA's definition of a business. *See*, *e.g.*, *NextGen*, 742 F. Supp. 3d at 1327 (defendant used consumer data to develop and improve its services); *In re Blackbaud, Inc., Customer Data Breach Litig.*, 3:20-MN-02972-JMC, 2021 WL 3568394, at *1-2 (D.S.C. Aug. 12, 2021) (defendant used consumers' PII to provide services and develop software solutions); *Jimenez v. OE Fed. Credit Union*, 24-CV-02746-JST, 2025 WL 2402137, at *1 (N.D. Cal. Aug. 19, 2025) (processing satisfied where defendant chose to store PII and determine the method of storage). Plaintiffs therefore adequately allege that Defendants qualify as businesses. Because Defendants collected and processed Plaintiffs' personal information while failing to implement reasonable security procedures, Plaintiffs state a claim under the CCPA.

## X.  Plaintiffs Meza and Adam State a Claim for Violation of the CCRA

Defendants argue that Plaintiffs do not allege "actual damages" resulting from Defendants' delay in notifying them of the Data Breach as required by the California Customer Records Act ("CCRA"). While Plaintiffs sufficiently allege actual damages, as discussed in Section IV.2, the CCRA requires only "incremental harm." *In re Adobe Sys. Privacy Litig.*, 66 F. Supp. 3d 1197, 1217 (N.D. Cal. 2014).

Plaintiffs plausibly allege incremental harm resulting from Defendants' delayed notification. Plaintiffs allege that Defendants waited nearly six months to notify them of the Data Breach (¶ 1), that the delay impaired their ability to mitigate the consequences of the breach (¶ 45), and that they spent substantial time responding to the Breach—including researching the incident, reviewing financial accounts, replacing cards, and enrolling in monitoring services. ¶¶ 122-26, 249, 277. Plaintiff Adam alleges that she traveled to and from her bank on three separate occasions to obtain new debit cards and enrolled in a credit monitoring service. ¶¶ 262-63. Plaintiffs further allege that they "were (and continue to be injured)" as a result of Defendants' violations of the CCRA. ¶ 407. These allegations plausibly show that Defendants' delayed notification exacerbated the harm Plaintiffs suffered and hindered their ability to mitigate the effects of the Breach.

Courts routinely hold that similar allegations satisfy the CCRA's incremental-harm requirement. *See In re Solara Med. Supplies, LLC Customer Data Sec. Breach Litig.*, 613 F. Supp. 3d 1284, 1300 (S.D. Cal. 2020) (finding five-month delay in notification sufficient to show incremental harm); *In re Yahoo! Inc. Customer Data Sec. Breach Litig.*, 16-MD-02752-LHK, 2017 WL 3727318, at *41 (N.D. Cal. Aug. 30, 2017) (finding allegations of delayed mitigation sufficient to show incremental harm); *Gallagher*, 631 F. Supp. 3d at 590 (finding allegations of "post-disclosure remedial actions" combined with resulting harm sufficient).

Defendants' reliance on *Morales v. Conifer Revenue Cycle Sols., LLC*, 2:23-CV-01987-AB-AGR, 2025 WL 1096396, at *8 (C.D. Cal. Mar. 31, 2025), and *Hernandez-Silva v. Instructure, Inc.*, 2:25-CV-02711-SB-MAA, 2025 WL 2233210 (C.D. Cal. Aug. 4, 2025)is misplaced. The passage Defendants quote from *Morales* addresses plaintiffs' negligence claim, not the CCRA, and in any event, Plaintiffs here allege far more than spam texts. And *Hernandez-Silva* was not a data breach case at all. Rather, plaintiffs there challenged the intentional disclosure of certain data and did not bring a claim under the CCRA. These cases are inapposite. Plaintiffs therefore state a claim under the CCRA.

