**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| IN RE: SET FORTH DATA SECURITY BREACH LITIGATION | Consolidated Case No: 1:24-cv-11688 |
| | Honorable Martha M. Pacold |
| | **PLAINTIFFS' BRIEF IN OPPOSITION TO DEFENDANT SET FORTH, LLC'S MOTION TO COMPEL ARBITRATION** |
| | **JURY TRIAL DEMANDED** |
| | This document relates to: all cases |

# TABLE OF CONTENTS

Factual Background ............................................................................................................ 1

    A.   Plaintiff Joel Bellefeuille ............................................................................ 1

    B.   Plaintiff Janice Adam ................................................................................. 3

Legal Standard ................................................................................................................... 5

Argument ........................................................................................................................... 6

    I.   The Arbitration Provisions Are Invalid Because They Violate JAMS Rules. ................. 6

        A.   Plaintiffs Never Agreed to Arbitrate with Set Forth Because JAMS Will Not Administer the Arbitration. ....................................................................... 6

        B.   The Parties Did Not Agree to Delegate This Issue to the Arbitrator. ...................... 7

        C.   The Offending Provisions Cannot and Should Not Be Severed. ............................. 8

    II.   Plaintiffs Did Not Form an Agreement to Arbitrate with Set Forth. ............................... 9

    III.  There Was No Mutual Assent Because Plaintiffs Did Not Receive Notice. ................... 10

    IV.  The Arbitration Provisions Are Unconscionable. ....................................................... 12

Conclusion ....................................................................................................................... 15

# TABLE OF AUTHORITIES

Cases

*Armendariz v. Found. Health Psychcare Servs., Inc*,
  6 P.3d 669 (Cal. 2000) ................................................................................................... 15

*Blanton v. Domino's Pizza Franchising LLC*,
  962 F.3d 842 (6th Cir. 2020) ............................................................................................. 5

*Bouton v. USAA Casualty Ins. Co.*,
  186 P.3d 1 (Cal. 2008) ...................................................................................................... 9

*Coinbase, Inc. v. Suski*,
  602 U.S. 143 (2024) .............................................................................................. 6, 8, 13

*Costa v. Rd. Runner Sports, Inc.*,
  299 Cal. Rptr. 3d 785 (Cal. Ct. App. 2022) ................................................................ 10, 12

*De La Torre v. CashCall, Inc.*,
  422 P.3d 1004 (Cal. 2018) ............................................................................................... 14

*Dean v. OKCoin USA Inc.*,
  2024 WL 3522207 (N.D. Cal. July 23, 2024) ..................................................................... 8

*Dominguez v. Better Mortg. Corp.*,
  2026 WL 184301 (C.D. Cal. Jan. 20, 2026) ...................................................................... 15

*First Options of Chi., Inc. v. Kaplan*,
  514 U.S. 938 (1995) ........................................................................................................... 5

*Flora v. Prisma Labs, Inc.*,
  2023 WL 5061955 (N.D. Cal. Aug. 8, 2023) .................................................................. 7, 8

*In re T-Mobile 2022 Customer Data Sec. Breach Litig.*,
  No. 4:23-MD-03073-BCW, 2026 WL 493643 (W.D. Mo. Feb. 9, 2026) ....................... 11, 12

*Ins. Co. of N. Am. v. NNR Aircargo Serv. (USA), Inc.*,
  201 F.3d 1111 (9th Cir. 2000) ........................................................................................... 8

*Iravanian v. Translations.com, Inc.*,
  687 F. Supp. 3d 871 (N.D. Cal. 2023) .............................................................................. 15

*Jennings v. Ed. Napleton Elmhurst Imps. Inc.*,
  No. 1:23-cv-14099, 2025 WL 461433 (N.D. Ill. Feb. 11, 2025) .......................................... 5

*Lim v. TForce Logistics, LLC*,
  8 F.4th 992 (9th Cir. 2021) ................................................................................................ 8

*MZ Ventures LLC v. Mitsubishi Motor Sales of Am. Inc.*,
    1999 WL 33597219 (C.D. Cal. Aug. 31, 1999) ...................................................................... 13

*Nguyen v. OKCoin USA, Inc.*,
    2023 WL2095926 (N.D. Cal. Feb. 17, 2023) .......................................................................... 8

*Oberstein v. Live Nation Ent., Inc.*,
    60 F.4th 505 (9th Cir. 2023) ........................................................................................... 10, 11

*Oracle Am., Inc. v. Myriad Grp. A.G.*,
    724 F.3d 1069 (9th Cir. 2013) ............................................................................................... 8

*OTO, L.L.C. v. Kho*,
    447 P.3d 680 (Cal. 2019) ................................................................................................ 13, 14

*Penn v. Ryan's Fam. Steakhouses, Inc.*,
    95 F. Supp. 2d 940 (N.D. Ind. 2000) ................................................................................... 7

*Rent-A-Ctr., W., Inc. v. Jackson*,
    561 U.S. 63 (2010) ................................................................................................................. 5

*Rios v. HRB Digital LLC*,
    807 F. Supp. 3d 975 (N.D. Cal. 2025) ............................................................................... 14

*Ronderos v. USF Reddaway, Inc.*,
    114 F.4th 1080 (9th Cir. 2024) ..................................................................................... 13, 15

*Sanchez v. Valencia Holding Co.*,
    353 P.3d 741 (Cal. 2015) ................................................................................................... 13

