**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

|  |  |  |
|---|---|---|
|  | ) | |
|  | ) | |
|  | ) | |
|  | ) | |
| IN RE: SET FORTH DATA SECURITY | ) | Consolidated Case No: 1:24-cv-11688 |
| BREACH LITIGATION | ) | |
|  | ) | |
|  | ) | Honorable Martha M. Pacold |
|  | ) | |
|  | ) | |
|  | ) | |

**REPLY IN FURTHER SUPPORT OF**
**<u>DEFENDANTS' MOTION TO DISMISS</u>**

**TABLE OF CONTENTS**

INTRODUCTION .................................................................................................................... 1

ARGUMENT ......................................................................................................................... 1

    I.     Plaintiffs Offer No Reason To Keep Centrex In This Case .................................... 1

    II.    Plaintiffs Fail to Salvage their Negligence Claim .................................................. 2

          A. Plaintiffs' Negligence Allegations are Conclusory ........................................... 3

          B. The Economic Loss Doctrine Also Bars Plaintiffs' Negligence Claims ........... 4

    III.    Plaintiffs' Implied Contract Claim Should Be Dismissed ..................................... 4

          A. Plaintiffs Do Not Plausibly Allege Mutual Assent ........................................... 4

          B. Plaintiffs Do Not Plausibly Allege Damages ..................................................... 6

    IV.    Plaintiffs' Unjust Enrichment Claim Should be Dismissed ................................... 8

    V.    Plaintiffs' Declaratory Judgment Claim Should be Dismissed .............................. 9

    VI.    Plaintiff Ewing's ICFA Claim Should be Dismissed .......................................... 10

    VII.    Plaintiff Ewing's IUDTA Claim Should be Dismissed ....................................... 12

    VIII.    Plaintiffs Meza and Adam's CCPA Claim Fails .................................................. 13

    IX.    Plaintiffs Meza and Adams Fail to Support Their CCRA Claim .......................... 14

    X.    Plaintiffs Meza and Adam Fail to State a UCL Claim ......................................... 15

CONCLUSION ..................................................................................................................... 20

## TABLE OF AUTHORITIES

**Cases**

*Adobe Sys. Inc. v. Blue Source Grp., Inc.*,
125 F. Supp. 3d 945 (N.D. Cal. 2015) ...................................................................................... 16

*Anderson v. Kimpton Hotel & Rest. Grp., LLC*,
No. 19-CV-01860-MMC, 2019 WL 3753308 (N.D. Cal. Aug. 8, 2019) ................................... 3

*Arroyo v. Baldwin*,
No. 19-CV-0027-NJR, 2019 WL 2357307 (S.D. Ill. June 4, 2019) .......................................... 2

*Brown v. State Farm Mut. Auto. Ins. Co.*,
No. 23 C 6065, 2025 WL 81340 (N.D. Ill. Jan. 13, 2025) ........................................................ 8

*Dfinity USA Res. LLC v. Bravick*,
No. 22-cv-03732-EJD, 2023 WL 2717252 (N.D. Cal. Mar. 29, 2023) ................................... 15

*Diamond Multimedia Sys., Inc. v. Superior Court*,
19 Cal.4th 1036 (Cal. 1999) .................................................................................................... 15

*Dieffenbach v. Barnes & Nobel, Inc.*,
887 F.3d 826 (7th Cir. 2018) .................................................................................................... 11

*Doe v. Fertility Centers of Ill., S.C.*,
No. 21 C 579, 2022 WL 972295 (N.D. Ill. Mar. 31, 2022) ....................................................... 5

*Doe v. Genesis Health Sys.*,
No. 4:23-cv-04209-JEH, 2025 WL 1000192 (C.D. Ill. Mar. 18, 2025) ................................... 4

*Dominion Nutrition, Inc. v. Cesca*,
467 F. Supp. 2d 870 (N.D. Ill. 2006) ........................................................................................ 7

*E.D.C. Techs., Inc. v. Seidel*,
No. 16-cv-03316-SI, 2016 WL 4549132 (N.D. Cal. Sept. 1, 2016) ........................................ 18

*Elzeftawy v. Pernix Grp., Inc.*,
477 F. Supp. 3d 734 (N.D. Ill. 2020) ....................................................................................... 16

*Ewert v. eBay, Inc.*,
602 F. App'x 357 (9th Cir. 2015) ............................................................................................. 19

*Fed. Nat'l Mortgage Ass'n v. Obradovich*,
No. 14-cv-04664, 2016 WL 1213920 (N.D. Ill. Mar. 29, 2016) .............................................. 11

*Flores v. Aon Corp.*,
2023 IL App (1st) 230140 .............................................................................................. 4, 6, 7, 8

*Fox v. Iowa Health Sys.*,
399 F. Supp. 3d 780 (W.D. Wis. 2019) .................................................................................. 13

*Franckowiak v. Scenario Cockram USA, Inc.*,
No. CV 20-8569-JFW(PVCx), 2020 WL 9071697 (C.D. Cal. Nov. 30, 2020) ....................... 18

*Frazier v. U.S. Bank Nat. Ass'n*,
No. 11 C 8775, 2013 WL 1337263 (N.D. Ill. Mar. 29, 2013) ................................................. 10

*Gardner v. Health Net, Inc.*,
No. CV 10-2140 PA (CWx), 2010 WL 11597979 (C.D. Cal. Aug. 12, 2010) ........................ 18

*Hameed-Bolden v. Forever 21 Retail Inc.*,
No. CV1803019, 2018 WL 6802818 (C.D. Cal. Oct. 1, 2018) ................................................ 17

*Hannant v. Culbertson*,
No. 4:24-CV-04164-SLD-RLH, 2025 WL 2413894 (C.D. Ill. Aug. 20, 2025) ..................... 7, 8

*HPI Health Care Servs., Inc. v. Mt. Vernon Hosp., Inc.*,
131 Ill. 2d 145 (Ill. 1989) ......................................................................................................... 8

*Hummel v. Teijin Auto. Techs., Inc.*,
No. 23-cv-10341, 2023 WL 6149059 (E.D. Mich. Sept. 20, 2023) ....................................... 3, 4

*Huynh v. Quora, Inc.*,
508 F. Supp. 3d 633 (N.D. Cal. 2020) ................................................................................... 18

*In re Blackbaud, Inc. v. Customer Data Breach Litig.*,
No. 3:20-mn-02972-JMC, 2021 WL 3568394 (D.S.C. Aug. 12, 2021) ................................. 14

*In re Experian Data Breach Litig.*,
No. SACV 15-1592 AG (DFMx), 2016 WL 7973595 (C.D. Cal. Dec. 29, 2016) ..................... 9

*In re Gallagher Data Breach Litig.*,
631 F. Supp. 3d 573 (N.D. Ill. 2022) ................................................................................. 5, 15

*In re Kemper Sports Mgmt. Data Breach Litig.*,
No. 24-CV-8503, 2026 WL 25820 (N.D. Ill. Jan. 5, 2026) ..................................................... 8

*In re Lurie Child.'s  Hosp. Data Sec. Litig.*,
No. 24-cv-05503, 2025 WL 2754760 (N.D. Ill. Jan. 5, 2026) .......................................... *passim*

iv

*In re Macbook Keyboard Litig.*,
  No. 5:18-cv-02813, 2020 WL 6047253 (N.D. Cal. Oct. 13, 2020) .......................................... 19

*In re Mednax Servs., Inc.*,
  603 F. Supp. 3d 1183 (S.D. Fla. 2022) ............................................................................. 5, 9, 17

