**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

|  |  |  |
|---|---|---|
| | ) | |
| | ) | |
| | ) | |
| | ) | |
| IN RE: SET FORTH DATA SECURITY | ) | Consolidated Case No: 1:24-cv-11688 |
| BREACH LITIGATION | ) | |
| | ) | |
| | ) | Honorable Martha M. Pacold |
| | ) | |
| | ) | |
| | ) | |

**REPLY IN SUPPORT OF DEFENDANT SET FORTH, LLC D/B/A FORTH'S
<u>MOTION TO COMPEL ARBITRATION</u>**

**TABLE OF CONTENTS**

INTRODUCTION ........................................................................................................................... 1

ARGUMENT ................................................................................................................................... 1

     I.      Any Challenge To Enforceability Of The Agreements Is For JAMS To
           Decide. ................................................................................................................. 1

     II.     Plaintiffs' Other Arguments Against Arbitration All Fail ..................................... 3

           A.      Any Claimed Inconsistency Between The Arbitration Agreements
                  And JAMS Minimum Standards Do Not Prevent Arbitration ................... 3

           B.      The Parties Mutually Agreed To Arbitrate Their Disputes. ....................... 4

           C.      The Arbitration Provisions Are Not Unconscionable ................................ 7

           D.      At Most, The Allegedly Inconsistent Provisions Could be Severed ........... 9

CONCLUSION ............................................................................................................................. 10

ii

## TABLE OF AUTHORITIES

<u>**Cases**</u>

*Alonso v. AuPairCare, Inc.*,
No. 3:18cv970, 2018 U.S. Dist. LEXIS 143872 (N.D. Cal. Aug. 23, 2018) .............................. 3

*Armendariz v. Found. Health Psychare Servs., Inc.*,
6 P.3d 669 (Cal. 2000) ..................................................................................................... 9

*Bielski v. Coinbase, Inc.*,
87 F.4th 1003 (9th Cir. 2013) ..................................................................................... 1, 2

*Boghos v. Certain Underwriters at Lloyd's of London*,
115 P.3d 68 (Cal. 2005) .................................................................................................. 9

*Brennan v. Opus Bank*,
796 F.3d 1125 (9th Cir. 2015) ........................................................................................ 7

*Brookdale Inn & Spa v. Certain Underwriters at Lloyds, London*,
No. 5:13-CV-02559-EJD, 2014 WL 116442 (N.D. Cal. Jan. 13, 2014) .................................... 9

*Chavoya v. Merrill Gardens L.L.C.*,
No. 1:24-CV-00268, 2025 WL 2196296 (E.D. Cal. Aug. 1, 2025) .......................................... 5

*Circuit City Stores, Inc. v. Mantor*,
335 F.3d 1101 (9th Cir. 2003) ........................................................................................ 7

*Cobarruviaz v. Maplebear, Inc.*,
143 F. Supp. 3d 930 (N.D. Cal. 2015) ............................................................................ 9, 10

*Coinbase, Inc. v. Suski*,
602 U.S. 143 (2024) ....................................................................................................... 2

*DeGraff v. Perkins Coie LLP*,
No. C 12-02256, 2012 WL 3074982 (N.D. Cal. July 30, 2012) ................................................ 9

*Fitzgerald v. Grand Circle, LLC*,
No. CV 20-2586, 2020 WL 6152027 (E.D. Pa. Oct. 20, 2020) ............................................... 10

*Flora v. Prisma Labs, Inc.*,
No. 23-CV-00680, 2023 WL 5061955 (N.D. Cal. Aug. 8, 2023) .................................... *passim*

*Garcia de Alba v. Brinker Int'l, Inc.*,
No. CV 16-3486, 2017 WL 10543656 (C.D. Cal. June 30, 2017) ............................................ 5

*Green Tree Serv. v. Henry House & Linda Murrell*,
  No. 3:16-cv-316, 2017 U.S. Dist. LEXIS 228604 (S.D. Miss. Feb. 6, 2017) ........................... 2