### XI. Plaintiffs Meza and Adam State a Claim for Violation of the UCL

California's Unfair Competition Law ("UCL") "prohibits an individual or entity from engaging in any 'unlawful, unfair or fraudulent business act or practice.'" *In re Gallagher*, 631 F. Supp. 3d at 596 (citing Cal. Bus. & Prof. Code § 17200). Plaintiffs plausibly allege unlawful and unfair conduct based on Defendants' negligent data-security practices and statutory violations. Defendants' remaining arguments concern standing, remedies, and extraterritoriality—none of which defeats Plaintiffs' claim at the pleading stage.

#### 1. The UCL Applies to Claims Brought by California Residents

Defendants incorrectly argue that Plaintiffs' UCL claim should be dismissed because the Data Breach arose from conduct occurring entirely outside of California. But California courts have repeatedly held that the UCL applies to claims brought by California residents even where some of the alleged misconduct occurred elsewhere.

California's extraterritoriality test asks "whether a statute discloses that it was designed or intended to regulate claims of non-residents arising from conduct occurring entirely outside of California." *MOVEit Customer Data Sec. Breach Litigation.*, 2025 WL 2179475, at *23(cleaned

up). Consistent with that principle, courts have held that "[a] UCL claim may be brought by a plaintiff who is a resident of California, regardless of where the alleged misconduct occurred." *Adobe Sys. Inc. v. Blue Source Grp., Inc.*, 125 F. Supp. 3d 945, 972 (N.D. Cal. 2015); *see also Norwest*, 72 Cal. App. 4th at 222 (California residents "may assert UCL claims . . . regardless of where [Defendant's] conduct . . . occurred"); *Speyer v. Avis Rent A Car Sys., Inc.*, 415 F. Supp. 2d 1090, 1099 (S.D. Cal. 2005) ("[T]he UCL applies to wrongful conduct that occurs out-of-state but results in injury in California."). As the court observed in *MOVEit*, "California precedent indicates that allowing claims brought by California residents against a non-resident defendant does not offend, or even implicate, that state's extraterritoriality principles." *MOVEit Customer Data Sec. Breach Litigation.*, 2025 WL 2179475, at *23.

In any event, Plaintiffs plausibly allege misconduct in California. Centrex is headquartered in California and provides cloud-based customer relationship management solutions to its customers there. ¶¶ 29, 35. Centrex collects, stores, and processes Plaintiffs' and Class Members' data in California, and its negligent handling of that data occurred there as well. ¶¶ 13-14. Moreover, Plaintiffs Meza and Adam shared their Private Information with Defendants while residing in California. ¶¶ 246, 256-57. At minimum, these allegations establish a sufficient nexus to California to defeat Defendants' extraterritoriality argument at the pleading stage. *See Doe v. GoodRx Holdings, Inc.*, 23-CV-00501-AMO, 2025 WL 2052302, at *14-15 (N.D. Cal. July 22, 2025)(declining to dismiss UCL claim where defendants' conduct could plausibly have a substantial nexus to California); *Doe v. Meta Platforms, Inc.*, 690 F. Supp. 3d 1064, 1079 (N.D. Cal. 2023) (rejecting extraterritoriality argument at the pleading stage as premature).

Moreover, "the extraterritoriality of a UCL remedy must be determined in light of the 'liability-creating conduct,' where liability is defined by the underlying law—in this case, the

CCPA." *Johnson v. 90 Degree Benefits, Inc.*, No. 25-cv-687, 2026 U.S. Dist. LEXIS 14586, at *21–22 (E.D. Wis. Jan. 27, 2026). The CCPA's text and purpose demonstrate "an intent to protect California residents from negligent data-security practices regardless of where the businesses holding their data are located." *Id.* at *23. That intent is sufficient to overcome any presumption against extraterritoriality. *Id.* (finding defendant's UCL extraterritoriality argument without merit).