*Sellers v. JustAnswer LLC*,
    289 Cal. Rptr. 3d 1 (Cal. App. Ct. 2021) .......................................................................... 9, 10

*Serpa v. Cal. Sur. Investigations, Inc.*,
    *215 C*al. App. 4th 695, 155 Cal. Rptr. 3d 506 (2013).......................................................... 8

*Ting v. AT&T*,
    319 F.3d 1126 (9th Cir. 2003) ............................................................................................ 15

*Young v. Shipt, Inc.*,
    563 F. Supp. 3d 832 (N.D. Ill. 2021) ................................................................................... 5

*Zurich Am. Ins. Co. v. Watts Indus., Inc.*,
    466 F.3d 577 (7th Cir. 2006) ................................................................................................. 5

This case belongs in federal court. It is axiomatic that arbitration agreements must be treated like any other contract. And like any other contract, an agreement to arbitrate cannot be formed under California law without notice and mutual assent. Neither exists here. Defendant Set Forth's attempt to recast the high-pressure situation under which the relevant agreements (the "Forth Agreements") were signed as garden-variety contract formation is unpersuasive. Moreover, the so-called arbitration provisions of the Forth Agreements (the "Arbitration Provisions") mandate arbitration in front of JAMS—yet fall well short of JAMS' minimum standards under which it will administer consumer arbitrations. Plaintiffs did not agree—nor could they have—to an arbitration that cannot occur. Even if the Arbitration Provisions at issue did not fall below JAMS' minimum standards, the facts surrounding their signing show that Plaintiffs did not assent to the Arbitration Provisions. Finally, the multiple facially unfair terms therein and the coercive circumstances under which they were signed render them—including any purported delegation clause—both procedurally and substantively unconscionable. Whether styled as an issue of formation or of enforceability, this is an issue for the Court, and the Court cannot compel Plaintiffs to arbitrate.

## FACTUAL BACKGROUND

### A.    Plaintiff Joel Bellefeuille

On or around January 31, 2023, Defendants contend that Plaintiff Joel Bellefeuille was presented with several agreements, including an arbitration agreement, allegedly between Bellefeuille and Alleviate Financial Solutions, LLC, Sentry Legal Plan, LLC, and FORTH, Inc. Bellefeuille Decl. ¶ 5. Bellefeuille has no recollection of reviewing or signing the January 2023 set of agreements and does not recall being presented with, reviewing, or agreeing to any arbitration provision at that time. *Id.* ¶¶ 6–7. The Clixsign Completion Certificate's timestamp

indicates that Plaintiff Bellefeuille signed or initialed this first set of agreements, which included the Forth Agreement, in fourteen places in no more than two minutes. Anderlick Decl., Ex. A.

Although he does not recall the first set of agreements, he distinctly recalls a second set. Bellefeuille Decl. ¶¶ 8–15. On or around January 10, 2024, Bellefeuille was presented with a second set of documents from a representative of Cordoba Legal Group, LLC. ("Cordoba"). *Id.* ¶ 9. The agreements were sent electronically while he was on the phone with the Cordoba, and he was not provided with physical copies. *Id.* To the best of his knowledge and recollection, Bellefeuille signed the January 2024 documents while he remained on the phone with the Cordoba representative. *Id.* ¶ 11. Bellefeuille recalls that he signed the January 2024 documents using an online document signing program, which automatically scrolled to each signature or initial point in the document without giving him an opportunity to read the text before or after. *Id.* ¶ 10. During that call, he requested additional time to review the documents before signing them, but his request was denied. *Id.* ¶ 12. Instead, he was rushed through the signing process, encouraged to click through the agreements, and viewed them for approximately two minutes while on the phone with a representative from Cordoba. *Id.* ¶¶ 10–12. The Clixsign Completion Certificate's timestamp shows Bellefeuille signed this second set of agreements, which included the Forth Agreement, four times in one minute and forty-two seconds. Anderlick Decl., Ex. B.

During the call, the representative pressured him to sign quickly, stating, "if you don't sign these, we won't be able to settle your debts," assured him, "we are lawyers," and that he would be "taken care of." Bellefeuille Decl. ¶¶ 11–12. At no time did anyone explain that the documents contained an arbitration agreement or that, by signing, he would be waiving his right to pursue claims in court. *Id.* ¶¶ 13–15. Bellefeuille was not aware that the documents he was asked to sign contained an arbitration provision. *Id.* ¶ 14. He recalls the circumstances surrounding his review

of the January 2024 documents—being presented with the documents through an auto-scrolling program while simultaneously on a call with a Cordoba representative—specifically because he felt immense pressure to quickly sign them. *Id.* ¶¶ 10–12.

At the time, Bellefeuille was caring for his 89-year-old father, who had been diagnosed with dementia, and had recently gone through a divorce that left him financially destitute. *Id.* ¶ 7. Under these circumstances, he felt he had no choice but to sign the agreements sent by Cordoba. *Id.* ¶ 12. According to Bellefeuille, had he understood that he was agreeing to arbitrate disputes or waive his right to bring claims in court, he would not have signed without additional time to review them and, if necessary, seeking legal advice. *Id.* ¶ 15.