*In re MOVEit Consumer Data Sec. Breach Litig.*,
  No. 23-md-3083-ADB-PGL, 2025 WL 2179475 (D. Mass. July 31, 2025) ........................ 12, 15

*In re NCB Mgmt. Servs., Inc. Data Breach Litig.*,
  748 F. Supp. 3d 262 (E.D. Pa. 2024) .................................................................................... 13

*In re Solara Med. Supplies, LLC Customer Data Sec. Breach Litig.*,
  613 F. Supp. 3d 1284 (S.D. Cal. 2020) ................................................................................ 15

*In re Sonic Corp., Cust. Data Sec. Breach Litig.*,
  No. 1:17-md-2807, 2020 WL 3577341 (N.D. Ohio July 1, 2020) .......................................... 19

*In re Sony Gaming Networks and Cust. Data Sec. Breach Litig.*,
  996 F. Supp. 2d 942 (S.D. Cal. 2014) .................................................................................. 14

*In re Yahoo! Customer Data Sec. Breach Litig.*,
  No. 16-MD-02752-LHK, 2017 WL 3727318 (N.D. Cal. Aug. 30, 2017) ........................... 14, 18

*Irwin v. Jimmy John's Franchise*, LLC,
  175 F. Supp. 3d 1064 (C.D. Ill. 2016) .................................................................................... 8

*Jimenez v. OE Fed. Credit Union*,
  No. 24-cv-02746-JST, 2025 WL 2402137 (N.D. Cal. Aug. 19, 2025) .................................... 14

*Juarez v. Arcadia Financial, Ltd.*,
  152 Cal. App. 4th 889 (2007) .............................................................................................. 20

*Juenger v. Deaconess Health Sys., Inc.*,
  No. 3:24-CV-2332-NJR, 2025 WL 2780221 (S.D. Ill. Sept. 30, 2025) ................................... 8

*Katz-Lacabe v. Oracle Am., Inc.*,
  668 F. Supp. 3d 928 (N.D. Cal. 2023) .................................................................................. 17

*Kirsten v. California Pizza Kitchen, Inc.*,
  No. 2:21-CV-09578-DOC-KES, 2022 WL 16894503 (C.D. Cal. July 29, 2022) .................... 18

*Longnecker-Wells v. Benecard Services, Inc.*,
  658 Fed. App'x 659 (3d Cir. 2016) ......................................................................................... 5

*Merix Pharm. Corp. v. EMS Acquisition Corp.*,
  No. 09-C-5871, 2010 WL 481247 (N.D. Ill. Feb. 4, 2010) ...................................................... 6

*Metaquotes Ltd. v. Metaquotes Software Corp.*,
No. 8:22-cv-00462-SB-DFM, 2023 WL 3506413 (C. D. Cal. May 17, 2023) .......................... 20

*Miller v. NextGen Healthcare*,
742 F. Supp. 3d 1304 (N.D. Ga. 2024) ................................................................................. 14

*Mondelez Data Breach Litig.*,
No. 23 C 3999, 2024 WL 2817489 (N.D. Ill. June 3, 2024) ........................................... 3, 4, 6, 8

*Moore v. Centrelake Med. Grp., Inc.*,
83 Cal. App. 5th 515 (2022) .................................................................................................. 17

*Nazzaro v. Tecta Am. Corp.*,
No. 25 C 448, 2025 WL 2604790 (N.D. Ill. Sept. 9, 2025) ......................................................... 9

*Norwest Mortgage, Inc. v. Superior Court*,
72 Cal. App. 4th 214 (1999) ................................................................................................... 16

*Olson v. Ferrara Candy Co.*,
2025 IL App (1st) 241126 ............................................................................................... 4, 5, 6, 7

*Perdue v. Hy-Vee, Inc.*,
455 F. Supp. 3d 749 (C.D. Ill. 2020) ................................................................................... 8, 11

*Potter v. Clark*,
497 F.2d 1206 (7th Cir. 1974) ................................................................................................. 2

*Pruchnicki v. Envision Healthcare Corp.*,
845 F. App'x 613 (9th Cir. 2021) ........................................................................................... 17

*Raintree Homes, Inc. v. Village of Long Grove*,
209 Ill. 2d 248 (Ill. 2004) ....................................................................................................... 8

*Ramirez v. LexisNexis Risk Sols.*,
729 F. Supp. 3d 838 (N.D. Ill. 2024) ..................................................................................... 10

*Resnick v. AvMed, Inc.*,
693 F.3d 1317 (11th Cir. 2012) ................................................................................................ 7

*Sapan v. Auth. Tax Servs., LLC*,
No. 13cv2782 JAH (JLB), 2014 WL 12493282 (S.D. Cal. July 15, 2014) ............................. 17

*Sexton v. Bd. of Educ., Dist. 130*,
No. 25 cv 344, 2025 WL 3539127 (N.D. Ill. Dec. 10, 2025) .............................................. 1, 2

*Shannon v. Boise Cascade Corp.*,
 208 Ill. 2d 517 (2004) ............................................................................................... 12

*Sieving v. Cont'l Cas. Co.*,
 535 F. Supp. 3d 762 (N.D. Ill. 2021) ......................................................................... 9

*Speyer v. Avis Rent A Car Sys., Inc.*,
 415 F. Supp. 2d 1090 (S.D. Cal. 2005) .................................................................... 16

*Springmeyer v. Marriott Int'l, Inc.*,
 No. 20-cv-867-PWG, 2021 WL 809894 (D. Md. Mar. 3, 2021) ................................ 3

*Thunder Studios, Inc. v. Kazal*,
 13 F.4th 736 (9th Cir. 2021) ............................................................................... 15, 17

*Toretto v. Donnelley Fin. Sols., Inc.*,
 583 F. Supp. 3d 570 (S.D.N.Y. 2022) ................................................................. 15, 16

*Travelers Excess & Surplus Lines Co. v. CDK Glob., LLC*,
 No. 25 CV 6701, 2025 WL 2930606 (N.D. Ill. Oct. 15, 2025) .................................. 4

*Trew v. Volvo Cars of North America, LLC*,
 No. CIV-S-051379DFLPAN, 2006 WL 306904 (E.D. Cal. Feb. 8, 2006) ................ 20

*Util. Audit, Inc. v. Horace Mann Serv. Corp.*,
 383 F.3d 683 (7th Cir. 2004) ..................................................................................... 9

*Weekes v. Cohen Cleary P.C.*,
 723 F. Supp. 3d 97 (D. Mass. 2024) .......................................................................... 6

*Wittmeyer v. Heartland All. for Human Needs & Rts.*,
 No. 23 CV 1108, 2024 WL 182211 (N.D. Ill. Jan. 17, 2024) ................................. 6, 7

*Yu v. Signet Bank/Virginia*,
 69 Cal. App. 4th 1377 (1999) ................................................................................... 16

**INTRODUCTION**

Plaintiffs' opposition underscores the failure to plead any plausible facts tying either Forth or Centrex to actionable misconduct. No plaintiff alleges any relationship with Centrex, let alone any specific conduct by Centrex that could give rise to liability here. Plaintiffs' claims against Forth fare no better—they rest on conclusory assertions; fail to articulate what Forth should have done differently; and, for many Plaintiffs, do not include allegations of any actual injury caused by the Security Incident. Plaintiffs' claims should be dismissed.

**ARGUMENT**

**I.    Plaintiffs Offer No Reason To Keep Centrex In This Case**

As Defendants explained, no Plaintiff alleges any relationship with, or conduct specifically attributable to, Centrex. Dkt.102 ("Mot.") at 5–6. Plaintiffs' responses fail to withstand scrutiny.