*In re T-Mobile 2022 Customer Data Sec. Breach Litig.*,
  No. 3073, 2026 U.S. Dist. LEXIS 38170 (W.D. Mo. Feb. 9, 2026).......................................... 6

*Johnston v. VGW Holdings, Ltd.*,
  No. 3:25-CV-653-RAH, 2026 WL 699708 (M.D. Ala. Mar. 12, 2026)................................. 3, 4

*Keller v. About, Inc.*,
  No. 21-CV-228, 2021 WL 1783522 (S.D.N.Y. May 5, 2021) ..................................................... 4

*Knapke v. PeopleConnect, Inc*,
  38 F.4th 824 (9th Cir. 2022) ....................................................................................................... 7

*Lackie Drug Store, Inc. v. OptumRx, Inc.*,
  143 F.4th 985 (8th Cir. 2025) ..................................................................................................... 2

*Lojewski v. Grp. Solar USA, LLC*,
  No. 22-CV-10816, 2023 WL 5301423 (S.D.N.Y. Aug. 17, 2023).............................................. 5

*Martinez-Gonzalez v. Elkhorn Packing Co. LLC*,
  25 F.4th 613 (9th Cir. 2022) ....................................................................................................... 5

*Mojica v. Kustom U.S., Inc.*,
  2:24-cv-03671, 2025 WL 3704455 (E.D. Cal. Dec. 22, 2025)................................................... 5

*Mortensen v. Bresnan Commc'ns LLC*,
  722 F.3d 1151 (9th Cir. 2013) ..................................................................................................... 7

*Nagrampa v. MailCoups, Inc.*,
  469 F.3d 1257 (9th Cir. 2006) .................................................................................................. 7, 8

*Nguyen v. Barnes & Nobel, Inc.,*
  763 F.3d 1171 (9th Cir. 2014) .................................................................................................. 7, 8

*Nguyen v. OKCoin USA, Inc.*,
  No. 22-cv-06022, 2023 WL 2095926 (N.D. Cal. Feb. 17, 2023) ............................................... 3

*Operating Engineers Pension Trust v. Gilliam*,
  737 F.2d 1501 (9th Cir. 1984) ..................................................................................................... 6

*OTO, LLC v. Kho*,
  447 P.3d 680 (Cal. 2019) ............................................................................................................. 8

*Penn v. Ryan Family Steakhouses, Inc.*,
  95 F. Supp. 2d 940 (N.D. Ind. 2000) ................................................................................. 4

*Rent-A-Ctr., West, Inc. v. Jackson*,
  561 U.S. 63 (2010) ........................................................................................................... 1, 2

*S.T.G. by & through Garcia v. Epic Games, Inc.*,
  752 F. Supp. 3d 1200 (S.D. Cal. 2024) ............................................................................... 1

*Sanchez v. Valencia Holding Co., LLC*,
  353 P.3d 741 (Cal. 2015) ..................................................................................................... 6

*Sellers v. JustAnswer LLC*,
  73 Cal. App. 5th 444 (2021) ................................................................................................ 6

*Serpa v. Cal Sur. Investigations, Inc.*,
  215 Cal. App. 4th 695 (2013) ............................................................................................ 10

*Slaughter v. Stewart Enters., Inc.*,
  No. C 07-01157-MHP, 2007 WL 2255221 (N.D. Cal. Aug. 3, 2007) .................................. 7

*Yeomans v. World Fin. Grp. Ins. Agency, Inc.*,
  485 F. Supp. 3d 1168 (N.D. Cal. 2020) ........................................................................... 6, 8

## Other Authorities

JAMS Rule 11(b) ...................................................................................................................... 1

**INTRODUCTION**

This Court should compel arbitration of Plaintiffs Bellefeuille and Adam's claims. The Agreements contain a valid delegation clause delegating any of their challenges to arbitrability to the arbitrator. And, even if not delegated, Plaintiffs' other attempts to avoid arbitration all fail.