The cases on which Defendants rely are readily distinguishable because neither involved a California defendant. *See In re Gallagher*, 631 F. Supp. 3d at 596, and *Toretto v. Donnelley Fin. Sols., Inc.*, 583 F. Supp. 3d 570, 603, 606 (S.D.N.Y. 2022). Here, by contrast, Centrex is headquartered in California and is alleged to have collected and processed Plaintiffs' data there. Accordingly, the presumption against extraterritoriality does not apply.

### 2. *Plaintiffs Meza and Adam Have Statutory Standing*

Defendants contend that Plaintiffs Adam and Meza lack statutory standing. Not so. Under the UCL, a plaintiff has standing if she "has suffered injury in fact and has lost money or property as a result of the unfair competition." *Kwikset Corp. v. Superior Ct.*, 51 Cal. 4th 310, 321 (2011). The California Supreme Court has emphasized that this requirement is satisfied by a wide range of economic injuries and should not be applied restrictively. *Id.* at 323. Plaintiffs plausibly allege economic injury in at least five ways.

First, Plaintiff Adam experienced multiple fraudulent charges—leading to financial harm, reduced access to her banking accounts, and the need to obtain a new debit card on three separate occasions. ¶ 261. That is more than sufficient. *See Kirsten v. California Pizza Kitchen, Inc.*, 221CV09578DOCKES, 2022 WL 16894503, at *9 (C.D. Cal. July 29, 2022)(finding plaintiff who experienced fraudulent charges because of a data breach satisfied the UCL's standing requirement).

26

Second, courts recognize diminution in value of personal information as a viable economic injury under the UCL. Indeed, "the growing trend across courts that have considered this issue is to recognize the lost property value of this information." *Marriott*, 440 F. Supp. 3d at 461; see also *Calhoun v. Google LLC*, 526 F. Supp. 3d 605, 635 (N.D. Cal. 2021); *In re Anthem, Inc. Data Breach Litig.*, 2016 WL 3029783, at \*14 (N.D. Cal. May 27, 2016). Plaintiffs Adam and Meza allege that the Data Breach diminished the value of their PII. ¶¶ 250, 260. Plaintiffs need not reduce their PII "to terms of dollars and cents in some fictitious marketplace where they offer such information for sale to the highest bidder." *In re Mednax Servs., Inc. Customer Data Sec. Breach Litig.*, 603 F. Supp. 3d 1183, 1204 (S.D. Fla. 2022); *see also Brown v. Google LLC*, 685 F. Supp. 3d 909, 942 (N.D. Cal. 2023) (denying summary judgment of UCL claim based on record evidence establishing the data's value).

Third, loss of time spent responding to a data breach can constitute economic injury under the UCL. A plaintiff who has "lost money and time, including as a result of unauthorized charges on their debit and credit cards," satisfies the UCL's standing requirement. *Hameed-Bolden v. Forever 21 Retail, Inc.*, CV1803019SJOJPRX, 2018 WL 6802818, at \*4 (C.D. Cal. Oct. 1, 2018) . Plaintiffs Adam and Meza both spent time mitigating the breach, including monitoring their accounts and changing passwords. ¶¶ 249, 266.

Fourth, courts also recognize that the loss and exposure of personal information—including its appearance on the dark web—can constitute economic injury. See *Calhoun*, 526 F. Supp. 3d at 636. Plaintiff Meza alleges that her PII now appears on the dark web, and Plaintiffs further allege that their exposed information has led to fraudulent communications. ¶¶ 247-48, 265.

Fifth, Plaintiff Adam incurred out-of-pocket losses as a direct result of the Breach, including the cost of enrolling in credit monitoring and travel expenses incurred to obtain

27

replacement debit cards. ¶¶ 262-63. Contrary to Defendants' argument, courts routinely hold that "[p]ayments toward enhanced credit monitoring that arise from a data breach and that are not reimbursed do constitute economic injury, sufficient to confer UCL standing." *Huynh v. Quora, Inc.*, 508 F. Supp. 3d 633, 661 (N.D. Cal. 2020) (citation omitted); *see also Yahoo! Inc. Customer Data Sec. Breach Litg.*, 2017 WL 3727318, at *7-8 (finding UCL standing where plaintiffs paid for credit monitoring because they incurred otherwise unnecessary out-of-pocket expenses). These allegations easily satisfy the UCL's "lost money or property" requirement.