## B.    Plaintiff Janice Adam

On or around August 2023, Plaintiff Janice Adam engaged with Cordoba to assist in settling her outstanding debts. Adam Decl. ¶ 6. At the time, she was desperate for a solution that would allow her to get her outstanding debts under control. *Id.* On or around September 15, 2023, Adam spoke with a Cordoba representative on the phone and was presented with documents to sign, including the Forth Agreement. Anderlick Decl. ¶ 10; Adam Decl. ¶¶ 6–7. Adam was presented with the Forth Agreement electronically, through a link that was emailed to her, which opened an online document signing program. *Id.* ¶ 7. She was not presented with physical documents. *Id.* Adam was on the phone when she received the Forth Agreement from Cordoba and while she was attempting to review and sign the documents. *Id.* ¶¶ 7–8. To the best of her recollection, when Adam opened the link containing the Forth Agreement, the document-signing program automatically scrolled directly to the first signature line in the document, such that she did not have an opportunity to review the preceding portions of the Forth Agreement, and then

automatically scrolled to the second signature point. *Id.* ¶ 7. Adam does not recall seeing the name "Set Forth" or "Forth" at any point. *Id.* ¶¶ 7, 10.

During the call, the Cordoba representative pressured Adam to sign quickly and warned that, if she did not sign promptly, Cordoba would be unable to assist her with her debts. *Id.* ¶ 8. Plaintiff Adam took two-and-a-half minutes to sign the Forth Agreement on September 15, 2023, Anderlick Decl. at Ex. C, and around thirty seconds to sign the subsequent versions. *Id.* at Exs. D & E. Set Forth did not provide any documentation of what else Cordoba may have required Plaintiff Adam to sign in that time. *Id.* At no time did anyone explain to Adam that the Forth Agreement contained an arbitration agreement or that she would be waiving her right to pursue claims in court. Adam Decl. ¶¶ 9–10. Adam was not aware that the documents she was asked to sign contained an arbitration provision. *Id.* ¶ 10. Adam recalls feeling immense pressure to quickly sign the Forth Agreement. *Id.* ¶ 8.

Immediately following the phone call where she signed the Forth Agreement, Adam felt uneasy and concerned that she had been taken advantage of because she realized she had not had a chance to review the contents of the Forth Agreement the Cordoba representative had urged her to sign. *Id.* ¶ 11–12. This feeling of uneasiness persisted, and in the coming months, Adam twice tried to terminate her relationship with Cordoba, first on or around November 18, 2023, and then on or around January 10, 2024. *Id.* ¶¶ 12–19. Instead of heeding her request, a Cordoba representative on both occasions induced Adam to simply change the payment terms and once again sent her Forth Agreements in a link via email, along with other documents. *Id.* Like before, Adam remained on the phone with the Cordoba representative as she signed the Forth Agreements, which were presented with the same document signing program that operated the same way. *Id.* Because the document-signing program automatically scrolled to the signature lines of the Forth

4

Agreements, and the Cordoba representative remained on the phone, pressuring her to sign, Adam remained ignorant of the contents of the Forth Agreements, including the arbitration provision. *Id.* ¶¶ 13–16, 18–19. According to Adam, had she understood she was agreeing to arbitrate disputes or waive her right to bring claims in court, she would not have signed without additional time to review them and, if necessary, seeking legal advice. *Id.* ¶¶ 11, 21.

## LEGAL STANDARD

The party moving to compel arbitration—here, Set Forth—bears the initial burden of establishing both the existence of a valid agreement to arbitrate and that the agreement encompasses the dispute at issue. *Zurich Am. Ins. Co. v. Watts Indus., Inc.*, 466 F.3d 577, 580 (7th Cir. 2006). Only if Set Forth satisfies that threshold showing does the burden shift to Plaintiffs to demonstrate that the arbitration provision should not be enforced. *See Young v. Shipt, Inc.*, 563 F. Supp. 3d 832, 836 (N.D. Ill. 2021). "Courts review motions to compel arbitration under a summary judgment standard, meaning they may consider evidence beyond the pleadings but must accept the complaint's allegations as true and draw all justifiable inferences in the non-movant's favor." *Jennings v. Ed. Napleton Elmhurst Imps. Inc.*, No. 1:23-cv-14099, 2025 WL 461433, at *3 (N.D. Ill. Feb. 11, 2025) (cleaned up). "If the party opposing arbitration identifies 'a triable issue of fact concerning the existence of the arbitration agreement,' then the motion to compel must be denied." *Id.* at *3 (citation omitted).

Whether an arbitration agreement was formed is determined by ordinary state law principles of contract formation. *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 944 (1995). All questions of arbitrability are for the Court unless the parties clearly and unmistakably delegate that issue to the arbitrator. *Rent-A-Ctr., W., Inc. v. Jackson*, 561 U.S. 63, 69 (2010); *Blanton v. Domino's Pizza Franchising LLC*, 962 F.3d 842, 844–45 (6th Cir. 2020).

**ARGUMENT**

## I.     The Arbitration Provisions Are Invalid Because They Violate JAMS Rules.

Before referring a dispute to arbitration, courts must determine "whether a valid arbitration agreement exists." *Coinbase, Inc. v. Suski*, 602 U.S. 143, 148 (2024). Contrary to Set Forth's argument, Plaintiffs never agreed to arbitrate with Set Forth because the Arbitration Provisions mandate arbitration before JAMS, yet fall short of JAMS' Consumer Arbitration Minimum Standards ("JAMS Minimum Standards"). JAMS will not administer an arbitration under an agreement that falls short of the JAMS Minimum Standards. Because the parties could not have agreed to an arbitration that cannot occur, the parties never formed an agreement to arbitrate at all.