Plaintiffs first argue the Complaint contains "numerous allegations describing Centrex's role in collecting, storing, and safeguarding Plaintiffs' PII[.]" Dkt.110 ("Opp.") at 7. But Plaintiffs cannot substitute generic references to "Defendants" with plausible factual allegations about *Centrex's* conduct. Unlike here, the cases Plaintiffs cite involve circumstances where the Defendants each participated in the same alleged misconduct. Indeed, even Plaintiffs' cited cases make clear that a pleading "which merely refers to the defendants collectively to ambiguously attribute an action to an unknown defendant or group of defendants does not provide adequate notice." *Sexton v. Bd. of Educ., Dist. 130*, No. 25 cv 344, 2025 WL 3539127, at *3 (N.D. Ill. Dec. 10, 2025). That is true here. That failure is especially acute because the Complaint draws a clear distinction between Forth and Centrex. Forth operates the Platform where the compromised data was stored, while Centrex merely resells "customer relationship management (CRM) solutions powered by the Set Forth platform." Compl. ¶ 35. Later using the word "Defendants" does not transform Centrex into the developer or maintainer of the Forth platform's security protocols. For

collective pleading to suffice, Plaintiffs must allege "specific conduct that *all* of the Defendants participated in[.]" *Sexton*, 2025 WL 3539127, at *4 (emphasis added). There is no such allegation here.

Next, Plaintiffs point to the breach notification letters as "evidence" implicating Centrex. Opp. at 7–8. But notification does not establish Centrex's liability for the alleged underlying vulnerability that gave rise to the breach. And, in any event, the notification letters attached to the Complaint were issued by *Forth*, not Centrex. Compl. Exs. A, C–K.[1]

Finally, Plaintiffs argue no direct contractual relationship is required to state a negligence-based claim against Centrex. Opp. at 8. This argument misses the more fundamental point. Plaintiffs must allege Centrex breached a duty owed to them, but the lack of *any* relationship with Centrex negates any such duty. Further, the Complaint alleges the breach occurred on the Forth platform, not on any system operated by Centrex. Compl. ¶¶ 1, 34–35. Courts routinely dismiss claims where a defendant is named but the complaint contains no factual allegations tying that defendant to the alleged misconduct. *Arroyo v. Baldwin*, No. 19-CV-0027-NJR, 2019 WL 2357307, at *1 (S.D. Ill. June 4, 2019); *Potter v. Clark*, 497 F.2d 1206, 1207 (7th Cir. 1974).

## II.     Plaintiffs Fail to Salvage their Negligence Claim[2]

As Defendants explained in their opening brief, Plaintiffs' negligence claim must be dismissed because their allegations are impermissibly conclusory and the claim is barred by the economic loss doctrine. Plaintiffs' counterarguments are unavailing.

---

[1] Plaintiffs cite a declaration of Mary Moses in support of their claims against Centrex, Dkt.111, but that "evidence" is outside the pleadings, and Centrex's role as a reseller of Forth services does not plausibly allege Centrex had responsibility for Forth's security architecture.

[2] The parties agree that Illinois law governs the common law claims in this suit, Opp. at 6, rendering Plaintiffs' arguments as to the prematurity of the choice of law analysis purely academic.

### A.  Plaintiffs' Negligence Allegations are Conclusory

Plaintiffs make no real argument to overcome the critical deficiency of the Complaint: the absence of any description of the Security Incident itself and how Forth's purported failures permitted it.  Mot. at 8.  The Complaint does not explain what type of cyberattack occurred, how the threat actor gained access, or how any identified security measure would have prevented it.  Plaintiffs' boilerplate laundry list of security "best practices" is untethered to the actual breach, and is precisely the type of conclusory allegation courts routinely reject.  *See Hummel v. Teijin Auto. Techs., Inc.*, No. 23-cv-10341, 2023 WL 6149059, at *5–7 (E.D. Mich. Sept. 20, 2023) (a successful cyberattack does not "create strict liability in data breach cases"); *Springmeyer v. Marriott Int'l, Inc.*, No. 20-cv-867-PWG, 2021 WL 809894, at *3 (D. Md. Mar. 3, 2021).  Indeed, while Plaintiffs argue they identified specific measures Defendants should have taken, pointing to the Complaint's references to multi-factor authentication and encryption of data, among others, Opp. at 9 (citing Compl. ¶¶ 13, 57–58, 106), those are boilerplate data security measures recited in virtually every data breach lawsuit, not allegations tailored to the actual vulnerability exploited here.  *See Anderson v. Kimpton Hotel & Rest. Grp., LLC*, No. 19-CV-01860-MMC, 2019 WL 3753308, at *4–5 (N.D. Cal. Aug. 8, 2019) (dismissing claim where plaintiffs did not "allege any facts to support [their] conclusory allegations" about the defendant's security failures).

*Mondelez Data Breach Litig.*, No. 23 C 3999, 2024 WL 2817489 (N.D. Ill. June 3, 2024), and *Hummel v. Teijin Auto. Techs., Inc.*, No. 23-cv-10341, 2023 WL 6149059 (E.D. Mich. Sept. 20, 2023), offer no support for Plaintiffs' pleading strategy.  Opp. at 9–10.  In *Mondelez*, the court allowed a negligence claim to proceed because the defendant relied on outdated case law in its motion to dismiss.  *Mondelez*, 2024 WL 2817489, at *5.  And *Hummel* found the level of detail sufficient because the defendant allegedly "knew or should have known that the company was at

3

a heightened risk for cyberattack *based on warnings that had been given by several organizations*." *Hummel*, 2023 WL 6149059, at *2 (emphasis added.).  There are no similar allegations here.

### B.  The Economic Loss Doctrine Also Bars Plaintiffs' Negligence Claims

Plaintiffs also erroneously argue that, under *Flores v. Aon Corp.*, 2023 IL App (1st) 230140, and *Olson v. Ferrara Candy Co.*, 2025 IL App (1st) 241126, the economic loss doctrine does not apply to data breach negligence claims.  But multiple federal district courts have rejected *Flores* and *Olson*'s economic loss doctrine reasoning, choosing instead to follow controlling decisions by the Seventh Circuit and the Illinois Supreme Court applying the doctrine in cases like this one. *See Doe v. Genesis Health Sys.*, No. 4:23-cv-04209-JEH, 2025 WL 1000192, at *4 (C.D. Ill. Mar. 18, 2025) (declining to follow *Flores*); *Travelers Excess & Surplus Lines Co. v. CDK Glob., LLC*, No. 25 CV 6701, 2025 WL 2930606, at *2–3 (N.D. Ill. Oct. 15, 2025).  Here, there is "no allegation of personal injury or damage to other property," and a tort action is not "[t]he proper guard against such consequences[.]"  *Travelers Excess & Surplus Lines Co.*, 2025 WL 2930606, at *4.  The Court should follow federal precedent and dismiss the negligence claim.

### III.  Plaintiffs' Implied Contract Claim Should Be Dismissed

Defendants' opening brief explained why Plaintiffs' implied contract claim fails for lack of mutual assent and lack of damages.  Mot. at 9–14.  Plaintiffs' responses are unavailing.

### A.  Plaintiffs Do Not Plausibly Allege Mutual Assent

Plaintiffs argue mutual assent can be inferred from the "facts and circumstances" of their providing their PII to Defendants, and that the Privacy Policy "demonstrates [Defendants'] commitment to protecting personal information generally[.]"  Opp. at 11–12 (citing *Mondelez*, 2024 WL 2817489, at *7; *Flores*, 2023 IL App (1st) 230140, ¶ 34).  That argument substitutes a unilateral expectation of data security with the mutual assent required to form a contract, and a party's "[u]nilateral and subjective expectations in a transaction cannot be inferred to coalesce into

4

the meeting of the minds required to establish an implied contract." *In re Mednax Servs., Inc.*, 603 F. Supp. 3d 1183, 1221 n.20 (S.D. Fla. 2022).