**ARGUMENT**

**I.     Any Challenge To Enforceability Of The Agreements Is For JAMS To Decide**

There is no factual dispute Plaintiffs Bellefeuille and Adam signed agreements containing arbitration provisions that incorporate JAMS Rules of arbitration, including Rule 11(b), which provides that all "[j]urisdictional and arbitrability disputes, including disputes over the formation, existence, validity, interpretation or scope of the agreement . . . shall be submitted to and ruled on by the Arbitrator." JAMS Rule 11(b). Nevertheless, Plaintiffs argue that the entire Arbitration Agreement—including the delegation clauses—are "invalid" because, in their view, JAMS would not administer the arbitration under the Agreements' terms. Opp.7–8. Plaintiffs' argument fails.

The Supreme Court has made clear that, unless a plaintiff "challenge[s] the [agreed-upon] delegation provision specifically," it is enforceable, thereby "leaving any challenge to the validity of the Agreement as a whole for the arbitrator" to decide. *Rent-A-Ctr., West, Inc. v. Jackson*, 561 U.S. 63, 72 (2010). "In making the distinction between challenges 'specific' to a provision, and those applicable to the agreement 'as a whole,' . . . the latter category includes challenges 'on a ground that directly affects the entire agreement (*e.g.*, the agreement was fraudulently induced), or on the ground that the illegality of one of the contract's provisions renders the whole contract invalid.'" *S.T.G. by & through Garcia v. Epic Games, Inc.*, 752 F. Supp. 3d 1200, 1207 (S.D. Cal. 2024) (quoting *Rent-A-Ctr.*, 561 U.S. at 70). Hence, "to sufficiently challenge a delegation provision, the party resisting arbitration must specifically reference the delegation provision and make arguments challenging it." *Bielski v. Coinbase, Inc.*, 87 F.4th 1003, 1011 (9th Cir. 2013).

1

Plaintiffs seek to avoid the delegation clause by speculating that the Arbitration Agreements *as a whole* do not satisfy JAMS Minimum Standards. Opp.6–8; *infra* pp.3–4. Plaintiffs, however, fail to raise any arguments "specifically referenc[ing]" or "challenging" the delegation requirement, which is fatal to their efforts to avoid arbitration. *See Bielski*, 87 F.4th at 1011; *Rent-A-Center*, 561 U.S. at 72. Plaintiffs' assertion that this Court should ignore the delegation clause because their challenge "applies equally to the delegation clause and the whole agreement," Opp.8, is simply untrue. They make *no* argument specific to delegation.

*Coinbase, Inc. v. Suski*, 602 U.S. 143, 148 (2024), upon which Plaintiffs rely, is inapposite. *Coinbase* involved a unique factual scenario in which "the parties had two contracts: one mandating arbitration—including disputes about arbitrability—and a separate contract designating California courts as the appropriate forum." *Lackie Drug Store, Inc. v. OptumRx, Inc.*, 143 F.4th 985, 998 (8th Cir. 2025) (discussing *Coinbase*). Thus, *Coinbase* concerned *who*—a judge or an arbitrator—decides whether a subsequent contract supersedes an earlier arbitration agreement with a delegation clause. *Coinbase* had nothing to do with whether a delegation clause contained in a single agreement was enforceable. *Coinbase* also reaffirmed *Rent-A-Center*'s holding that "a party seeking to avoid arbitration must directly challenge the arbitration or delegation clause, not just the contract as a whole," *Coinbase*, 602 U.S. at 150–51, which Plaintiffs have failed to do.

Finally, the argument that the Agreements are "unconscionable" provides no basis to avoid delegation, as it is not specific to the delegation clause. *Green Tree Serv. v. Henry House & Linda Murrell*, No. 3:16-cv-316, 2017 U.S. Dist. LEXIS 228604, at *15–16 (S.D. Miss. Feb. 6, 2017) (whether the agreement was "unconscionable" "must be resolved by the [JAMS] arbitrator.").