### 3. *Plaintiffs Do Not Have an Adequate Remedy at Law*

Defendants next argue that Plaintiffs Meza and Adam cannot pursue their UCL claim because they have not alleged an inadequate remedy at law. That is incorrect. Defendants rely on the Ninth Circuit's decision in *Sonner v. Premier Nutrition Corp.*, 971 F.3d 834 (9th Cir. 2020). But *Sonner* addressed a claim for restitution on the eve of trial—not at the pleading stage. *See Sonner*, 971 F.3d at 844 (holding plaintiff could not voluntarily abandon legal damages after more than four years of litigation to seek restitution instead). As many courts have subsequently held, "*Sonner* [does] not mandate dismissal of [plaintiffs'] claims because the decision[] require[s] far less at the pleading stage." *Valiente v. Simpson Imports, Ltd.*, 717 F. Supp. 3d 888, 907 (N.D. Cal. 2024) (cleaned up)*; see also Carroll v. Myriad Genetics, Inc.*, 2022 WL 16860013, at *6 (N.D. Cal. Nov. 9, 2022) (declining to apply *Sonner* because it "does not address what a plaintiff must allege at the pleading stage in order to proceed on her equitable claims").

Plaintiffs here expressly plead their UCL claim in the alternative. ¶ 410. That alone is sufficient. *See Coleman v. Mondelez Int'l Inc.*, 554 F. Supp. 3d 1055, 1065 (C.D. Cal. 2021) (declining to dismiss UCL claim under *Sonner* because plaintiff "may be entitled to restitution under the UCL, while not entitled to damages under other causes of action which may impose

more stringent elements that plaintiff may ultimately not be able to prove") (cleaned up); *Junhan Jeong v. Nexo Fin. LLC*, 2022 WL 174236, at *27 (N.D. Cal. Jan. 19, 2022) (collecting cases and holding that "in light of *Sonner's* limited applicability to the pleading stage, there is no binding precedent that holds that pleading equitable restitution in the alternative is improper"); *Collyer v. Catalina Snacks Inc.*, 712 F. Supp. 3d 1276, 1289 (N.D. Cal. 2024) (collecting cases). This Court should "follow[] their path and permit[] Plaintiffs to proceed with equitable claims at the pleading stage, particularly where there does not appear to be a material distinction between monetary damages and restitution." *Steiner v. Vi-Jon Inc.*, 723 F. Supp. 3d 784, 796 (N.D. Cal. 2024). That is especially true where, as here, Plaintiffs allege an imminent risk of identity theft and fraud that cannot be fully remedied through damages. ¶ 419.

Even if this Court were to apply *Sonner* at the pleading stage, it does not bar forward looking injunctive relief. Money damages for past harm are an inadequate remedy for future harm. *See, e.g.*, *Brooks v. Thomson Reuters Corp.*, 2021 WL 3621837, at *11 (N.D. Cal. Aug. 16, 2021) (collecting cases declining "to apply *Sonner* to bar UCL claims for injunctive relief"); *Warren v. Whole Foods Mkt. California, Inc.*, 2022 WL 2644103, at *9 (N.D. Cal. July 8, 2022) (allowing UCL claim because injunctive relief "is prospective" while damages are retrospective).