### A.     Plaintiffs Never Agreed to Arbitrate with Set Forth Because JAMS Will Not Administer the Arbitration.

JAMS is explicit: It "will administer arbitrations pursuant to mandatory pre-dispute arbitration clauses between companies and consumers *only if* the contract arbitration clause and specified applicable rules comply with" certain "minimum standards of fairness[,]" including the following:

- "[N]o party shall be precluded from seeking remedies in small claims court for disputes or claims within the scope of its jurisdiction."
- "The consumer must be given notice of the arbitration clause. Its existence, terms, conditions and implications must be clear."
- "The consumer's access to arbitration must not be precluded by the location of the arbitration."
- "With respect to the cost of the arbitration, when a consumer initiates arbitration against the company, the only fee required to be paid by the consumer is $250, which is approximately equivalent to current court filing fees. All other costs must be borne by the company, including any remaining JAMS Filing Fee, Case Management Fee and all professional fees for the arbitrator's services. When the company is the claiming party initiating an arbitration against the consumer, the company will be required to pay all costs associated with the arbitration."

*JAMS Policy on Consumer Arbitrations Pursuant to Pre-Dispute Clauses Minimum Standards of Procedural Fairness*, JAMS, https://www.jamsadr.com/consumer-minimum-standards (last updated May 1, 2024) (emphasis added).

The Arbitration Provisions fall short of each of the above-listed standards. *First*, the Arbitration Provisions contain no small-claims carveout. Anderlick Decl., Ex. A § 16. *Second*, as explained below, Plaintiffs were not given notice of the Arbitration Provisions. *See* Section III, *infra*. *Third*, the Arbitration Provisions provide that arbitration must occur in San Diego County, California—no matter where the plaintiff lives. Anderlick Decl., Ex. A § 16. The Seventh Circuit has found that an arbitration agreement not providing that "arbitration will take place in a location convenient to [plaintiffs] . . . would impose a severe hardship on any plaintiff" and "provide[d] . . . evidence of the promulgation of biased rules." *Penn v. Ryan's Fam. Steakhouses, Inc.*, 95 F. Supp. 2d 940, 948–49 (N.D. Ind. 2000), *aff'd sub nom. Penn v. Ryan's Fam. Steak Houses, Inc.*, 269 F.3d 753 (7th Cir. 2001). *Finally*, under the Arbitration Provisions, "all administrative and arbitration fees and costs, including the arbitrator's fees, shall be split equally between [the Parties]." Anderlick Decl., Ex. A § 16.

Any one of these flaws would be independently fatal. Here, there are four, and JAMS would not administer an arbitration under these Arbitration Provisions. Because "[t]he parties cannot have agreed to an arbitration before JAMS that JAMS will not hear[,]" the inescapable conclusion is that "there was no meeting of the minds as to the arbitration provision[.]" *Flora v. Prisma Labs, Inc.*, 2023 WL 5061955, at *4 (N.D. Cal. Aug. 8, 2023).

### B. The Parties Did Not Agree to Delegate This Issue to the Arbitrator.

"[U]nlike the arbitrability of claims in general, whether the court or the arbitrator decides arbitrability is an issue for judicial determination unless the parties clearly and unmistakably

7

provide otherwise." *Oracle Am., Inc. v. Myriad Grp. A.G.*, 724 F.3d 1069, 1072 (9th Cir. 2013) (citation omitted). When a challenge applies equally to the delegation clause and the whole agreement, it is for the courts—not the arbitrator—to decide. *See Suski*, 602 U.S. at 144. Courts have voided delegation clauses under similar circumstances. In *Nguyen v. OKCoin USA, Inc.*, like here, the arbitration agreement, made "no allowance for claims to be brought in small claims court," "require[d] that the parties split the JAMS arbitrator fees and expenses equally," and mandated that arbitration must occur in a specific part of California. 2023 WL 2095926, at *3 (N.D. Cal. Feb. 17, 2023). Because the agreement at issue did not meet the Minimum Standards, the court determined "arbitration before JAMS is not available, rendering any delegation clause to JAMS effectively void." *Id.* (*citing Ins. Co. of N. Am. v. NNR Aircargo Serv. (USA), Inc.*, 201 F.3d 1111, 1114 (9th Cir. 2000)); *see also, e.g.*, *Dean v. OKCoin USA Inc.*, 2024 WL 3522207 (N.D. Cal. July 23, 2024) (similar).

### C. The Offending Provisions Cannot and Should Not Be Severed.

If the Court agrees with Plaintiffs—as it should—that the Arbitration Provisions fail to comply with the JAMS Minimum Standards, this Court also should deny any request by Set Forth to sever the offending terms because the arbitration agreements at issue here are "permeated by unconscionability." *Dean*, 2024 WL 3522207, at *6 (citation omitted); *see also Flora*, 2023 WL 5061955, at *7 (similar). Because, as explained below, the Arbitration Provisions contain "multiple unlawful terms that render [them] 'tainted with illegality[,]'" California law does not allow severance to the remaining terms. *See Flora*, 2023 WL 5061955, at *7 (citing *Lim v. TForce Logistics, LLC*, 8 F.4th 992, 1006 (9th Cir. 2021)); *see also, e.g.*, *Serpa v. Cal. Sur. Investigations, Inc.*, 215 Cal. App. 4th 695, 710, 155 Cal. Rptr. 3d 506 (2013) (noting that an offending provision may be severed only when "the arbitration agreement is not otherwise permeated by

unconscionability" and "the offending provision . . . is plainly collateral to the main purpose of the contract").