The *Non-Customer Plaintiffs* allege they have no relationship with Forth and no idea how it obtained their PII. Compl. ¶¶ 159, 174, 191, 242, 271. No implied contract can exist absent any dealings between the parties, regardless of whether a privacy policy existed. *See In re Gallagher Data Breach Litig.*, 631 F. Supp. 3d 573, 591 (N.D. Ill. 2022) (no implied contract where plaintiffs "were unaware of Defendants' existence until they received notice . . . of the Data Breach"); *Doe v. Fertility Centers of Ill., S.C.*, No. 21 C 579, 2022 WL 972295, at *4 (N.D. Ill. Mar. 31, 2022) (same). Plaintiffs attempt to sidestep that glaring omission by arguing they need not allege any "detailed communications" to find mutual assent. Opp. at 12. But they must allege *some* communication, as it is not possible to have the "meeting of the minds" without interaction. *In re Gallagher*, 631 F. Supp. 3d at 591; *see also Longnecker-Wells v. Benecard Services, Inc.*, 658 Fed. App'x 659, 662–63 (3d Cir. 2016) (same). Plaintiffs rely solely on the allegation that Defendants "demonstrated a commitment to protecting to PII in their Privacy Policies." Opp. at 12. But Defendants drafted those policies with no awareness that Plaintiffs existed. It is implausible to allege that this circumstance represents the necessary "implied understanding" between the parties about the relevant terms of the contract. *In re Gallagher*, 631 F. Supp. 3d at 591.[3]

The *Customer Plaintiffs* fare no better. Despite alleging they were customers of Forth, Compl. ¶¶ 145, 210, 227, 256, not a single Customer Plaintiff alleges providing PII *in reliance on* any data security representation. *See Olson*, 2025 IL App (1st) 241126, ¶ 60 (requiring reliance

---

[3] *Lozada v. Advocate Health & Hosps. Corp.*, 2018 IL App (1st) 180320-U, cited by Plaintiffs, bears no resemblance to this case. In *Lozada*, burglars broke into a hospital administrative office and stole computers with unencrypted hard drives that contained sensitive PII "for approximately four million [ ] patients." *Id.* ¶ 5. In other words, the *Lozada* court found an implied contract adequately pled where the healthcare provider stored sensitive patient medical information on unencrypted computers accessible to burglars.

on promises made in privacy policies); *Weekes v. Cohen Cleary P.C.*, 723 F. Supp. 3d 97, 104 (D. Mass. 2024) (no mutual assent where parties never discussed the manner of safeguarding PII). Plaintiffs fail to respond, claiming only "Plaintiffs do not allege that 'the Privacy Policy itself represents the contract,'" but that it merely serves as evidence of Defendants' commitment. Opp. at 11–12. That argument misses the point. The issue is not whether Plaintiffs allege the Privacy Policy is a contract, but instead whether they provided their PII to Forth in reliance on any representations about Forth's data security practices. They did not.[4]

### B. Plaintiffs Do Not Plausibly Allege Damages

"[A] plaintiff must [also] allege actual monetary damages" for an implied contract claim. *Olson*, 2025 IL App (1st) 241126, ¶ 63. Plaintiffs Adam, Cooper, Girven, and Moses argue that a complaint "need only allege damages; its failure to 'establish' them is no basis for dismissal." Opp.13 (citing *Merix Pharm. Corp. v. EMS Acquisition Corp.*, No. 09-C-5871, 2010 WL 481247, at \*8 (N.D. Ill. Feb. 4, 2010)). But Defendants' argument is not that Plaintiffs must *prove* damages at the pleading stage; it is that the damages alleged are not *plausibly connected* to the Security Incident. The Complaint contains no allegations about how the specific data elements stored within Forth's Platform—names, addresses, and Social Security numbers—could have caused fraudulent debit card charges (Adam), CashApp hacking (Cooper), or the other financial harms alleged. "Generally, to prove that a data breach caused identity theft, the pleadings must include

---

[4] Plaintiffs' cited cases—*Mondelez*, 2024 WL 2817489, *Flores*, 2023 IL App (1st) 230140, *In re Lurie Child.'s Hosp. Data Sec. Litig.*, No. 24-cv-05503, 2025 WL 2754760 (N.D. Ill. Jan. 5, 2026), and *Wittmeyer v. Heartland All. for Human Needs & Rts.*, No. 23 CV 1108, 2024 WL 182211 (N.D. Ill. Jan. 17, 2024)—are all distinguishable. None involved claims by individuals (like the Non-Customer Plaintiffs here) that alleged to have no knowledge of the defendants in the first place. Nor do the cases involve claims by individuals who, like the Customer Plaintiffs, voluntary purchased non-essential services from a defendant. Indeed, *Mondelez* and *Flores* arose in the context of the employee relationship, and *Flores* and *Wittmeyer* arose in the healthcare context. Additionally, it is notable that *Flores* and *Wittmeyer* still ultimately dismissed implied contract claims for failure to allege actual damages—as this Court should do here. *See infra* pp.4–7.

allegations of a nexus between the two instances beyond allegations of time and sequence." *Resnick v. AvMed, Inc.*, 693 F.3d 1317, 1326 (11th Cir. 2012). But here, there is no plausible connection.

Plaintiffs Bellefeuille, Ewing, and Gravely also argue they adequately allege that "identity theft" can "naturally and generally result from a breach." Opp. at 13 (citation omitted). But alleging possible identity theft in generic terms does not satisfy the requirement to plead actual monetary damages. *See Flores*, 2023 IL App (1st) 230140, ¶ 34. Further, Bellefeuille was reimbursed for the fraudulent charge he experienced and therefore suffered no actual loss. Compl. ¶ 150. Ewing does not identify any monetary loss whatsoever. *Id*. ¶¶ 196–202. And Gravely's alleged "attempt[s]" to charge her accounts were unsuccessful. *Id*. ¶¶ 232–233. *See Hannant v. Culbertson*, No. 4:24-CV-04164-SLD-RLH, 2025 WL 2413894, at *16 (C.D. Ill. Aug. 20, 2025) (characterizing same harms alleged by Plaintiffs here as "plainly insufficient" because "allegations of actual monetary damages require 'an actual loss or measurable damages'").

As to Blue and Meza, Plaintiffs argue that "injury is not required for a breach of contract" and that "nominal" damages can suffice. Opp. at 13–14 (citing *Dominion Nutrition, Inc. v. Cesca*, 467 F. Supp. 2d 870, 882 (N.D. Ill. 2006)). But *Dominion Nutrition* predates the Illinois Appellate Court's holdings in *Flores* and *Olson* that "actual monetary damages" are required for implied contract claims, including in the data breach context. *Flores*, 2023 IL App (1st) 230140, ¶ 34 ("To successfully make a breach of implied contract claim, a plaintiff must allege actual monetary damages."); *Olson*, 2025 IL App (1st) 241126, ¶ 63 (same). Nominal damages cannot substitute for that requirement. *See Wittmeyer*, 2024 WL 182211, at *5 (dismissing implied contract claim where neither "of the named plaintiffs suffered any monetary damages cognizable under state law as a result of the data breach").