At bottom, Plaintiffs' broad attack fails to demonstrate the delegation itself is invalid, so the Court's analysis should begin and end with delegation. *See, e.g.*, *Alonso v. AuPairCare, Inc.*,

No. 3:18cv970, 2018 U.S. Dist. LEXIS 143872, at *14–15 (N.D. Cal. Aug. 23, 2018) ("In light of these [JAMS] delegation clauses [and Rule 11(b)], the Court's role is limited to resolving any formation defenses, or validity defenses that are specific to the delegation clause itself.").

## II.        Plaintiffs' Other Arguments Against Arbitration All Fail

In the event this Court concludes it must resolve the threshold question of arbitrability (which it should not), it should reject Plaintiffs' arguments against arbitration.

### A. Any Claimed Inconsistency Between The Arbitration Agreements And JAMS Minimum Standards Do Not Prevent Arbitration

Plaintiffs first contend the Arbitration Agreements are invalid because they conflict with certain JAMS rules, such that JAMS assertedly "will not administer the arbitration."  Mot.6. Specifically, even though no arbitration has yet been tendered to JAMS, Plaintiffs speculate JAMS will adjudicate an arbitration only if the contract complies with" certain "minimum standards," including requirements that: (1) small claims court remain available; (2) the consumer be given "clear" notice of arbitration; (3) the consumer have access to the "location" of the arbitration; and (4) that the company bear "all costs associated with the arbitration."  Opp.6–7.  On those bases, Plaintiffs claim the Arbitration Agreements are inconsistent with JAMS Minimum Standards.  *Id.*

Again, as a threshold matter, "whether JAMS will or will not administer the arbitration is an issue of arbitrability that the parties delegated to the arbitrator" under JAMS Rule 11(b). *Johnston v. VGW Holdings, Ltd.*, No. 3:25-CV-653-RAH, 2026 WL 699708, at *4 (M.D. Ala. Mar. 12, 2026).[1]  The proper course of action here is thus to compel arbitration and stay this case, so that if "JAMS refuse[s] to administer the arbitration, [plaintiff] may then seek the appropriate

---

[1] To the extent the decision in *Nguyen v. OKCoin USA, Inc.*, No. 22-cv-06022, 2023 WL 2095926, at *3 (N.D. Cal. Feb. 17, 2023), is to the contrary, it is distinctly in the minority and inconsistent with all the above authority requiring delegation in view of JAMS Rule 11(b).  In fact, *Nguyen* did not even consider *Rent-A-Center*'s mandates nor the issue of potential severance.

relief from this Court." *Johnston*, 2026 WL 699708, at *4; *see also Keller v. About, Inc.*, No. 21-CV-228, 2021 WL 1783522, at *4 (S.D.N.Y. May 5, 2021) (same).

Disregarding the delegation requirement, Plaintiffs cite *Flora v. Prisma Labs, Inc.*, No. 23-CV-00680, 2023 WL 5061955, at *4 (N.D. Cal. Aug. 8, 2023), to argue that there was no "meeting of the minds" because "JAMS would not administer an arbitration under these Arbitration Provisions." Opp.7. But *Flora* does not support Plaintiffs' position. To the contrary, after holding that a contract's forum selection clause was "in conflict" with JAMS Minimum Standards, the court *compelled arbitration* after finding that the provision "can easily be severed without affecting any other provision." *Flora,* 2023 WL 5061955, at *7. Far from proving that inconsistencies between arbitration agreements and JAMS Minimum Standards evidence a lack of mutual assent to a contract's terms, *Flora* stands for the unremarkable proposition that a court can sever provisions to comply with JAMS Minimum Standards and then still compel arbitration.[2]

## B. The Parties Mutually Agreed To Arbitrate Their Disputes.

Plaintiff also contend they never mutually assented to arbitrate their claims with Forth because "third parties" purportedly "pressured" them into signing the agreements and used "auto-scrolling" software that "impeded Plaintiffs from reviewing the agreements." Opp.9.[3] Plaintiffs filed declarations purporting to attest to those conditions. But Plaintiffs' "self-serving assertions" about the conditions surrounding the execution of their contracts, even if true, "are insufficient to