Equitable relief is plainly necessary here. Plaintiffs Meza's and Adam's PII remains in Defendants' possession, and Defendants "have failed to remedy their lax security practices." ¶¶ 108, 418. The risk of another breach is "real, immediate, and substantial." ¶ 420. Without adequate safeguards, Plaintiffs face a continuing risk of identity theft and fraud that damages alone cannot remedy. ¶ 419. Under these circumstances, courts routinely permit injunctive relief claims to proceed under the UCL. *See Yahoo! Inc.Customer Data Sec. Breach Litig.* 2017 WL 3727318, at *31 (finding injunctive relief appropriate where defendants retained plaintiffs' PII); *Owens v.*

*Smith, Gambrell & Russell Int'l, LLP*, No. 23-cv-01789, 2024 WL 3914663, at *13 (C.D. Cal. May 30, 2024) (holding where defendant retained plaintiffs' data, "only injunctive relief can protect [them] from continued risk to their PII"). Plaintiffs Meza and Adam plausibly allege that they lack an adequate remedy at law.

### 4. *Plaintiffs Allege Unlawful Conduct Under the UCL*

"Virtually any law—federal, state, or local—can serve as a predicate for a section 17200 action." *State Farm Fire & Cas. Co. v. Superior Court*, 45 Cal. App. 4th 1093, 1102-03 (1996). Plaintiffs allege that Defendants' conduct was unlawful because it was negligent and violated the CCPA, the CCRA, and federal law and regulations, including Section 5 of the FTC Act. ¶ 412. As discussed above, because Plaintiffs plausibly allege violations of these laws, they also constitute an unlawful practice. *See Mehta v. Robinhood Fin. LLC*, 21-CV-01013-SVK, 2021 WL 6882377, at *11 (N.D. Cal. May 6, 2021)(finding allegations that defendants failed to "implement and maintain reasonable security procedures" sufficient to state a claim under the unlawful prong); *Baton v. Ledger SAS*, 21-CV-02470-EMC, 2025 WL 416360, at *11 (N.D. Cal. Feb. 6, 2025). Courts also recognize that Section 5 of the FTC Act provides an ascertainable duty regarding data security that may serve as a predicate for a UCL claim. *See In re Capital One Consumer Data Sec. Breach Litig.*, 488 F. Supp. 3d 374, 420 (E.D. Va. 2020); ¶¶ 94-102. Plaintiffs allege that Defendants violated that duty by failing to employ reasonable data security measures, including encryption, multifactor authentication, and role-based access controls. ¶¶ 54-60, 103-07. Accordingly, Plaintiffs Meza and Adam state an unlawful prong claim.[9]

### 5. *Plaintiff Meza's UCL Claim Survives Regardless of Restitution*

Defendants' final argument—that Plaintiff Meza cannot pursue a UCL claim because she

---

[9] Defendants do not challenge Plaintiffs' allegations under the UCL's "unfair" prong. ¶ 413.

is not entitled to restitution—misstates the law. Defendants' argument addresses the scope of potential remedies, not whether Plaintiff states a claim. The UCL authorizes two forms of relief for private plaintiffs: restitution and injunctive relief. *Kwikset*, 51 Cal. 4th at 337. "[I]neligibility for restitution is not a basis for denying standing" under the UCL. *Id.* Even if Plaintiff Meza ultimately were not entitled to restitution, that would not require dismissal of her UCL claim because she independently seeks injunctive relief. Courts routinely decline to dismiss UCL claims on this basis where plaintiffs plausibly seek prospective relief. *See*, *e.g.*, *Brooks v. Thomson Reuters Corp.*, 21-CV-01418-EMC, 2021 WL 3621837, at *10 (N.D. Cal. Aug. 16, 2021)(allowing UCL claim to proceed because plaintiffs sought injunctive relief even where restitution was barred).

In any event, Plaintiff Meza alleges that Defendants obtained economic benefits through their collection and use of Plaintiffs' PII and through the debt-relief services they offered. ¶¶ 34-35, 335-38, 417. Plaintiff Meza has a vested interest in her own PII and the economic benefits that Defendants derived from it. *See Juarez v. Arcadia Fin., Ltd.*, 152 Cal. App. 4th 889, 914-15 (2007) (finding that UCL restitution "is broad enough to allow a plaintiff to recover money or property in which he or she has a vested interest"). Thus, Plaintiff Meza may seek restitutionary disgorgement of a portion of the monies Defendants earned from her PII. *Id.* at 915; *see also Trew v. Volvo Cars of N. Am., LLC*, CIV-S-051379DFLPAN, 2006 WL 306904, at *2-3 (E.D. Cal. Feb. 8, 2006)(finding restitution appropriate even where defendant did not receive money directly from plaintiff if defendant otherwise profited from an unfair business practice). At a minimum, these allegations are sufficient at the pleading stage. Plaintiff Meza's UCL claim therefore survives.