## II. Plaintiffs Did Not Form an Agreement to Arbitrate with Set Forth.

Even setting aside the JAMS Minimum Standards issue, Set Forth cannot carry its burden to show that Plaintiffs formed a binding agreement to arbitrate the claims at issue in this case. Set Forth concedes that the agreements were presented to the Plaintiffs by third parties and that Plaintiffs did not even realize they were forming an agreement with Set Forth itself. Indeed, Set Forth's own declarant admits that "Debt Relief Service Providers" ("DSRPs") "send[] . . . the documents necessary to formalize [the consumer's] relationship" with Set Forth and the DSRP, including the Forth Agreement. Anderlick Decl. ¶ 5. While the DSRP Agreement and Forth Agreement are sent "from within the Forth Platform," through which Set Forth's Clixsign software generates a "Completion Certificate" (little more than a timestamp), *id.* ¶¶ 5–6, Set Forth does not and cannot know under what circumstances the DSRP using the Forth Platform induces any consumer to sign them. Set Forth knows nothing about how these agreements were presented to Plaintiffs, including whether they were given time to review the agreements, what they were told about the agreements, and what they were told would be the consequences of failing to sign these agreements. Because of this lack of knowledge, Set Forth cannot credibly claim that the agreements presented to Plaintiffs are valid and enforceable under California law.

These factual issues necessarily affect whether the parties formed a contract. "[A] trial court has no power to order parties to arbitrate a dispute that they did not agree to arbitrate." *Sellers v. JustAnswer LLC*, 289 Cal. Rptr. 3d 1, 13 (Cal. App. Ct. 2021) (quoting *Bouton v. USAA Casualty Ins. Co.*, 186 P.3d 1, 9 (Cal. 2008)). And because, as Set Forth acknowledges, Cordoba Legal

Group ("Cordoba") was responsible[1] for causing the Forth Platform to send both its agreement (the "Cordoba Agreement") and the Forth Agreement (together, the "Agreements") and obtaining Plaintiffs' signatures, Cordoba's conduct determines whether both Agreements meet the elements of a contract. Anderlick Decl. ¶¶ 5, 8–10. Set Forth's elision of these crucial questions seeks to mask that Cordoba obtained Plaintiffs' signatures through improper pressure tactics that prevented notice.

### III. There Was No Mutual Assent Because Plaintiffs Did Not Receive Notice.

As Plaintiffs attest, Cordoba took knowing advantage of their significant financial distress and personal circumstances to create an environment where Plaintiffs felt pressured into signing the Forth Agreements without reading them. Both Plaintiffs recall that they were sent the Forth Agreements while on the phone with representatives from Cordoba and that these Cordoba representatives then urged them to quickly sign the agreements while the website auto-scrolled from signature to signature.

"To form a contract under California [] law, there must be actual or constructive notice of the agreement and the parties must manifest mutual assent." *Oberstein v. Live Nation Ent., Inc.*, 60 F.4th 505, 512–13 (9th Cir. 2023). Courts assess mutual assent by objectively examining "the outward manifestations or expressions of the parties, i.e., the reasonable meaning[s] of their words and acts[;] . . . [i]f there is no evidence establishing a manifestation of assent to the 'same thing' by *both* parties, then there is no mutual consent to contract and no contract formation." *Costa v. Rd. Runner Sports, Inc.*, 299 Cal. Rptr. 3d 785, 794 (Cal. Ct. App. 2022) (quoting *Sellers*, 289 Cal.

---

[1] Set Forth's declaration and attached exhibits indicate that Plaintiff Bellefeuille first signed a Forth Agreement facilitated by an entity called "Alleviate Financial Solutions." Anderlick Decl. ¶ 8. But Plaintiff Bellefeuille cannot recall any of the circumstances of when he signed this version of the Forth Agreement, in part because of the significant stress created by his personal circumstances. Bellefeuille Decl. ¶¶ 6–7. The dispute of fact over even the relevant parties precludes the Court from compelling arbitration as to Plaintiff Bellefeuille.

Rptr. 3d at 13). While "[f]ailure to read the terms of a contract is generally not a defense," when one contracting party "thwarted" the plaintiffs' "attempts to read the contract," there can be "no mutual assent because Plaintiffs lacked notice of the terms." *In re T-Mobile 2022 Customer Data Sec. Breach Litig.*, No. 4:23-MD-03073-BCW, 2026 WL 493643, at *15 (W.D. Mo. Feb. 9, 2026) (citing *Oberstein* in finding material dispute of fact existed as to whether plaintiffs assented to terms where plaintiffs were not given opportunity to review agreements containing arbitration clauses on their own time).