7

### IV.     Plaintiffs' Unjust Enrichment Claim Should be Dismissed

Under Illinois law, "[u]njust enrichment is not an independent cause of action," *Flores*, 2023 IL App (1st) 230140, ¶ 37, but a theory of recovery, *Brown v. State Farm Mut. Auto. Ins. Co.*, No. 23 C 6065, 2025 WL 81340, at *8 (N.D. Ill. Jan. 13, 2025). Thus, where a standalone unjust enrichment claim is premised on the same conduct underlying other claims, it must be dismissed. *Juenger v. Deaconess Health Sys., Inc.*, No. 3:24-CV-2332-NJR, 2025 WL 2780221, at *6 (S.D. Ill. Sept. 30, 2025); *Hannant*, 2025 WL 2413894, at *17.

Plaintiffs' counter arguments rely on outdated law. Opp. at 14 (citing *Raintree Homes, Inc. v. Village of Long Grove*, 209 Ill. 2d 248 (Ill. 2004), and *HPI Health Care Servs., Inc. v. Mt. Vernon Hosp., Inc.*, 131 Ill. 2d 145 (Ill. 1989)). Plaintiffs also concede the derivative nature of their claim by arguing it should "stand or fall with the related claim." Opp. at 14 (citing *In re Kemper Sports Mgmt. Data Breach Litig.*, No. 24-CV-8503, 2026 WL 25820, *8 (N.D. Ill. Jan. 5, 2026)). Because Plaintiffs' negligence and implied contract claims fail for the reasons set forth above, their unjust enrichment claim necessarily falls with them.

In any event, Plaintiffs have not plausibly alleged the requisite benefit. Plaintiffs argue they conferred a benefit on Defendants by providing "valuable PII" and by paying for services "with the reasonable understanding that a portion of those payments would fund adequate data security measures." Opp. at 14–15. But gathering PII is "an administrative necessity for providin[g]" commercial debt relief services, not an independent benefit supporting an unjust enrichment claim. *Flores*, 2023 IL App (1st) 230140, ¶ 38; *see also Mondelez*, 2024 WL 2817489, at *6. As to the fees paid for services, Plaintiffs do not plausibly allege "any separate outlay for data security." *Lurie Child.'s Hosp.*, 2025 WL 2754760, at *12; *Perdue v. Hy-Vee, Inc.*, 455 F. Supp. 3d 749, 766 (C.D. Ill. 2020); *Irwin v. Jimmy John's Franchise*, LLC, 175 F. Supp. 3d 1064, 1072 (C.D. Ill. 2016). Plaintiffs' subjective "understanding" that the "fees paid for debt relief

8

services," Compl. ¶ 335, would partially fund data security is the type of "unilateral and subjective expectatio[n]" that cannot support a claim. *In re Mednax Servs.*, 603 F. Supp. 3d at 1221 n.20.

Plaintiffs also fail to respond to Forth's argument that services are governed by the Account Agreements, which expressly address the parties' data security responsibilities and foreclose quasi-contractual relief. *See Util. Audit, Inc. v. Horace Mann Serv. Corp.*, 383 F.3d 683, 688–89 (7th Cir. 2004) ("When two parties' relationship is governed by contract, they may not bring a claim of unjust enrichment unless the claim falls outside the contract.").

## V. Plaintiffs' Declaratory Judgment Claim Should be Dismissed

A "declaratory judgment [is a] for[m] of relief, it is not a cognizable clai[m] to be pleaded as an independent cause of action." *Nazzaro v. Tecta Am. Corp.*, No. 25 C 448, 2025 WL 2604790, at *7 (N.D. Ill. Sept. 9, 2025). That ends the issue. Plaintiffs nevertheless rely on *In re Experian Data Breach Litig.*, No. SACV 15-1592 AG, 2016 WL 7973595, at *7 (C.D. Cal. Dec. 29, 2016), to contend that "alternative remedies" are permitted at the pleading stage. Opp. at 15–16 (citing *In re Experian*, 2016 WL 7973595, at *7). But Plaintiffs' reliance is misplaced because there was no claim under the Declaratory Judgment Act in that case. There, the court allowed a claim for injunctive relief to proceed because "the Court is not convinced at this stage that the damages Plaintiffs seek are adequate remedies at law." *In re Experian*, 2016 WL 7973595, at *7. Injunctive relief, which is "distinct from an underlying claim for relief," is not analogous to the independent cause of action for declaratory relief Plaintiffs assert here. *Sieving v. Cont'l Cas. Co.*, 535 F. Supp. 3d 762, 774 (N.D. Ill. 2021) (citation omitted).

Moreover, Plaintiffs' declaratory judgment does not seek "alternative remedies." Plaintiffs seek a judgment declaring "[d]efendants owed a legal duty to secure the PII"; that "[d]efendants breached their duty"; that defendant's data security measures "do not comply with their obligations and duties of care"; and that the "breaches of said duties" caused harm to Plaintiffs. Compl. ¶ 348.

9

That is precisely the relief sought through Plaintiffs' other claims. Redundancy is also a well-established basis for dismissal of a request for declaratory relief. *See, e.g., Frazier v. U.S. Bank Nat. Ass'n*, No. 11 C 8775, 2013 WL 1337263, at *12 (N.D. Ill. Mar. 29, 2013).

## VI.  Plaintiff Ewing's ICFA Claim Should be Dismissed

Plaintiff Ewing's Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA") claim should be dismissed because Ewing: (1) lacks statutory standing; (2) did not suffer damages proximately caused by Defendants' conduct; and (3) fails to identify any "deceptive or unlawful" conduct. Mot. at 17–20. Plaintiffs' counterarguments all fail.[5]

As to standing, Plaintiffs erroneously argue that, despite not being a "consumer" under the ICFA, Ewing has standing under the "consumer nexus test" because Defendants made purportedly false representations about data security to the public on their websites. Opp. at 17. But the Complaint makes clear Forth's statements were not targeted to the public at large—as the consumer nexus text requires—but rather only to customers of Forth's custodial account services.[6] *Ramirez v. LexisNexis Risk Sols.*, 729 F. Supp. 3d 838, 847 (N.D. Ill. 2024) (dismissing ICFA claim where "Defendant's acts are targeted towards consumers of its products," rather than the general public).[7] That is insufficient to meet the consumer nexus test. *Id.*

---

[5] Plaintiffs' insistence that this claim is subject to Rule 8's pleading standard, Opp. at 18 n.6, as opposed to Rule 9, is wrong. Plaintiffs allege that Defendant's engaged in "*deceptive* and unfair acts." Compl. ¶ 360, 362 (emphasis added). Therefore, Rule 9(b) applies to those allegations. *Lurie Childs. Hosp.*, 2025 WL 2754760, at *14.

[6] Although Plaintiffs claim Defendants only challenged Ewing's consumer status with respect to Forth, Opp. at 16 n.5, the Amended Complaint contains no factual allegations from which it can be inferred that Ewing had *any* relationship with Centrex, let alone a "consumer" relationship under the ICFA.

[7] Plaintiffs' insistence that Forth's "account management services" constitute "merchandise" under the ICFA, Opp. at 16, is irrelevant because Ewing is not a "consumer" under the statute nor satisfies the consumer nexus test—which are the relevant considerations for statutory standing.