---

[2] Plaintiffs' reliance on *Penn v. Ryan Family Steakhouses, Inc.*, 95 F. Supp. 2d 940, 948–49 (N.D. Ind. 2000), Opp.7, is also misplaced. In *Penn*, the court refused to enforce an arbitration agreement calling for arbitration by Employment Dispute Services Inc. because that organization's arbitration rules and the relevant circumstances suggested improper bias towards plaintiffs, particularly with respect to how arbitrators were selected. *Id.* Plaintiffs make no arguments about potential bias.

[3] Defendants understand the phrase "auto-scroll," as used in Plaintiffs' brief, to refer to a feature of the Clixsign electronic signing software that automatically moves the document view to the next field requiring a signature or initial, while still allowing the signer to freely scroll back and review any portion of the document at any time.

undermine the enforceability of the agreements." *Garcia de Alba v. Brinker Int'l, Inc.*, No. CV 16-3486, 2017 WL 10543656, at \*5 (C.D. Cal. June 30, 2017) (rejecting arbitration defense based on "the manner in which the document was provided to" the plaintiff).

Plaintiffs' suggestion that they were "pressured" and "rushed" into signing the arbitration agreements because representatives of their debt settlement relief companies remained on the phone during the contracting process, Opp.9, is insufficient to find the Agreement invalid.[4] *See, e.g.*, *Martinez-Gonzalez v. Elkhorn Packing Co. LLC*, 25 F.4th 613, 620 (9th Cir. 2022) (reversing denial of motion to compel where plaintiff signed an arbitration agreement presented by a representative who instructed him where to sign and told him "to hurry"); *Lojewski v. Grp. Solar USA, LLC*, No. 22-CV-10816, 2023 WL 5301423, at \*8 (S.D.N.Y. Aug. 17, 2023) (compelling arbitration despite allegation that plaintiff was not "given an opportunity to review the documents or permitted to scroll through" them because "there is no indication that [she] requested or attempted to review the terms," nor that the representative "actively misled [her] as to the terms").[5]

The use of auto-scrolling software also fails to show Plaintiffs lacked an opportunity to learn about the arbitration provisions. Plaintiffs' suggestion that this feature somehow prevented them from reviewing the contents of the Agreements is false, *see* Opp.12; the signatory always retains the ability to scroll upwards and review any contents of the contract in the browser without

---

[4] Bellefeuille additionally alleges he does not "recall" signing the Forth Agreement dated January 31, 2023. Bellefeuille Dec. ¶ 6. But a "lack of recollection does not contradict . . . evidence that he signed [an] arbitration agreement, nor does it establish a lack of mutual consent." *Chavoya v. Merrill Gardens L.L.C.*, No. 1:24-CV-00268, 2025 WL 2196296, at \*7 (E.D. Cal. Aug. 1, 2025).

[5] Plaintiffs' implication that they signed the Agreements out of economic duress does not absolve them of their obligation, either. Even when an employee is "forced to sign the Arbitration Agreement to keep [their] job," which is a situation far different from the circumstances here, "such pressure does not render the agreement unenforceable." *Mojica v. Kustom U.S., Inc.*, 2:24-cv-03671, 2025 WL 3704455, at \*2 (E.D. Cal. Dec. 22, 2025); *Martinez-Gonzalez*, 25 F.4th at 620 (plaintiff's "challenging financial situation" insufficient to avoid arbitration).