## CONCLUSION

For these reasons, the Court should deny Defendants' motion to dismiss on all grounds. If the Court grants any portion of the motion, Plaintiffs respectfully request leave to amend.

DATED: March 12, 2026          Respectfully submitted,

By: */s/ Raina C. Borrelli*
    **STRAUSS BORRELLI PLLC**
    RAINA C. BORRELLI
    980 N. Michigan Ave., Suite 1610
    Chicago, IL 60611
    Telephone: (872) 263-1100
    Facsimile: (872) 263-1109
    raina@strausborrelli.com

    **MILBERG COLEMAN BRYSON**
    **PHILLIPS GROSSMAN LLC**
    GARY M. KLINGER
    227 W. Monroe Street, Suite 2100
    Chicago, IL 60606
    Telephone: 866/252-0878
    gklinger@milberg.com

    **TYCKO & ZAVAREEI LLP**
    SABITA J. SONEJI
    1970 Broadway, Suite 1070
    Oakland, CA 94612
    Telephone: 510/254-6808
    ssoneji@tzlegal.com

    *Plaintiffs' Interim Co-Lead Counsel*

    Leigh S. Montgomery (pro hac vice)
    **EKSM, LLP**
    4200 Montrose, Ste. 200
    Houston, Texas 77006
    Phone: (888) 350-3931
    Fax: (888) 276-3455
    lmontgomery@eksm.com

    Jeff Ostrow

**KOPELOWITZ OSTROW P.A.**
One West Las Olas Blvd., Suite 500
Fort Lauderdale, FL 33301
Tel: 954.332.4200
ostrow@kolawyers.com

Terence R. Coates
**MARKOVITS, STOCK & DEMARCO, LLC**
119 E. Court Street, Suite 530
Cincinnati, OH 45202
Phone: (513) 651-3700
Fax: (513) 665-0219
tcoates@msdlegal.com

J. Gerard Stranch, IV*
**STRANCH, JENNINGS & GARVEY, PLLC**
223 Rosa L. Parks Ave., Suite 200
Nashville, TN 37203
Tel: (615) 254-8801
gstranch@stranchlaw.com

Lori G. Feldman
**GEORGE FELDMAN McDONALD, PLLC**
102 Half Moon Bay Drive
Croton-on-Hudson, NY 10520
Tel: (917) 983-9321
lfeldman@4-justice.com

M. Anderson Berry
**CLAYEO C. ARNOLD A PROFESSIONAL CORPORATION**
865 Howe Avenue
Sacramento, CA 95825
Telephone: (916) 239-4778
Fax: (916) 924-1829
aberry@justice4you.com

Amber L. Schubert*
**SCHUBERT JONCKHEER & KOLBE LLP**
2011 Union St., Suite 200
San Francisco, CA 94123
Telephone: (415) 788-4220

Facsimile: (415) 788-0161
aschubert@sjk.law

Charles E. Schaffer
**LEVIN SEDRAN & BERMAN LLP**
510 Walnut Street, Suite 500
Philadelphia, PA 19106
Tel: (215) 592-1500
cschaffer@lfsblaw.com

Ian J. Engdahl*
**HAUSFELD LLP**
1200 17th Street, N.W., Suite 600
Washington, DC 20036
Tel.: (202) 540-7200
iengdahl@hausfeld.com