There was no mutual assent here. As Set Forth concedes, the Arbitration Provisions were presented to Plaintiffs by third parties, and Plaintiffs did not realize they were entering into an agreement with Set Forth. Cordoba employees did not explain the contents the documents they asked Plaintiffs to sign or that the Forth Agreement contained an arbitration clause; indeed, neither Plaintiff was aware of the Arbitration Provisions until Set Forth filed this Motion to Compel. Bellefeuille Decl. ¶¶ 14, 17; Adam Decl. ¶¶ 10, 17, 23. Cordoba took knowing advantage of Plaintiffs' significant financial distress and personal circumstances to create an environment wherein they felt pressured into signing the agreements quickly and without reviewing their contents. Bellefeuille Decl. ¶¶ 8, 11–12; Adam Decl. ¶¶ 6–8, 13–15, 18–19. Both Plaintiffs had described their financial distress and personal hardships to Cordoba employees, and both recall that Cordoba employees told them they would not be able to help them unless they signed the agreements immediately. Bellefeuille Decl. ¶¶ 7–8, 11–12; Adam Decl. ¶¶ 6–7. As discussed above, the Clixsign Completion Certificates in Set Forth's exhibits corroborate Plaintiffs' descriptions of the time pressure to which Cordoba subjected them. A Cordoba employee refused to allow Bellefeuille additional time to review the Agreements when he requested it. Bellefeuille Decl. ¶ 12. Adam states that she felt confused as to what she had just agreed to immediately

11

following the phone call with Cordoba and felt deceived as to the terms of the Forth Agreement. Adam Decl. ¶ 12.

Further, Set Forth's Clixsign program impeded Plaintiffs from reviewing the agreements. Where, as here, Plaintiffs are shown agreements through auto-scroll signature programs, they "may not have been given a reasonable opportunity to review the terms and, consequently, lacked notice of the arbitration clause." *T-Mobile*, 2026 WL 493643 at *16. Plaintiffs both describe receiving email invitations to sign the agreements while on the phone with Cordoba employees and remaining on the phone with those employees as they signed. Bellefeuille Decl. ¶¶ 9–11; Adam Decl. ¶¶ 7–8, 14–15, 19. Both Plaintiffs describe that, upon clicking the links emailed to them, they were presented with an application that auto-scrolled to the agreements' signature pages without displaying the terms the agreements contained, including the Arbitration Provisions. Bellefeuille Decl. ¶ 10; Adam Decl. ¶¶ 7, 14, 19. As Set Forth's exhibits demonstrate, the two signature lines on the Forth Agreement are multiple pages before and after the Arbitration Provisions, such that the provision would not have been visible when Plaintiffs were directed to the signature lines. Anderlick Decl., Exs. A–E.

Plaintiffs describe two tactics—pressure from Cordoba representatives and auto-scrolling signature software—that courts have recognized as sufficient to create a factual dispute about assent. *See T-Mobile*, 2026 WL 493643 at *15–17. These tactics, combined with the fact that Plaintiffs signed lengthy, complex Agreements in mere minutes, preclude Set Forth from establishing mutual assent as a matter of law. *See Costa*, 299 Cal. Rptr. 3d at 794.

## IV.    The Arbitration Provisions Are Unconscionable.

Even if the parties had formed an agreement arbitrate, the Arbitration Provisions (and the delegation provision purportedly incorporated therein) would still be unenforceable because they

are unconscionable.[2] Under California law, a contract is procedurally unconscionable "if one of the parties lacked a meaningful choice in deciding whether to agree" and substantively unconscionable if "the contract contains terms that are unreasonably favorable to the other party." *OTO, L.L.C. v. Kho*, 447 P.3d 680, 689 (Cal. 2019). "[T]he higher the degree of procedural unconscionability, 'the less substantive unfairness is required.'" *Ronderos v. USF Reddaway, Inc.*, 114 F.4th 1080, 1089 (9th Cir. 2024) (quoting *OTO*, 447 P.3d at 689–90). "The overarching question in all unconscionability cases is 'whether the terms of the contract are sufficiently unfair, in view of all relevant circumstances, that a court should withhold enforcement.'" *Id.* (quoting *Sanchez v. Valencia Holding Co.*, 353 P.3d 741, 749 (Cal. 2015)). Here, the answer to that question is an emphatic yes. And because "the central purpose of the contract is tainted with illegality," the unconscionable terms cannot be severed. *Id.* at 1099–1100.

### 1. The Arbitration Provisions Are Procedurally Unconscionable.

Procedural unconscionability "focuses on the circumstances" surrounding an agreement. *MZ Ventures LLC v. Mitsubishi Motor Sales of Am. Inc.*, 1999 WL 33597219 at *10 (C.D. Cal. Aug. 31, 1999). Where, as here, the agreement is one of adhesion,[3] courts look for "oppression" and "surprise," *id.*, to determine if "closer scrutiny of [the agreement's] overall fairness is required," *OTO*, 447 P.3d 680 at 690. Both are present here.

In *OTO*, the Supreme Court of California found an employment agreement to be highly procedurally unconscionable where, among other things: (1) the plaintiff had to sign the agreement to keep his existing job; (2) the defendant did not explain the agreement and assigned a low-level

---

[2] The unconscionability challenge to the Arbitration Provisions applies equally to the delegation clause, meaning this Court must consider it. *See Suski*, 602 U.S. at 148–49.

[3] "An adhesive contract is standardized, generally on a preprinted form, and offered by the party with superior bargaining power 'on a take-it-or-leave-it basis.'" *OTO*, 447 P.3d 680 at 690. Defendants admit that "Bellefeuille and Adam's [Forth] Agreements are identical in substance and each contain the same arbitration clause." Mot. at 2.

employee to supervise its signature; (3) the low-level employee "wait[ed] for the documents," thereby "convey[ing] an expectation that [plaintiff] sign them immediately," without consulting counsel; (4) "[the defendant] conveyed the impression that negotiation efforts would be futile[;]" and (5) the plaintiff did not receive a copy of the signed agreement. *Id.* at 691.