As to damages, Plaintiffs incorrectly argue the "fraudulent charges and other unauthorized activity related to [Ewing's] bank account" constitute economic injury proximately caused by the Security Incident. Opp. at 17–18. But Ewing's *only* allegations of economic harm relate to suspicious bank account activity after she applied for a "personal loan from Lightstream Loan Company," Compl. ¶ 196—a non-party with no alleged relation to Defendants—after a "customer representative named 'Ethan' contacted Plaintiff Ewing *requesting her banking information*." Compl. ¶¶ 196–97 (emphasis added). There is no plausible scenario in which the allegedly fraudulent banking activity or the fallout therefrom was *proximately caused* by the entirely unrelated Security Incident. Ewing fails to allege causation, as required to state a claim. For that reason, *Dieffenbach v. Barnes & Nobel, Inc.*, 887 F.3d 826 (7th Cir. 2018), and *Perdue*, 455 F. Supp. 3d at 749, are distinguishable—in both cases, the plaintiffs' access to their bank accounts and/or funds was undisputedly caused by the data breach. And while it is true that "non-economic injuries are compensable" if the plaintiff has *also* "suffered an economic loss," Opp. at 17–18 (quoting *Dieffenbach*, 887 F.3d at 830), Ewing's failure to allege any "economic loss" attributable to the Security Incident makes her claims of "non-economic injuries," including "emotional distress" and "an increased risk of identity theft and fraud," Opp. at 18, non-compensable.

Finally, as to Defendants' asserted engagement in "deceptive or unlawful conduct," Plaintiffs concede Ewing never "received a deceptive communication from" Defendants. Opp. at 18. Nevertheless, Plaintiffs argue Ewing's claim survives because the allegedly unreasonable delay between the Security Incident and notice thereof constitutes "*unfair* commercial conduct." Opp. at 18–19 (quoting *Fed. Nat'l Mortgage Ass'n v. Obradovich*, 14-cv-04664, 2016 WL 1213920, at *3 (N.D. Ill. Mar. 29, 2016)). But even assuming a delay could constitute an "unfair commercial" practice under the ICFA, Ewing has failed to allege any harm attributable to the delay

11

itself, as required. *See, e.g.*, *Lurie Child.'s Hosp.*, 2025 WL 2754760, at *14. And while Plaintiffs argue that Ewing's allegations of "actual identity theft" sufficiently demonstrate that the "delay" caused her harm, Opp. at 19, Ewing has not plausibly alleged any actual identity theft attributable to the Security Incident, as explained above. *See supra* pp.10–11. Under those circumstances, Ewing's claims of "unfair conduct" also are insufficient to sustain her ICFA claim.

## VII.    Plaintiff Ewing's IUDTA Claim Should be Dismissed

Ewing's Illinois Uniform Deceptive Trade Practices Act ("IUDTPA") claim—and Plaintiffs' arguments related thereto—fails for similar reasons.

First, Plaintiffs argue that, despite admittedly not "receiv[ing] any misrepresentations about [Defendants'] data security," Ewing's claim survives because she "alleges that, as an end-user of Defendants' platforms, she relied on [data security] promises." Opp. at 19–20. Plaintiffs' cited cases undermine their argument. In *In re MOVEit Consumer Data Sec. Breach Litig.*, No. 23-md-3083-ADB-PGL, 2025 WL 2179475 (D. Mass. July 31, 2025), the court *dismissed* an IUDTPA at the pleading stage because "no reasonable consumer would have interpreted" statements made by the defendant in its privacy policy "as a guarantee that [defendant's] system would be invulnerable or that there would be no circumstances under which [its] security systems would fail." *Id.* at *37. The same is true here. And Plaintiffs' reliance on *Shannon v. Boise Cascade Corp.*, 208 Ill. 2d 517, 526 (2004), for the point that "it is enough that [a] statement[] by the defendant be made with the intention that it reach the plaintiff and influence his action . . . and that he does rely upon it, to his damage," arose in an explanation of why traditional privity is not required in the context of a fraud claim; it had nothing to do with the settled reliance or causation elements under the IUDTPA.

Second, Plaintiffs argue injunctive relief is appropriate because "Defendants continue to possess Plaintiffs' PII." Opp. at 20. But the paragraphs of the Complaint Plaintiffs rely on relate to speculative future consequences of Security Incident itself—such as the risk of future identity

12

theft, Compl. ¶¶ 126-28, 139-43, 207-08—which is not something an injunction requiring Defendants to implement different data security measures would remediate. As in *Lurie*, the harm from the alleged exposure of Ewing's PII has "already occurred," so any future-oriented harms are attributable to the Security Incident, not any continued conduct by Defendants. *Lurie Child.'s Hosp.*, 2025 WL 2754760, at *15. Any contrary conclusion would justify an injunction in almost every single data breach case simply because a defendant continues to retain PII in the course of its business. *Accord Fox v. Iowa Health Sys.*, 399 F. Supp. 3d 780, 799 (W.D. Wis. 2019) (dismissing an IDTPA claim where plaintiff argued defendant's misrepresentations "leave her unaware about the full scope of the data breaches and whether her data is protected from future unauthorized access" because "these arguments go to the risk of harm that [she] faces from the data breaches themselves").

## VIII. Plaintiffs Meza and Adam's CCPA Claim Fails

As Defendants' opening brief explained, this claim fails because neither Forth nor Centrex are covered "business[es]," under the California Consumer Privacy Act ("CCPA").

In response, Plaintiffs point to allegations that Defendants "aquir[e], collect[ ] and stor[e]" PII, claiming those facts are sufficient because Forth's provision of "online account management services" and Centrex's provision of "CRM solutions powered by the Forth Platform" "reflect operational decisions about how Plaintiffs' data is structured, stored, or used." Opp. at 21–22. (citing Comp. ¶¶ 61–63). But collecting and storing information is only one part of the CCPA equation. Plaintiffs fail to make any specific allegations about how Defendants allegedly "process[ ]" their PII or what specific "operation[al]" decisions Defendants make with such data. Cal. Civ. Code § 1798.140(y). The failure to identify the specific "determinations" Defendants "made regarding why and *how* plaintiffs' PII was to be processed." *In re NCB Mgmt. Servs., Inc. Data Breach Litig.*, 748 F. Supp. 3d 262, 288 (E.D. Pa. 2024) (emphasis added), is fatal.

13

Plaintiffs' cited cases, Opp. at 22, are readily distinguishable. In *Miller v. NextGen Healthcare*, 742 F. Supp. 3d 1304 (N.D. Ga. 2024), the defendant "use[d] consumer's personal data . . . to develop, improve, and test [its] services." *Id.* at 1327; *see also Jimenez v. OE Fed. Credit Union*, No. 24-cv-02746-JST, 2025 WL 2402137, at *7 (N.D. Cal. Aug. 19, 2025) (PII "enabled" the defendant credit union to "provide financial services"). The same is true of *In re Blackbaud, Inc. v. Customer Data Breach Litig.*, No. 3:20-mn-02972-JMC, 2021 WL 3568394 (D.S.C. Aug. 12, 2021), in which plaintiffs alleged the defendant "uses consumers' personal data to provide services at customer's requests." *Id.* at *5. The Complaint here is devoid of such allegations, alleging only that Defendants "acquire, collect, and store" PII. Compl. ¶ 61; *see also id.* ¶ 34 (Forth "stores a litany of highly sensitive PII"); Compl. ¶ 35 (alleging Centrex's customers—not Centrex—"collect and upload consumer information").

## IX. Plaintiffs Meza and Adams Fail to Support Their CCRA Claim

Plaintiffs' California Consumer Records Act ("CCRA") claim fails because Meza and Adam do not plausibly claim to have suffered any actual damages due to the timing of Defendants' notification of the Security Incident. Plaintiffs claim they "sufficiently allege actual damages" and that their "incremental harms" are sufficient. Opp. at 23. Not so. Nowhere in the Complaint do Plaintiffs identify any "actual damages flowing from the unreasonable delay (rather than the intrusion itself)[.]" *In re Sony Gaming Networks and Cust. Data Sec. Breach Litig.*, 996 F. Supp. 2d 942, 1010 (S.D. Cal. 2014). Instead, Plaintiffs merely conclude that "as a direct and proximate result of Defendants' violations . . . Plaintiffs . . . were (and continue to be) injured and suffered (and will continue to suffer) damages." Compl. ¶ 407. Plaintiffs' conclusory allegations are thus unlike those in *In re Yahoo! Customer Data Sec. Breach Litig.*, No. 16-MD-02752-LHK, 2017 WL 3727318, at *41 (N.D. Cal. Aug. 30, 2017), where the plaintiffs identified the concrete steps they could have taken with timely notice, including changing passwords, closing accounts, or

14

freezing credit, which created a plausible link between delayed notification and additional harms beyond the breach itself.[8] No such specific allegations exist here.