5

any time limitation.[6]  Second Declaration of Rick Anderlick ("Anderlick Dec.") ¶ 11, attached as **Exhibit 1**.  Further, the signing environment clearly offers the signatory the ability to "Disable Auto Scrolling" through the single click of a button.  Anderlick Dec. ¶ 12; Ex. C.  The "auto-scroll" feature Plaintiffs complain of is akin to a "scrollwrap" agreement, in which a "user is presented with the agreement and must physically scroll to the bottom of it" to manifest assent to its terms.  *Sellers v. JustAnswer LLC*, 73 Cal. App. 5th 444, 463 (2021).  Scrollwrap agreements are "consistently found to be enforceable" because they "place the contractual terms directly in front of the user."  *Id.* at 470.  Here, despite directing Plaintiffs to each signing field, the software displayed the contract's terms, and Plaintiffs could easily scroll through the Agreement to review those terms or disable that feature all together if they wished.  *Yeomans v. World Fin. Grp. Ins. Agency, Inc.*, 485 F. Supp. 3d 1168, 1183 (N.D. Cal. 2020), *aff'd* 2021 WL 5356537 (9th Cir. Nov. 17, 2021) (compelling arbitration where the software "would permit the user clear opportunity to view all pages . . . even if the terms are not carefully read").

It is black letter law that "a party who signs a written agreement generally is bound by its terms, even though he neither reads it nor considers the legal consequences of signing it." *Operating Engineers Pension Trust v. Gilliam*, 737 F.2d 1501 (9th Cir. 1984).  It is also beyond dispute that a business is under "no obligation to highlight [the existence of an] arbitration clause . . . nor [is] it required to specifically call [such] clause to [a plaintiff's] attention."  *Sanchez v. Valencia Holding Co., LLC*, 353 P.3d 741, 751 (Cal. 2015).  At bottom, "the failure to read a

---

[6] The decision in *In re T-Mobile 2022 Customer Data Sec. Breach Litig.*, No. 3073, 2026 U.S. Dist. LEXIS 38170, at *61 (W.D. Mo. Feb. 9, 2026), is readily distinguishable, as that platform only had the contract displayed for "a short time for review before timing out and cancelling the purchase."  *Id.*

contract before agreeing to its terms does not relieve a party of its obligations under the contract," *Nguyen v. Barnes & Nobel, Inc.,* 763 F.3d 1171, 1179 (9th Cir. 2014), as Plaintiffs claim here.[7]

## C. The Arbitration Provisions Are Not Unconscionable

In a last-ditch attempt to avoid arbitration, Plaintiffs claim the arbitration provisions are "unconscionable." Opp.12–15. That argument, too, must be resolved by the arbitrator. *Brennan v. Opus Bank*, 796 F.3d 1125, 1133 (9th Cir. 2015); *supra* pp.1–3. But even if the Court proceeds to evaluate Plaintiffs' argument, it fails. Under California law, an arbitration agreement must be *both* procedurally and substantively unconscionable to be invalid. *Circuit City Stores, Inc. v. Mantor*, 335 F.3d 1101, 1105 (9th Cir. 2003). The party challenging the enforceability of an arbitration agreement bears that burden of proof. *Mortensen v. Bresnan Commc'ns LLC*, 722 F.3d 1151, 1157 (9th Cir. 2013). Plaintiffs have not met their burden of proving that the Arbitration Agreements here are either procedurally or substantively unconscionable.

"Procedural unconscionability exists when there is oppression or surprise in an agreement because of unequal bargaining power." *Slaughter v. Stewart Enters., Inc.*, No. C 07-01157-MHP, 2007 WL 2255221, at *8 (N.D. Cal. Aug. 3, 2007). Although contracts of adhesion evidence a "lack of bargaining power," courts "only refuse to enforce" such contracts if they are "unduly oppressive." *Flora*, 2023 WL 5061955, at *3. Courts thus have routinely held that adhesive arbitration contracts are not "unduly oppressive"—and therefore not procedurally unconscionable—where the contract offers a meaningful opportunity to opt out of mandatory arbitration. *See Nagrampa v. MailCoups, Inc.*, 469 F.3d 1257, 1280 (9th Cir. 2006); *Flora*, 2023

---

[7] However, if this Court disagrees, it should order limited discovery regarding the conditions surrounding Plaintiffs' execution of their contracts, and reserve ruling on this Motion until the record has been developed. *See Knapke v. PeopleConnect, Inc*, 38 F.4th 824, 831 (9th Cir. 2022) (where factual disputes preclude ruling on motion to compel arbitration, court should order limited, arbitration-related discovery and then resolve the motion under a summary judgment standard).