Thomas A. Zimmerman, Jr. (IL #6231944)
**ZIMMERMAN LAW OFFICES, P.C.**
77 W. Washington Street, Suite 1220
Chicago, Illinois 60602
Tel: (312) 440-0020
Fax: (312) 440-4180
tom@attorneyzim.com

***Executive Committee Members***

Daniel Srourian
**SROURIAN LAW FIRM, P.C.**
468 N. Camden Dr., Suite 200
Beverly Hills, California 90210
Telephone: (213) 474-3800
Facsimile: (213) 471-4160
Email: daniel@slfla.com

Leanna A. Loginov, Esq.
lloginov@shamisgentile.com
**SHAMIS & GENTILE P.A.**
14 NE 1st Ave., Suite 705
Miami, Florida 33132
Tel: (305) 479-2299

Kevin Cox
**THE LYON FIRM**
2754 Erie Avenue

34

Cincinnati, OH 45208
Phone: (513) 381-2333
Fax: (513) 766-9011
Email: kcox@thelyonfirm.com

Jonathan S. Mann
**PITTMAN, DUTTON, HELLUMS,**
**BRADLEY & MANN, P.C.**
2001 Park Place North, Suite
1100 Birmingham, AL 35203
Phone: (205) 322-8880
jonm@pittmandutton.com

Zachary Arbitman (Bar No. 314274)
**FELDMAN SHEPHERD**
**WOHLGELERNTER TANNER**
**WEINSTOCK DODIG, LLP**
1845 Walnut Street, floor 21
Philadelphia, PA 19103
Phone: 215.567.8300
zarbitman@feldmanshepherd.com

Stephen R. Basser
**BARRACK, RODOS & BACINE**
600 West Broadway, Suite 900
San Diego, CA 92101
Telephone: (619) 230-0800
Facsimile: (619) 230-1874
sbasser@barrack.com

Thiago M. Coelho
**WILSHIRE LAW FIRM, PLC**
3055 Wilshire Blvd., 12th Floor
Los Angeles, CA 90010
T: (213) 381-9988
F: (213) 381-9989
E: thiago@wilshirelawfirm.com

Francesca K. Burne
**MORGAN & MORGAN COMPLEX**
**LITIGATION GROUP**
201 N. Franklin Street, 7th Floor
Tampa, Florida 33602
Phone: (813) 223-5505
fburne@ForThePeople.com

Carl V. Malmstrom
**WOLF HALDENSTEIN ADLER**
**FREEMAN & HERZ LLC**
111 W. Jackson Blvd, Suite 1700
Chicago, Illinois 60604
t: 312-984-0000
malmstrom@whafh.com


Marc H. Edelson
**EDELSON LECHTZIN LLP**
411 S. State Street, Suite N300
Newtown, PA 18940
T: (215) 867-2399
medelson@edelson-law.com

Elizabeth C. Chavez (#6323726)
**FOOTE CHAVEZ LAW, LLC**
1541 E. Fabyan Parkway, Suite 101
Geneva, IL 60134
Telephone: (630) 228-9091
Facsimile: (630) 232-7452
ecc@fmcolaw.com

Danielle L. Perry
**MASON LLP**
5335 Wisconsin Avenue, NW, Suite 640
Washington, DC 20015
Tel: (202) 429-2290
dperry@masonllp.com

***Plaintiffs' Steering Committee Members***

**pro hac vice* granted

## CERTIFICATE OF SERVICE

I, Raina C. Borrelli, hereby certify that on March 12, 2026, I electronically filed the

foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of

such filing to counsel of record, via the ECF system.

DATED this 12th day of March, 2026.

STRAUSS BORRELLI PLLC

By: */s/ Raina C. Borrelli*
    Raina C. Borrelli
    STRAUSS BORRELLI PLLC
    One Magnificent Mile
    980 N. Michigan Ave., Suite 1610
    Chicago, IL 60611
    Telephone: (872) 263-1100
    Facsimile: (872) 263-1109
    raina@straussborrelli.com