The facts here are materially the same: (1) Plaintiffs were required to sign the Forth Agreement to obtain the debt relief services they were promised; (2) Cordoba did not explain why the Forth Agreement was necessary to those services and discouraged Plaintiffs from reading it; (3) a Cordoba employee waited on the phone as Plaintiffs signed the Forth Agreement; and (4) at no point did Cordoba indicate Plaintiffs could negotiate the terms (by having Plaintiffs sign an agreement with a third party, Cordoba "conveyed the impression that negotiation efforts would be futile," *OTO*, 447 P.3d 680 at 691. Here, as in *OTO*, Plaintiffs signed the Forth Agreement under "significant oppression." *Id.*

The Arbitration Provisions also create unfair surprise. First, Plaintiffs faced "pressure to hurry and sign." *De La Torre v. CashCall, Inc.*, 422 P.3d 1004, 1014 (Cal. 2018). Second, the provision was not visible when Plaintiffs signed with the auto-scrolling software. And "the *content of the clause*"—here, incorporation of JAMS rules for arbitration terms below the JAMS Minimum Standards, *see* Section I, *supra*—"is not something an ordinary consumer would expect." *Rios v. HRB Digital LLC*, 807 F. Supp. 3d 975, 986 (N.D. Cal. 2025) (inclusion of unconscionable complex bellwether arbitration scheme in labelled arbitration clause nonetheless comprised "substantial obstructive hurdle"). Combined with the highly oppressive circumstances, this unfair surprise renders it "virtually impossible" to conclude that Plaintiffs voluntarily agreed to arbitration. *See OTO*, 447 P.3d 680 at 693 (cleaned up).

14

#### 2. *The Arbitration Provisions Are Substantively Unconscionable.*

Where, as here, an arbitration provision has a high degree of procedural unconscionability, only a minimal showing of substantive unfairness is required. *See Ronderos*, 114 F.4th at 1089.

**Forum selection.** A forum-selection clause is substantively unconscionable if "the forum selected would be unavailable or unable to accomplish substantial justice." *Iravanian v. Translations.com, Inc.*, 687 F. Supp. 3d 871, 879 (N.D. Cal. 2023) (cleaned up). Here, the Arbitration Provisions mandate arbitration before JAMS, which is a type of forum-selection clause. But, as explained above in Section I, JAMS would not administer this arbitration because the Arbitration Provisions do not meet the JAMS Minimum Standards, so the "forum selected [is] unavailable." *Id.*

**Cost-splitting.** The Arbitration Provisions require "all administrative and arbitration fees and costs . . . be split equally" between the parties. Anderlick Decl., Ex. A § 16. Under California law, "provisions requiring the parties to evenly split arbitration costs are unconscionable." *Dominguez v. Better Mortg. Corp.*, 2026 WL 184301, at *14 (C.D. Cal. Jan. 20, 2026); *see also, e.g., Ting v. AT&T*, 319 F.3d 1126, 1151 (9th Cir. 2003) (fee-splitting scheme in consumer contract was unconscionable under California law "because it imposes on some consumers costs greater than those a complainant would bear if [they] would file the same complaint in court" (citing *Armendariz v. Found. Health Psychcare Servs., Inc.*, 6 P.3d 669, 687 (Cal. 2000))).

Because the Arbitration Provisions are both procedurally and substantively unconscionable and cannot be severed, *see* Section I.C., *supra*, the Arbitration Provisions and the incorporated delegation provision are unenforceable.

### CONCLUSION

Set Forth's Motion to Compel Arbitration should be denied.

DATED: March 12, 2026

Respectfully submitted,

By: */s/ Raina C. Borrelli*

**STRAUSS BORRELLI PLLC**
RAINA C. BORRELLI
980 N. Michigan Ave., Suite 1610
Chicago, IL 60611
Telephone: (872) 263-1100
Facsimile: (872) 263-1109
raina@strausborrelli.com

**MILBERG COLEMAN BRYSON
PHILLIPS GROSSMAN LLC**
GARY M. KLINGER
227 W. Monroe Street, Suite 2100
Chicago, IL 60606
Telephone: 866/252-0878
gklinger@milberg.com

**TYCKO & ZAVAREEI LLP**
SABITA J. SONEJI
1970 Broadway, Suite 1070
Oakland, CA 94612
Telephone: 510/254-6808
ssoneji@tzlegal.com

***Plaintiffs' Interim Co-Lead Counsel***

Leigh S. Montgomery (pro hac vice)
**EKSM, LLP**
4200 Montrose, Ste. 200
Houston, Texas 77006
Phone: (888) 350-3931
Fax: (888) 276-3455
lmontgomery@eksm.com

Jeff Ostrow
**KOPELOWITZ OSTROW P.A.**
One West Las Olas Blvd., Suite 500
Fort Lauderdale, FL 33301
Tel: 954.332.4200
ostrow@kolawyers.com

Terence R. Coates
**MARKOVITS, STOCK & DEMARCO,**

16

LLC
119 E. Court Street, Suite 530
Cincinnati, OH 45202
Phone: (513) 651-3700
Fax: (513) 665-0219
tcoates@msdlegal.com