**X.      Plaintiffs Meza and Adam Fail to State a UCL Claim**

As Defendants explained, Meza and Adam's California Unfair Competition Law ("UCL") claim fails because: (1) the statute does not apply extraterritorially; (2) they lack UCL statutory standing because they have not suffered "economic harm" due to the Security Incident (3) they have an adequate remedy at law; (4) allegations of unlawful conduct are impermissibly conclusory; and (5) Meza is not entitled to restitution because she did not contract with or pay Defendants for any services. Mot. at 26–30. Plaintiffs' contrary arguments on each point are wrong.

First, Plaintiffs misunderstand the presumption against extraterritoriality. Plaintiffs claim that Defendants' extraterritoriality argument is "premature." Opp. at 25. That is wrong, as courts routinely resolve extraterritoriality questions at the pleading stage. *See, e.g.*, *Dfinity USA Res. LLC v. Bravick*, No. 22-cv-03732-EJD, 2023 WL 2717252, at *5 (N.D. Cal. Mar. 29, 2023).

Plaintiffs also erroneously contend the UCL applies to claims of California residents "even where some of the alleged misconduct occurred" in Illinois (where the Security Incident occurred). Opp. at 24–25. But the "determinative factor in California's presumption against extraterritoriality is the location of the conduct" that gives rise to liability—not the location of the alleged injury. *Thunder Studios, Inc. v. Kazal*, 13 F.4th 736, 743 (9th Cir. 2021); *Diamond Multimedia Sys., Inc. v. Superior Court*, 19 Cal.4th 1036 (Cal. 1999). On that basis, courts routinely dismiss UCL claims brought by California residents injured by conduct that occurs wholly out of state. *See, e.g.*, *Toretto v. Donnelley Fin. Sols., Inc.*, 583 F. Supp. 3d 570, 604–06 (S.D.N.Y. 2022).

---

[8] Similarly, in *In re Solara Med. Supplies, LLC Customer Data Sec. Breach Litig.*, 613 F. Supp. 3d 1284 (S.D. Cal. 2020), and *In re Gallagher*, 631 F. Supp. 3d at 590, the plaintiffs specifically identified what mitigation steps they could have taken to mitigate their harms, had they been notified of the breach in a more timely manner.

To the extent *MOVEit Customer Data Sec. Breach Litigation*, 2025 WL 2174975, *Adobe Sys. Inc. v. Blue Source Grp., Inc.*, 125 F. Supp. 3d 945 (N.D. Cal. 2015), and *Speyer v. Avis Rent A Car Sys., Inc.*, 415 F. Supp. 2d 1090 (S.D. Cal. 2005), upon which Plaintiffs rely, Opp. at 25, allowed UCL claims to proceed based on the location of the injury alone, those case are poorly reasoned outliers.  In all three cases, the court's analysis turned on two dated California appellate court decisions—*Norwest Mortgage, Inc. v. Superior Court*, 72 Cal. App. 4th 214 (1999), and *Yu v. Signet Bank/Virginia*, 69 Cal. App. 4th 1377 (1999)—both of which are distinguishable. *Norwest* offered no explanation for its holding, and the defendant specifically targeted California residents for real estate insurance purposes.  72 Cal. App. 4th at 224.  And in *Yu*, the court similarly failed to substantively analyze the extraterritorial reach of the UCL, and simply explained the statute applies to a defendant who "is subject to jurisdiction in California."  69 Cal. App. 4th at 314; *see Toretto*, 583 F. Supp. 3d at 604 (distinguishing *Norwest* and *Yu* and finding no "compelling reason to conclude that [plaintiff] can bring a claim under the UCL merely because he is a California resident who allegedly suffered injury in California"); *Elzeftawy v. Pernix Grp., Inc.*, 477 F. Supp. 3d 734, 785 (N.D. Ill. 2020) ("neither *Norwest* nor *Yu* stands for the proposition that the UCL automatically applies to any claim brought by a California resident.").

Plaintiffs last contend that even if the UCL does not apply extraterritorially, it applies here because they "allege misconduct in California."  Opp. at 24–25.  That is false.  While Plaintiffs allege Centrex is headquartered in California, neither Meza nor Adam allege *any* relationship with Centrex that permits the inference that Centrex—rather than Forth—was in possession of their PII.[9]  Nor is the fact that Plaintiffs "shared" their PII with Defendants "while residing in California"

---

[9] Plaintiffs attempt to distinguish *In re Gallagher*, 631 F. Supp. 3d at 596, and *Toretto*, 83 F. Supp. 570 (S.D.N.Y. 2022), in which the courts dismissed UCL claims emanating from conduct outside of California, by arguing that those cases did not "involve a California Defendant."  Opp. at 26.  And even though Centrex

sufficient, again because the UCL's application depends on the "location of the conduct" that gives rise to liability," which here was Illinois. *Thunder Studios*, 13 F.4th at 743.

Second, Plaintiffs erroneously contend Meza and Adam have statutory standing. Plaintiffs begin by claiming that the "diminution in value" of PII, loss of time responding to a data breach, mitigation expenses (*e.g.*, credit monitoring), and loss of PII privacy are "viable economic injur[ies]" that confer standing. Opp. at 26–28. With respect to Plaintiffs' reliance on the "diminution in value" of their PII or privacy, Plaintiffs ignore that "the weight of authority in the district and the state . . . point in the opposite direction: that the mere misappropriation of personal information does not establish compensable damages." *Katz-Lacabe v. Oracle Am., Inc.*, 668 F. Supp. 3d 928, 943 (N.D. Cal. 2023) (quoting *Pruchnicki v. Envision Healthcare Corp*., 845 F. App'x 613, 615 (9th Cir. 2021)) (collecting cases); *see also Moore v. Centrelake Med. Grp., Inc.*, 83 Cal. App. 5th 515, 540-41 & n.13 (2022) (finding certain federal precedent to the contrary "unpersuasive"). Plaintiffs cited cases simply adopt the "unpersuasive" minority approach. *Moore*, 83 Cal. App. 5th at 540; *see* Opp. at 27 (citing *In re Mednax Servs.,* 603 F. Supp. 3d at 1183; *Brown v. Google LLC*, 685 F. Supp. 3d 909 (N.D. Cal. 2023)). Nor does Plaintiffs' alleged "loss of time" confer standing under California law, *see, e.g.*, *Sapan v. Auth. Tax Servs., LLC*, No. 13cv2782, 2014 WL 12493282, at *4 (S.D. Cal. July 15, 2014), and Plaintiffs' reliance on *Hameed-Bolden v. Forever 21 Retail Inc.*, No. CV1803019, 2018 WL 6802818, at *4 (C.D. Cal. Oct. 1, 2018), is misplaced because the plaintiff there undisputedly "*lost money*" in addition "time," as a result of the breach, *id.* (emphasis added).

Adam argues she has standing based on "experienc[ing] multiple fraudulent charges," and

---

is headquartered in California, neither Meza nor Adam (nor any other Plaintiff) alleges any relationship with Centrex, meaning that this case also does not "involve a California Defendant" for either of them as well.