WL 5061955, at *3 (contract not unconscionable where plaintiff could "opt out of binding arbitration by mailing a notification of their intent to do s[o] within 30 days").

The Arbitration Agreements here are not "unduly oppressive" because they afforded Plaintiffs the opportunity to opt out of mandatory arbitration. Just like the arbitration agreements in *Flora*, the Agreements here allowed Plaintiffs to "revoke [their] agreement to mandatory arbitration herein by written notice . . . within thirty (30) days of . . . signing." *E.g.*, Dkt. 100 at 36. Neither Plaintiff did so, and the opt-out provision militates against any finding of procedural unconscionability. *See, e.g.*, *Nagrampa*, 469 F.3d at 1280.[8] Nor do the Arbitration Agreements contain *any* hallmarks of "unfair surprise." Unfair surprise only exists when the "supposedly agreed-upon terms are hidden in a prolix printed form drafted by the party seeking to enforce them." *Flora*, 2023 WL 5061955, at *3 (citation omitted). Plaintiffs notably do not take issue with the format of the contract itself, but rather again blame the "auto-scrolling software" and sense of "pressure" for their alleged surprise. Opp.14. But like Plaintiffs' notice and mutual assent arguments, *see supra* pp.4–7, those arguments fail because Plaintiffs retained control of the document signing software and could have—but allegedly did not—simply scrolled through the document to familiarize themselves with its terms, including its arbitration terms, or disabled the auto-scrolling feature. *See Yeomans*, 485 F. Supp. 3d at 1183; *Nguyen,* 763 F.3d at 1179.

The Agreements also are not substantively unconscionable. Substantive unconscionability "turns on the existence of overly-harsh or one-sided results." *Nagrampa*, 469 F.3d at 1280. Plaintiffs challenge only the Agreements' requirement that an arbitration be held before JAMS,

---

[8] The existence of the opt-out provision here makes Plaintiff's reliance on *OTO, LLC v. Kho*, 447 P.3d 680, 689 (Cal. 2019), inapt. *OTO* also arose in the context of an employment agreement, where employees "confront a very different" and heightened "set of burdens," *Sanchez*, 353 P.3d at 755, resulting from the potential loss of livelihood.

which is allegedly "unavailable" and the cost-splitting provisions, Opp.15, but do not explain how either issue would lead to "overly-harsh or one sided-results," nor do they identify anything "problematic" about either provision. *See DeGraff v. Perkins Coie LLP*, No. C 12-02256, 2012 WL 3074982, at *4 (N.D. Cal. July 30, 2012) (no substantive unconscionability where plaintiff did not explain why the challenged provisions would be "problematic"). And, in any event, any decision as to whether JAMS will administer an arbitration must be made by JAMS in the first instance, and before JAMS speaks, there is no basis to conclude that forum is "unavailable." *See supra* pp.1–3.[9] Further, "requiring that costs of arbitration be borne equally by the parties is not *per se* substantively unconscionable." *Brookdale Inn & Spa v. Certain Underwriters at Lloyds, London*, No. 5:13-CV-02559-EJD, 2014 WL 116442, at *6 (N.D. Cal. Jan. 13, 2014) (cost-splitting provision not unconscionable because it "does not unreasonably favor Defendant such that it creates an overly harsh result").[10] And even if they did make the Agreement unconscionable, the provisions could be severed. *See infra* pp.10.