J. Gerard Stranch, IV*
**STRANCH, JENNINGS & GARVEY,
PLLC**
223 Rosa L. Parks Ave., Suite 200
Nashville, TN 37203
Tel: (615) 254-8801
gstranch@stranchlaw.com

Lori G. Feldman
**GEORGE FELDMAN McDONALD,
PLLC**
102 Half Moon Bay Drive
Croton-on-Hudson, NY 10520
Tel: (917) 983-9321
lfeldman@4-justice.com

M. Anderson Berry
**CLAYEO C. ARNOLD A
PROFESSIONAL CORPORATION**
865 Howe Avenue
Sacramento, CA 95825
Telephone: (916) 239-4778
Fax: (916) 924-1829
aberry@justice4you.com

Amber L. Schubert*
**SCHUBERT JONCKHEER & KOLBE
LLP**
2011 Union St., Suite 200
San Francisco, CA 94123
Telephone: (415) 788-4220
Facsimile: (415) 788-0161
aschubert@sjk.law

Charles E. Schaffer
**LEVIN SEDRAN & BERMAN LLP**
510 Walnut Street, Suite 500
Philadelphia, PA 19106
Tel: (215) 592-1500

cschaffer@lfsblaw.com

Ian J. Engdahl*
**HAUSFELD LLP**
1200 17th Street, N.W., Suite 600
Washington, DC 20036
Tel.: (202) 540-7200
iengdahl@hausfeld.com

Thomas A. Zimmerman, Jr. (IL #6231944)
**ZIMMERMAN LAW OFFICES, P.C.**
77 W. Washington Street, Suite 1220
Chicago, Illinois 60602
Tel: (312) 440-0020
Fax: (312) 440-4180
tom@attorneyzim.com

***Executive Committee Members***


Daniel Srourian
**SROURIAN LAW FIRM, P.C.**
468 N. Camden Dr., Suite 200
Beverly Hills, California 90210
Telephone: (213) 474-3800
Facsimile: (213) 471-4160
Email: daniel@slfla.com

Leanna A. Loginov, Esq.
lloginov@shamisgentile.com
**SHAMIS & GENTILE P.A.**
14 NE 1st Ave., Suite 705
Miami, Florida 33132
Tel: (305) 479-2299

Kevin Cox
**THE LYON FIRM**
2754 Erie Avenue
Cincinnati, OH 45208
Phone: (513) 381-2333
Fax: (513) 766-9011
Email: kcox@thelyonfirm.com

Jonathan S. Mann
**PITTMAN, DUTTON, HELLUMS,
BRADLEY & MANN, P.C.**

18

2001 Park Place North, Suite
1100 Birmingham, AL 35203
Phone: (205) 322-8880
jonm@pittmandutton.com

Zachary Arbitman (Bar No. 314274)
**FELDMAN SHEPHERD
WOHLGELERNTER TANNER
WEINSTOCK DODIG, LLP**
1845 Walnut Street, floor 21
Philadelphia, PA 19103
Phone: 215.567.8300
zarbitman@feldmanshepherd.com

Stephen R. Basser
**BARRACK, RODOS & BACINE**
600 West Broadway, Suite 900
San Diego, CA 92101
Telephone: (619) 230-0800
Facsimile: (619) 230-1874
sbasser@barrack.com

Thiago M. Coelho
**WILSHIRE LAW FIRM, PLC**
3055 Wilshire Blvd., 12th Floor
Los Angeles, CA 90010
T: (213) 381-9988
F: (213) 381-9989
E: thiago@wilshirelawfirm.com

Francesca K. Burne
**MORGAN & MORGAN COMPLEX
LITIGATION GROUP**
201 N. Franklin Street, 7th Floor
Tampa, Florida 33602
Phone: (813) 223-5505
fburne@ForThePeople.com

Carl V. Malmstrom
**WOLF HALDENSTEIN ADLER
FREEMAN & HERZ LLC**
111 W. Jackson Blvd, Suite 1700
Chicago, Illinois 60604
t: 312-984-0000
malmstrom@whafh.com

19

Marc H. Edelson
**EDELSON LECHTZIN LLP**
411 S. State Street, Suite N300
Newtown, PA 18940
T: (215) 867-2399
medelson@edelson-law.com

Elizabeth C. Chavez (#6323726)
**FOOTE CHAVEZ LAW, LLC**
1541 E. Fabyan Parkway, Suite 101
Geneva, IL 60134
Telephone: (630) 228-9091
Facsimile: (630) 232-7452
ecc@fmcolaw.com

Danielle L. Perry
**MASON LLP**
5335 Wisconsin Avenue, NW, Suite 640
Washington, DC 20015
Tel: (202) 429-2290
dperry@masonllp.com

***Plaintiffs' Steering Committee Members***

*pro hac vice* granted

<u>**CERTIFICATE OF SERVICE**</u>

I, Raina C. Borrelli, hereby certify that on March 12, 2026, I electronically filed the

foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of

such filing to counsel of record, via the ECF system.

DATED this 12th day of March, 2026.

STRAUSS BORRELLI PLLC

By: _/s/ Raina C. Borrelli_
    Raina C. Borrelli
    STRAUSS BORRELLI PLLC
    One Magnificent Mile
    980 N. Michigan Ave., Suite 1610
    Chicago, IL 60611
    Telephone: (872) 263-1100
    Facsimile: (872) 263-1109
    raina@straussborrelli.com