"incur[ing] out-of-pocket losses," including credit monitoring and travel expenses. Opp. at 27. However, Adam's allegations of fraudulent charges and out-of-pocket costs related thereto stem from charges on her debit card—but Adam does not allege that any debit card information was exposed during the Incident. [10] *See* Mot. at 1–14. Additionally, Adam's out-of-pocket credit-monitoring allegations fail to confer standing, as Adam fails to acknowledge that Forth offered her free credit monitoring in response to the Security Incident. *See* Compl. Ex. J; *Gardner v. Health Net, Inc.*, No. CV 10-2140, 2010 WL 11597979, at *12 (C.D. Cal. Aug. 12, 2010) (no standing where plaintiff failed to accept defendant's offer of free credit-monitoring services).[11]

Third, Plaintiffs ask this Court to overlook their failure to plead the inadequacy of legal remedies because they pleaded the UCL claim "in the alternative," and because "forward looking injunctive relief" is necessary as Plaintiffs' PII "remains in Defendants' possession." Mot. at 28–30. But courts routinely dismiss UCL claims where, as here, the "bulk of [the] pleading demonstrates that an adequate remedy at law exists," *E.D.C. Techs., Inc. v. Seidel*, No. 16-cv-03316-SI, 2016 WL 4549132, at *10 (N.D. Cal. Sept. 1, 2016), and there are no factual allegations "suggesting that damages are insufficient to make [plaintiffs] whole," *Franckowiak v. Scenario Cockram USA, Inc.*, No. CV 20-8569, 2020 WL 9071697, at *2 (C.D. Cal. Nov. 30, 2020). In other words, the relevant question is not "whether or when Plaintiffs are required to choose

---

[10] *Kirsten v. California Pizza Kitchen, Inc.*, No. 2:21-CV-09578-DOC-KES, 2022 WL 16894503, at *9 (C.D. Cal. July 29, 2022), upon which Plaintiffs rely, only further supports dismissal of the UCL claim. The *Kirsten* court equated fraudulent charges with economic injury, but Meza does not allege ever experiencing anything of the sort, and Adam does not allege that any fraudulent charges on her debit card were successful.

[11] Plaintiffs' reliance on *Huynh v. Quora, Inc.*, 508 F. Supp. 3d 633, 661 (N.D. Cal. 2020), and *Yahoo! Inc.*, 2017 WL 3727318, at *7–8, Opp. at 28, is therefore misplaced. In *Hyunh* and *Yahoo!*, the plaintiffs purchased enhanced credit monitoring services after a data breach where the defendant apparently did not offer complimentary credit monitoring services to affected individuals. The other out-of-pocket expenses in *Yahoo!* were "late fees" resulting from insufficient funds in bank accounts, and payments to a CPA to "help sort out the tax return problems" caused by the breach. *Id.* at *22. Nothing of the sort is alleged here.

between two available inconsistent remedies, it is whether equitable remedies are available to Plaintiffs at all." *In re Macbook Keyboard Litig.*, No. 5:18-cv-02813, 2020 WL 6047253, at *2 (N.D. Cal. Oct. 13, 2020). Here, Plaintiffs' suggestion that injunctive relief is appropriate because Defendants remain "in possession" of their PII is wrong, as Plaintiffs have failed to articulate any plausible risk of harm associated with such continued possession—as opposed to speculative future harms resulting from the Security Incident itself. Because Plaintiffs have not alleged a viable claim for equitable relief, the UCL's equitable remedies are "not available to Plaintiffs at all," *id.*, and *that* question is properly resolved at the pleading stage.

Fourth, Plaintiffs fail to show that any conduct alleged is "unlawful" under the UCL. Opp. at 30. Plaintiffs rely solely on alleged "violations of the CCPA, the CCRA, and federal law and regulations, including Section 5 of the FTC Act." But Plaintiffs' failure to state a claim for violations of the CCPA and CCRA, *see supra* pp. 13–14, is fatal to a UCL claim based on those grounds, and Plaintiffs fail to identify which "federal laws and regulations" they rely upon. As for Section 5 of the FTC Act, the Act does not prescribe any *specific* data security standards, *In re Sonic Corp., Cust. Data Sec. Breach Litig.*, No. 1:17-md-2807, 2020 WL 3577341, at *6 (N.D. Ohio July 1, 2020), nor have Plaintiffs identified any that would apply here.

Finally, Plaintiffs confusingly argue Meza is entitled to restitutionary disgorgement of "a portion of the monies Defendants earned from her PII" because, although she never paid Defendants for any services, she has a "vested interest" in her PII. But the point of "restitution under the UCL" is to "'restore the status quo' by 'returning to the plaintiff' funds taken from him or 'benefits in which the plaintiff has an ownership interest.'" *Ewert v. eBay, Inc.*, 602 F. App'x 357, 359 (9th Cir. 2015) (citation omitted). Any "interest" Meza has in her PII does not entitle her to restitution because she has not alleged that Forth used her PII to generate any revenue that could

19

conceivably be returned to her. Simply put, Plaintiffs who have not paid any money are plainly not entitled to restitution under the UCL. *See Metaquotes Ltd. v. Metaquotes Software Corp.*, No. 8:22-cv-00462-SB-DFM, 2023 WL 3506413, at *16 (C. D. Cal. May 17, 2023). Plaintiffs' cited case supports that conclusion. In *Trew v. Volvo Cars of North America, LLC*, CIV-S-051379DFLPAN, 2006 WL 306904, at *2–3 (E.D. Cal. Feb. 8, 2006), plaintiffs' UCL claim survived despite not paying money *directly* to defendants because they "paid dealerships or [ ] mechanics" to service a component part of their vehicles manufactured by defendant.[12] Thus, the defendant indirectly profited from plaintiffs' payments—unlike Defendants here, who received no payments, either directly or indirectly, from Meza.

Plaintiffs last argue that Meza's claim survives even if she is not entitled to restitution because she also seeks prospective injunctive relief. Opp. at 31. However, as above, Meza has alleged no facts plausibly entitling her to such relief because the future-oriented harm she speculates about are related to the Security Incident, not Defendants' continued possession of PII, *see supra* pp.12–13.

## CONCLUSION

Defendants respectfully request that this Court grant Defendants' Motion to Dismiss.

---

[12] *Juarez v. Arcadia Financial, Ltd.*, 152 Cal. App. 4th 889 (2007) is similarly inapplicable, because it concerned the disgorgement of "any profit [defendant] may have gained through interest or earnings on the plaintiffs' money that [defendant] wrongfully held." *Id.* at 915.

Dated: April 16, 2026        Respectfully submitted,

*s/ Seth M. Erickson*
Seth M. Erickson
TROUTMAN PEPPER LOCKE LLP
111 S. Wacker, Suite 4100
Chicago, IL 60606
Telephone: (312) 759-5930
seth.erickson@troutman.com

Ronald I. Raether, Jr. (*pro hac vice*)
TROUTMAN PEPPER LOCKE LLP
100 Spectrum Center Drive, Suite 1500
Irvine, CA 92614
Telephone: (949) 622-2722
Ronald.Raether@troutman.com

Joshua Daniel Davey (*pro hac vice*)
TROUTMAN PEPPER LOCKE LLP
301 S. College St., 34th Floor
Charlotte, NC 28202
Telephone: (704) 916-1503
Joshua.Davey@troutman.com

Timothy J. St. George (*pro hac vice*)
TROUTMAN PEPPER LOCKE LLP
1001 Haxall Point
Richmond, VA 23219
Telephone: (804) 697-1254
timothy.stgeorge@troutman.com

*Attorneys for Set Forth LLC, d/b/a Forth and Centrex Software, Inc.*

21