### D. At Most, The Allegedly Inconsistent Provisions Could Be Severed

"Both the FAA and California law favor severance when the contract is not 'permeated' with unconscionability." *Cobarruviaz v. Maplebear, Inc.*, 143 F. Supp. 3d 930, 943 (N.D. Cal. 2015). To determine whether "an unlawful contract may be cured through severance, courts look to the various purposes of the contract," and severance is warranted when an offending term does

---

[9] Plaintiffs do not contend the Arbitration Agreement's requirement that any arbitration proceeding take place in California renders the Agreement unconscionable.

[10] Plaintiffs cite—without commentary—*Armendariz v. Found. Health Psychare Servs., Inc.*, 6 P.3d 669, 687 (Cal. 2000). Mot. 15. In that case, the California Supreme Court narrowly held that cost-splitting provisions are unconscionable in the *employment context*. The California Supreme Court has since clarified it has "not extended *Armendariz* . . . to common law claims generally." *Boghos v. Certain Underwriters at Lloyd's of London*, 115 P.3d 68, 75 (Cal. 2005).

"not related to the agreement's chief objective." *Flora*, 2023 WL 5061955, at *7. Courts routinely sever contested provisions of arbitration agreements, especially where, as here, the contract contains a severability clause. *See Cobarruviaz*, 143 F. Supp. 3d at 939.

Plaintiffs' arguments against severance, Opp.8–9, all lack merit. Plaintiffs claim severance is inappropriate because the agreements are "permeated by unconscionability." Opp.8. But Plaintiffs only identify cost splitting and JAMS selection as the purported bases for substantive unconscionability, and neither the selection of JAMS nor the cost-splitting provision "relat[e] to the agreement's chief objective" of requiring Plaintiffs' disputes to be resolved through arbitration, rather than in court. *Flora*, 202 WL 5061955, at *7. Plaintiffs' cited cases also are easily distinguishable. In *Flora*, the court *granted* a motion to compel arbitration after finding a provision that conflicted with JAMS Minimum Standards was severable because it did not "relate to the agreement's chief objective." *Id.* at *7. And, in *Serpa v. Cal Sur. Investigations, Inc.*, 215 Cal. App. 4th 695 (2013), the court held that a provision requiring the parties to bear their own attorneys' fees was "collateral to the main purpose of the contract" and severable. *Id.* at 697.

Here, neither the location of the arbitration hearing nor the issue of cost splitting is "integral" to the agreements' basic requirement that disputes be subject to arbitration, and those clauses are therefore severable under the plain terms of the Agreements. *See, e.g.*, *Fitzgerald v. Grand Circle, LLC*, No. CV 20-2586, 2020 WL 6152027, at *4 (E.D. Pa. Oct. 20, 2020) ("Clauses regarding forum location and fee-splitting are logistical concerns and can be severed while maintaining the core agreement to arbitrate.").

## CONCLUSION

For the foregoing reasons, this Court should compel arbitration of Plaintiff Bellefeuille and Adam's claims and stay this case with respect to those two Plaintiffs pending arbitration.

Dated: April 16, 2026

Respectfully submitted,

*s/ Seth M. Erickson*_____
Seth M. Erickson
TROUTMAN PEPPER LOCKE LLP
111 S. Wacker, Suite 4100
Chicago, IL 60606
Telephone:  (312) 759-5930
seth.erickson@troutman.com

Ronald I. Raether, Jr. (*pro hac vice*)
TROUTMAN PEPPER LOCKE LLP
100 Spectrum Center Drive, Suite 1500
Irvine, CA 92614
Telephone: (949) 622-2722
Ronald.Raether@troutman.com

Joshua Daniel Davey (*pro hac vice*)
TROUTMAN PEPPER LOCKE LLP
301 S. College St., 34th Floor
Charlotte, NC 28202
Telephone: (704) 916-1503
Joshua.Davey@troutman.com

Timothy J. St. George (*pro hac vice*)
TROUTMAN PEPPER LOCKE LLP
1001 Haxall Point
Richmond, VA 23219
Telephone: (804) 697-1254
Timothy.St.George@troutman.com

*Attorneys for Defendants Set Forth, LLC d/b/a Forth*

11