**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| IN RE: SET FORTH DATA SECURITY BREACH LITIGATION | Consolidated Case No. 1:24-cv-11688<br><br>Honorable Martha M. Pacold |

**DEFENDANTS SET FORTH AND CENTREX'S ANSWER AND AFFIRMATIVE DEFENSES TO PLAINTIFFS' CONSOLIDATED CLASS ACTION COMPLAINT**

Defendants Set Forth LLC, d/b/a Forth (named in the Complaint as "Set Forth, Inc.") ("Set Forth") and Centrex Software, Inc. ("Centrex") (together, "Defendants"), by and through their undersigned counsel, hereby submit their Answer and Affirmative Defenses to the Consolidated Class Action Complaint (ECF No. 85) (the "Complaint") filed by Plaintiffs Joel Bellefeuille, Jr., Sharon Blue, Richard Cooper, Gladys Ewing, Kim Girven, LaToya Gravely, Bertha Meza, Janice Adam, and Mary Moses (collectively, "Plaintiffs").

## INTRODUCTION

1. On May 21, 2024, an unauthorized user gained access to Defendants' shared CRM platform and compromised Defendants' customers' personal information (the "Data Breach" or "Breach"). Defendants' internal investigation revealed, on July 1, 2024, that the unauthorized user gained access to sensitive customer information stored on Defendants' platform, including customer names, addresses, dates of birth, and Social Security numbers. Financial information was also exposed in the Breach, including credit reports, loan applications, and bank statements. Yet, Defendants did not notify the Maine Attorney General that the Breach affected the personal

information of at least 1.5 million customers until November 8, 2024. Neither were Plaintiffs nor similarly situated consumers notified of the Breach until on or around November 8, 2024.

**ANSWER TO PARAGRAPH 1:** Defendants admit that in May 2024 Set Forth identified suspicious activity on its CRM platform believed to be associated with a user of that Platform (the "Incident"), that Set Forth promptly remediated the underlying issue, and that Set Forth then engaged independent computer forensic experts to investigate the Incident, as further described in the Notice Letter attached to the Complaint as Exhibit A. Defendants further admit that Set Forth began mailing Notice Letters dated November 8, 2024 to individuals whose information may have been involved in the Incident, and that Set Forth submitted notice of the Incident to the Office of the Maine Attorney General. Defendants refer to the Notice Letter and Set Forth's regulatory submissions for their complete and accurate contents and deny any characterization inconsistent therewith. Defendants deny that the Incident involved a "shared CRM platform" of "Defendants," deny Plaintiffs' characterization of the dates and findings of Set Forth's investigation, and deny the remaining allegations in Paragraph 1.

2. As a result of the Breach, cybercriminals illegally obtained the sensitive personally identifiable information ("PII") of Plaintiffs and Class Members, including, at a minimum, names, addresses, dates of birth, financial account information, credit reports, and Social Security numbers. As a result of Defendants' negligent failure to protect Plaintiffs' and Class Members' sensitive PII, the PII is now in the possession of cybercriminals who are likely to exploit it indefinitely.

**ANSWER TO PARAGRAPH 2:** Defendants deny that they negligently failed to protect any information and deny that Plaintiffs' or putative Class Members' information is in the possession of cybercriminals who are likely to exploit it. To the contrary, the circumstances

surrounding the Incident and the fact that there is no indication of the use of the plaintiffs' information since suggest that that perpetrator intended to obtain information concerning merchant cash advance leads, rather than acquire the personal information of individuals. Defendants deny the remaining allegations in Paragraph 2.

3. Defendants handled the PII in a reckless and negligent manner. Specifically, the PII was stored on Defendants' computer systems in a state that was vulnerable to cyberattacks. Upon information and belief, the method of the Data Breach and the risk of unauthorized disclosure of the Plaintiffs' and Class Members' PII were known risks to Defendants. Defendants were on notice that their failure to implement adequate security measures to address these risks left the PII of Plaintiffs and Class Members dangerously unprotected.

**ANSWER TO PARAGRAPH 3:** Defendants deny the allegations in Paragraph 3.

4. As a result of the Data Breach, Plaintiffs and Class Members suffered concrete injuries and ascertainable losses from: (1) the invasion of their privacy; (2) the theft of their PII; (3) the lost or diminished value of their PII; (4) the loss of the benefit of their bargain; (5) the substantial, imminent, and ongoing risk of actual and attempted fraud, identity theft, and other misuse of their PII; (6) the value and opportunity cost of time spent mitigating the harms of the Breach; and/or (7) nominal damages.

**ANSWER TO PARAGRAPH 4:** Defendants deny the allegations in Paragraph 4.

5. Plaintiffs bring this class action on behalf of consumers whose sensitive information was stolen by cybercriminals in the Breach to address Defendants' failure to adequately safeguard Plaintiffs' and Class Members' sensitive personal data and Defendants' failure to properly notify Plaintiffs and Class Members that their information was accessed by cybercriminals in the Breach.

**ANSWER TO PARAGRAPH 5:** Defendants admit that Plaintiffs purport to bring this action as a class action. Defendants deny that this action may properly be maintained as a class action, deny that they failed to adequately safeguard information or to properly provide notice, and deny the remaining allegations in Paragraph 5.

6. A cyberattack was eminently foreseeable. Plaintiffs and Class Members were the foreseeable and probable victims of Defendants' failure to prevent such an attack. By obtaining, collecting, using, and profiting from the PII of Plaintiffs and Class Members, Defendants assumed legal duties to protect and safeguard that information and knew, or should have known, it was responsible for protecting Plaintiffs' and Class Members' PII from unauthorized access and intrusion.

**ANSWER TO PARAGRAPH 6:** Paragraph 6 states legal conclusions to which no response is required. To the extent a response is required, Defendants deny the allegations in Paragraph 6.

7. Defendants admit that their systems were attacked and that Plaintiffs' and Class Members' PII was compromised in the attack.

**ANSWER TO PARAGRAPH 7:** Defendants admit that the Notice Letter disclosed the Incident and refer Plaintiffs to the Notice Letter for its complete and accurate contents. Defendants deny the remaining allegations in Paragraph 7.

8. The exposed PII of Plaintiffs and Class Members can—and likely will—be sold on the dark web. In fact, it is highly probable that Plaintiffs' and Class Members' PII has already been published and circulated on the dark web as a result of the Breach.

**ANSWER TO PARAGRAPH 8:** Defendants deny that any Plaintiff's or putative Class Member's information has or likely will been published, circulated, or sold on the dark web as a

result of the Data Breach. Defendants lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 8 and therefore deny them.

9. Hackers can sell the unencrypted, unredacted PII to criminals, further exacerbating the risks. As a result, Plaintiffs and Class Members must now indefinitely monitor their financial and other accounts to guard against a lifelong threat of identity theft and fraud, which is significantly heightened by the exposure of their Social Security numbers. Plaintiffs and Class Members are now forced to take proactive measures to mitigate against identity theft, including but not limited to, purchasing credit monitoring or identity protection services, purchasing credit reports, placing credit freezes and fraud alerts on their credit reports, and investigating and disputing fraudulent or suspicious activity on their financial accounts or with use of their Social Security numbers.

**ANSWER TO PARAGRAPH 9:** Defendants deny that Plaintiffs and putative Class Members must “indefinitely” monitor their accounts or take any of the measures described in Paragraph 9 as a result of any act or omission of Defendants. Defendants lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 9 and therefore deny them.

10. Plaintiffs and Class Members did not choose to share their information with unauthorized third parties, so they have lost the economic value of negotiating a fair price for their PII because of the Data Breach.

**ANSWER TO PARAGRAPH 10:** Defendants deny the allegations in Paragraph 10.

11. Armed with the PII compromised in the Data Breach, cybercriminals have already engaged in identity theft and fraud and can in the future commit a variety of crimes, including, e.g., using Plaintiffs’ and Class Members’ PII to fraudulently open new financial accounts, take

out loans, obtain government benefits, file tax returns, and obtain driver's licenses. Cybercriminals may also combine PII obtained from the Breach with other sources of personal information to subject Plaintiffs and Class Members to further instances of fraud. PII stolen from the Breach can be used in phishing emails and messages to Class Members to trick Class Members into revealing even more sensitive information or downloading ransomware, which could lead to devastating full account takeovers, financial fraud, and identity theft.

**ANSWER TO PARAGRAPH 11:** Defendants deny that cybercriminals have engaged in identity theft or fraud using information involved in the Incident. Defendants lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 11 and therefore deny them.

12. Because Social Security numbers are key to numerous financial transactions and very difficult to change, Plaintiffs and Class Members cannot effectively mitigate these harms and risks caused by Defendants' failure to prevent the Breach.

**ANSWER TO PARAGRAPH 12:** Defendants deny that they failed to prevent the Incident through any breach of a legal duty and deny that Plaintiffs or putative Class Members have suffered harms or risks caused by Defendants. Defendants lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 12 and therefore deny them.

13. Defendants could have prevented this Breach by limiting access to sensitive information to only necessary employees, requiring multi-factor authentication to verify access credentials, encrypting data at rest and in transit, monitoring their systems for signs of unusual activity or the transfer of large volumes of data, and regularly rotating passwords.

**ANSWER TO PARAGRAPH 13:** Defendants deny the allegations in Paragraph 13.

14. The compromise of Plaintiffs' and Class Members' PII was a direct result of Defendants' negligent and/or careless actions, omissions, and failure to adequately protect the PII of Plaintiffs and Class Members. Moreover, in the wake of the Data Breach, Defendants have not taken sufficient steps to notify affected individuals. Compounding these issues, at some point in 2025, Defendant Set Forth scrubbed the Data Breach notice from its website, leaving victims of the Breach with no ongoing source of information on the data breach from Defendants.

**ANSWER TO PARAGRAPH 14:** Defendants admit that, after a period of time, the notice of the Incident was no longer posted on Set Forth's website. Defendants deny Plaintiffs' characterization of that fact, deny that Set Forth "scrubbed" any notice, and deny the remaining allegations in Paragraph 14.

15. Plaintiffs bring this action on behalf of all persons whose PII was compromised because of Defendants' failure to: (i) adequately protect the PII of Plaintiffs and Class Members; (ii) warn Plaintiffs and Class Members of Defendants' inadequate information security practices; and (iii) effectively secure hardware containing protected PII using reasonable and effective security procedures free of vulnerabilities.

**ANSWER TO PARAGRAPH 15:** Defendants admit that Plaintiffs purport to bring this action on behalf of a putative class. Defendants deny that they failed to protect Plaintiffs' or putative Class Members' information, deny that they had a duty to "warn" of inadequate practices because their practices were not inadequate, deny that this action may properly be maintained as a class action, and deny the remaining allegations in Paragraph 15.

16. Defendants disregarded the rights of Plaintiffs and Class Members by intentionally, willfully, recklessly, and/or negligently failing to take and implement adequate and reasonable measures to ensure that the PII of Plaintiffs and Class Members was safeguarded. Defendants

further disregarded Plaintiffs' and Class Members' rights by failing to take reasonable and necessary steps to prevent the unauthorized disclosure of Plaintiffs' and Class Members' PII, and failing to follow appropriate standards, protocols, policies, and procedures for the encryption and protection of such sensitive data.

**ANSWER TO PARAGRAPH 16:** Defendants deny the allegations in Paragraph 16.

17. Plaintiffs seek to remedy these harms on behalf of themselves and all similarly situated consumers whose PII was stolen in the Breach. Plaintiffs seek remedies including (i) compensation for the theft and misuse of their data; (ii) reimbursement for out-of-pocket costs, including lifetime comprehensive identity protection services; and (iii) compensation for time spent responding to the Data Breach.

**ANSWER TO PARAGRAPH 17:** Defendants admit that Plaintiffs purport to seek the relief described in Paragraph 17. Defendants deny that Plaintiffs or any putative Class Member is entitled to any relief and deny the remaining allegations in Paragraph 17.

18. Because of the Data Breach, the PII of Plaintiffs and Class Members was compromised through disclosure to one or more unknown and unauthorized third parties. Plaintiffs and Class Members have a continuing interest in ensuring that their information is and remains safe and are thus entitled to injunctive and other equitable relief.

**ANSWER TO PARAGRAPH 18:** Defendants deny that Plaintiffs or putative Class Members are entitled to injunctive or other equitable relief. Defendants lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 18 and therefore deny them.

## PARTIES

### A. Plaintiffs

19. Plaintiff Joel Bellefeuille, Jr. is and was at all times mentioned herein a resident and citizen of Holland, Michigan.

**ANSWER TO PARAGRAPH 19:** The Court has compelled Plaintiff Bellefeuille's claims to individual arbitration and stayed those claims. Accordingly, no response to Paragraph 19 is required, and Defendants provide the following response without waiver of, and expressly subject to, their right to arbitrate all claims asserted by Plaintiff Bellefeuille. To the extent a response is required, Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 19 and therefore deny them.

20. Plaintiff Sharon Blue is and was at all times mentioned herein a resident and citizen of Norwalk, Connecticut.

**ANSWER TO PARAGRAPH 20:** Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 20 and therefore deny them.

21. Plaintiff Richard Cooper is and was at all times mentioned herein a resident and citizen of Rimrock, Arizona.

**ANSWER TO PARAGRAPH 21:** Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 21 and therefore deny them.

22. Plaintiff Gladys Ewing is and was at all times mentioned herein a resident and citizen of Hillside, Illinois.

**ANSWER TO PARAGRAPH 22:** Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 22 and therefore deny them.

23. Plaintiff Kim Girven is and was at all times mentioned herein a resident and citizen of East Hampton, Connecticut.

**ANSWER TO PARAGRAPH 23:** Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 23 and therefore deny them.

24. Plaintiff LaToya Gravely is and was at all times mentioned herein a resident and citizen of the State of Ohio.

**ANSWER TO PARAGRAPH 24:** Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 24 and therefore deny them.

25. Plaintiff Bertha Meza is and was at all times mentioned herein a resident and citizen of Moreno Valley, California.

**ANSWER TO PARAGRAPH 25:** Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 25 and therefore deny them.

26. Plaintiff Janice Adam is and was at all times mentioned herein a resident and citizen of Castro Valley, California.

**ANSWER TO PARAGRAPH 26:** The Court has compelled Plaintiff Adam's claims to individual arbitration and stayed those claims. Accordingly, no response to Paragraph 26 is required, and Defendants provide the following response without waiver of, and expressly subject to, their right to arbitrate all claims asserted by Plaintiff Adam. To the extent a response is required, Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 26 and therefore deny them.

27. Plaintiff Mary Moses is and was at all times mentioned herein a resident and citizen of Wise County, Virginia.

**ANSWER TO PARAGRAPH 27:** Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 27 and therefore deny them.

## B. Defendants

28. Defendant Set Forth, Inc. is a Delaware corporation, with its principal place of business at 1900 East Golf Road, Suite 550, Schaumburg, Illinois 60173. Set Forth's registered agent is VCorp Agent Services, Inc., located at 208 S. LaSalle Street, Suite 814, Schaumburg, Illinois 60173. Set Forth has previously done business under the names Forth, Inc., Debt Pay Gateway, and DebtPayPro.

**ANSWER TO PARAGRAPH 28:** Defendants admit that Set Forth maintains its principal place of business at 150 N. Martingale Road, Suite 1200, Schaumburg, Illinois 60173, and that it has done business under the name "Forth." Defendants state that Set Forth is a Delaware limited liability company and that its correct legal name is Set Forth LLC, d/b/a Forth, incorrectly named in the Complaint as "Set Forth, Inc." Defendants deny the remaining allegations in Paragraph 28.

29. Defendant Centrex Software, Inc. is a California corporation with its principal place of business at 3090 Pullman Street, Suite F, Costa Mesa, California 92626. Centrex's registered agent is Thomas O'Brien Markel III, located at the same address.

**ANSWER TO PARAGRAPH 29:** Centrex admits that it is a California corporation with its principal place of business at 3090 Pullman Street, Suite F, Costa Mesa, California 92626. Centrex denies the remaining allegations in Paragraph 29.

## JURISDICTION AND VENUE

30. This Court has subject matter jurisdiction over this action pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2), because at least one member of the putative Class, as defined below, is a citizen of a state other than that of Defendants, there are more than 100 putative Class Members, and the aggregate amount in controversy exceeds $5,000,000, exclusive of interest and costs.

**ANSWER TO PARAGRAPH 30:** Paragraph 30 states legal conclusions to which no response is required. To the extent a response is required, Defendants do not contest this Court's subject matter jurisdiction under 28 U.S.C. § 1332(d) for purposes of this action, but deny that this action may properly be maintained as a class action and deny that Plaintiffs or putative Class Members are entitled to any relief. Defendants deny the remaining allegations in Paragraph 30.

31. This Court has general personal jurisdiction over Defendant Set Forth because it maintains its principal place of business in Schaumburg, Illinois, regularly conducts business in Illinois, and has sufficient minimum contacts in Illinois, such as to not offend traditional notions of fair play and substantial justice.

**ANSWER TO PARAGRAPH 31:** Paragraph 31 states legal conclusions to which no response is required. To the extent a response is required, Set Forth admits that it maintains its principal place of business in Schaumburg, Illinois, and does not contest personal jurisdiction in this District for purposes of this action. Defendants deny the remaining allegations in Paragraph 31.

32. This Court has specific personal jurisdiction over Defendant Centrex because a substantial part of the events, omissions, and acts giving rise to the claims herein occurred in this District. Additionally, the exercise of personal jurisdiction is proper because Centrex has purposefully availed itself of the privileges of conducting business within this District and has established sufficient minimum contacts within this District.

**ANSWER TO PARAGRAPH 32:** Paragraph 32 states legal conclusions to which no response is required. To the extent a response is required, Centrex does not contest personal jurisdiction in this District for purposes of this action, but denies that a substantial part of the

events, omissions, or acts giving rise to the claims occurred through any conduct of Centrex, and denies the remaining allegations in Paragraph 32.

33. Venue in this District is proper under 28 U.S.C. § 1391(a) through (d) because Defendant Set Forth resides in this District and a substantial part of the conduct giving rise to Plaintiffs' claims occurred in this District, including Defendants' collection or storage of Plaintiffs' and Class Members' PII.

**ANSWER TO PARAGRAPH 33:** Paragraph 33 states legal conclusions to which no response is required. To the extent a response is required, Defendants do not contest that venue is proper in this District for purposes of this action, without waiver of their right to compel arbitration of the claims of any Plaintiff or putative Class Member who agreed to arbitrate. Defendants deny the remaining allegations in Paragraph 33.

**FACTUAL ALLEGATIONS**

34. Defendant Set Forth provides online account management services for debt relief service providers and their customers. As such, Set Forth stores a litany of highly sensitive PII about its current and former consumers and its clients' current and former consumers.

**ANSWER TO PARAGRAPH 34:** Defendants admit that Set Forth provides online account management services for debt relief service providers and their customers, and that in the course of providing those services information relating to individuals is maintained on the Set Forth platform. Defendants deny Plaintiffs' characterization of that information and deny the remaining allegations in Paragraph 34.

35. Defendant Centrex "provides cloud-based customer relationship management (CRM) solutions powered by the Set Forth platform" to its own clients who collect and upload consumer information.

**ANSWER TO PARAGRAPH 35:** Defendants admit that the quoted language appears in the notice attached to the Complaint as Exhibit B and refer to that document for its complete and accurate contents. Centrex admits that it provides customer relationship management solutions to its clients that are powered by the Set Forth platform. Defendants deny that Centrex collects or uploads consumer information on behalf of Plaintiffs or putative Class Members, deny Plaintiffs' characterization of Centrex's business, and deny the remaining allegations in Paragraph 35.

36. Plaintiffs and Class Members are current and former customers of Defendants or Defendants' clients whose information was compromised in the Data Breach. As such, some Plaintiffs and Class Members never directly provided their PII to Defendants or had any relationship with Defendants.

**ANSWER TO PARAGRAPH 36:** Defendants admit that some Plaintiffs and putative Class Members allege they never directly provided information to Defendants and had no relationship with Defendants. Defendants deny Plaintiffs' characterization of the information involved and deny the remaining allegations in Paragraph 36.

37. Upon information and belief, in the course of collecting the PII of Plaintiffs and Class Members, Defendants promised to provide confidentiality and adequate security for the data they collected through their applicable privacy policies and through other disclosures made in compliance with statutory privacy requirements.

**ANSWER TO PARAGRAPH 37:** Defendants deny the allegations in Paragraph 37.

38. Indeed, Defendant Set Forth provides on its website: "To protect your personal information from unauthorized access and use, we use security measures that comply with federal law. These measures include computer safeguards and secured files and buildings. We also attempt to limit personal information access to only employees, agents and representatives who need to

know." Defendant Set Forth assures consumers that the company is "focus[ed] on security, compliance, and reliability."

**ANSWER TO PARAGRAPH 38:** Set Forth admits that the quoted language has appeared on its website and refer to Set Forth's website and privacy policy for their complete and accurate contents, and deny any characterization inconsistent therewith. Set Forth denies that any Plaintiff viewed or relied on such statements, and denies the remaining allegations in Paragraph 38.

39. Likewise, Defendant Centrex assures customers that they "can put [their] full trust in Centrex Software," that security is a "top priority," and that the company "has your best interest in mind when it comes to overall security."

**ANSWER TO PARAGRAPH 39:** Centrex admits that statements containing the quoted language have appeared on its website and refers to its website for its complete and accurate contents, and denies any characterization inconsistent therewith. Centrex denies that any Plaintiff viewed or relied on such statements, denies that any such statements were directed to Plaintiffs or putative Class Members, and denies the remaining allegations in Paragraph 39.

40. Plaintiffs and Class Members, as end-users of Defendants' platforms or consumers whose information was provided to Defendants by Defendants' clients, relied on these promises and on these sophisticated business entities to keep their sensitive PII confidential and secure; to use this information for business purposes only; and to make only authorized disclosures of this information. Consumers, in general, demand security to safeguard their PII, especially when their Social Security numbers and other sensitive PII are involved.

**ANSWER TO PARAGRAPH 40:** Defendants deny that Plaintiffs or putative Class Members viewed or relied on any representation by Set Forth or Centrex, and deny the remaining allegations in Paragraph 40. To the extent Paragraph 40 consists of generalized statements

regarding "[c]onsumers, in general," Defendants lack knowledge or information sufficient to form a belief as to their truth and therefore deny them.

### A. The Data Breach

41. On May 21, 2024, Defendants discovered suspicious activity from an unauthorized user who gained access to Defendants' systems and compromised Defendants' customers' personal information (the "Data Breach" or "Breach"). Defendants' internal investigation revealed, on July 1, 2024, that the unauthorized user gained access to sensitive customer information on Defendants' systems, including customer names, addresses, dates of birth, and Social Security numbers.

**ANSWER TO PARAGRAPH 41:** Defendants admit that Set Forth identified suspicious activity on its network in May 2024 and that Set Forth conducted an investigation with the assistance of independent computer forensic experts. Defendants deny the remaining allegations in Paragraph 41.

42. On or about November 8, 2024, Defendant Set Forth began sending Plaintiffs and other Data Breach victims a Notice of Data Breach letter (the "Notice Letter"), informing them that:

> What Happened? In May 2024, Forth identified suspicious activity on the network. We immediately implemented our incident response protocols, took steps to secure the network, and engaged independent computer forensic experts to assist us in conducting an investigation. Unfortunately, the investigation determined that business documents (such as loan applications, credit reports, and bank statements) that may have contained personal information belonging to you, your spouse, a co-applicant, or a dependent may have been accessed during the incident. While there is no evidence that your specific information was misused, we want to make you aware of this incident out of an abundance of caution.
>
> What Information Was Involved? From our review, it appears that the name, address, and/or social security number of you, your spouse, a co-applicant, or a dependent may have been affected.

**ANSWER TO PARAGRAPH 42:** Defendants admit that Set Forth began mailing Notice Letters on or about November 8, 2024 and that the quoted language appears in the Notice Letter attached to the Complaint as Exhibit A. Defendants refer to the Notice Letter for its complete and accurate contents, deny any characterization inconsistent therewith, and deny that the recipients of the Notice Letter are "Data Breach victims." Defendants deny the remaining allegations in Paragraph 42.

43. Omitted from the Notice Letter were the identities of the cybercriminals who perpetrated the Data Breach; the date(s) of the Data Breach; and any details of the root cause or the vulnerabilities exploited by the Data Breach. To date, these omitted details have not been explained or clarified to Plaintiffs or Class Members, who retain vested interests in ensuring that their PII is protected.

**ANSWER TO PARAGRAPH 43:** Defendants refer to the Notice Letter for its complete and accurate contents and deny any characterization inconsistent therewith. Defendants deny that Set Forth was required to include in the Notice Letter any information that it omitted, and deny the remaining allegations in Paragraph 43.

44. In fact, rather than provide additional information to help Plaintiffs and Class Members understand the nature of the Breach and how to protect themselves, in the months following the Breach, Defendants have instead taken down the data breach notice that was originally posted to the Set Forth website and have disabled the support website that was included in the letters sent to victims.

**ANSWER TO PARAGRAPH 44:** Defendants admit that, after a period of time, the notice of the Data Breach was no longer posted on Set Forth's website and that the support website

referenced in the Notice Letter is no longer active. Defendants deny Plaintiffs' characterization of those facts and deny the remaining allegations in Paragraph 44.

45. Defendants' "disclosure" amounts to no real disclosure at all, as it fails to inform Plaintiffs and Class Members of critical details about the Data Breach with any degree of specificity. Without these details, Plaintiffs' and Class Members' ability to mitigate the harms resulting from the Data Breach are severely diminished.

**ANSWER TO PARAGRAPH 45:** Defendants deny the allegations in Paragraph 45.

46. Despite Defendants' intentional opacity about the root cause of the Data Breach, several facts may be gleaned from the Notice Letter, including:

a) that this Data Breach was the work of cybercriminals;

b) that the cybercriminals first infiltrated Defendants' networks and systems, and downloaded data from those networks and systems (i.e., they exfiltrated, or "stole," data); and

c) that once inside Defendants' networks and systems, the cybercriminals targeted information including Plaintiffs' and Class Members' Social Security numbers for download and theft.

**ANSWER TO PARAGRAPH 46:** Defendants refer to the Notice Letter for its complete and accurate contents and deny any characterization inconsistent therewith. Defendants deny that they have engaged in "intentional opacity," deny that the facts alleged in subparagraphs (a) through (c) of Paragraph 46 may be "gleaned" from the Notice Letter, and deny the remaining allegations in Paragraph 46.

47. In the context of notice of data breach letters of this type, Defendants' use of the phrase "may have been affected" is misleading. Companies only send Notice Letters because data breach notification laws require them to, and such letters are only sent to those people whose

personal information Defendants reasonably believe was accessed or acquired by a threat actor. Defendants cannot hide behind legalese—by sending the Notice Letter to Plaintiffs and Class Members, Defendants admit that they have a reasonable belief that Plaintiffs' and Class Members' names, Social Security numbers, and other sensitive information were accessed or acquired by an unknown threat actor.

**ANSWER TO PARAGRAPH 47:** Defendants refer to the Notice Letter for its complete and accurate contents and deny any characterization inconsistent therewith. Defendants deny that the Notice Letter is misleading, deny that Set Forth has admitted that any Plaintiff's or putative Class Member's information was accessed or acquired, and deny the remaining allegations in Paragraph 47. To the extent Paragraph 47 purports to characterize the motivations or practices of other companies, Defendants lack knowledge or information sufficient to form a belief as to their truth and therefore deny them.

48. Indeed, the Identity Theft Research Center's 2024 Annual Data Breach Report notes that "approximately 70 percent of cyberattack-related breach notices did not include attack information, compared to 58 percent in 2023. In 2019 and previous years, ~100 percent of breach notices included attack vector information." Eva Velasquez, CEO of the Identity Theft Resource Center, remarked that "[w]ith a near-record number of compromises and over 1.3 billion victim notices, often tied to inadequate cyber practices, we are also seeing an increase in notices that provide limited actionable information for victims."

**ANSWER TO PARAGRAPH 48:** Paragraph 48 purports to quote, summarize, or characterize third-party publications that speak for themselves, and Defendants refer to those sources for their complete and accurate contents and deny any characterization inconsistent

therewith. Defendants lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 48 and therefore deny them.

49. In a 2019 study, researchers found that “97 percent of the 161 sampled notifications were difficult or fairly difficult to read based on readability metrics, and that the language used in them may have contributed to confusion about whether the recipient of the communication was at risk and should take action.” The researchers went on to note that breached entities “use hedge terms that downplay risk—using phrases like ’you might be affected’ and ’you are likely to be affected’” as “[f]or most companies, those notifications are only seen as a requirement for complying with data breach notification laws rather than a way to educate and protect their customers.”

**ANSWER TO PARAGRAPH 49:** Paragraph 49 purports to quote, summarize, or characterize third-party publications that speak for themselves, and Defendants refer to those sources for their complete and accurate contents and deny any characterization inconsistent therewith. Defendants lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 49 and therefore deny them.

50. Defendants also provided inconsistent information regarding the types of data that were compromised. The data breach notice posted (temporarily) on Defendant Set Forth’s website and the sample letter submitted to the Maine Office of the Attorney General indicated that the compromised data included “dates of birth.” The data breach notices received by some Plaintiffs in the mail, however, did not list dates of birth as among the categories of compromised information.

**ANSWER TO PARAGRAPH 50:** Defendants refer to the notice posted on Set Forth’s website, Set Forth’s submission to the Office of the Maine Attorney General, and the Notice

Letters attached to the Complaint for their complete and accurate contents, and deny any characterization inconsistent therewith. Defendants deny that they provided inconsistent information and deny the remaining allegations in Paragraph 50.

51. Moreover, in their Notice Letter, Defendants failed to specify whether they undertook any efforts to contact the approximately 1,500,000 Class Members whose data was accessed and acquired in the Data Breach to inquire whether any Class Members have suffered misuse of their data; whether Class Members should report misuse of their data to Defendants; and whether Defendants have set up any mechanism for Class Members to report any misuse of their data.

**ANSWER TO PARAGRAPH 51:** Defendants refer to the Notice Letter for its complete and accurate contents and deny any characterization inconsistent therewith. Defendants deny the remaining allegations in Paragraph 51.

52. Defendants had obligations created by the FTC Act, contract, common law, and industry standards to keep Plaintiffs' and Class Members' PII confidential and to protect it from unauthorized access and disclosure.

**ANSWER TO PARAGRAPH 52:** Paragraph 52 states legal conclusions to which no response is required. To the extent a response is required, Defendants deny the allegations in Paragraph 52.

53. Plaintiffs further believe that their PII was likely sold on the dark web following the Data Breach, as that is the modus operandi of cybercriminals that commit cyberattacks of this type.

**ANSWER TO PARAGRAPH 53:** Defendants lack knowledge or information sufficient to form a belief as to what Plaintiffs believe and therefore deny the allegations in Paragraph 53.

## B. Defendants Failed to Secure Plaintiffs' and Class Members' Sensitive PII

### *1. Data Breaches Are Preventable*

54. Defendants did not use reasonable security procedures and practices appropriate to the sensitive nature of the information they were maintaining for Plaintiffs and Class Members, such as encrypting the information or deleting information once it was no longer needed.

**ANSWER TO PARAGRAPH 54:** Defendants deny the allegations in Paragraph 54.

55. Defendants could have prevented this Data Breach by, among other things, properly encrypting or otherwise protecting their equipment and computer files containing PII.

**ANSWER TO PARAGRAPH 55:** Defendants deny the allegations in Paragraph 55.

56. As explained by the Federal Bureau of Investigation ("FBI"), "[p]revention is the most effective defense against ransomware and it is critical to take precautions for protection."

**ANSWER TO PARAGRAPH 56:** Paragraph 56 purports to quote, summarize, or characterize third-party publications that speak for themselves, and Defendants refer to those sources for their complete and accurate contents and deny any characterization inconsistent therewith. Defendants lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 56 and therefore deny them.

57. To prevent and detect cyberattacks and/or ransomware attacks, Defendants could and should have implemented the following measures, as recommended by the FBI:

- Implement an awareness and training program. Because end users are targets, employees and individuals should be aware of the threat of ransomware and how it is delivered.

- Enable strong spam filters to prevent phishing emails from reaching the end users and authenticate inbound email using technologies like Sender Policy Framework (SPF), Domain Message Authentication Reporting and Conformance (DMARC), and DomainKeys Identified Mail (DKIM) to prevent email spoofing.

- Scan all incoming and outgoing emails to detect threats and filter executable files from reaching end users.
- Configure firewalls to block access to known malicious IP addresses.
- Patch operating systems, software, and firmware on devices. Consider using a centralized patch management system.
- Set anti-virus and anti-malware programs to conduct regular scans automatically.
- Manage the use of privileged accounts based on the principle of least privilege: no users should be assigned administrative access unless absolutely needed; and those with a need for administrator accounts should only use them when necessary.
- Configure access controls—including file, directory, and network share permissions—with least privilege in mind. If a user only needs to read specific files, the user should not have write access to those files, directories, or shares.
- Disable macro scripts from office files transmitted via email. Consider using Office Viewer software to open Microsoft Office files transmitted via email instead of full office suite applications.
- Implement Software Restriction Policies (SRP) or other controls to prevent programs from executing from common ransomware locations, such as temporary folders supporting popular Internet browsers or compression/decompression programs, including the AppData/LocalAppData folder.
- Consider disabling Remote Desktop protocol (RDP) if it is not being used.
- Use application whitelisting, which only allows systems to execute programs known and permitted by security policy.

- Execute operating system environments or specific programs in a virtualized environment.

- Categorize data based on organizational value and implement physical and logical separation of networks and data for different organizational units.

**ANSWER TO PARAGRAPH 57:** Paragraph 57 purports to quote or characterize a publication of the Federal Bureau of Investigation, which speaks for itself, and Defendants refer to that publication for its complete and accurate contents and deny any characterization inconsistent therewith. Defendants deny that the publication establishes a legal standard of care applicable to Defendants, deny that they failed to implement reasonable security measures, and deny the remaining allegations in Paragraph 57.

58. To prevent and detect cyberattacks and/or ransomware attacks, Defendants could and should have implemented the following measures, as recommended by the Microsoft Threat Protection Intelligence Team:

- Secure internet-facing assets – Apply latest security updates; Use threat and vulnerability management; Perform regular audit; remove privileged credentials;

- Thoroughly investigate and remediate alerts – Prioritize and treat commodity malware infections as potential full compromise;

- Include IT Pros in security discussions – Ensure collaboration among [security operations], [security admins], and [information technology] admins to configure servers and other endpoints securely;

- Build credential hygiene – Use [multifactor authentication] or [network level authentication] and use strong, randomized, just-in-time local admin passwords;

- Apply principle of least-privilege – Monitor for adversarial activities; Hunt for brute force attempts; Monitor for cleanup of Event Logs; Analyze logon events;
- Harden infrastructure – Use Windows Defender Firewall; Enable tamper protection; Enable cloud-delivered protection; Turn on attack surface reduction rules and [Antimalware Scan Interface] for Office [Visual Basic for Applications].

**ANSWER TO PARAGRAPH 58:** Paragraph 58 purports to quote or characterize a third-party publication that speaks for itself, and Defendants refer to that publication for its complete and accurate contents and deny any characterization inconsistent therewith. Defendants deny that the publication establishes a legal standard of care applicable to Defendants, deny that they failed to implement reasonable security measures, and deny the remaining allegations in Paragraph 58.

59. Given that Defendants were storing the PII of their customers and/or their clients' current and former customers, Defendants could and should have implemented all of the above measures to prevent and detect cyberattacks.

**ANSWER TO PARAGRAPH 59:** Defendants deny the allegations in Paragraph 59.

60. The occurrence of the Data Breach indicates that Defendants failed to adequately implement one or more of the above measures to prevent cyberattacks, resulting in the Data Breach in which data thieves acquired and accessed the PII of more than one million individuals, including Plaintiffs and Class Members.

**ANSWER TO PARAGRAPH 60:** Defendants deny the allegations in Paragraph 60.

### *2. Defendants Acquire, Collect, and Store the PII of Their Clients' Current and Former Customers*

61. Defendants acquire, collect, and store a massive amount of PII of their customers and/or their clients' current and former customers.

**ANSWER TO PARAGRAPH 61:** Defendants admit that, in the ordinary course of providing services to debt relief service providers and their customers, information relating to individuals is maintained on the Set Forth platform. Defendants deny Plaintiffs' characterization of the volume and nature of that information and deny the remaining allegations in Paragraph 61.

62. Defendants collect and store such highly sensitive personal information, such as Plaintiffs' and Class Members' PII, in the normal course of their business.

**ANSWER TO PARAGRAPH 62:** Defendants admit that information relating to individuals is maintained on the Set Forth platform in the normal course of Set Forth's business. Defendants deny Plaintiffs' characterization of that information and deny the remaining allegations in Paragraph 62.

63. By obtaining, collecting, and using Plaintiffs' and Class Members' PII, Defendants assumed legal and equitable duties and knew or should have known that they were responsible for protecting Plaintiffs' and Class Members' PII from disclosure.

**ANSWER TO PARAGRAPH 63:** Paragraph 63 states legal conclusions to which no response is required. To the extent a response is required, Defendants deny the allegations in Paragraph 63.

64. Plaintiffs and the Class Members have taken reasonable steps to maintain the confidentiality of their PII and would not have entrusted their PII to Defendants absent a duty to safeguard that information.

**ANSWER TO PARAGRAPH 64:** Defendants lack knowledge or information sufficient to form a belief as to the steps Plaintiffs and putative Class Members have taken to maintain the confidentiality of their information or what they would have done, and therefore deny those allegations. Defendants further state that, as alleged in the Complaint, several Plaintiffs did not

provide information to Defendants at all. Defendants deny the remaining allegations in Paragraph 64.

65. Plaintiffs and the Class Members relied on Defendants to keep their PII confidential and securely maintained; to use this information for business purposes only; and to make only authorized disclosures of this information.

**ANSWER TO PARAGRAPH 65:** Defendants deny the allegations in Paragraph 65.

***3. Defendants Knew, or Should Have Known, of the Significant Risk of a Data Breach Because Companies in the Debt-Collection Industry Are Common Targets of Cyberattacks***

66. Companies that are involved in the debt-collection industry, like Defendant Set Forth, are ripe targets for cybercriminals seeking large caches of sensitive and exploitable PII that can be sold on the dark web.

**ANSWER TO PARAGRAPH 66:** Defendants deny that either of them is a debt collector or is "involved in the debt-collection industry." Defendants lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 66 and therefore deny them.

67. Defendants' data security obligations were particularly important given the substantial increase in cyberattacks targeting the debt-collection industry before the date of the Data Breach.

**ANSWER TO PARAGRAPH 67:** Defendants deny that either of them is part of the debt-collection industry and deny that they failed to satisfy any data security obligation. Defendants lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 67 and therefore deny them.

68. Data breaches, including those perpetrated against companies in the debt-collection industry that store PII in their systems, have become widespread.

**ANSWER TO PARAGRAPH 68:** Paragraph 68 consists of generalized assertions that are not specific to Defendants, and Defendants lack knowledge or information sufficient to form a belief as to their truth and therefore deny them.

69. In 2023, an all-time high for data compromises occurred, with 3,205 compromises affecting 353,027,892 total victims. The estimated number of organizations impacted by data compromises has increased by more than 2,600 percentage points since 2018, and the estimated number of victims has increased by more than 1,400 percentage points. The 3,205 compromises in 2023 represent a 78% increase over the previous year and a 72% increase over the previous all-time high for compromises in a single year (1,860), set in 2021. In 2024, the number of data compromises remained at this elevated level.

**ANSWER TO PARAGRAPH 69:** Paragraph 69 purports to quote, summarize, or characterize third-party publications that speak for themselves, and Defendants refer to those sources for their complete and accurate contents and deny any characterization inconsistent therewith. Defendants lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 69 and therefore deny them.

70. In light of recent high profile data breaches at other industry leading companies, including T-Mobile, USA (37 million records, February-March 2023), 23andMe, Inc. (20 million records, October 2023), Wilton Reassurance Company (1.4 million records, June 2023), NCB Management Services, Inc. (1 million records, February 2023), Defendants knew or should have known that the PII it collected and maintained would be targeted by cybercriminals.

**ANSWER TO PARAGRAPH 70:** Paragraph 70 purports to reference data incidents involving third parties, about which Defendants lack knowledge or information sufficient to form a belief, and therefore Defendants deny those allegations. Defendants deny that those incidents

establish any duty, knowledge, breach, or causation attributable to Defendants, and deny the remaining allegations in Paragraph 70.

71. Additionally, as companies have become more dependent on computer systems to run their businesses, e.g., due to employees working remotely, the danger posed by cybercriminals has been magnified, highlighting the need for adequate administrative, physical, and technical safeguards.

**ANSWER TO PARAGRAPH 71:** Paragraph 71 purports to characterize the dependency of generic third-party companies, and Defendants lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 71 and therefore deny them.

72. Defendants knew and understood that PII in the custody of companies in the debt-collection industry, such as Defendant Set Forth, is valuable and highly sought after by cybercriminals seeking to illegally monetize that PII through unauthorized access.

**ANSWER TO PARAGRAPH 72:** Defendants deny that either of them is in the debt-collection industry and deny the remaining allegations in Paragraph 72.

73. At all relevant times, Defendants knew, or reasonably should have known, the importance of safeguarding the PII of Plaintiffs and Class Members, and of the foreseeable consequences of a breach of Defendants' data security systems, including, specifically, the significant costs that would be imposed on Plaintiffs and Class Members as a result of such a breach. Still, Defendants failed to undertake adequate cybersecurity measures to prevent the Data Breach.

**ANSWER TO PARAGRAPH 73:** Defendants admit that they recognize the importance of safeguarding information maintained on the Set Forth platform. Defendants deny that they failed to undertake adequate cybersecurity measures and deny the remaining allegations in Paragraph 73.

74. Plaintiffs and Class Members now face years of constant surveillance of their financial and personal records to mitigate the harms and risks caused by the Breach. Plaintiffs and Class Members are incurring and will continue to incur such damages in addition to damages due to any fraudulent use of their PII.

**ANSWER TO PARAGRAPH 74:** Defendants deny the allegations in Paragraph 74.

75. The injuries to Plaintiffs and Class Members were directly and proximately caused by Defendants' failure to implement and/or maintain adequate data security measures to protect the PII of Plaintiffs and Class Members.

**ANSWER TO PARAGRAPH 75:** Defendants deny the allegations in Paragraph 75.

76. The effects of Defendants' failure to secure the PII of Plaintiffs and Class Members are long-lasting and severe. Once PII is stolen—particularly Social Security numbers—fraudulent use of that information and resulting damage to victims may continue for years.

**ANSWER TO PARAGRAPH 76:** Defendants deny that they failed to secure Plaintiffs' or putative Class Members' information and deny that any effects of the Incident are "long-lasting and severe." The remaining allegations in Paragraph 76 are generalized assertions as to which Defendants lack knowledge or information sufficient to form a belief, and therefore Defendants deny them.

***4. The PII of Plaintiffs and Class Members Exposed in the Breach Is Highly Sensitive***

77. Because Social Security Numbers are difficult to change and enable cybercriminals to commit numerous forms of devastating identity theft, they are among the most sensitive forms of PII.

**ANSWER TO PARAGRAPH 77:** Paragraph 77 consists of generalized assertions that are not specific to Defendants, and Defendants lack knowledge or information sufficient to form a belief as to their truth and therefore deny them. To the extent Paragraph 77 alleges or implies that

the Incident caused, or will cause, any harm to Plaintiffs or putative Class Members, Defendants deny those allegations.

78. The Federal Trade Commission ("FTC") defines identity theft as "a fraud committed or attempted using the identifying information of another person without authority." The FTC describes "identifying information" as "any name or number that may be used, alone or in conjunction with any other information, to identify a specific person," including, among other things, "[n]ame, Social Security number, date of birth, official State or government issued driver's license or identification number, alien registration number, government passport number, employer or taxpayer identification number."

**ANSWER TO PARAGRAPH 78:** Paragraph 78 purports to quote, summarize, or characterize third-party publications that speak for themselves, and Defendants refer to those sources for their complete and accurate contents and deny any characterization inconsistent therewith. Defendants lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 78 and therefore deny them.

79. The PII of individuals remains of high value to criminals, as evidenced by the prices they will pay through the dark web. Numerous sources cite dark web pricing for stolen identity credentials. For example, PII can be sold at a price ranging from $40 to $200.

**ANSWER TO PARAGRAPH 79:** Paragraph 79 purports to quote, summarize, or characterize third-party publications that speak for themselves, and Defendants refer to those sources for their complete and accurate contents and deny any characterization inconsistent therewith. Defendants lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 79 and therefore deny them.

80. A stolen Social Security number can be used alone or in combination with other sources of PII to wreak havoc upon a victim's personal and financial life. The popular personal privacy and credit monitoring service LifeLock by Norton notes that stolen Social Security numbers can be used by used by cybercriminals to, among other things, (1) "[o]pen bank accounts and credit cards in your name," (2) "[d]rain your bank account," (3) "[r]ent apartments or vehicles," (4) "[m]ake fraudulent purchases," (5) "[g]et a fake ID or driver's license," (6) "[f]ile a tax return," (7) "[s]teal your medical benefits and social security checks," and (8) "[c]ommit crimes on your record."

**ANSWER TO PARAGRAPH 80:** Paragraph 80 purports to quote, summarize, or characterize third-party publications that speak for themselves, and Defendants refer to those sources for their complete and accurate contents and deny any characterization inconsistent therewith. Defendants lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 80 and therefore deny them.

81. Courts have dubbed a stolen Social Security number as the "gold standard" for identity theft and fraud. Social Security numbers are among the worst kind of PII to have stolen because they may be put to a variety of fraudulent uses and are difficult for an individual to change.

**ANSWER TO PARAGRAPH 81:** Paragraph 81 purports to quote, summarize, or characterize third-party publications that speak for themselves, and Defendants refer to those sources for their complete and accurate contents and deny any characterization inconsistent therewith. Defendants lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 81 and therefore deny them.

82. According to the Social Security Administration, each time an individual's Social Security number is compromised, "the potential for a thief to illegitimately gain access to bank

accounts, credit cards, driving records, tax and employment histories and other private information increases." Moreover, "[b]ecause many organizations still use SSNs as the primary identifier, exposure to identity theft and fraud remains."

**ANSWER TO PARAGRAPH 82:** Paragraph 82 purports to quote, summarize, or characterize third-party publications that speak for themselves, and Defendants refer to those sources for their complete and accurate contents and deny any characterization inconsistent therewith. Defendants lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 82 and therefore deny them.

83. The Social Security Administration stresses that the loss of an individual's Social Security number can lead to identity theft and extensive financial fraud:

> Scammers use your Social Security number (SSN) to get other personal information about you. They can use your SSN and your good credit to apply for more credit in your name. Then, when they use the credit cards and don't pay the bills, it damages your credit. You may not find out that someone is using your SSN until you're turned down for credit, or you begin to get calls from unknown creditors demanding payment for items you never bought.

**ANSWER TO PARAGRAPH 83:** Paragraph 83 purports to quote, summarize, or characterize third-party publications that speak for themselves, and Defendants refer to those sources for their complete and accurate contents and deny any characterization inconsistent therewith. Defendants lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 83 and therefore deny them.

84. In fact, a "stolen Social Security number is one of the leading causes of identity theft and can threaten your financial health." "Someone who has your SSN can use it to impersonate you, obtain credit and open bank accounts, apply for jobs, steal your tax refunds, get medical treatment, and steal your government benefits."

**ANSWER TO PARAGRAPH 84:** Paragraph 84 purports to quote, summarize, or characterize third-party publications that speak for themselves, and Defendants refer to those sources for their complete and accurate contents and deny any characterization inconsistent therewith. Defendants lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 84 and therefore deny them.

85. Despite these extreme risks, Social Security numbers can only be changed in "extreme cases," after a "lengthy and difficult process," in which the applicant must prove that their "identity is being misused and that the misuse is causing significant damage." In other words, preventative action to defend against the expected imminent misuse of a Social Security number is not permitted; an individual must show evidence of actual, ongoing fraud activity to obtain a new number.

**ANSWER TO PARAGRAPH 85:** Paragraph 85 purports to quote, summarize, or characterize third-party publications that speak for themselves, and Defendants refer to those sources for their complete and accurate contents and deny any characterization inconsistent therewith. Defendants lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 85 and therefore deny them.

86. Even then, a new Social Security number may not be effective. According to Julie Ferguson of the Identity Theft Resource Center, "[t]he credit bureaus and banks are able to link the new number very quickly to the old number, so all of that old bad information is quickly inherited into the new Social Security number."

**ANSWER TO PARAGRAPH 86:** Paragraph 86 purports to quote, summarize, or characterize third-party publications that speak for themselves, and Defendants refer to those sources for their complete and accurate contents and deny any characterization inconsistent

therewith. Defendants lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 86 and therefore deny them.

87. For these reasons, some courts have referred to Social Security numbers as the "gold standard" for identity theft. *Portier v. NEO Tech. Sols.*, No. 3:17-CV-30111, 2019 WL 7946103, at *12 (D. Mass. Dec. 31, 2019) ("Because Social Security numbers are the gold standard for identity theft, their theft is significant . . . . Access to Social Security numbers causes long-lasting jeopardy because the Social Security Administration does not normally replace Social Security numbers."), report and recommendation adopted, No. 3:17-CV-30111, 2020 WL 877035 (D. Mass. Jan. 30, 2020); *see also McFarlane v. Altice USA, Inc.*, 2021 WL 860584, at *4 (S.D.N.Y. Mar. 8, 2021) (noting that Social Security Numbers are arguably "the most dangerous type of personal information in the hands of identity thieves" because they are immutable and can be used to "impersonat[e] [the victim] to get medical services, government benefits, . . . tax refunds, [and] employment." . . . Unlike a credit card number, which can be changed to eliminate the risk of harm following a data breach, "[a] social security number derives its value in that it is immutable," and when it is stolen it can "forever be wielded to identify [the victim] and target her in fraudulent schemes and identity theft attacks.").

**ANSWER TO PARAGRAPH 87:** Paragraph 87 purports to quote and characterize judicial decisions, which speak for themselves, and Defendants refer to those decisions for their complete and accurate contents. Paragraph 87 otherwise states legal conclusions to which no response is required. To the extent a response is required, Defendants deny the allegations in Paragraph 87.

88. Similarly, the California state government warns consumers that "[o]riginally, your Social Security number (SSN) was a way for the government to track your earnings and pay your

retirement benefits. But over the years, it has become much more than that. It is the key to a lot of your personal information. With your name and SSN, an identity thief could open new credit and bank accounts, rent an apartment, or even get a job."

**ANSWER TO PARAGRAPH 88:** Paragraph 88 purports to quote, summarize, or characterize third-party publications that speak for themselves, and Defendants refer to those sources for their complete and accurate contents and deny any characterization inconsistent therewith. Defendants lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 88 and therefore deny them.

89. The information compromised in the Data Breach is significantly more valuable than the loss of, for example, credit card information in a retailer data breach because, there, victims can cancel or close credit and debit card accounts. Some of the information compromised in the Data Breach is impossible to "close" and difficult, if not impossible, to change—Social Security numbers, birth dates, and names.

**ANSWER TO PARAGRAPH 89:** Defendants deny Plaintiffs' characterization of the information involved in the Data Breach. Defendants lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 89 and therefore deny them.

90. This data demands a much higher price on the black market. Martin Walter, senior director at cybersecurity firm RedSeal, explained, "Compared to credit card information, personally identifiable information and Social Security numbers are worth more than 10x on the black market."

**ANSWER TO PARAGRAPH 90:** Paragraph 90 purports to quote, summarize, or characterize third-party publications that speak for themselves, and Defendants refer to those sources for their complete and accurate contents and deny any characterization inconsistent

therewith. Defendants lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 90 and therefore deny them.

91. Among other forms of fraud, identity thieves may use PII to obtain driver's licenses, government benefits, medical services, and housing, or even give false information to police.

**ANSWER TO PARAGRAPH 91:** Paragraph 91 consists of generalized assertions that are not specific to Defendants, and Defendants lack knowledge or information sufficient to form a belief as to their truth and therefore deny them.

92. The fraudulent activity resulting from the Data Breach may not come to light for years. There may be a time lag between when harm occurs versus when it is discovered, as well as a time lag between when PII is stolen and when it is used. According to the U.S. Government Accountability Office ("GAO"), which conducted a study regarding data breaches:

> [L]aw enforcement officials told us that in some cases, stolen data may be held for up to a year or more before being used to commit identity theft. Further, once stolen data have been sold or posted on the Web, fraudulent use of that information may continue for years. As a result, studies that attempt to measure the harm resulting from data breaches cannot necessarily rule out all future harm.

**ANSWER TO PARAGRAPH 92:** Paragraph 92 purports to quote, summarize, or characterize third-party publications that speak for themselves, and Defendants refer to those sources for their complete and accurate contents and deny any characterization inconsistent therewith. Defendants lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 92 and therefore deny them.

93. Plaintiffs and Class Members now face years of constant surveillance of their financial and personal records, monitoring, and loss of rights. The Class is incurring and will continue to incur such damages in addition to damages due to any fraudulent use of their PII.

**ANSWER TO PARAGRAPH 93:** Defendants deny the allegations in Paragraph 93.

### *5. Defendants Fail to Comply with FTC Guidelines*

94. The Federal Trade Commission ("FTC") has promulgated numerous guides for businesses highlighting the importance of implementing reasonable data security practices. According to the FTC, the need for data security should be factored into all business decision-making.

**ANSWER TO PARAGRAPH 94:** Paragraph 94 purports to quote, summarize, or characterize third-party publications that speak for themselves, and Defendants refer to those sources for their complete and accurate contents and deny any characterization inconsistent therewith. Defendants lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 94 and therefore deny them.

95. In 2016, the FTC updated its publication, "Protecting Personal Information: A Guide for Business," which established cybersecurity guidelines for businesses. These guidelines note that businesses should protect the personal consumer information they keep; properly dispose of personal information that is no longer needed; encrypt information stored on their computer networks; understand their network's vulnerabilities; and implement policies to correct any security problems.

**ANSWER TO PARAGRAPH 95:** Paragraph 95 purports to quote, summarize, or characterize third-party publications that speak for themselves, and Defendants refer to those sources for their complete and accurate contents and deny any characterization inconsistent therewith. Defendants lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 95 and therefore deny them.

96. The guidelines also recommend that businesses use an intrusion detection system to expose a breach as soon as it occurs; monitor all incoming traffic for activity indicating that

someone is attempting to hack the system; watch for large amounts of data being transmitted from the system; and have a response plan ready in the event of a breach.

**ANSWER TO PARAGRAPH 96:** Paragraph 96 purports to quote, summarize, or characterize third-party publications that speak for themselves, and Defendants refer to those sources for their complete and accurate contents and deny any characterization inconsistent therewith. Defendants lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 96 and therefore deny them.

97. The FTC further recommends that companies not maintain PII longer than needed to authorize a transaction; limit access to sensitive data; require complex passwords on their network; use industry-tested methods for security; monitor for suspicious activity on their network; and verify that third-party service providers have implemented reasonable security measures.

**ANSWER TO PARAGRAPH 97:** Paragraph 97 purports to quote, summarize, or characterize third-party publications that speak for themselves, and Defendants refer to those sources for their complete and accurate contents and deny any characterization inconsistent therewith. Defendants lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 97 and therefore deny them.

98. The FTC has brought enforcement actions against businesses for failing to adequately and reasonably protect consumer data, treating their failure to employ reasonable and appropriate measures to protect against unauthorized access to confidential consumer data as an unfair act or practice prohibited by Section 5 of the Federal Trade Commission Act (the "FTC Act"), 15 U.S.C. § 45. The FTC's orders resulting from these actions further clarify the measures that businesses must take to meet their data security obligations.

**ANSWER TO PARAGRAPH 98:** Paragraph 98 purports to characterize FTC enforcement actions and orders, which speak for themselves, and states legal conclusions to which no response is required. To the extent a response is required, Defendants refer to those materials for their complete and accurate contents, deny that they establish a legal standard of care applicable to Defendants, and deny the remaining allegations in Paragraph 98.

99. These FTC enforcement actions include actions against debt collection companies, like Defendant Set Forth.

**ANSWER TO PARAGRAPH 99:** Defendants deny that either of them is a debt collection company. Defendants lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 99 and therefore deny them.

100. Section 5 of the FTC Act, 15 U.S.C. § 45, prohibits "unfair . . . practices in or affecting commerce," including, as interpreted and enforced by the FTC, a business's unfair act or practice of failing to use reasonable measures to protect PII. The FTC publications and orders described above also form part of the basis of Defendants' duty in this regard.

**ANSWER TO PARAGRAPH 100:** Paragraph 100 purports to quote and characterize Section 5 of the FTC Act, 15 U.S.C. § 45, which speaks for itself, and otherwise states legal conclusions to which no response is required. To the extent a response is required, Defendants deny that Section 5 of the FTC Act or any FTC publication or order creates a private right of action or establishes a duty of care enforceable by Plaintiffs, and deny the remaining allegations in Paragraph 100.

101. Defendants' failure to employ reasonable and appropriate measures to protect against unauthorized access to the PII of their customers and/or their clients' customers or to

comply with applicable industry standards constitutes an unfair act or practice prohibited by Section 5 of the FTC Act, 15 U.S.C. § 45.

**ANSWER TO PARAGRAPH 101:** Paragraph 101 states legal conclusions to which no response is required. To the extent a response is required, Defendants deny the allegations in Paragraph 101.

102. Upon information and belief, Defendants were at all times fully aware of their obligations to protect the PII of their customers and/or their clients' customers. Defendants were also aware of the significant repercussions that would result from their failure to do so. Accordingly, Defendants' conduct was particularly unreasonable given the nature and amount of PII they obtained and stored and the foreseeable consequences of the immense damages that would result to Plaintiffs and the Class.

**ANSWER TO PARAGRAPH 102:** Defendants deny that they failed to satisfy their legal obligations relating to information maintained on the Set Forth platform, deny that their conduct was unreasonable, and deny the remaining allegations in Paragraph 102.

***6. Defendants Fail to Comply with Industry Standards***

103. As noted above, experts studying cybersecurity routinely identify debt collection companies in possession of PII as being particularly vulnerable to cyberattacks because of the value of the PII which they collect and maintain.

**ANSWER TO PARAGRAPH 103:** Defendants deny that either of them is a debt collection company. Defendants lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 103 and therefore deny them.

104. Several best practices have been identified that, at a minimum, should be implemented by debt collection companies in possession of PII, like Defendants, including but not limited to: educating all employees; strong passwords; multi-layer security, including firewalls,

anti-virus, and anti-malware software; encryption, making data unreadable without a key; multi-factor authentication; backup data and limiting which employees can access sensitive data. Defendants failed to follow these industry best practices, including a failure to implement multi-factor authentication.

**ANSWER TO PARAGRAPH 104:** Defendants deny that either of them is a debt collection company, deny that they failed to follow industry best practices, and deny the remaining allegations in Paragraph 104 as they relate to Defendants. Defendants lack knowledge or information sufficient to form a belief as to the truth of the generalized allegations regarding "best practices" in Paragraph 104 and therefore deny them.

105. Other cybersecurity best practices that are standard for debt collection companies and companies entrusted with such data include installing appropriate malware detection software; monitoring and limiting the network ports; protecting web browsers and email management systems; setting up network systems such as firewalls, switches and routers; monitoring and protection of physical security systems; protection against any possible communication system; training staff regarding critical points. Defendants failed to follow these cybersecurity best practices, including failing to properly train staff.

**ANSWER TO PARAGRAPH 105:** Defendants deny that either of them is a debt collection company, deny that they failed to follow cybersecurity best practices, and deny the remaining allegations in Paragraph 105 as they relate to Defendants. Defendants lack knowledge or information sufficient to form a belief as to the truth of the generalized allegations regarding "best practices" in Paragraph 105 and therefore deny them.

106. Defendants failed to meet the minimum standards of one or more of the following frameworks: the NIST Cybersecurity Framework Version 2.0 (including without limitation

PR.AA-01, PR.AA-02, PR.AA-03, PR.AA-04, PR.AA-05, PR.AT-01, PR.DS-01, PR-DS-02, PR.DS-10, PR.PS-01, PR.PS-02, PR.PS-05, PR.IR-01, DE.CM-01, DE.CM-03, DE.CM-06, DE.CM-09, and RS.CO-04), and the Center for Internet Security's Critical Security Controls (CIS CSC), which are all established standards in reasonable cybersecurity readiness.

**ANSWER TO PARAGRAPH 106:** Defendants refer to the NIST Cybersecurity Framework Version 2.0 and the Center for Internet Security's Critical Security Controls for their complete and accurate contents, and deny that those voluntary frameworks establish a legal standard of care. Defendants deny the remaining allegations in Paragraph 106.

107. These foregoing frameworks are existing and applicable industry standards for debt collection companies and companies entrusted with such data, and upon information and belief, Defendants failed to comply with one or more of these accepted standards, thereby opening the door to the threat actor and causing the Data Breach.

**ANSWER TO PARAGRAPH 107:** Defendants deny the allegations in Paragraph 107.

### C. Plaintiffs and the Class Members Suffered and Will Continue to Suffer Common Injuries and Damages

108. As a result of Defendants' ineffective and inadequate data security practices, the Data Breach, and the foreseeable consequences of PII ending up in the possession of criminals, the risk of identity theft to the Plaintiffs and Class Members has materialized and is imminent, and Plaintiffs and Class Members have all sustained actual injuries, including: (i) invasion of privacy; (ii) theft of their PII; (iii) lost or diminished value of their PII; (iv) loss of the benefit of the bargain; (v) lost time and opportunity costs associated with attempting to mitigate the actual consequences of the Data Breach; (vi) nominal damages; and (vii) a continued and increased risk to their PII, which: (a) remains unencrypted and available for unauthorized third parties to access and abuse; and (b) remains backed up in Defendants' possession and subject to further unauthorized

disclosures so long as Defendants fail to undertake appropriate and adequate measures to protect it.

**ANSWER TO PARAGRAPH 108:** Defendants deny the allegations in Paragraph 108.

***1. The Data Breach Increases Plaintiffs' and Class Members' Risk of Identity Theft***

109. The unencrypted PII of Class Members is now in the hands of undisclosed cybercriminals, and will end up for sale on the dark web because that is the modus operandi of hackers.

**ANSWER TO PARAGRAPH 109:** Defendants deny the allegations in Paragraph 109.

110. Unencrypted PII may also fall into the hands of companies that will use the detailed PII for targeted marketing without the approval of Plaintiffs and Class Members. Simply put, unauthorized individuals can easily access the PII of Plaintiffs and Class Members.

**ANSWER TO PARAGRAPH 110:** Defendants deny that any Plaintiff's or putative Class Member's information is "easily" accessible to unauthorized individuals as a result of the Data Breach. The remaining allegations in Paragraph 110 are speculative, and Defendants lack knowledge or information sufficient to form a belief as to their truth and therefore deny them.

111. The link between a data breach and the risk of identity theft is simple and well established. Criminals acquire and steal PII to monetize the information. Criminals monetize the data by selling the stolen information on the black market to other criminals who then utilize the information to commit a variety of identity theft related crimes discussed below.

**ANSWER TO PARAGRAPH 111:** Paragraph 111 consists of generalized assertions that are not specific to Defendants, and Defendants lack knowledge or information sufficient to form a belief as to their truth and therefore deny them. To the extent Paragraph 111 alleges or implies that the Data Breach caused, or will cause, any harm to Plaintiffs or putative Class Members, Defendants deny those allegations.

112. Plaintiffs' and Class Members' PII is of great value to hackers and cyber criminals, and the data stolen in the Data Breach has been used and will continue to be used in a variety of sordid ways for criminals to exploit Plaintiffs and Class Members and to profit off their misfortune.

**ANSWER TO PARAGRAPH 112:** Defendants deny that data involved in the Data Breach "has been used" or "will continue to be used" by criminals to exploit Plaintiffs or putative Class Members. Defendants lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 112 and therefore deny them.

113. Due to the risk of one's Social Security number being exposed, state legislatures have passed laws in recognition of the risk: "[t]he social security number can be used as a tool to perpetuate fraud against a person and to acquire sensitive personal, financial, medical, and familial information, the release of which could cause great financial or personal harm to an individual. While the social security number was intended to be used solely for the administration of the federal Social Security System, over time this unique numeric identifier has been used extensively for identity verification purposes."

**ANSWER TO PARAGRAPH 113:** Paragraph 113 purports to quote a state statute, which speaks for itself, and Defendants refer to that statute for its complete and accurate contents. Defendants deny that the statute applies to Defendants or establishes any duty owed to Plaintiffs, and lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 113 and therefore deny them.

114. Moreover, "SSNs have been central to the American identity infrastructure for years, being used as a key identifier . . . . U.S. banking processes have also had SSNs baked into their identification process for years. In fact, SSNs have been the gold standard for identifying and verifying the credit history of prospective customers."

**ANSWER TO PARAGRAPH 114:** Paragraph 114 purports to quote, summarize, or characterize third-party publications that speak for themselves, and Defendants refer to those sources for their complete and accurate contents and deny any characterization inconsistent therewith. Defendants lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 114 and therefore deny them.

115. "Despite the risk of fraud associated with the theft of Social Security numbers, just five of the nation's largest 25 banks have stopped using the numbers to verify a customer's identity after the initial account setup." Accordingly, since Social Security numbers are frequently used to verify an individual's identity after logging onto an account or attempting a transaction, "[h]aving access to your Social Security number may be enough to help a thief steal money from your bank account."

**ANSWER TO PARAGRAPH 115:** Paragraph 115 purports to quote, summarize, or characterize third-party publications that speak for themselves, and Defendants refer to those sources for their complete and accurate contents and deny any characterization inconsistent therewith. Defendants lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 115 and therefore deny them.

116. One such example of criminals piecing together bits and pieces of compromised PII for profit is the development of "Fullz" packages.

**ANSWER TO PARAGRAPH 116:** Paragraph 116 consists of generalized assertions that are not specific to Defendants, and Defendants lack knowledge or information sufficient to form a belief as to their truth and therefore deny them.

117. "Fullz" are packages of various PII for a victim, which may include, among other things, the victim's name, address, credit card information, social security number, date of birth,

and more. As a rule of thumb, the more information you have on a victim, the more money that can be made off of those credentials. Fullz are usually pricier than standard credit card credentials, commanding up to $100 per record (or more) on the dark web. Fullz can be cashed out (turning credentials into money) in various ways, including performing bank transactions over the phone with the required authentication details in-hand. Even “dead Fullz,” which are Fullz credentials associated with credit cards that are no longer valid, can still be used for numerous purposes, including tax refund scams, ordering credit cards on behalf of the victim, or opening a “mule account” (an account that will accept a fraudulent money transfer from a compromised account) without the victim’s knowledge.

**ANSWER TO PARAGRAPH 117:** Paragraph 117 purports to quote, summarize, or characterize third-party publications that speak for themselves, and Defendants refer to those sources for their complete and accurate contents and deny any characterization inconsistent therewith. Defendants lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 117 and therefore deny them.

118. With “Fullz” packages, cyber-criminals can cross-reference two sources of PII to marry unregulated data available elsewhere to criminally stolen data with an astonishingly complete scope and degree of accuracy in order to assemble complete dossiers on individuals.

**ANSWER TO PARAGRAPH 118:** Paragraph 118 consists of generalized assertions that are not specific to Defendants, and Defendants lack knowledge or information sufficient to form a belief as to their truth and therefore deny them.

119. The development of “Fullz” packages means here that the stolen PII from the Data Breach can easily be used to link and identify it to Plaintiffs’ and Class Members’ phone numbers, email addresses, and other unregulated sources and identifiers. In other words, even if certain

information such as emails, phone numbers, or credit card numbers may not be included in the PII that was exfiltrated in the Data Breach, criminals may still easily create a Fullz package and sell it at a higher price to unscrupulous operators and criminals (such as illegal and scam telemarketers) over and over.

**ANSWER TO PARAGRAPH 119:** Defendants deny that information involved in the Incident has been or will be used to create "Fullz" packages relating to Plaintiffs or putative Class Members. Defendants lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 119 and therefore deny them.

120. Thus, even if certain information (such as contact information) was not stolen in the data breach, criminals can still easily create a comprehensive "Fullz" package.

**ANSWER TO PARAGRAPH 120:** Paragraph 120 consists of generalized assertions that are not specific to Defendants, and Defendants lack knowledge or information sufficient to form a belief as to their truth and therefore deny them.

121. Then, this comprehensive dossier can be sold—and then resold in perpetuity—to cybercriminals and other criminals (like scam telemarketers).

**ANSWER TO PARAGRAPH 121:** Paragraph 121 consists of generalized assertions that are not specific to Defendants, and Defendants lack knowledge or information sufficient to form a belief as to their truth and therefore deny them.

### *2. Plaintiffs and Class Members Suffered Injury from the Loss of Time to Mitigate the Risk of Identity Theft and Fraud*

122. As a result of the recognized risk of identity theft, when a Data Breach occurs, and an individual is notified by a company that their PII was compromised, as in this Data Breach, the reasonable person is expected to take steps and spend time to address the dangerous situation, learn about the breach, and otherwise mitigate the risk of becoming a victim of identity theft of fraud.

Failure to spend time taking steps to review accounts or credit reports could expose the individual to greater financial harm—yet, the resource and asset of time has been lost.

**ANSWER TO PARAGRAPH 122:** Paragraph 122 consists of generalized assertions that are not specific to Defendants, and Defendants lack knowledge or information sufficient to form a belief as to their truth and therefore deny them. To the extent Paragraph 122 alleges or implies that the Data Breach caused, or will cause, any harm to Plaintiffs or putative Class Members, Defendants deny those allegations.

123. Thus, due to the actual and imminent risk of identity theft, Defendants' Notice Letter instructs Plaintiffs and Class Members to take various precautionary measures to protect their information, including telling them to "remain vigilant in reviewing your financial account statements and credit reports for fraudulent or irregular activity."

**ANSWER TO PARAGRAPH 123:** Defendants admit that the Notice Letter contains the quoted language and refer to the Notice Letter for its complete and accurate contents. Defendants deny that the Notice Letter reflects an "actual and imminent risk of identity theft" and deny the remaining allegations in Paragraph 123.

124. In addition, Defendants' Notice Letters include multiple pages devoted to "Recommended Steps to Help Protect your Information" that recommend that Plaintiffs and Class Members undertake activities such as monitoring their accounts, placing security freezes and fraud alerts on their accounts, and contacting consumer credit reporting bureaus.

**ANSWER TO PARAGRAPH 124:** Defendants admit that the Notice Letter included a section titled "Recommended Steps to Help Protect your Information" and refer to the Notice Letter for its complete and accurate contents. Defendants deny Plaintiffs' characterization of the Notice Letter and deny the remaining allegations in Paragraph 124.

125. Defendants' extensive suggestion of steps that Plaintiffs and Class Members must take in order to protect themselves from identity theft and/or fraud demonstrates the significant time that Plaintiffs and Class Members must undertake in response to the Data Breach. Plaintiffs' and Class Members' time is highly valuable and irreplaceable, and accordingly, Plaintiffs and Class Members suffered actual injury and damages in the form of lost time that they spent on mitigation activities in response to the Data Breach and at the direction of Defendants' Notice Letter.

**ANSWER TO PARAGRAPH 125:** Defendants deny the allegations in Paragraph 125.

126. Plaintiffs and Class Members have spent, and will spend additional time in the future, on a variety of prudent actions, such as researching and verifying the legitimacy of the Data Breach, replacing impacted credit cards, and signing up for credit monitoring insurance services. Accordingly, the Data Breach has caused Plaintiffs and Class Members to suffer actual injury in the form of lost time—which cannot be recaptured—spent on mitigation activities.

**ANSWER TO PARAGRAPH 126:** Defendants deny the allegations in Paragraph 126.

127. Plaintiffs' mitigation efforts are consistent with the U.S. Government Accountability Office that released a report in 2007 regarding data breaches in which it noted that victims of identity theft will face "substantial costs and time to repair the damage to their good name and credit record."

**ANSWER TO PARAGRAPH 127:** Defendants refer to the referenced GAO report for its complete and accurate contents and deny any characterization inconsistent therewith. Defendants lack knowledge or information sufficient to form a belief as to Plaintiffs' alleged mitigation efforts and therefore deny those allegations. Defendants deny the remaining allegations in Paragraph 127.

128. Plaintiffs' mitigation efforts are also consistent with the steps that FTC recommends that data breach victims take to protect their personal and financial information after a data breach, including: contacting one of the credit bureaus to place a fraud alert (consider an extended fraud alert that lasts for seven years if someone steals their identity), reviewing their credit reports, contacting companies to remove fraudulent charges from their accounts, placing a credit freeze on their credit, and correcting their credit reports.

**ANSWER TO PARAGRAPH 128:** Defendants refer to the referenced FTC guidance for its complete and accurate contents and deny any characterization inconsistent therewith. Defendants lack knowledge or information sufficient to form a belief as to Plaintiffs' alleged mitigation efforts and therefore deny those allegations. Defendants deny the remaining allegations in Paragraph 128.

***3. The Value of Plaintiffs' and Class Members' PII Was Diminished as a Result of the Breach***

129. PII is a valuable property right. Corporate America generates tremendous revenue from collection and sale of such data. And PII is sold and distributed on the dark web and through illicit criminal networks at specific, identifiable prices.

**ANSWER TO PARAGRAPH 129:** Paragraph 129 states legal conclusions to which no response is required. To the extent a response is required, Defendants deny that PII is a property right of Plaintiffs that was diminished by the Data Breach, and lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 129 and therefore deny them.

130. Sensitive PII can sell for as much as $363 per record according to the Infosec Institute.

**ANSWER TO PARAGRAPH 130:** Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 130 and therefore deny them.

131. An active and robust legitimate marketplace for PII also exists. In 2019, the data brokering industry was worth roughly $200 billion.

**ANSWER TO PARAGRAPH 131:** Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 131 and therefore deny them.

132. In fact, the data marketplace is so sophisticated that consumers can actually sell their non-public information directly to a data broker who in turn aggregates the information and provides it to marketers or app developers.

**ANSWER TO PARAGRAPH 132:** Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 132 and therefore deny them.

133. For instance, consumers who agree to provide their web browsing history to the Nielsen Corporation can receive up to $60 a year.

**ANSWER TO PARAGRAPH 133:** Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 133 and therefore deny them.

134. As a result of the Data Breach, Plaintiffs' and Class Members' PII, which has an inherent market value in both legitimate and dark markets, has been damaged and diminished by its compromise and unauthorized release. However, this transfer of value occurred without any consideration paid to Plaintiffs or Class Members for their property, resulting in an economic loss. Moreover, the PII is now readily available, and the rarity of the Data has been lost, thereby causing additional loss of value.

**ANSWER TO PARAGRAPH 134:** Defendants deny the allegations in Paragraph 134.

135. At all relevant times, Defendants knew, or reasonably should have known, of the importance of safeguarding the PII of Plaintiffs and Class Members, and of the foreseeable consequences that would occur if Defendants' data security systems were breached, including,

specifically, the significant costs that would be imposed on Plaintiffs and Class Members as a result of a breach.

**ANSWER TO PARAGRAPH 135:** Defendants admit that they recognize the importance of safeguarding information maintained on the Set Forth platform. Defendants deny the remaining allegations in Paragraph 135.

136. Fraudulent activity resulting from the Data Breach may not come to light for years. Plaintiffs and Class Members now face years of constant surveillance of their financial and personal records. The Class is incurring and will continue to incur such damages in addition to damages due to any fraudulent use of their PII.

**ANSWER TO PARAGRAPH 136:** Defendants deny the allegations in Paragraph 136.

137. Defendants were, or should have been, fully aware of the unique type and the significant volume of data on Defendants' servers, which amounted to more than one million individuals' detailed personal information, and, thus, Defendants were or should have been aware of the significant number of individuals who would be harmed by the exposure of the data.

**ANSWER TO PARAGRAPH 137:** Defendants admit that they were aware of the general nature of the information maintained on the Set Forth platform. Defendants deny Plaintiffs' characterization of that information and deny the remaining allegations in Paragraph 137.

138. Plaintiffs' and Class Members' injuries were directly and proximately caused by Defendants' failure to implement and/or maintain adequate data security measures to protect the PII of Plaintiffs and Class Members.

**ANSWER TO PARAGRAPH 138:** Defendants deny the allegations in Paragraph 138.

***4. The Future Cost of Credit and Identity Theft Monitoring is Reasonable and Necessary***

139. Given the type of targeted attack in this case, sophisticated criminal activity, and the type of PII involved, there is a strong probability that entire batches of stolen information have

been placed, or will be placed, on the black market/dark web for sale and purchase by criminals intending to utilize the PII for identity theft crimes, such as opening bank accounts in the victims' names to make purchases or to launder money; filing false tax returns; taking out loans or lines of credit; or filing false unemployment claims.

**ANSWER TO PARAGRAPH 139:** Defendants deny the allegations in Paragraph 139.

140. Such fraud may go undetected until debt collection calls begin months, or even years, later. An individual may not know that their PII was used to file for unemployment benefits until law enforcement notifies the individual's employer of the suspected fraud. Fraudulent tax returns are typically discovered only when an individual's authentic tax return is rejected.

**ANSWER TO PARAGRAPH 140:** Paragraph 140 consists of generalized assertions that are not specific to Defendants, and Defendants lack knowledge or information sufficient to form a belief as to their truth and therefore deny them.

141. Moreover, Social Security Numbers can only be changed after the occurrence of identity theft or fraud, preventing Plaintiffs and Class Members from effectively shielding themselves from future identity theft or fraud caused by the Breach.

**ANSWER TO PARAGRAPH 141:** Paragraph 141 consists of generalized assertions that are not specific to Defendants, and Defendants lack knowledge or information sufficient to form a belief as to their truth and therefore deny them.

142. Consequently, Plaintiffs and Class Members are at an increased risk of fraud and identity theft for many years into the future.

**ANSWER TO PARAGRAPH 142:** Defendants deny the allegations in Paragraph 142.

143. The retail cost of credit monitoring and identity theft monitoring can cost around $200 a year per Class Member. This is reasonable and necessary cost to monitor and protect Class Members from the risk of identity theft that arose from Defendants' Data Breach.

**ANSWER TO PARAGRAPH 143:** Defendants lack knowledge or information sufficient to form a belief as to the retail cost of credit monitoring and identity theft monitoring services and therefore deny those allegations. Defendants further state that Set Forth offered complimentary credit monitoring and identity protection services to recipients of the Notice Letter. Defendants deny that any such cost is reasonable or necessary as a result of any act or omission of Defendants and deny the remaining allegations in Paragraph 143.

***5. Plaintiffs and Class Members Lost the Benefit of Their Bargain***

144. Furthermore, Defendants' poor data security practices deprived Plaintiffs and Class Members of the benefit of their bargain. When agreeing to pay Defendants' clients for products or services that required disclosing their PII, Plaintiffs, Class Members, and other reasonable consumers understood and expected that they were, in part, paying for necessary data security to protect their PII. Because Defendants did not, in fact, provide that expected data security, Plaintiffs and Class Members received products or services that were of a lesser value than what they reasonably expected to receive under the bargains they struck with Defendants' clients.

**ANSWER TO PARAGRAPH 144:** Defendants deny that their data security practices were "poor," deny that Plaintiffs or putative Class Members were deprived of the benefit of any bargain, and deny that Plaintiffs or putative Class Members paid Defendants for data security. Defendants lack knowledge or information sufficient to form a belief as to the understanding or expectations of Plaintiffs, putative Class Members, or other consumers in transactions with third parties, and therefore deny those allegations. Defendants deny the remaining allegations in Paragraph 144.

## D. Plaintiffs' Experiences

***Plaintiff Joel Bellefeuille, Jr.***

145. Plaintiff Bellefeuille used the Set Forth software platform in relation to accounts he held with Freedom Debt Relief and Cordoba Legal Group.

**ANSWER TO PARAGRAPH 145:** The Court has compelled Plaintiff Bellefeuille's claims to individual arbitration and stayed those claims. Accordingly, no response to Paragraph 145 is required. Defendants lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 145 and therefore deny them.

146. Upon information and belief, at the time of the Data Breach, Defendants maintained Plaintiff Bellefeuille's PII in their systems, which they had access to.

**ANSWER TO PARAGRAPH 146:** The Court has compelled Plaintiff Bellefeuille's claims to individual arbitration and stayed those claims. Accordingly, no response to Paragraph 146 is required.

147. Plaintiff Bellefeuille received the Notice Letter, by U.S. mail, from Defendant Set Forth, addressed directly to Plaintiff Bellefeuille, which was dated November 8, 2024. According to the Notice Letter, Plaintiff Bellefeuille's PII was improperly accessed and obtained by unauthorized third parties, including the name, address, and/or Social Security number of Plaintiff Bellefeuille and/or his spouse, co-applicant, or dependent.

**ANSWER TO PARAGRAPH 147:** The Court has compelled Plaintiff Bellefeuille's claims to individual arbitration and stayed those claims. Accordingly, no response to Paragraph 147 is required.

148. Plaintiff Bellefeuille is very careful about sharing his PII. Plaintiff Bellefeuille stores any documents containing his PII in a safe and secure location. He has never knowingly transmitted unencrypted sensitive PII over the internet or any other unsecured source. Plaintiff

Bellefeuille would not have entrusted his PII to Defendants had he known of their lax data security policies.

**ANSWER TO PARAGRAPH 148:** The Court has compelled Plaintiff Bellefeuille's claims to individual arbitration and stayed those claims. Accordingly, no response to Paragraph 148 is required.

149. In order and as a condition to obtain debt relief services from Defendants, Plaintiff Bellefeuille was required to provide his PII to Defendants.

**ANSWER TO PARAGRAPH 149:** The Court has compelled Plaintiff Bellefeuille's claims to individual arbitration and stayed those claims. Accordingly, no response to Paragraph 149 is required.

150. In September 2024, Plaintiff Bellefeuille incurred a fraudulent charge of $34.55 on his debit card, which he ultimately was able to get reversed.

**ANSWER TO PARAGRAPH 150:** The Court has compelled Plaintiff Bellefeuille's claims to individual arbitration and stayed those claims. Accordingly, no response to Paragraph 150 is required.

151. Plaintiff Bellefeuille has also experienced a significant uptick in spam phone calls, relating to medical insurance, funeral homes, and healthcare since the Data Breach.

**ANSWER TO PARAGRAPH 151:** The Court has compelled Plaintiff Bellefeuille's claims to individual arbitration and stayed those claims. Accordingly, no response to Paragraph 151 is required.

152. As a result of the Data Breach, Plaintiff Bellefeuille made reasonable efforts to mitigate the impact of the Data Breach, including researching and verifying the legitimacy of the Data Breach, continuously monitoring his accounts, and contacting his bank and credit card

companies about fraudulent and suspicious activity. Plaintiff Bellefeuille has spent at least 30 minutes most days dealing with the Data Breach—valuable time Plaintiff Bellefeuille otherwise would have spent on other activities, including but not limited to work and/or recreation. This time has been lost forever and cannot be recaptured.

**ANSWER TO PARAGRAPH 152:** The Court has compelled Plaintiff Bellefeuille's claims to individual arbitration and stayed those claims. Accordingly, no response to Paragraph 152 is required.

153. Plaintiff Bellefeuille suffered actual injury from having his PII compromised as a result of the Data Breach including, but not limited to: (i) invasion of privacy; (ii) theft of PII; (iii) lost or diminished value of PII; (iv) lost time and opportunity costs associated with attempting to mitigate the actual consequences of the Data Breach; (v) loss of benefit of the bargain; (vi) lost opportunity costs associated with attempting to mitigate the actual consequences of the Data Breach; (vii) statutory damages; (viii) nominal damages; and (ix) the continued and certainly increased risk to his PII, which: (a) remains unencrypted and available for unauthorized third parties to access and abuse; and (b) remains backed up in Defendants' possession and is subject to further unauthorized disclosures so long as Defendants fail to undertake appropriate and adequate measures to protect the PII.

**ANSWER TO PARAGRAPH 153:** The Court has compelled Plaintiff Bellefeuille's claims to individual arbitration and stayed those claims. Accordingly, no response to Paragraph 153 is required.

154. The Data Breach has caused Plaintiff Bellefeuille to suffer fear, anxiety, and stress, which has been compounded by the fact that Defendants have still not fully informed him of key details about the Data Breach's occurrence.

**ANSWER TO PARAGRAPH 154:** The Court has compelled Plaintiff Bellefeuille's claims to individual arbitration and stayed those claims. Accordingly, no response to Paragraph 154 is required.

155. As a result of the Data Breach, Plaintiff Bellefeuille anticipates spending considerable time and money on an ongoing basis to try to mitigate and address harms caused by the Data Breach.

**ANSWER TO PARAGRAPH 155:** The Court has compelled Plaintiff Bellefeuille's claims to individual arbitration and stayed those claims. Accordingly, no response to Paragraph 155 is required.

156. As a result of the Data Breach, Plaintiff Bellefeuille is at a present risk and will continue to be at increased risk of identity theft and fraud for life.

**ANSWER TO PARAGRAPH 156:** The Court has compelled Plaintiff Bellefeuille's claims to individual arbitration and stayed those claims. Accordingly, no response to Paragraph 156 is required.

157. Plaintiff Bellefeuille has a continuing interest in ensuring that his PII, which, upon information and belief, remains backed up in Defendants' possession, is protected and safeguarded from future breaches.

**ANSWER TO PARAGRAPH 157:** The Court has compelled Plaintiff Bellefeuille's claims to individual arbitration and stayed those claims. Accordingly, no response to Paragraph 157 is required.

158. Plaintiff Bellefeuille greatly values his privacy and would not have provided his PII or undertaken the services and paid the amounts that he did, or amounts paid on his behalf, if he had known that his PII would be maintained using inadequate data security systems.

**ANSWER TO PARAGRAPH 158:** The Court has compelled Plaintiff Bellefeuille's claims to individual arbitration and stayed those claims. Accordingly, no response to Paragraph 158 is required.

***Plaintiff Sharon Blue***

159. Upon information and belief, at the time of the Data Breach, Defendants maintained Plaintiff Blue's PII in their systems, which they had access to.

**ANSWER TO PARAGRAPH 159:** Defendants admit that, at the time of the Data Breach, information relating to Plaintiff Blue was maintained on the Set Forth platform. Defendants deny that Centrex maintained Plaintiff Blue's information on any system operated by Centrex, and deny the remaining allegations in Paragraph 159.

160. Plaintiff Blue received the Notice Letter, by U.S. mail, from Defendant Set Forth, addressed directly to Plaintiff Blue, which was dated November 8, 2024. According to the Notice Letter, Plaintiff Blue's PII was improperly accessed and obtained by unauthorized third parties, including the name, address, and/or Social Security number of Plaintiff Blue and/or her spouse, co-applicant, or dependent.

**ANSWER TO PARAGRAPH 160:** Defendants admit that Set Forth mailed Notice Letters dated November 8, 2024 to individuals whose information may have been involved in the Data Breach. Defendants refer to the letter attached to the Complaint as it relates to Plaintiff Blue for its complete and accurate contents and deny any characterization inconsistent therewith. Defendants specifically deny that the Notice Letter states that Plaintiff Blue's PII "was improperly accessed and obtained by unauthorized third parties." Defendants lack knowledge or information sufficient to form a belief as to whether, when, or how Plaintiff Blue received the letter and therefore deny those allegations. Defendants deny the remaining allegations in Paragraph 160.

161. Plaintiff Blue is very careful about sharing her PII. Plaintiff Blue stores any documents containing her PII in a safe and secure location. She has never knowingly transmitted unencrypted sensitive PII over the internet or any other unsecured source. Plaintiff Blue would not have entrusted her PII to Defendants had she known of their lax data security policies.

**ANSWER TO PARAGRAPH 161:** Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 161 regarding Plaintiff Blue's practices for handling personal information, and therefore deny them. Defendants deny that their data security policies or practices were "lax," and deny the remaining allegations in Paragraph 161.

162. In order and as a condition to obtain debt relief services from Defendants, Plaintiff Blue was required to provide her PII to Defendants.

**ANSWER TO PARAGRAPH 162:** Defendants deny that Plaintiff Blue was required to provide information to Defendants as a condition of obtaining services from Defendants..

163. Plaintiff Blue received a Total Credit Card and a Cashapp Credit Card that she never applied for.

**ANSWER TO PARAGRAPH 163:** Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 163 regarding Plaintiff Blue's alleged experiences and therefore deny them. Defendants specifically deny that the Data Breach caused the events alleged in Paragraph 163.

164. Plaintiff Blue also received a cell phone bill in her name for an unknown telephone number.

**ANSWER TO PARAGRAPH 164:** Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 164 regarding Plaintiff Blue's alleged

experiences and therefore deny them. Defendants specifically deny that the Data Breach caused the events alleged in Paragraph 164.

165. When Plaintiff Blue checked Experian in September 2025, she found there was an individual with her name and Social Security number connected to an address she did not recognize.

**ANSWER TO PARAGRAPH 165:** Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 165 regarding Plaintiff Blue's alleged experiences and therefore deny them. Defendants specifically deny that the Data Breach caused the events alleged in Paragraph 165.

166. Plaintiff Blue has experienced a significant uptick in spam calls, emails, and text messages since the Data Breach.

**ANSWER TO PARAGRAPH 166:** Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 166 regarding Plaintiff Blue's alleged experiences and therefore deny them. Defendants specifically deny that the Data Breach caused the events alleged in Paragraph 166.

167. As a result of the Data Breach, Plaintiff Blue made reasonable efforts to mitigate the impact of the Data Breach, including researching and verifying the legitimacy of the Data Breach, contacting credit bureaus, continuously monitoring her accounts, contacting banks, credit card companies, or other vendors about suspicious activity, and investigating suspicious activity on her accounts. Plaintiff Blue has spent six hours dealing with the Data Breach—valuable time Plaintiff Blue otherwise would have spent on other activities, including but not limited to work and/or recreation. This time has been lost forever and cannot be recaptured.

**ANSWER TO PARAGRAPH 167:** Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 167 regarding the activities Plaintiff Blue undertook or the time Plaintiff Blue spent, and therefore deny them. Defendants deny that the Data Breach caused Plaintiff Blue any cognizable injury or loss, deny that any such time or effort was reasonably necessary as a result of any act or omission of Defendants, and deny the remaining allegations in Paragraph 167.

168. Plaintiff Blue suffered actual injury from having her PII compromised as a result of the Data Breach including, but not limited to: (i) invasion of privacy; (ii) theft of PII; (iii) lost or diminished value of PII; (iv) lost time and opportunity costs associated with attempting to mitigate the actual consequences of the Data Breach; (v) loss of benefit of the bargain; (vi) lost opportunity costs associated with attempting to mitigate the actual consequences of the Data Breach; (vii) statutory damages; (viii) nominal damages; and (ix) the continued and certainly increased risk to her PII, which: (a) remains unencrypted and available for unauthorized third parties to access and abuse; and (b) remains backed up in Defendants' possession and is subject to further unauthorized disclosures so long as Defendants fail to undertake appropriate and adequate measures to protect the PII.

**ANSWER TO PARAGRAPH 168:** Defendants deny that Plaintiff Blue suffered any cognizable injury as a result of the Data Breach or any act or omission of Defendants, deny that Plaintiff Blue is entitled to any relief, and deny the remaining allegations in Paragraph 168.

169. The Data Breach has caused Plaintiff Blue to suffer fear, anxiety, and stress, which has been compounded by the fact that Defendants have still not fully informed her of key details about the Data Breach's occurrence.

**ANSWER TO PARAGRAPH 169:** Defendants lack knowledge or information sufficient to form a belief as to Plaintiff Blue's alleged emotional state and therefore deny those allegations. Defendants deny that they failed to inform Plaintiff Blue of any information they were required to provide, deny that the Data Breach or any act or omission of Defendants caused Plaintiff Blue any cognizable harm, and deny the remaining allegations in Paragraph 169.

170. As a result of the Data Breach, Plaintiff Blue anticipates spending considerable time and money on an ongoing basis to try to mitigate and address harms caused by the Data Breach.

**ANSWER TO PARAGRAPH 170:** Defendants lack knowledge or information sufficient to form a belief as to what Plaintiff Blue anticipates and therefore deny those allegations. Defendants deny that any future time or expense is attributable to any act or omission of Defendants and deny the remaining allegations in Paragraph 170.

171. As a result of the Data Breach, Plaintiff Blue is at a present risk and will continue to be at increased risk of identity theft and fraud for life.

**ANSWER TO PARAGRAPH 171:** Defendants deny the allegations in Paragraph 171.

172. Plaintiff Blue has a continuing interest in ensuring that her PII, which, upon information and belief, remains backed up in Defendants' possession, is protected and safeguarded from future breaches.

**ANSWER TO PARAGRAPH 172:** Defendants deny that Plaintiff Blue's information is at risk of "future breaches" as a result of any act or omission of Defendants, and deny that Plaintiff Blue is entitled to injunctive or other relief. Defendants lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 172 and therefore deny them.

173. Plaintiff Blue greatly values her privacy and would not have provided her PII or undertaken the services and paid the amounts that she did, or amounts paid on her behalf, if she had known that her PII would be maintained using inadequate data security systems.

**ANSWER TO PARAGRAPH 173:** Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 173 regarding what Plaintiff Blue values or would have done, and therefore deny them. Defendants deny that they maintained Plaintiff Blue's information using inadequate data security systems and deny the remaining allegations in Paragraph 173.

***Plaintiff Richard Cooper***

174. Plaintiff Cooper does not recall contracting directly with Defendants and is unsure of how they obtained access to his PII.

**ANSWER TO PARAGRAPH 174:** Defendants lack knowledge or information sufficient to form a belief as to what Plaintiff Cooper recalls or knows and therefore deny the allegations in Paragraph 174.

175. Upon information and belief, at the time of the Data Breach, Defendants maintained Plaintiff Cooper's PII in their systems, which they had access to.

**ANSWER TO PARAGRAPH 175:** Defendants admit that, at the time of the Data Breach, information relating to Plaintiff Cooper was maintained on the Set Forth platform. Defendants deny that Centrex maintained Plaintiff Cooper's information on any system operated by Centrex, and deny the remaining allegations in Paragraph 175.

176. Plaintiff Cooper received the Notice Letter, by U.S. mail, from Defendant Set Forth, addressed directly to Plaintiff Cooper, which was dated November 8, 2024. According to the Notice Letter, Plaintiff Cooper's PII was improperly accessed and obtained by unauthorized third

parties, including the name, address, and/or Social Security number of Plaintiff Cooper and/or his spouse, co-applicant, or dependent.

**ANSWER TO PARAGRAPH 176:** Defendants admit that Set Forth mailed Notice Letters dated November 8, 2024 to individuals whose information may have been involved in the Data Breach. Defendants refer to the letter attached to the Complaint as it relates to Plaintiff Cooper for its complete and accurate contents and deny any characterization inconsistent therewith. Defendants specifically deny that the Notice Letter states that Plaintiff Cooper's PII "was improperly accessed and obtained by unauthorized third parties." Defendants lack knowledge or information sufficient to form a belief as to whether, when, or how Plaintiff Cooper received the letter and therefore deny those allegations. Defendants deny the remaining allegations in Paragraph 176.

177. Plaintiff Cooper is very careful about sharing his PII. Plaintiff Cooper stores any documents containing his PII in a safe and secure location. He has never knowingly transmitted unencrypted sensitive PII over the internet or any other unsecured source. Plaintiff Cooper would not have entrusted his PII to Defendants had he known of their lax data security policies.

**ANSWER TO PARAGRAPH 177:** Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 177 regarding Plaintiff Cooper's practices for handling personal information, and therefore deny them. Defendants deny that their data security policies or practices were "lax," and deny the remaining allegations in Paragraph 177.

178. In order and as a condition to obtain services from Defendants, Plaintiff Cooper was required to provide his PII to Defendants.

**ANSWER TO PARAGRAPH 178:** Defendants deny that Plaintiff Cooper was required to provide information to Defendants as a condition of obtaining services from Defendants. Defendants state that the allegations of Paragraph 178 are inconsistent with Plaintiff Cooper's allegation in Paragraph 174 that he does not recall contracting directly with Defendants..

179. Plaintiff Cooper has received notifications of unauthorized attempts to modify his Amerihome mortgage loan.

**ANSWER TO PARAGRAPH 179:** Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 179 regarding Plaintiff Cooper's alleged experiences and therefore deny them. Defendants specifically deny that the Data Breach caused the events alleged in Paragraph 179.

180. Plaintiff Cooper's Cashapp account was hacked and $12,000 was withdrawn from the account.

**ANSWER TO PARAGRAPH 180:** Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 180 regarding Plaintiff Cooper's alleged experiences and therefore deny them. Defendants specifically deny that the Data Breach caused the events alleged in Paragraph 180.

181. Plaintiff Cooper's email and phone have been hacked.

**ANSWER TO PARAGRAPH 181:** Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 181 regarding Plaintiff Cooper's alleged experiences and therefore deny them. Defendants specifically deny that the Data Breach caused the events alleged in Paragraph 181.

182. Plaintiff Cooper's credit reports list charges that he never made or authorized.

**ANSWER TO PARAGRAPH 182:** Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 182 regarding Plaintiff Cooper's alleged experiences and therefore deny them. Defendants specifically deny that the Data Breach caused the events alleged in Paragraph 182.

183. Plaintiff Cooper changed his bank from Wells Fargo to Bank of America to mitigate the impact of the Data Breach.

**ANSWER TO PARAGRAPH 183:** Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 183 and therefore deny them. Defendants deny that any change of banks was necessitated by the Data Breach or any act or omission of Defendants.

184. As a result of the Data Breach, Plaintiff Cooper made reasonable efforts to mitigate the impact of the Data Breach, including researching and verifying the legitimacy of the Data Breach, continuously monitoring his accounts, investigating fraudulent and suspicious activity, contacting Cashapp, his banks, and credit card companies about fraudulent and suspicious activity, and changing his passwords for at-risk, sensitive and financial accounts. Plaintiff Cooper has spent 25 hours dealing with the Data Breach—valuable time Plaintiff Cooper otherwise would have spent on other activities, including but not limited to work and/or recreation. This time has been lost forever and cannot be recaptured.

**ANSWER TO PARAGRAPH 184:** Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 184 regarding the activities Plaintiff Cooper undertook or the time Plaintiff Cooper spent, and therefore deny them. Defendants deny that the Data Breach caused Plaintiff Cooper any cognizable injury or loss, deny that any such time

or effort was reasonably necessary as a result of any act or omission of Defendants, and deny the remaining allegations in Paragraph 184.

185. Plaintiff Cooper suffered actual injury from having his PII compromised as a result of the Data Breach including, but not limited to: (i) invasion of privacy; (ii) theft of PII; (iii) lost or diminished value of PII; (iv) lost time and opportunity costs associated with attempting to mitigate the actual consequences of the Data Breach; (v) loss of benefit of the bargain; (vi) lost opportunity costs associated with attempting to mitigate the actual consequences of the Data Breach; (vii) statutory damages; (viii) nominal damages; and (ix) the continued and certainly increased risk to his PII, which: (a) remains unencrypted and available for unauthorized third parties to access and abuse; and (b) remains backed up in Defendants' possession and is subject to further unauthorized disclosures so long as Defendants fail to undertake appropriate and adequate measures to protect the PII.

**ANSWER TO PARAGRAPH 185:** Defendants deny that Plaintiff Cooper suffered any cognizable injury as a result of the Data Breach or any act or omission of Defendants, deny that Plaintiff Cooper is entitled to any relief, and deny the remaining allegations in Paragraph 185.

186. The Data Breach has caused Plaintiff Cooper to suffer fear, anxiety, and stress, which has been compounded by the fact that Defendants have still not fully informed him of key details about the Data Breach's occurrence.

**ANSWER TO PARAGRAPH 186:** Defendants lack knowledge or information sufficient to form a belief as to Plaintiff Cooper's alleged emotional state and therefore deny those allegations. Defendants deny that they failed to inform Plaintiff Cooper of any information they were required to provide, deny that the Data Breach or any act or omission of Defendants caused Plaintiff Cooper any cognizable harm, and deny the remaining allegations in Paragraph 186.

187. As a result of the Data Breach, Plaintiff Cooper anticipates spending considerable time and money on an ongoing basis to try to mitigate and address harms caused by the Data Breach.

**ANSWER TO PARAGRAPH 187:** Defendants lack knowledge or information sufficient to form a belief as to what Plaintiff Cooper anticipates and therefore deny those allegations. Defendants deny that any future time or expense is attributable to any act or omission of Defendants and deny the remaining allegations in Paragraph 187.

188. As a result of the Data Breach, Plaintiff Cooper is at a present risk and will continue to be at increased risk of identity theft and fraud for life.

**ANSWER TO PARAGRAPH 188:** Defendants deny the allegations in Paragraph 188.

189. Plaintiff Cooper has a continuing interest in ensuring that his PII, which, upon information and belief, remains backed up in Defendants' possession, is protected and safeguarded from future breaches.

**ANSWER TO PARAGRAPH 189:** Defendants deny that Plaintiff Cooper's information is at risk of "future breaches" as a result of any act or omission of Defendants, and deny that Plaintiff Cooper is entitled to injunctive or other relief. Defendants lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 189 and therefore deny them.

190. Plaintiff Cooper greatly values his privacy and would not have provided his PII or undertaken the services and paid the amounts that he did, or amounts paid on his behalf, if he had known that his PII would be maintained using inadequate data security systems.

**ANSWER TO PARAGRAPH 190:** Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 190 regarding what Plaintiff Cooper

values or would have done, and therefore deny them. Defendants deny that they maintained Plaintiff Cooper's information using inadequate data security systems and deny the remaining allegations in Paragraph 190.

***Plaintiff Gladys Ewing***

191. Plaintiff Ewing does not recall contracting directly with Defendants and is unsure how they obtained her PII.

**ANSWER TO PARAGRAPH 191:** Defendants lack knowledge or information sufficient to form a belief as to what Plaintiff Ewing recalls or knows and therefore deny the allegations in Paragraph 191.

192. Upon information and belief, at the time of the Data Breach, Defendants maintained Plaintiff Ewing's PII in their systems, which they had access to.

**ANSWER TO PARAGRAPH 192:** Defendants admit that, at the time of the Incident, information relating to Plaintiff Ewing was maintained on the Set Forth platform. Defendants deny that Centrex maintained Plaintiff Ewing's information on any system operated by Centrex, and deny the remaining allegations in Paragraph 192.

193. Plaintiff Ewing received the Notice Letter, by U.S. mail, from Defendant Set Forth, addressed directly to Plaintiff Ewing, which was dated November 8, 2024. According to the Notice Letter, Plaintiff Ewing's PII was improperly accessed and obtained by unauthorized third parties, including the name, address, and/or Social Security number of Plaintiff Ewing and/or her spouse, co-applicant, or dependent.

**ANSWER TO PARAGRAPH 193:** Defendants admit that Set Forth mailed Notice Letters dated November 8, 2024 to individuals whose information may have been involved in the Data Breach. Defendants refer to the letter attached to the Complaint as it relates to Plaintiff Ewing for its complete and accurate contents and deny any characterization inconsistent therewith.

Defendants specifically deny that the Notice Letter states that Plaintiff Ewing's PII "was improperly accessed and obtained by unauthorized third parties." Defendants lack knowledge or information sufficient to form a belief as to whether, when, or how Plaintiff Ewing received the letter and therefore deny those allegations. Defendants deny the remaining allegations in Paragraph 193.

194. Plaintiff Ewing is very careful about sharing her PII. Plaintiff Ewing stores any documents containing her PII in a safe and secure location. She has never knowingly transmitted unencrypted sensitive PII over the internet or any other unsecured source. Plaintiff Ewing would not have entrusted her PII to Defendants had she known of their lax data security policies.

**ANSWER TO PARAGRAPH 194:** Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 194 regarding Plaintiff Ewing's practices for handling personal information, and therefore deny them. Defendants deny that their data security policies or practices were "lax," and deny the remaining allegations in Paragraph 194.

195. In order and as a condition to obtain services from Defendants, Plaintiff Ewing was required to provide her PII to Defendants.

**ANSWER TO PARAGRAPH 195:** Defendants deny that Plaintiff Ewing was required to provide information to Defendants as a condition of obtaining services from Defendants. Defendants state that the allegations of Paragraph 195 are inconsistent with Plaintiff Ewing's allegation in Paragraph 191 that she does not recall contracting directly with Defendants..

196. In July 2024, Plaintiff Ewing applied for a $5,000 personal loan from Lightstream Loan Company. A customer representative named "Eathan" contacted Plaintiff Ewing requesting

her banking information. On July 15, 2024, $900 was deposited into her account from a vendor named "Foursight."

**ANSWER TO PARAGRAPH 196:** Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 196 and therefore deny them. Defendants state that, as alleged, the events described in Paragraph 196 arose from Plaintiff Ewing's application for a loan from a non-party, Lightstream Loan Company, and her provision of banking information to an individual who contacted her in connection with that application, and Defendants deny that the Data Breach caused those events.

197. Eathan then requested Plaintiff Ewing to send $460 back to him through Cashapp under the name "Jawuan Briscoe."

**ANSWER TO PARAGRAPH 197:** Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 197 regarding Plaintiff Ewing's alleged experiences and therefore deny them. Defendants specifically deny that the Data Breach caused the events alleged in Paragraph 197.

198. An unknown and unauthorized actor filed a dispute of the $900 charge with USAA, Plaintiff Ewing's bank. On July 16, 2024, Plaintiff Ewing notified USAA that she did not dispute the charge.

**ANSWER TO PARAGRAPH 198:** Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 198 regarding Plaintiff Ewing's alleged experiences and therefore deny them. Defendants specifically deny that the Data Breach caused the events alleged in Paragraph 198.

199. On July 16, 2024, Plaintiff Ewing was informed that a check of $2,480.15 from "Language Services Associates" was deposited in her account.

**ANSWER TO PARAGRAPH 199:** Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 199 regarding Plaintiff Ewing's alleged experiences and therefore deny them. Defendants specifically deny that the Data Breach caused the events alleged in Paragraph 199.

200. On July 17, 2024, USAA notified Plaintiff Ewing that it was closing all of her accounts.

**ANSWER TO PARAGRAPH 200:** Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 200 regarding Plaintiff Ewing's alleged experiences and therefore deny them. Defendants specifically deny that the Data Breach caused the events alleged in Paragraph 200.

201. Plaintiff Ewing's paycheck direct deposit was put on hold as a result of the bank account closure.

**ANSWER TO PARAGRAPH 201:** Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 201 regarding Plaintiff Ewing's alleged experiences and therefore deny them. Defendants specifically deny that the Data Breach caused the events alleged in Paragraph 201.

202. Plaintiff Ewing reported the above events to the FBI's Internet Crime Complaint Center.

**ANSWER TO PARAGRAPH 202:** Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 202 regarding Plaintiff Ewing's alleged experiences and therefore deny them. Defendants specifically deny that the Data Breach caused the events alleged in Paragraph 202.

203. As a result of the Data Breach, Plaintiff Ewing made reasonable efforts to mitigate the impact of the Data Breach, including researching and verifying the legitimacy of the Data Breach, contacting credit bureaus, continuously monitoring her accounts, investigating suspicious activity on her accounts, contacting her bank about suspicious activity, and changing her passwords for at-risk, sensitive, and financial accounts. Plaintiff Ewing has spent 10 to 20 hours dealing with the Data Breach—valuable time Plaintiff Ewing otherwise would have spent on other activities, including but not limited to work and/or recreation. This time has been lost forever and cannot be recaptured.

**ANSWER TO PARAGRAPH 203:** Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 203 regarding the activities Plaintiff Ewing undertook or the time Plaintiff Ewing spent, and therefore deny them. Defendants deny that the Data Breach caused Plaintiff Ewing any cognizable injury or loss, deny that any such time or effort was reasonably necessary as a result of any act or omission of Defendants, and deny the remaining allegations in Paragraph 203.

204. Plaintiff Ewing suffered actual injury from having her PII compromised as a result of the Data Breach including, but not limited to: (i) invasion of privacy; (ii) theft of PII; (iii) lost or diminished value of PII; (iv) lost time and opportunity costs associated with attempting to mitigate the actual consequences of the Data Breach; (v) loss of benefit of the bargain; (vi) lost opportunity costs associated with attempting to mitigate the actual consequences of the Data Breach; (vii) statutory damages; (viii) nominal damages; and (ix) the continued and certainly increased risk to her PII, which: (a) remains unencrypted and available for unauthorized third parties to access and abuse; and (b) remains backed up in Defendants' possession and is subject to

further unauthorized disclosures so long as Defendants fail to undertake appropriate and adequate measures to protect the PII.

**ANSWER TO PARAGRAPH 204:** Defendants deny that Plaintiff Ewing suffered any cognizable injury as a result of the Data Breach or any act or omission of Defendants, deny that Plaintiff Ewing is entitled to any relief, and deny the remaining allegations in Paragraph 204.

205. The Data Breach has caused Plaintiff Ewing to suffer fear, anxiety, and stress, which has been compounded by the fact that Defendants have still not fully informed her of key details about the Data Breach's occurrence.

**ANSWER TO PARAGRAPH 205:** Defendants lack knowledge or information sufficient to form a belief as to Plaintiff Ewing's alleged emotional state and therefore deny those allegations. Defendants deny that they failed to inform Plaintiff Ewing of any information they were required to provide, deny that the Data Breach or any act or omission of Defendants caused Plaintiff Ewing any cognizable harm, and deny the remaining allegations in Paragraph 205.

206. As a result of the Data Breach, Plaintiff Ewing anticipates spending considerable time and money on an ongoing basis to try to mitigate and address harms caused by the Data Breach.

**ANSWER TO PARAGRAPH 206:** Defendants lack knowledge or information sufficient to form a belief as to what Plaintiff Ewing anticipates and therefore deny those allegations. Defendants deny that any future time or expense is attributable to any act or omission of Defendants and deny the remaining allegations in Paragraph 206.

207. As a result of the Data Breach, Plaintiff Ewing is at a present risk and will continue to be at increased risk of identity theft and fraud for life.

**ANSWER TO PARAGRAPH 207:** Defendants deny the allegations in Paragraph 207.

208. Plaintiff Ewing has a continuing interest in ensuring that her PII, which, upon information and belief, remains backed up in Defendants' possession, is protected and safeguarded from future breaches.

**ANSWER TO PARAGRAPH 208:** Defendants deny that Plaintiff Ewing's information is at risk of "future breaches" as a result of any act or omission of Defendants, and deny that Plaintiff Ewing is entitled to injunctive or other relief. Defendants lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 208 and therefore deny them.

209. Plaintiff Ewing greatly values her privacy and would not have provided her PII or undertaken the services and paid the amounts that she did, or amounts paid on her behalf, if she had known that her PII would be maintained using inadequate data security systems.

**ANSWER TO PARAGRAPH 209:** Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 209 regarding what Plaintiff Ewing values or would have done, and therefore deny them. Defendants deny that they maintained Plaintiff Ewing's information using inadequate data security systems and deny the remaining allegations in Paragraph 209.

***Plaintiff Kim Girven***

210. Plaintiff Girven provided her PII to Defendant Set Forth to receive its debt relief services.

**ANSWER TO PARAGRAPH 210:** Defendants deny that Plaintiff Girven was enrolled in a debt relief program supported by Set Forth's platform. Defendants lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 210 and therefore deny them.

211. Plaintiff Girven recalls making monthly payments to Defendant Set Forth when she used its services.

**ANSWER TO PARAGRAPH 211:** Defendants lack knowledge or information sufficient to form a belief as to what Plaintiff Girven recalls and therefore deny the allegations in Paragraph 211.

212. Upon information and belief, at the time of the Data Breach, Defendants maintained Plaintiff Girven's PII in their systems, which they had access to.

**ANSWER TO PARAGRAPH 212:** Defendants admit that, at the time of the Data Breach, information relating to Plaintiff Girven was maintained on the Set Forth platform. Defendants deny that Centrex maintained Plaintiff Girven's information on any system operated by Centrex, and deny the remaining allegations in Paragraph 212.

213. Plaintiff Girven received the Notice Letter, by U.S. mail, from Defendant Set Forth, addressed directly to Plaintiff Girven, which was dated November 8, 2024. According to the Notice Letter, Plaintiff Girven's PII was improperly accessed and obtained by unauthorized third parties, including the name, address, and/or Social Security number of Plaintiff Girven and/or her spouse, co-applicant, or dependent.

**ANSWER TO PARAGRAPH 213:** Defendants admit that Set Forth mailed Notice Letters dated November 8, 2024 to individuals whose information may have been involved in the Data Breach. Defendants refer to the letter attached to the Complaint as it relates to Plaintiff Girven for its complete and accurate contents and deny any characterization inconsistent therewith. Defendants specifically deny that the Notice Letter states that Plaintiff Girven's PII "was improperly accessed and obtained by unauthorized third parties." Defendants lack knowledge or information sufficient to form a belief as to whether, when, or how Plaintiff Girven received the

letter and therefore deny those allegations. Defendants deny the remaining allegations in Paragraph 213.

214. Plaintiff Girven is very careful about sharing her PII. Plaintiff Girven stores any documents containing her PII in a safe and secure location. She has never knowingly transmitted unencrypted sensitive PII over the internet or any other unsecured source. Plaintiff Girven would not have entrusted her PII to Defendants had she known of their lax data security policies.

**ANSWER TO PARAGRAPH 214:** Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 214 regarding Plaintiff Girven's practices for handling personal information, and therefore deny them. Defendants deny that their data security policies or practices were "lax," and deny the remaining allegations in Paragraph 214.

215. In order and as a condition to obtain debt relief services from Defendants, Plaintiff Girven was required to provide her PII to Defendants, including, among other things: name, address, Social Security number, date of birth, email, phone number, bank information, income, and credit information.

**ANSWER TO PARAGRAPH 215:** Defendants deny that Plaintiff Girven was required to provide information to Defendants as a condition of obtaining services from Defendants. Defendants deny that all of the categories of information listed in Paragraph 215 were involved in the Data Breach and deny the remaining allegations in Paragraph 215.

216. In the summer of 2024, Plaintiff Girven received a notification thanking her for a purchase that she never authorized. Plaintiff Girven contacted PayPal, changed her account password, and successfully got the charge reversed.

**ANSWER TO PARAGRAPH 216:** Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 216 and therefore deny them. Defendants deny that the Data Breach caused the alleged events, and state that, as alleged, the charge was reversed and Plaintiff Girven suffered no loss.

217. In October 2025, Plaintiff Girven received notice of a suspicious charge from her bank. She was able to cancel the charge and receive a replacement debit card.

**ANSWER TO PARAGRAPH 217:** Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 217 and therefore deny them. Defendants deny that the Data Breach caused the alleged events, and state that, as alleged, the charge was cancelled and Plaintiff Girven suffered no loss. Defendants further state that Plaintiffs do not allege that debit card information was involved in the Data Breach.

218. Upon information and belief, Plaintiff Girven has been notified that her PII is on the dark web.

**ANSWER TO PARAGRAPH 218:** Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 218 regarding Plaintiff Girven's alleged experiences and therefore deny them. Defendants specifically deny that the Data Breach caused the events alleged in Paragraph 218.

219. Plaintiff Girven was also forced to purchase additional storage due to the excessive spam emails and text messages she has received since the Data Breach.

**ANSWER TO PARAGRAPH 219:** Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 219 regarding Plaintiff Girven's alleged experiences and therefore deny them. Defendants specifically deny that the Data Breach caused the events alleged in Paragraph 219.

220. As a result of the Data Breach, Plaintiff Girven made reasonable efforts to mitigate the impact of the Data Breach, including researching and verifying the legitimacy of the Data Breach, contacting credit bureaus, continuously monitoring her accounts, investigating suspicious activity on her accounts, contacting her bank about suspicious activity, and changing her passwords for at-risk, sensitive, and financial accounts. Plaintiff Girven has spent 40 hours dealing with the Data Breach—valuable time Plaintiff Girven otherwise would have spent on other activities, including but not limited to work and/or recreation. This time has been lost forever and cannot be recaptured.

**ANSWER TO PARAGRAPH 220:** Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 220 regarding the activities Plaintiff Girven undertook or the time Plaintiff Girven spent, and therefore deny them. Defendants deny that the Data Breach caused Plaintiff Girven any cognizable injury or loss, deny that any such time or effort was reasonably necessary as a result of any act or omission of Defendants, and deny the remaining allegations in Paragraph 220.

221. Plaintiff Girven suffered actual injury from having her PII compromised as a result of the Data Breach including, but not limited to: (i) invasion of privacy; (ii) theft of PII; (iii) lost or diminished value of PII; (iv) lost time and opportunity costs associated with attempting to mitigate the actual consequences of the Data Breach; (v) loss of benefit of the bargain; (vi) lost opportunity costs associated with attempting to mitigate the actual consequences of the Data Breach; (vii) statutory damages; (viii) nominal damages; and (ix) the continued and certainly increased risk to her PII, which: (a) remains unencrypted and available for unauthorized third parties to access and abuse; and (b) remains backed up in Defendants' possession and is subject to

further unauthorized disclosures so long as Defendants fail to undertake appropriate and adequate measures to protect the PII.

**ANSWER TO PARAGRAPH 221:** Defendants deny that Plaintiff Girven suffered any cognizable injury as a result of the Data Breach or any act or omission of Defendants, deny that Plaintiff Girven is entitled to any relief, and deny the remaining allegations in Paragraph 221.

222. The Data Breach has caused Plaintiff Girven to suffer fear, anxiety, and stress, which has been compounded by the fact that Defendants have still not fully informed her of key details about the Data Breach's occurrence. The Data Breach has forced Plaintiff Girven to alter her financial practices and Plaintiff Girven avoids using credit and debit cards out of fear that her account information might be exfiltrated.

**ANSWER TO PARAGRAPH 222:** Defendants lack knowledge or information sufficient to form a belief as to Plaintiff Girven's alleged emotional state and therefore deny those allegations. Defendants deny that they failed to inform Plaintiff Girven of any information they were required to provide, deny that the Data Breach or any act or omission of Defendants caused Plaintiff Girven any cognizable harm, and deny the remaining allegations in Paragraph 222. Defendants further lack knowledge or information sufficient to form a belief as to Plaintiff Girven's financial practices and therefore deny those allegations.

223. As a result of the Data Breach, Plaintiff Girven anticipates spending considerable time and money on an ongoing basis to try to mitigate and address harms caused by the Data Breach.

**ANSWER TO PARAGRAPH 223:** Defendants lack knowledge or information sufficient to form a belief as to what Plaintiff Girven anticipates and therefore deny those allegations.

Defendants deny that any future time or expense is attributable to any act or omission of Defendants and deny the remaining allegations in Paragraph 223.

224. As a result of the Data Breach, Plaintiff Girven is at a present risk and will continue to be at increased risk of identity theft and fraud for life.

**ANSWER TO PARAGRAPH 224:** Defendants deny the allegations in Paragraph 224.

225. Plaintiff Girven has a continuing interest in ensuring that her PII, which, upon information and belief, remains backed up in Defendants' possession, is protected and safeguarded from future breaches.

**ANSWER TO PARAGRAPH 225:** Defendants deny that Plaintiff Girven's information is at risk of "future breaches" as a result of any act or omission of Defendants, and deny that Plaintiff Girven is entitled to injunctive or other relief. Defendants lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 225 and therefore deny them.

226. Plaintiff Girven greatly values her privacy and would not have provided her PII or undertaken the services and paid the amounts that she did, or amounts paid on her behalf, if she had known that her PII would be maintained using inadequate data security systems.

**ANSWER TO PARAGRAPH 226:** Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 226 regarding what Plaintiff Girven values or would have done, and therefore deny them. Defendants deny that they maintained Plaintiff Girven's information using inadequate data security systems and deny the remaining allegations in Paragraph 226.

***Plaintiff LaToya Gravely***

227. Plaintiff Gravely provided her PII to Defendant Set Forth to receive its debt relief services around 2021 or 2022.

**ANSWER TO PARAGRAPH 227:** Defendants admit that Plaintiff Gravely was enrolled in a debt relief program supported by Set Forth's platform. Defendants lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 227 and therefore deny them.

228. Upon information and belief, at the time of the Data Breach, Defendants maintained Plaintiff Gravely's PII in their systems, which they had access to.

**ANSWER TO PARAGRAPH 228:** Defendants admit that, at the time of the Data Breach, information relating to Plaintiff Gravely was maintained on the Set Forth platform. Defendants deny that Centrex maintained Plaintiff Gravely's information on any system operated by Centrex, and deny the remaining allegations in Paragraph 228.

229. Plaintiff Gravely received the Notice Letter, by U.S. mail, from Defendant Set Forth, addressed directly to Plaintiff Gravely, which was dated November 8, 2024. According to the Notice Letter, Plaintiff Gravely's PII was improperly accessed and obtained by unauthorized third parties, including the name, address, and/or Social Security number of Plaintiff Gravely and/or her spouse, co-applicant, or dependent.

**ANSWER TO PARAGRAPH 229:** Defendants admit that Set Forth mailed Notice Letters dated November 8, 2024 to individuals whose information may have been involved in the Data Breach. Defendants refer to the letter attached to the Complaint as it relates to Plaintiff Gravely for its complete and accurate contents and deny any characterization inconsistent therewith. Defendants specifically deny that the Notice Letter states that Plaintiff Gravely's PII "was improperly accessed and obtained by unauthorized third parties." Defendants lack knowledge or information sufficient to form a belief as to whether, when, or how Plaintiff Gravely received

the letter and therefore deny those allegations. Defendants deny the remaining allegations in Paragraph 229.

230. Plaintiff Gravely is very careful about sharing her PII. Plaintiff Gravely stores any documents containing her PII in a safe and secure location. She has never knowingly transmitted unencrypted sensitive PII over the internet or any other unsecured source. Plaintiff Gravely would not have entrusted her PII to Defendants had she known of their lax data security policies.

**ANSWER TO PARAGRAPH 230:** Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 230 regarding Plaintiff Gravely's practices for handling personal information, and therefore deny them. Defendants deny that their data security policies or practices were "lax," and deny the remaining allegations in Paragraph 230.

231. In order and as a condition to obtain debt relief services from Defendants, Plaintiff Gravely was required to provide her PII to Defendants.

**ANSWER TO PARAGRAPH 231:** Defendants deny that Plaintiff Gravely was required to provide information to Defendants as a condition of obtaining services from Defendants.

232. In late 2024, Plaintiff Gravely received several alerts of unauthorized individuals attempting to charge her Chime account.

**ANSWER TO PARAGRAPH 232:** Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 232 regarding Plaintiff Gravely's alleged experiences and therefore deny them. Defendants specifically deny that the Data Breach caused the events alleged in Paragraph 232. Defendants further state that, as alleged, the attempted charges were unsuccessful and Plaintiff Gravely suffered no loss.

233. Plaintiff Gravely has received at least three text message alerts in the past year informing her of unauthorized attempts to charge her debit card.

**ANSWER TO PARAGRAPH 233:** Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 233 regarding Plaintiff Gravely's alleged experiences and therefore deny them. Defendants specifically deny that the Data Breach caused the events alleged in Paragraph 233. Defendants further state that, as alleged, the attempted charges were unsuccessful and Plaintiff Gravely suffered no loss.

234. Plaintiff Gravely has experienced a significant uptick in spam calls, emails, and text messages since the Data Breach. She has received emails purporting to be from Google about deposits she never made.

**ANSWER TO PARAGRAPH 234:** Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 234 regarding Plaintiff Gravely's alleged experiences and therefore deny them. Defendants specifically deny that the Data Breach caused the events alleged in Paragraph 234.

235. As a result of the Data Breach, Plaintiff Gravely made reasonable efforts to mitigate the impact of the Data Breach, including verifying the legitimacy of the Data Breach, continuously monitoring her accounts, investigating suspicious activity on her accounts, and changing her passwords for at-risk, sensitive, and financial accounts. Plaintiff Gravely has spent several hours dealing with the Data Breach—valuable time Plaintiff Gravely otherwise would have spent on other activities, including but not limited to work and/or recreation. This time has been lost forever and cannot be recaptured.

**ANSWER TO PARAGRAPH 235:** Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 235 regarding the activities Plaintiff

Gravely undertook or the time Plaintiff Gravely spent, and therefore deny them. Defendants deny that the Data Breach caused Plaintiff Gravely any cognizable injury or loss, deny that any such time or effort was reasonably necessary as a result of any act or omission of Defendants, and deny the remaining allegations in Paragraph 235.

236. Plaintiff Gravely suffered actual injury from having her PII compromised as a result of the Data Breach including, but not limited to: (i) invasion of privacy; (ii) theft of PII; (iii) lost or diminished value of PII; (iv) lost time and opportunity costs associated with attempting to mitigate the actual consequences of the Data Breach; (v) loss of benefit of the bargain; (vi) lost opportunity costs associated with attempting to mitigate the actual consequences of the Data Breach; (vii) statutory damages; (viii) nominal damages; and (ix) the continued and certainly increased risk to her PII, which: (a) remains unencrypted and available for unauthorized third parties to access and abuse; and (b) remains backed up in Defendants' possession and is subject to further unauthorized disclosures so long as Defendants fail to undertake appropriate and adequate measures to protect the PII.

**ANSWER TO PARAGRAPH 236:** Defendants deny that Plaintiff Gravely suffered any cognizable injury as a result of the Data Breach or any act or omission of Defendants, deny that Plaintiff Gravely is entitled to any relief, and deny the remaining allegations in Paragraph 236.

237. The Data Breach has caused Plaintiff Gravely to suffer fear, anxiety, and stress about her PII no longer being private, which has been compounded by the fact that Defendants have still not fully informed her of key details about the Data Breach's occurrence.

**ANSWER TO PARAGRAPH 237:** Defendants lack knowledge or information sufficient to form a belief as to Plaintiff Gravely's alleged emotional state and therefore deny those allegations. Defendants deny that they failed to inform Plaintiff Gravely of any information they

were required to provide, deny that the Data Breach or any act or omission of Defendants caused Plaintiff Gravely any cognizable harm, and deny the remaining allegations in Paragraph 237.

238. As a result of the Data Breach, Plaintiff Gravely anticipates spending considerable time and money on an ongoing basis to try to mitigate and address harms caused by the Data Breach.

**ANSWER TO PARAGRAPH 238:** Defendants lack knowledge or information sufficient to form a belief as to what Plaintiff Gravely anticipates and therefore deny those allegations. Defendants deny that any future time or expense is attributable to any act or omission of Defendants and deny the remaining allegations in Paragraph 238.

239. As a result of the Data Breach, Plaintiff Gravely is at a present risk and will continue to be at increased risk of identity theft and fraud for life.

**ANSWER TO PARAGRAPH 239:** Defendants deny the allegations in Paragraph 239.

240. Plaintiff Gravely has a continuing interest in ensuring that her PII, which, upon information and belief, remains backed up in Defendants' possession, is protected and safeguarded from future breaches.

**ANSWER TO PARAGRAPH 240:** Defendants deny that Plaintiff Gravely's information is at risk of "future breaches" as a result of any act or omission of Defendants, and deny that Plaintiff Gravely is entitled to injunctive or other relief. Defendants lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 240 and therefore deny them.

241. Plaintiff Gravely greatly values her privacy and would not have provided her PII or undertaken the services and paid the amounts that she did, or amounts paid on her behalf, if she had known that her PII would be maintained using inadequate data security systems.

**ANSWER TO PARAGRAPH 241:** Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 241 regarding what Plaintiff Gravely values or would have done, and therefore deny them. Defendants deny that they maintained Plaintiff Gravely's information using inadequate data security systems and deny the remaining allegations in Paragraph 241.

***Plaintiff Bertha Meza***

242. Plaintiff Meza does not recall contracting directly with Defendants and does not know how they obtained access to her PII.

**ANSWER TO PARAGRAPH 242:** Defendants lack knowledge or information sufficient to form a belief as to what Plaintiff Meza recalls or knows and therefore deny the allegations in Paragraph 242.

243. Upon information and belief, at the time of the Data Breach, Defendants maintained Plaintiff Meza's PII in their systems, which they had access to.

**ANSWER TO PARAGRAPH 243:** Defendants admit that, at the time of the Data Breach, information relating to Plaintiff Meza was maintained on the Set Forth platform. Defendants deny that Centrex maintained Plaintiff Meza's information on any system operated by Centrex, and deny the remaining allegations in Paragraph 243.

244. Plaintiff Meza received the Notice Letter, by U.S. mail, from Defendant Set Forth, addressed directly to Plaintiff Meza, which was dated November 8, 2024. According to the Notice Letter, Plaintiff Meza's PII was improperly accessed and obtained by unauthorized third parties, including the name, address, and/or Social Security number of Plaintiff Meza and/or her spouse, co-applicant, or dependent.

**ANSWER TO PARAGRAPH 244:** Defendants admit that Set Forth mailed Notice Letters dated November 8, 2024 to individuals whose information may have been involved in the

Data Breach. Defendants refer to the letter attached to the Complaint as it relates to Plaintiff Meza for its complete and accurate contents and deny any characterization inconsistent therewith. Defendants specifically deny that the Notice Letter states that Plaintiff Meza's PII "was improperly accessed and obtained by unauthorized third parties." Defendants lack knowledge or information sufficient to form a belief as to whether, when, or how Plaintiff Meza received the letter and therefore deny those allegations. Defendants deny the remaining allegations in Paragraph 244.

245. Plaintiff Meza is very careful about sharing her PII. Plaintiff Meza stores any documents containing her PII in a safe and secure location. She has never knowingly transmitted unencrypted sensitive PII over the internet or any other unsecured source. Plaintiff Meza would not have entrusted her PII to Defendants had she known of their lax data security policies.

**ANSWER TO PARAGRAPH 245:** Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 245 regarding Plaintiff Meza's practices for handling personal information, and therefore deny them. Defendants deny that their data security policies or practices were "lax," and deny the remaining allegations in Paragraph 245.

246. In order and as a condition to obtain services from Defendants, Plaintiff Meza was required to provide her PII to Defendants.

**ANSWER TO PARAGRAPH 246:** Defendants deny that Plaintiff Meza was required to provide information to Defendants as a condition of obtaining services from Defendants. Defendants state that the allegations of Paragraph 246 are inconsistent with Plaintiff Meza's allegation in Paragraph 242 that she does not recall contracting directly with Defendants.

247. Plaintiff Meza has received numerous notifications that her PII was found on the dark web.

**ANSWER TO PARAGRAPH 247:** Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 247 regarding Plaintiff Meza's alleged experiences and therefore deny them. Defendants specifically deny that the Data Breach caused the events alleged in Paragraph 247.

248. Plaintiff Meza has also experienced a significant uptick in spam phone calls, emails, and texts related to loans since the Data Breach.

**ANSWER TO PARAGRAPH 248:** Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 248 regarding Plaintiff Meza's alleged experiences and therefore deny them. Defendants specifically deny that the Data Breach caused the events alleged in Paragraph 248.

249. As a result of the Data Breach, Plaintiff Meza made reasonable efforts to mitigate the impact of the Data Breach, including researching and verifying the legitimacy of the Data Breach, continuously monitoring her accounts, changing her passwords, and enabling credit monitoring alerts. Plaintiff Meza has spent over eight hours dealing with the Data Breach—valuable time Plaintiff Meza otherwise would have spent on other activities, including but not limited to work and/or recreation. This time has been lost forever and cannot be recaptured.

**ANSWER TO PARAGRAPH 249:** Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 249 regarding the activities Plaintiff Meza undertook or the time Plaintiff Meza spent, and therefore deny them. Defendants deny that the Data Breach caused Plaintiff Meza any cognizable injury or loss, deny that any such time or effort was reasonably necessary as a result of any act or omission of Defendants, and deny the remaining allegations in Paragraph 249.

250. Plaintiff Meza suffered actual injury from having her PII compromised as a result of the Data Breach including, but not limited to: (i) invasion of privacy; (ii) theft of PII; (iii) lost or diminished value of PII; (iv) lost time and opportunity costs associated with attempting to mitigate the actual consequences of the Data Breach; (v) loss of benefit of the bargain; (vi) lost opportunity costs associated with attempting to mitigate the actual consequences of the Data Breach; (vii) statutory damages; (viii) nominal damages; and (ix) the continued and certainly increased risk to her PII, which: (a) remains unencrypted and available for unauthorized third parties to access and abuse; and (b) remains backed up in Defendants' possession and is subject to further unauthorized disclosures so long as Defendants fail to undertake appropriate and adequate measures to protect the PII.

**ANSWER TO PARAGRAPH 250:** Defendants deny that Plaintiff Meza suffered any cognizable injury as a result of the Data Breach or any act or omission of Defendants, deny that Plaintiff Meza is entitled to any relief, and deny the remaining allegations in Paragraph 250.

251. The Data Breach has caused Plaintiff Meza to suffer fear, anxiety, and stress about the exfiltration of her PII and the potential of her PII being exploited by threat actors. Plaintiff Meza has had difficulty sleeping due to thinking and worrying about the Data Breach. Plaintiff Meza's emotional distress has been compounded by the fact that Defendants have still not fully informed her of key details about the Data Breach's occurrence.

**ANSWER TO PARAGRAPH 251:** Defendants lack knowledge or information sufficient to form a belief as to Plaintiff Meza's alleged emotional state and therefore deny those allegations. Defendants deny that they failed to inform Plaintiff Meza of any information they were required to provide, deny that the Data Breach or any act or omission of Defendants caused Plaintiff Meza any cognizable harm, and deny the remaining allegations in Paragraph 251.

252. As a result of the Data Breach, Plaintiff Meza anticipates spending considerable time and money on an ongoing basis to try to mitigate and address harms caused by the Data Breach.

**ANSWER TO PARAGRAPH 252:** Defendants lack knowledge or information sufficient to form a belief as to what Plaintiff Meza anticipates and therefore deny those allegations. Defendants deny that any future time or expense is attributable to any act or omission of Defendants and deny the remaining allegations in Paragraph 252.

253. As a result of the Data Breach, Plaintiff Meza is at a present risk and will continue to be at increased risk of identity theft and fraud for life.

**ANSWER TO PARAGRAPH 253:** Defendants deny the allegations in Paragraph 253.

254. Plaintiff Meza has a continuing interest in ensuring that her PII, which, upon information and belief, remains backed up in Defendants' possession, is protected and safeguarded from future breaches.

**ANSWER TO PARAGRAPH 254:** Defendants deny that Plaintiff Meza's information is at risk of "future breaches" as a result of any act or omission of Defendants, and deny that Plaintiff Meza is entitled to injunctive or other relief. Defendants lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 254 and therefore deny them.

255. Plaintiff Meza greatly values her privacy and would not have provided her PII or undertaken the services and paid the amounts that she did, or amounts paid on her behalf, if she had known that her PII would be maintained using inadequate data security systems.

**ANSWER TO PARAGRAPH 255:** Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 255 regarding what Plaintiff Meza

values or would have done, and therefore deny them. Defendants deny that they maintained Plaintiff Meza's information using inadequate data security systems and deny the remaining allegations in Paragraph 255.

***Plaintiff Janice Adam***

256. Plaintiff Adam was a client of Set Forth and provided her PII, including her credit card number, bank account routing number, email address, and date of birth, to Set Forth over the phone.

**ANSWER TO PARAGRAPH 256:** The Court has compelled Plaintiff Adam's claims to individual arbitration and stayed those claims. Accordingly, no response to Paragraph 256 is required.

257. Upon information and belief, at the time of the Data Breach, Defendants maintained Plaintiff Adam's PII in their systems, which they had access to.

**ANSWER TO PARAGRAPH 257:** The Court has compelled Plaintiff Adam's claims to individual arbitration and stayed those claims. Accordingly, no response to Paragraph 257 is required.

258. Plaintiff Adam received the Notice Letter, by U.S. mail, directly addressed to Plaintiff Adam, which was dated November 8, 2024. According to the Notice Letter, Plaintiff Adam's PII was improperly accessed and obtained by unauthorized third parties, including the: name, address, and/or social security number of hers and/or her spouse, a co-applicant, or a dependent.

**ANSWER TO PARAGRAPH 258:** The Court has compelled Plaintiff Adam's claims to individual arbitration and stayed those claims. Accordingly, no response to Paragraph 258 is required.

259. Plaintiff Adam is extremely careful about sharing her sensitive PII. Plaintiff Adam is HIPAA trained and stores any documents containing her PII in a safe and secure location, shreds financial documents, and changes her passwords frequently. She has never knowingly transmitted unencrypted sensitive PII over the internet or any other unsecured source. Plaintiff Adam would not have entrusted her PII to Defendants had she known of Defendants' lax data security policies.

**ANSWER TO PARAGRAPH 259:** The Court has compelled Plaintiff Adam's claims to individual arbitration and stayed those claims. Accordingly, no response to Paragraph 259 is required.

260. Plaintiff Adam suffered actual injury from having her PII compromised as a result of the Data Breach including, but not limited to: (i) invasion of privacy; (ii) theft of her PII; (iii) lost or diminished value of PII; (iv) lost time and opportunity costs associated with attempting to mitigate the actual consequences of the Data Breach; (v) loss of benefit of the bargain; (vi) lost opportunity costs associated with attempting to mitigate the actual consequences of the Data Breach; (vii) nominal damages; (viii) out of pocket losses in the form of travel expenses; and (ix) the continued and certainly increased risk to her PII, which: (a) remains unencrypted and available for unauthorized third parties to access and abuse; and (b) remains backed up in Defendants' possession and is subject to further unauthorized disclosures so long as Defendants fail to undertake appropriate and adequate measures to protect the PII.

**ANSWER TO PARAGRAPH 260:** The Court has compelled Plaintiff Adam's claims to individual arbitration and stayed those claims. Accordingly, no response to Paragraph 260 is required.

261. Plaintiff Adam also suffered actual fraud and identity theft as a result of the Data Breach. Specifically, Plaintiff Adam suffered multiple fraudulent charges to her debit card in early

2025, which resulted in her financial institution freezing her debit card. The fraud perpetrated by these unknown and unauthorized actors necessitated Plaintiff Adam obtaining a new debit card on three separate occasions since the date of the Data Breach.

**ANSWER TO PARAGRAPH 261:** The Court has compelled Plaintiff Adam's claims to individual arbitration and stayed those claims. Accordingly, no response to Paragraph 261 is required.

262. Moreover, as a direct result of the Data Breach, Plaintiff Adam suffered further out of pocket losses in the form of travel expenses when she was forced to travel to and from her bank on three separate occasions, roughly 24 miles in total, in order to obtain her new debit cards.

**ANSWER TO PARAGRAPH 262:** The Court has compelled Plaintiff Adam's claims to individual arbitration and stayed those claims. Accordingly, no response to Paragraph 262 is required.

263. Because of the fraudulent charges, Plaintiff Adam enrolled in a credit monitoring service in early 2025.

**ANSWER TO PARAGRAPH 263:** The Court has compelled Plaintiff Adam's claims to individual arbitration and stayed those claims. Accordingly, no response to Paragraph 263 is required.

264. Plaintiff Adam also discovered inaccurate reporting on her credit report in the last two months which she believes was caused by the Data Breach, that she was forced to dispute.

**ANSWER TO PARAGRAPH 264:** The Court has compelled Plaintiff Adam's claims to individual arbitration and stayed those claims. Accordingly, no response to Paragraph 264 is required.

265. Plaintiff Adam additionally suffered actual injury in the form of experiencing an increase in spam calls, texts, and/or emails, and targeted phishing attempts, which, upon information and belief, was caused by the Data Breach. She receives multiple spam calls and email per day from people pretending to be government agencies or financial companies with whom she had no prior contact, requesting that Plaintiff Adam provide them additional sensitive information. This misuse of her PII was caused, upon information and belief, by the fact that cybercriminals are able to easily use the information compromised in the Data Breach to find more information about an individual, such as their phone number or email address, from publicly available sources, including websites that aggregate and associate personal information with the owner of such information. Criminals often target data breach victims with spam emails, calls, and texts to gain access to their devices with phishing attacks or elicit further personal information for use in committing identity theft or fraud.

**ANSWER TO PARAGRAPH 265:** The Court has compelled Plaintiff Adam's claims to individual arbitration and stayed those claims. Accordingly, no response to Paragraph 265 is required.

266. As a result of the Data Breach, Plaintiff Adam made reasonable efforts to mitigate the impact of the Data Breach, including research and verifying the legitimacy of the Data Breach, contacting credit bureaus, contacting her banks and card issuers, continuously monitoring her accounts, investigating suspicious activity on her accounts, cancelling her debit cards and requesting reissuance on three separate occasions, and changing her passwords for at-risk, sensitive, and financial accounts. Plaintiff Adam has spent at least four hours dealing with the Data Breach—valuable time Plaintiff Adam otherwise would have spent on other activities, including but not limited to work and/or recreation. This time has been lost forever and cannot be recaptured.

**ANSWER TO PARAGRAPH 266:** The Court has compelled Plaintiff Adam's claims to individual arbitration and stayed those claims. Accordingly, no response to Paragraph 266 is required in this forum.

267. To the best of Plaintiff Adam's knowledge, she has not been impacted by any other data breaches.

**ANSWER TO PARAGRAPH 267:** The Court has compelled Plaintiff Adam's claims to individual arbitration and stayed those claims. Accordingly, no response to Paragraph 267 is required.

268. Defendants' Data Breach has caused Plaintiff Adam to suffer significant fear, anxiety, and stress, especially because she has co-signed on lease agreements for her children and does not want potential identity theft to have consequences for her children. Plaintiff Adam's anxiety has been compounded by the fact that Defendants have still not fully informed her of key details about the Data Breach's occurrence.

**ANSWER TO PARAGRAPH 268:** The Court has compelled Plaintiff Adam's claims to individual arbitration and stayed those claims. Accordingly, no response to Paragraph 268 is required.

269. As a result of the Data Breach, Plaintiff Adam is at a present risk and will continue to be at increased risk of identity theft and fraud for years to come.

**ANSWER TO PARAGRAPH 269:** The Court has compelled Plaintiff Adam's claims to individual arbitration and stayed those claims. Accordingly, no response to Paragraph 269 is required.

270. Plaintiff Adam has a continuing interest in ensuring that her PII, which, upon information and belief, remains backed up in Defendants' possession, is protected and safeguarded from future breaches.

**ANSWER TO PARAGRAPH 270:** The Court has compelled Plaintiff Adam's claims to individual arbitration and stayed those claims. Accordingly, no response to Paragraph 270 is required.

***Plaintiff Mary Moses***

271. Plaintiff Moses does not recall directly signing up for Defendant Set Forth's debt relief services. Upon information and belief, Defendants received her information through her retirement account with Ballad Health.

**ANSWER TO PARAGRAPH 271:** Defendants lack knowledge or information sufficient to form a belief as to what Plaintiff Moses recalls, or as to the truth of the allegations regarding Plaintiff Moses's retirement account, and therefore deny the allegations in Paragraph 271.

272. Upon information and belief, at the time of the Data Breach, Defendants maintained Plaintiff Moses's PII in their systems, which they had access to.

**ANSWER TO PARAGRAPH 272:** Defendants admit that, at the time of the Data Breach, information relating to Plaintiff Moses was maintained on the Set Forth platform. Defendants deny that Centrex maintained Plaintiff Moses's information on any system operated by Centrex, and deny the remaining allegations in Paragraph 272.

273. Plaintiff Moses received the Notice Letter, by U.S. mail, from Defendant Set Forth, addressed directly to Plaintiff Moses, which was dated November 8, 2024. According to the Notice Letter, Plaintiff Moses's PII was improperly accessed and obtained by unauthorized third parties, including the name, address, and/or Social Security number of Plaintiff Moses and/or her spouse, co-applicant, or dependent.

**ANSWER TO PARAGRAPH 273:** Defendants admit that Set Forth mailed Notice Letters dated November 8, 2024 to individuals whose information may have been involved in the Data Breach. Defendants refer to the letter attached to the Complaint as it relates to Plaintiff Moses for its complete and accurate contents and deny any characterization inconsistent therewith. Defendants specifically deny that the Notice Letter states that Plaintiff Moses's PII "was improperly accessed and obtained by unauthorized third parties." Defendants lack knowledge or information sufficient to form a belief as to whether, when, or how Plaintiff Moses received the letter and therefore deny those allegations. Defendants deny the remaining allegations in Paragraph 273.

274. Plaintiff Moses is very careful about sharing her PII. Plaintiff Moses stores any documents containing her PII in a safe and secure location. She has never knowingly transmitted unencrypted sensitive PII over the internet or any other unsecured source. Plaintiff Moses would not have entrusted her PII to Defendants had she known of their lax data security policies.

**ANSWER TO PARAGRAPH 274:** Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 274 regarding Plaintiff Moses's practices for handling personal information, and therefore deny them. Defendants deny that their data security policies or practices were "lax," and deny the remaining allegations in Paragraph 274.

275. In order and as a condition to obtain debt relief services from Defendants, Plaintiff Moses was required to provide her PII to Defendants.

**ANSWER TO PARAGRAPH 275:** Defendants deny that Plaintiff Moses was required to provide information to Defendants as a condition of obtaining services from Defendants.

Defendants state that the allegations of Paragraph 275 are inconsistent with Plaintiff Moses's allegation in Paragraph 271 that she does not recall signing up for Set Forth's services.

276. Plaintiff Moses incurred unauthorized charges from Walmart ranging from $1 to $400 on her Truist account.

**ANSWER TO PARAGRAPH 276:** Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 276 regarding Plaintiff Moses's alleged experiences and therefore deny them. Defendants specifically deny that the Data Breach caused the events alleged in Paragraph 276.

277. As a result of the Data Breach, Plaintiff Moses made reasonable efforts to mitigate the impact of the Data Breach, including research and verifying the legitimacy of the Data Breach, contacting credit bureaus, contacting her banks and card issuers, continuously monitoring her accounts, investigating suspicious activity on her accounts, and changing her passwords for at-risk, sensitive, and financial accounts. Plaintiff Moses has spent over 40 hours dealing with the Data Breach—valuable time Plaintiff Moses otherwise would have spent on other activities, including but not limited to work and/or recreation. This time has been lost forever and cannot be recaptured.

**ANSWER TO PARAGRAPH 277:** Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 277 regarding the activities Plaintiff Moses undertook or the time Plaintiff Moses spent, and therefore deny them. Defendants deny that the Data Breach caused Plaintiff Moses any cognizable injury or loss, deny that any such time or effort was reasonably necessary as a result of any act or omission of Defendants, and deny the remaining allegations in Paragraph 277.

278. Plaintiff Moses suffered actual injury from having her PII compromised as a result of the Data Breach including, but not limited to: (i) invasion of privacy; (ii) theft of PII; (iii) lost or diminished value of PII; (iv) lost time and opportunity costs associated with attempting to mitigate the actual consequences of the Data Breach; (v) loss of benefit of the bargain; (vi) lost opportunity costs associated with attempting to mitigate the actual consequences of the Data Breach; (vii) statutory damages; (viii) nominal damages; and (ix) the continued and certainly increased risk to her PII, which: (a) remains unencrypted and available for unauthorized third parties to access and abuse; and (b) remains backed up in Defendants' possession and is subject to further unauthorized disclosures so long as Defendants fail to undertake appropriate and adequate measures to protect the PII.

**ANSWER TO PARAGRAPH 278:** Defendants deny that Plaintiff Moses suffered any cognizable injury as a result of the Data Breach or any act or omission of Defendants, deny that Plaintiff Moses is entitled to any relief, and deny the remaining allegations in Paragraph 278.

279. The Data Breach has caused Plaintiff Moses to suffer fear, anxiety, and stress, which has been compounded by the fact that Defendants have still not fully informed her of key details about the Data Breach's occurrence.

**ANSWER TO PARAGRAPH 279:** Defendants lack knowledge or information sufficient to form a belief as to Plaintiff Moses's alleged emotional state and therefore deny those allegations. Defendants deny that they failed to inform Plaintiff Moses of any information they were required to provide, deny that the Data Breach or any act or omission of Defendants caused Plaintiff Moses any cognizable harm, and deny the remaining allegations in Paragraph 279.

280. As a result of the Data Breach, Plaintiff Moses anticipates spending considerable time and money on an ongoing basis to try to mitigate and address harms caused by the Data Breach.

**ANSWER TO PARAGRAPH 280:** Defendants lack knowledge or information sufficient to form a belief as to what Plaintiff Moses anticipates and therefore deny those allegations. Defendants deny that any future time or expense is attributable to any act or omission of Defendants and deny the remaining allegations in Paragraph 280.

281. As a result of the Data Breach, Plaintiff Moses is at a present risk and will continue to be at increased risk of identity theft and fraud for life.

**ANSWER TO PARAGRAPH 281:** Defendants deny the allegations in Paragraph 281.

282. Plaintiff Moses has a continuing interest in ensuring that her PII, which, upon information and belief, remains backed up in Defendants' possession, is protected and safeguarded from future breaches.

**ANSWER TO PARAGRAPH 282:** Defendants deny that Plaintiff Moses's information is at risk of "future breaches" as a result of any act or omission of Defendants, and deny that Plaintiff Moses is entitled to injunctive or other relief. Defendants lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 282 and therefore deny them.

283. Plaintiff Moses greatly values her privacy and would not have provided her PII or undertaken the services and paid the amounts that she did, or amounts paid on her behalf, if she had known that her PII would be maintained using inadequate data security systems.

**ANSWER TO PARAGRAPH 283:** Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 283 regarding what Plaintiff Moses

values or would have done, and therefore deny them. Defendants deny that they maintained Plaintiff Moses's information using inadequate data security systems and deny the remaining allegations in Paragraph 283.

## CLASS ACTION ALLEGATIONS

284. Plaintiffs bring this action on behalf of themselves, and all others similarly situated ("Class Members"). Pursuant to Federal Rules of Civil Procedure 23(a), 23(b)(1), 23(b)(2) and 23(b)(3), 23(c)(4), and/or 23(c)(5) as applicable, Plaintiffs propose the following Nationwide Class and Subclass definitions, subject to amendment as appropriate:

> Nationwide Class: All natural persons residing in the United States whose Personally Identifiable Information was compromised as a result of the Data Breach.
>
> Illinois Subclass: All natural persons residing in the State of Illinois whose Personally Identifiable Information was compromised as a result of the Data Breach.
>
> California Subclass: All natural persons residing in the State of California whose Personally Identifiable Information was compromised as a result of the Data Breach.

**ANSWER TO PARAGRAPH 284:** Defendants admit that Plaintiffs purport to bring this action on behalf of the putative classes defined in Paragraph 284. Defendants deny that this action may properly be maintained as a class action under any subsection of Federal Rule of Civil Procedure 23, deny that the proposed class definitions are proper or ascertainable, and deny the remaining allegations in Paragraph 284.

285. Excluded from the Class and Subclasses are the following individuals and/or entities: Defendants and Defendants' parents, subsidiaries, affiliates, officers and directors, and any entity in which Defendants have a controlling interest; all individuals who make a timely election to be excluded from this proceeding using the correct protocol for opting out; any and all federal, state or local governments, including but not limited to their departments, agencies,

divisions, bureaus, boards, sections, groups, counsels and/or subdivisions; and all judges assigned to hear any aspect of this litigation, as well as their immediate family members.

**ANSWER TO PARAGRAPH 285:** Defendants admit that Plaintiffs purport to exclude the persons and entities identified in Paragraph 285 from the putative classes. Defendants deny that any class may properly be certified and deny the remaining allegations in Paragraph 285.

286. Plaintiffs reserve the right to modify or amend the definition of the proposed classes or add Classes or Subclasses if further information and discovery indicate that the definitions of the Class should be narrowed, expanded, or otherwise modified.

**ANSWER TO PARAGRAPH 286:** Paragraph 286 does not contain factual allegations to which a response is required. To the extent a response is required, Defendants deny that Plaintiffs may modify or amend the proposed class definitions except as permitted by the Federal Rules of Civil Procedure and the Court, and deny the remaining allegations in Paragraph 286.

287. Numerosity under Federal Rule of Civil Procedure 23(a)(1). The members of the Class (and Subclasses) are so numerous and geographically dispersed that individual joinder of all Class Members is impracticable. Based upon public filings, the current number of people impacted by the Data Breach is approximately 1.5 million.

**ANSWER TO PARAGRAPH 287:** Paragraph 287 states legal conclusions to which no response is required. To the extent a response is required, Defendants admit that Set Forth mailed Notice Letters to a large number of individuals, but deny that the requirements of Federal Rule of Civil Procedure 23(a)(1) are satisfied with respect to any properly defined class, deny Plaintiffs' characterization of the number of individuals "impacted," and deny the remaining allegations in Paragraph 287.

288. Commonality under Federal Rule of Civil Procedure 23(a)(2). There are questions of law and fact common to Plaintiffs and Class Members, which predominate over any questions affecting only individual Class Members. These common questions of law and fact include, without limitation:

a) Whether Defendants unlawfully used, maintained, or disclosed Plaintiffs' and the Class Members' PII;

b) Whether Defendants failed to implement and maintain reasonable security procedures and practices appropriate to the nature and scope of the PII compromised in the Data Breach;

c) Whether Defendants truthfully represented the nature of their security systems, including their vulnerability to hackers;

d) Whether Defendants' data security protocols prior to and during the Data Breach complied with applicable data security laws and regulations;

e) Whether Defendants' data security protocols prior to and during the Data Breach were consistent with industry standards;

f) Whether Defendants each owed a duty to Class Members to safeguard their PII;

g) Whether Defendants each owed a duty not to disclose the PII of Plaintiffs and Class Members to unauthorized third parties;

h) Whether Defendants each owed a duty not to use the PII of Plaintiffs and Class Members for non-business purposes;

i) Whether Defendants breached their duties to Class Members to safeguard their PII;

j) Whether Defendants breached their duties not to disclose the PII of Plaintiffs and Class Members to unauthorized third parties;

k) Whether Defendants breached their duties not to use the PII of Plaintiffs and Class Members for non-business purposes;

l) Whether cybercriminals obtained, sold, copied, stored or released Class Members' PII;

m) Whether Defendants knew or should have known that their data security programs and monitoring processes were deficient;

n) When Defendants actually learned of the Data Breach;

o) Whether Defendants adequately, promptly, and accurately informed Plaintiffs and Class Members that their PII was compromised;

p) Whether Defendants adequately addressed and fixed the vulnerabilities which permitted the Data Breach to occur;

q) Whether Defendants violated the law by failing to adequately, promptly, and accurately inform Plaintiffs and Class Members that their PII was compromised;

r) Whether Class Members suffered legally cognizable damages as a result of Defendants' misconduct; and

s) Whether Plaintiffs and Class Members are entitled to damages, treble damages, civil penalties, punitive damages, and/or injunctive relief.

**ANSWER TO PARAGRAPH 288:** Paragraph 288 states legal conclusions to which no response is required. To the extent a response is required, Defendants deny the allegations in Paragraph 288, including subparagraphs (a) through (s), and specifically deny that common questions predominate over individual questions, including individualized questions of injury, causation, damages, mitigation, consent, arbitration, and choice of law.

289. Typicality under Federal Rule of Civil Procedure 23(a)(3). Plaintiffs' claims are typical of those of the Class Members because Plaintiffs' PII, like that of every Class Member, was compromised in the Data Breach.

**ANSWER TO PARAGRAPH 289:** Paragraph 289 states legal conclusions to which no response is required. To the extent a response is required, Defendants deny the allegations in Paragraph 289, and specifically deny that Plaintiffs' claims are typical where, among other things, Plaintiffs' alleged relationships with Defendants, the information allegedly provided, and the alleged injuries vary materially from Plaintiff to Plaintiff.

290. Adequacy of Representation under Federal Rule of Civil Procedure 23(a)(4). Plaintiffs will fairly and adequately represent and protect the interests of Class Members, including those from states and jurisdictions where they may not reside. Plaintiffs seek no relief that is antagonistic or adverse to the Class Members and the infringement of the rights and the damages they have suffered are typical of other Class Members. Plaintiffs' counsel are competent and experienced in litigating complex class actions and data breach litigation, and Plaintiffs intend to prosecute this action vigorously.

**ANSWER TO PARAGRAPH 290:** Paragraph 290 states legal conclusions to which no response is required. To the extent a response is required, Defendants lack knowledge or information sufficient to form a belief as to the competence and experience of Plaintiffs' counsel and therefore deny those allegations, and Defendants deny the remaining allegations in Paragraph 290.

291. Predominance under Federal Rule of Civil Procedure 23(b)(3). Set Forth and Centrex have each engaged in a common course of conduct toward Plaintiffs and Class Members, in that all Plaintiffs' and the Class Members' data at issue here was stored by Defendants and was

accessed during the Data Breach. The common issues arising from Defendants' respective conduct affecting Class Members, as described supra, predominate over any individualized issues. Adjudication of the common issues in a single action has important and desirable advantages of judicial economy.

**ANSWER TO PARAGRAPH 291:** Paragraph 291 states legal conclusions to which no response is required. To the extent a response is required, Defendants deny the allegations in Paragraph 291.

292. Superiority under Federal Rule of Civil Procedure 23(b)(3). A class action is superior to other available methods for the fair and efficient adjudication of this controversy. Class treatment of common questions of law and fact is superior to multiple individual actions or piecemeal litigation. Absent a class action, most Class Members could find that the cost of litigating their individual claim is prohibitively high and would therefore have no effective remedy. The prosecution of separate actions by individual Class Members would create a risk of inconsistent or varying adjudications with respect to individual Class Members, which would establish incompatible standards of conduct for Defendants. In contrast, the conduct of this action as a class action presents far fewer management difficulties, conserves judicial resources and the parties' resources, and protects the rights of each Class Member.

**ANSWER TO PARAGRAPH 292:** Paragraph 292 states legal conclusions to which no response is required. To the extent a response is required, Defendants deny the allegations in Paragraph 292.

293. Injunctive Relief is Appropriate under Federal Rule of Civil Procedure 23(b)(2). Defendants failed to take actions to safeguard Plaintiffs' and Class Members' PII such that injunctive relief is appropriate and necessary. Defendants have acted on grounds that apply

generally to the Class (and Subclasses) as a whole, so that class certification, injunctive relief, and corresponding declaratory relief are appropriate on a class-wide basis.

**ANSWER TO PARAGRAPH 293:** Paragraph 293 states legal conclusions to which no response is required. To the extent a response is required, Defendants deny the allegations in Paragraph 293.

## CLAIMS FOR RELIEF

### CLAIM I – Negligence (On Behalf of Plaintiffs and the Nationwide Class Against All Defendants)

294. Plaintiffs repeat and reallege the allegations contained in paragraphs 1 through 293 as if fully set forth herein.

**ANSWER TO PARAGRAPH 294:** Defendants restate and incorporate by reference their responses to Paragraphs 1 through 293 as if fully set forth herein.

295. Defendants knowingly collected, came into possession of, and maintained Plaintiffs' and Class Members' PII, and had a duty to exercise reasonable care in safeguarding, securing, and protecting such Information from being disclosed, compromised, lost, stolen, and misused by unauthorized parties.

**ANSWER TO PARAGRAPH 295:** Paragraph 295 states legal conclusions to which no response is required. To the extent a response is required, Defendants admit that information relating to individuals was maintained on the Set Forth platform, and deny the remaining allegations in Paragraph 295.

296. Defendants knew or should have known of the risks inherent in collecting the PII of Plaintiffs and Class Members and the importance of adequate security. Defendants were on notice because, on information and belief, they knew or should have known that they would be an attractive target for cyberattacks.

**ANSWER TO PARAGRAPH 296:** Paragraph 296 states legal conclusions to which no response is required. To the extent a response is required, Defendants deny the allegations in Paragraph 296.

297. Defendants owed a duty of care to Plaintiffs and Class Members whose PII was entrusted to them. Defendants' duties included, but were not limited to, the following:

a) To exercise reasonable care in obtaining, retaining, securing, safeguarding, deleting, and protecting PII in their possession;

b) To protect customers' PII using reasonable and adequate security procedures and systems compliant with industry standards;

c) To have procedures in place to prevent the loss or unauthorized dissemination of PII in their possession;

d) To employ reasonable security measures and otherwise protect the PII of Plaintiffs and Class Members pursuant to the FTCA and applicable industry standards;

e) To implement processes to quickly detect a data breach and to timely act on warnings about data breaches; and

f) To precisely disclose the type(s) of information compromised.

**ANSWER TO PARAGRAPH 297:** Paragraph 297 states legal conclusions to which no response is required. To the extent a response is required, Defendants deny the allegations in Paragraph 297.

298. Defendants' duty to employ reasonable data security measures arose, in part, under Section 5 of the Federal Trade Commission Act, 15 U.S.C. § 45, which prohibits "unfair . . . practices in or affecting commerce," including, as interpreted and enforced by the FTC, the unfair practice of failing to use reasonable measures to protect confidential data.

**ANSWER TO PARAGRAPH 298:** Paragraph 298 states legal conclusions to which no response is required. To the extent a response is required, Defendants deny that Section 5 of the FTC Act gives rise to a duty enforceable by Plaintiffs in a private action, and deny the remaining allegations in Paragraph 298.

299. Defendants owed a duty under common law to Plaintiffs and Class Members to exercise reasonable care in obtaining, retaining, securing, safeguarding, and deleting PII in their possession from being compromised, stolen, or misused by unauthorized persons.

**ANSWER TO PARAGRAPH 299:** Paragraph 299 states legal conclusions to which no response is required. To the extent a response is required, Defendants deny the allegations in Paragraph 299.

300. Specifically, this duty included, among other things: (a) implementing industry standard data security safeguards to protect the PII of Plaintiffs and Class Members such as MFA, rotating credentials, and restricting access privileges; (b) maintaining, testing, and monitoring Defendants' security systems to ensure that PII was adequately secured and protected; (c) timely acting upon warnings and alerts to respond to intrusions; and (d) adequately notifying Plaintiffs and Class Members about the types of data that were compromised in the Data Breach.

**ANSWER TO PARAGRAPH 300:** Paragraph 300 states legal conclusions to which no response is required. To the extent a response is required, Defendants deny the allegations in Paragraph 300.

301. Defendants had a common law duty to prevent foreseeable harm to others. This duty existed because Defendants collected and stored valuable PII that is routinely targeted by cybercriminals. Plaintiffs and Class Members were the foreseeable and probable victims of any

compromise due to Defendants' inadequate data security practices. Defendants owed Plaintiffs and Class Members a duty of care not to subject them to an unreasonable risk of harm.

**ANSWER TO PARAGRAPH 301:** Paragraph 301 states legal conclusions to which no response is required. To the extent a response is required, Defendants deny the allegations in Paragraph 301.

302. Defendants had a special relationship with their current and former customers, including Plaintiffs and Class Members.

**ANSWER TO PARAGRAPH 302:** Paragraph 302 states legal conclusions to which no response is required. To the extent a response is required, Defendants deny the allegations in Paragraph 302.

303. Plaintiffs' and Class Members' willingness to entrust Defendants with their PII was predicated on the understanding that Defendants would take adequate security precautions to protect it. Moreover, only Defendants had the ability to protect their systems (and the PII stored thereon) from attack.

**ANSWER TO PARAGRAPH 303:** Defendants deny the allegations in Paragraph 303.

304. Defendants breached the duties owed to Plaintiffs and Class Members and were thus negligent. Although the exact methodologies employed by the unauthorized third parties are unknown to Plaintiffs at this time, on information and belief, Defendants breached their duties through some combination of the following errors and omissions that allowed the data breach to occur: (a) mismanaging their systems and failing to identify reasonably foreseeable internal and external risks to the security, confidentiality, and integrity of customer information that resulted in the unauthorized access and compromise of PII; (b) mishandling their data security by failing to assess the sufficiency of their safeguards in place to control these risks; (c) failing to design and

implement information safeguards to control these risks; (d) failing to adequately test and monitor the effectiveness of the safeguards' key controls, systems, and procedures; (e) failing to evaluate and adjust their information security programs in light of the circumstances alleged herein; (f) failing to detect the breach at the time it began or within a reasonable time thereafter; (g) failing to follow their own privacy policies and practices published to their customers; (h) failing to adequately train and supervise employees and third party vendors with access or credentials to systems and databases containing sensitive PII; and (i) failing to timely patch known vulnerabilities to their computer systems or networks.

**ANSWER TO PARAGRAPH 304:** Defendants deny the allegations in Paragraph 304.

305. Defendants' duty also arose because they were bound by industry standards to protect their current and former customers' confidential PII.

**ANSWER TO PARAGRAPH 305:** Paragraph 305 states legal conclusions to which no response is required. To the extent a response is required, Defendants deny the allegations in Paragraph 305.

306. Plaintiffs and Class Members were foreseeable victims of any inadequate security practices on the part of Defendants.

**ANSWER TO PARAGRAPH 306:** Paragraph 306 states legal conclusions to which no response is required. To the extent a response is required, Defendants deny the allegations in Paragraph 306.

307. Defendants, through their actions and/or omissions, unlawfully breached their duty to Plaintiffs and Class Members by failing to exercise reasonable care in protecting and safeguarding Plaintiffs' and Class Members' PII within their possession.

**ANSWER TO PARAGRAPH 307:** Defendants deny the allegations in Paragraph 307.

308. Defendants, by their actions and/or omissions, breached their duty of care by failing to provide, or acting with reckless disregard for, fair, reasonable, or adequate computer systems and data security practices to safeguard the PII of Plaintiffs and Class Members.

**ANSWER TO PARAGRAPH 308:** Defendants deny the allegations in Paragraph 308.

309. Defendants breached their duties, and thus were negligent, by failing to use reasonable measures to protect Class Members' PII. The specific negligent acts and omissions committed by Defendants include, but are not limited to, the following:

a) Failing to adopt, implement, and maintain adequate security measures to safeguard Class Members' PII;

b) Failing to adequately monitor the security of their networks and systems;

c) Allowing unauthorized access to Class Members' PII;

d) Failing to comply with the FTCA and applicable industry standards;

e) Failing to detect in a timely manner that Class Members' PII had been compromised; and

f) Failing to timely notify Class Members about the Data Breach so that they could take appropriate steps to mitigate the potential for identity theft and other damages.

**ANSWER TO PARAGRAPH 309:** Defendants deny the allegations in Paragraph 309.

310. Defendants' breach of duties owed to Plaintiffs and Class Members caused Plaintiffs' and Class Members' PII to be compromised and exfiltrated, as alleged herein and admitted by Set Forth in its Notice to Plaintiffs and Class Members.

**ANSWER TO PARAGRAPH 310:** Defendants deny the allegations in Paragraph 310.

311. Defendants' breaches of duty also caused a substantial, imminent risk to Plaintiffs and Class Members of identity theft, loss of control over their PII, and/or loss of time and money to monitor their accounts for fraud.

**ANSWER TO PARAGRAPH 311:** Defendants deny the allegations in Paragraph 311.

312. As a result of Defendants' negligence in breach of their duties owed to Plaintiffs and Class Members, Plaintiffs and Class Members are in danger of imminent harm in that their PII, which is still in the possession of criminal third parties, has been and will continue to be used for fraudulent purposes.

**ANSWER TO PARAGRAPH 312:** Defendants deny the allegations in Paragraph 312.

313. Defendants also had independent duties under state laws that required them to reasonably safeguard Plaintiffs' and Class Members' PII.

**ANSWER TO PARAGRAPH 313:** Paragraph 313 states legal conclusions to which no response is required. To the extent a response is required, Defendants deny the allegations in Paragraph 313.

314. Additionally, Section 5 of the FTC Act prohibits "unfair . . . practices in or affecting commerce," including, as interpreted and enforced by the FTC, the unfair act or practice by businesses, such as Defendants, of failing to use reasonable measures to protect PII. The FTC publications and orders described above also form part of the basis of Defendants' duty in this regard.

**ANSWER TO PARAGRAPH 314:** Paragraph 314 states legal conclusions to which no response is required. To the extent a response is required, Defendants deny the allegations in Paragraph 314.

315. Defendants violated Section 5 of the FTC Act by failing to use reasonable measures to protect PII and not complying with applicable industry standards, as described in detail herein. Defendants' conduct was particularly unreasonable given the nature and amount of PII they obtained and stored and the foreseeable consequences of the immense damages that would result to Plaintiffs and the Class.

**ANSWER TO PARAGRAPH 315:** Defendants deny the allegations in Paragraph 315.

316. Defendants' violation of Section 5 of the FTC Act is prima facie evidence of their negligence.

**ANSWER TO PARAGRAPH 316:** Paragraph 316 states legal conclusions to which no response is required. To the extent a response is required, Defendants deny the allegations in Paragraph 316.

317. Plaintiffs and the Class are within the class of persons that the FTC Act was intended to protect.

**ANSWER TO PARAGRAPH 317:** Paragraph 317 states legal conclusions to which no response is required. To the extent a response is required, Defendants deny the allegations in Paragraph 317.

318. The harm that occurred as a result of the Data Breach is the type of harm the FTC Act was intended to guard against. The FTC has pursued enforcement actions against businesses, which, as a result of their failure to employ reasonable data security measures and avoid unfair and deceptive practices, caused the same harm as that suffered by Plaintiffs and the Class.

**ANSWER TO PARAGRAPH 318:** Paragraph 318 states legal conclusions to which no response is required. To the extent a response is required, Defendants deny the allegations in Paragraph 318.

319. As a direct and proximate result of Defendants' negligence, Plaintiffs and the Class have suffered and will suffer injury, including but not limited to: (i) actual identity theft; (ii) the damages to and diminution in the value of their PII; (iii) the compromise, publication, and/or theft of their PII; (iv) out-of-pocket expenses associated with the prevention, detection, and recovery from identity theft, tax fraud, and/or unauthorized use of their PII; (v) lost opportunity costs associated with effort expended and the loss of productivity addressing and attempting to mitigate the present and continuing consequences of the Data Breach, including but not limited to efforts spent researching how to prevent, detect, contest, and recover from tax fraud and identity theft; (vi) costs associated with placing freezes on credit reports, purchasing credit monitoring and/or identity protection; (vii) the imminent and impending risk to their PII, which remains in Defendants' possession and is subject to further unauthorized disclosures so long as Defendants fail to undertake appropriate and adequate measures to protect it; and (viii) present and continuing costs in terms of time, effort, and money that has been and will be expended to prevent, detect, contest, and repair the impact of the PII compromised as a result of the Data Breach for the remainder of the lives of Plaintiffs and the Class.

**ANSWER TO PARAGRAPH 319:** Defendants deny the allegations in Paragraph 319.

320. As a direct and proximate result of Defendants' negligence, Plaintiffs and the Class have suffered and will continue to suffer other forms of injury and/or harm, including, but not limited to, anxiety, emotional distress, loss of privacy, and other economic and non-economic losses.

**ANSWER TO PARAGRAPH 320:** Defendants deny the allegations in Paragraph 320.

321. Additionally, as a direct and proximate result of Defendants' negligence, Plaintiffs and the Class have suffered and will suffer the continued risks of exposure of their PII, which

remain in Defendants' possession and is subject to further unauthorized disclosures so long as Defendants fail to undertake appropriate and adequate measures to protect the PII in their continued possession.

**ANSWER TO PARAGRAPH 321:** Defendants deny the allegations in Paragraph 321.

322. In addition to monetary relief, Plaintiffs and Class Members are also entitled to injunctive relief requiring Defendants to, inter alia, strengthen their data security systems and monitoring procedures, conduct periodic audits of those systems, and provide lifetime credit monitoring and identity theft insurance to Plaintiffs and Class Members.

**ANSWER TO PARAGRAPH 322:** Defendants deny that Plaintiffs or putative Class Members are entitled to monetary, injunctive, or any other relief, and deny the remaining allegations in Paragraph 322.

323. As a direct and proximate result of Defendants' negligence, Plaintiffs and Class Members are entitled to damages, including actual, consequential, and nominal damages.

**ANSWER TO PARAGRAPH 323:** Defendants deny that Plaintiffs or putative Class Members are entitled to damages of any kind, and deny the remaining allegations in Paragraph 323.

**CLAIM II – Breach of Implied Contract (On Behalf of Plaintiffs and the Nationwide Class Against All Defendants)**

324. Plaintiffs repeat and reallege the allegations contained in paragraphs 1 through 293 as if fully set forth herein.

**ANSWER TO PARAGRAPH 324:** Paragraph 324 relates solely to Claim II (Breach of Implied Contract), which the Court dismissed in its September 29, 2026 ruling on Defendants' Motion to Dismiss (ECF No. 101). Accordingly, no response is required.

325. As a condition of using Defendants' services, Defendants required Plaintiffs and Class Members to provide their PII.

**ANSWER TO PARAGRAPH 325:** Paragraph 325 relates solely to Claim II (Breach of Implied Contract), which the Court dismissed in its September 29, 2026 ruling on Defendants' Motion to Dismiss (ECF No. 101). Accordingly, no response is required.

326. By mandating that Plaintiffs and Class Members provide their PII as a condition of use, Defendants implied an assent to safeguard and protect their PII.

**ANSWER TO PARAGRAPH 326:** Paragraph 326 relates solely to Claim II (Breach of Implied Contract), which the Court dismissed in its September 29, 2026 ruling on Defendants' Motion to Dismiss (ECF No. 101). Accordingly, no response is required.

327. In their Privacy Policies, Defendants represented that they (i) implemented measures to help ensure an appropriate level of security for the PII and (ii) would not retain customer PII longer than necessary.

**ANSWER TO PARAGRAPH 327:** Paragraph 327 relates solely to Claim II (Breach of Implied Contract), which the Court dismissed in its September 29, 2026 ruling on Defendants' Motion to Dismiss (ECF No. 101). Accordingly, no response is required.

328. Plaintiffs and Class Members would not have provided their PII to Defendants had they known that they would not safeguard their PII as promised.

**ANSWER TO PARAGRAPH 328:** Paragraph 328 relates solely to Claim II (Breach of Implied Contract), which the Court dismissed in its September 29, 2026 ruling on Defendants' Motion to Dismiss (ECF No. 101). Accordingly, no response is required.

329. Plaintiffs and Class Members fully performed their obligations under the implied contracts with Defendants.

**ANSWER TO PARAGRAPH 329:** Paragraph 329 relates solely to Claim II (Breach of Implied Contract), which the Court dismissed in its September 29, 2026 ruling on Defendants' Motion to Dismiss (ECF No. 101). Accordingly, no response is required.

330. Defendants breached the implied contracts they made with Plaintiffs and the Classes by failing to safeguard and protect their personal information, by failing to delete the information of Plaintiffs and the Class once the relationship ended, and by failing to provide timely and accurate notice to them that their PII was compromised as a result of the Data Breach.

**ANSWER TO PARAGRAPH 330:** Paragraph 330 relates solely to Claim II (Breach of Implied Contract), which the Court dismissed in its September 29, 2026 ruling on Defendants' Motion to Dismiss (ECF No. 101). Accordingly, no response is required.

331. As a direct and proximate result of Defendants' above-described breach of implied contract, Plaintiffs and Class Members have suffered (and will continue to suffer) ongoing, imminent, and impending threat of identity theft crimes, fraud, and abuse, resulting in monetary loss and economic harm; actual identity theft crimes, fraud, and abuse, resulting in monetary loss and economic harm; loss of the confidentiality of the stolen confidential data; the illegal sale of the compromised data on the dark web; expenses and/or time spent on credit monitoring and identity theft insurance; time spent scrutinizing bank statements, credit card statements, and credit reports; expenses and/or time spent initiating fraud alerts, decreased credit scores and ratings; lost work time; and other economic and non-economic harm.

**ANSWER TO PARAGRAPH 331:** Paragraph 331 relates solely to Claim II (Breach of Implied Contract), which the Court dismissed in its September 29, 2026 ruling on Defendants' Motion to Dismiss (ECF No. 101). Accordingly, no response is required.

332. As a direct and proximate result of the Defendants' breach of implied contract, Plaintiffs and Class Members are entitled to damages, including actual damages, compensatory damages, and/or nominal damages, in an amount to be proven at trial.

**ANSWER TO PARAGRAPH 332:** Paragraph 332 relates solely to Claim II (Breach of Implied Contract), which the Court dismissed in its September 29, 2026 ruling on Defendants' Motion to Dismiss (ECF No. 101). Accordingly, no response is required.

**CLAIM III – Unjust Enrichment / Quasi-Contract for Restitution (On Behalf of Plaintiffs and the Nationwide Class Against All Defendants)**

333. Plaintiffs repeat and reallege the allegations contained in paragraphs 1 through 293 as if fully set forth herein.

**ANSWER TO PARAGRAPH 333:** Paragraph 333 relates solely to Claim III (Unjust Enrichment / Quasi-Contract for Restitution), which the Court dismissed in its September 29, 2026 ruling on Defendants' Motion to Dismiss (ECF No. 101). Accordingly, no response is required.

334. This claim is brought in the alternative to breach of implied contract.

**ANSWER TO PARAGRAPH 334:** Paragraph 334 relates solely to Claim III (Unjust Enrichment / Quasi-Contract for Restitution), which the Court dismissed in its September 29, 2026 ruling on Defendants' Motion to Dismiss (ECF No. 101). Accordingly, no response is required.

335. Plaintiffs and the Class conferred a monetary benefit on Defendants in the form of fees paid for debt relief services. Part of these services required Defendants to safeguard the PII entrusted to them by Plaintiffs and the Class for these debt relief services.

**ANSWER TO PARAGRAPH 335:** Paragraph 335 relates solely to Claim III (Unjust Enrichment / Quasi-Contract for Restitution), which the Court dismissed in its September 29, 2026 ruling on Defendants' Motion to Dismiss (ECF No. 101). Accordingly, no response is required.

336. Defendants knowingly received, accepted, and appreciated the benefits conferred upon them by Plaintiffs and the Class, including the benefit of the PII they received from Plaintiffs and the Class for which they profited during the course of their business.

**ANSWER TO PARAGRAPH 336:** Paragraph 336 relates solely to Claim III (Unjust Enrichment / Quasi-Contract for Restitution), which the Court dismissed in its September 29, 2026 ruling on Defendants' Motion to Dismiss (ECF No. 101). Accordingly, no response is required.

337. The fees for debt relief services that Plaintiffs and the Class paid to Defendants were supposed to be used by Defendants, in part, to pay for the administrative costs of data management and security used to safeguard the PII of Plaintiffs and the Class.

**ANSWER TO PARAGRAPH 337:** Paragraph 337 relates solely to Claim III (Unjust Enrichment / Quasi-Contract for Restitution), which the Court dismissed in its September 29, 2026 ruling on Defendants' Motion to Dismiss (ECF No. 101). Accordingly, no response is required.

338. Defendants failed to secure Plaintiffs' and Class Members' PII, and, therefore, did not provide full compensation for the benefit Plaintiffs and the Class provided.

**ANSWER TO PARAGRAPH 338:** Paragraph 338 relates solely to Claim III (Unjust Enrichment / Quasi-Contract for Restitution), which the Court dismissed in its September 29, 2026 ruling on Defendants' Motion to Dismiss (ECF No. 101). Accordingly, no response is required.

339. Under principles of equity and good conscience, it would be unjust and unfair for Defendants to retain money belonging to Plaintiffs and the Class because Defendants failed to (i) implement data management and security measures mandated by FTC guidelines, (ii) dispose of PII that was no longer needed or required, and (iii) timely and accurately inform Plaintiffs and the Class of the Data Breach.

**ANSWER TO PARAGRAPH 339:** Paragraph 339 relates solely to Claim III (Unjust Enrichment / Quasi-Contract for Restitution), which the Court dismissed in its September 29, 2026 ruling on Defendants' Motion to Dismiss (ECF No. 101). Accordingly, no response is required.

340. As a result of Defendants' conduct, Plaintiffs and the Class suffered damages in the amount of the difference between the price they paid for Defendants' services as promised and the actually diminished value of Set Forth's debt relief services and the costs of future monitoring of their credit history for identity theft and fraud.

**ANSWER TO PARAGRAPH 340:** Paragraph 340 relates solely to Claim III (Unjust Enrichment / Quasi-Contract for Restitution), which the Court dismissed in its September 29, 2026 ruling on Defendants' Motion to Dismiss (ECF No. 101). Accordingly, no response is required.

341. Plaintiffs, on behalf of themselves and the other members of the Class, seek disgorgement of the money that Defendants unjustly received plus prejudgment interest, and costs.

**ANSWER TO PARAGRAPH 341:** Paragraph 341 relates solely to Claim III (Unjust Enrichment / Quasi-Contract for Restitution), which the Court dismissed in its September 29, 2026 ruling on Defendants' Motion to Dismiss (ECF No. 101). Accordingly, no response is required.

**CLAIM IV – Declaratory Judgment (28 U.S.C. § 2201) (On Behalf of Plaintiffs and the Nationwide Class Against All Defendants)**

342. Plaintiffs repeat and reallege the allegations contained in paragraphs 1 through 293 as if fully set forth herein.

**ANSWER TO PARAGRAPH 342:** Paragraph 342 relates solely to Claim IV (Declaratory Judgment), which the Court dismissed in its September 29, 2026 ruling on Defendants' Motion to Dismiss (ECF No. 101). Accordingly, no response is required.

343. Plaintiffs, individually and on behalf of the Class, incorporate by reference each of the factual allegations contained in the preceding paragraphs as if fully set forth herein.

**ANSWER TO PARAGRAPH 343:** Paragraph 343 relates solely to Claim IV (Declaratory Judgment), which the Court dismissed in its September 29, 2026 ruling on Defendants' Motion to Dismiss (ECF No. 101). Accordingly, no response is required.

344. Under the Declaratory Judgment Act, 28 U.S.C. §§ 2201 et seq., this Court is authorized to enter a judgment declaring the rights and legal relations of the parties and to grant further necessary relief. Furthermore, the Court has broad authority to restrain acts that are tortious and violate the terms of the federal and state statutes described herein.

**ANSWER TO PARAGRAPH 344:** Paragraph 344 relates solely to Claim IV (Declaratory Judgment), which the Court dismissed in its September 29, 2026 ruling on Defendants' Motion to Dismiss (ECF No. 101). Accordingly, no response is required.

345. Defendants owe a duty of care to Plaintiffs and Class Members, which required Defendants to adequately monitor and safeguard Plaintiffs' and Class Members' PII.

**ANSWER TO PARAGRAPH 345:** Paragraph 345 relates solely to Claim IV (Declaratory Judgment), which the Court dismissed in its September 29, 2026 ruling on Defendants' Motion to Dismiss (ECF No. 101). Accordingly, no response is required.

346. Defendants and their officers, directors, affiliates, legal representatives, employees, co-conspirators, successors, subsidiaries, and assigns still possess the PII belonging to Plaintiffs and Class Members.

**ANSWER TO PARAGRAPH 346:** Paragraph 346 relates solely to Claim IV (Declaratory Judgment), which the Court dismissed in its September 29, 2026 ruling on Defendants' Motion to Dismiss (ECF No. 101). Accordingly, no response is required.

347. An actual controversy has arisen in the wake of the Data Breach regarding Plaintiffs' and Class Members' PII and whether Defendants are currently maintaining data security

measures adequate to protect Plaintiffs and Class Members from further data breaches that compromise their PII. Plaintiffs allege that Defendants' data security measures remain inadequate. Furthermore, Plaintiffs and the Class continue to suffer injury as a result of the exposure of their PII. The risk remains that further compromises of their private information will occur in the future.

**ANSWER TO PARAGRAPH 347:** Paragraph 347 relates solely to Claim IV (Declaratory Judgment), which the Court dismissed in its September 29, 2026 ruling on Defendants' Motion to Dismiss (ECF No. 101). Accordingly, no response is required.

348. Under its authority pursuant to the Declaratory Judgment Act, this Court should enter a judgment declaring, among other things, the following:

a) Defendants owe a legal duty to secure the PII of Plaintiffs and the Class within their care, custody, and control under the common law, and Section 5 of FTC Act;

b) Defendants breached their duty to Plaintiffs and the Class by allowing the Data Breach to occur;

c) Defendants' existing data monitoring measures do not comply with their obligations and duties of care to provide reasonable security procedures and practices that are appropriate to protect the PII of Plaintiffs and the Class within Defendants' custody, care, and control; and

d) Defendants' ongoing breaches of said duties continue to cause harm to Plaintiffs and the Class.

**ANSWER TO PARAGRAPH 348:** Paragraph 348 relates solely to Claim IV (Declaratory Judgment), which the Court dismissed in its September 29, 2026 ruling on Defendants' Motion to Dismiss (ECF No. 101). Accordingly, no response is required.

349. This Court should also issue corresponding prospective injunctive relief requiring Defendants to employ adequate security protocols consistent with industry standards to protect the PII of Plaintiffs and the Class within their custody, care, and control, including the following:

a) Order Defendants to provide lifetime credit monitoring and identity theft insurance to Plaintiffs and Class Members.

b) Order that, to comply with Defendants' obligations and duties of care, Defendants must implement and maintain reasonable security and monitoring measures, including, but not limited to:

i. Engaging third-party security auditors/penetration testers as well as internal security personnel to conduct testing, including simulated attacks, penetration tests, and audits on Defendants' systems, networks, and servers on a periodic basis, and ordering Defendants to promptly correct any problems or issues detected by such third-party security auditors;

ii. Encrypting and anonymizing the existing PII within their servers, networks, and systems to the extent practicable, and purging all such information which is no longer reasonably necessary for Defendants to provide adequate services;

iii. Engaging third-party security auditors and internal personnel to run automated security monitoring;

iv. Auditing, testing, and training their security personnel regarding any new or modified procedures;

v. Segmenting their user applications by, among other things, creating firewalls and access controls so that if one area is compromised, hackers cannot gain access to other portions of Defendants' systems, networks, and servers;

vi. Conducting regular database scanning and security checks; and

vii. Routinely and continually conducting internal training and education to inform Defendants' internal security personnel how to identify and contain a breach when it occurs and what to do in response to a breach.

**ANSWER TO PARAGRAPH 349:** Paragraph 349 relates solely to Claim IV (Declaratory Judgment), which the Court dismissed in its September 29, 2026 ruling on Defendants' Motion to Dismiss (ECF No. 101). Accordingly, no response is required.

350. If an injunction is not issued, Plaintiffs and the Class will suffer irreparable injury and will lack an adequate legal remedy to prevent another data breach or cybersecurity incident. This risk is real, immediate, and substantial. If another data breach or cybersecurity incident occurs, Plaintiffs and the Class will not have an adequate remedy at law because monetary relief alone will not compensate Plaintiffs and the Class for the serious risks of future harm. Moreover, Plaintiffs and the Class are unable to stop using Defendants' services without experiencing undue hardship. Because providing information to Defendants is a precondition for receiving debt relief services, Plaintiffs cannot cease providing this information. This would be an extreme financial hardship to Plaintiffs and Class Members.

**ANSWER TO PARAGRAPH 350:** Paragraph 350 relates solely to Claim IV (Declaratory Judgment), which the Court dismissed in its September 29, 2026 ruling on Defendants' Motion to Dismiss (ECF No. 101). Accordingly, no response is required.

351. The hardship to Plaintiffs and the Class if an injunction does not issue exceeds the hardship to Defendants if an injunction is issued. Plaintiffs and the Class will likely be subjected to substantial, continued identity theft and other related damages and/or additional data breaches and exposure if an injunction is not issued. On the other hand, the cost of Defendants' compliance

with an injunction requiring reasonable prospective data security measures is relatively minimal, and Defendants have a preexisting legal obligation to employ such measures.

**ANSWER TO PARAGRAPH 351:** Paragraph 351 relates solely to Claim IV (Declaratory Judgment), which the Court dismissed in its September 29, 2026 ruling on Defendants' Motion to Dismiss (ECF No. 101). Accordingly, no response is required.

352. Issuance of the requested injunction will not disserve the public interest. To the contrary, such an injunction would benefit the public by preventing a subsequent or larger data breach or cybersecurity incident, thus preventing future injury to Plaintiffs and the Class and other persons whose PII would be further compromised.

**ANSWER TO PARAGRAPH 352:** Paragraph 352 relates solely to Claim IV (Declaratory Judgment), which the Court dismissed in its September 29, 2026 ruling on Defendants' Motion to Dismiss (ECF No. 101). Accordingly, no response is required.

**CLAIM V – Violation of the Illinois Consumer Fraud Act (815 Ill. Comp. Stat. § 505/1, et seq.) (On Behalf of Plaintiff Ewing and the Illinois Subclass Against All Defendants)**

353. Plaintiff Ewing repeats and realleges the allegations contained in paragraphs 1 through 293, as if fully set forth herein, and brings this claim on behalf of herself and the Illinois Subclass.

**ANSWER TO PARAGRAPH 353:** Paragraph 353 relates solely to Claim V (Violation of the Illinois Consumer Fraud Act), which the Court dismissed in its September 29, 2026 ruling on Defendants' Motion to Dismiss (ECF No. 101). Accordingly, no response is required.

354. Plaintiff Ewing and the Illinois Subclass are "consumers" as defined in 815 Ill. Comp. Stat. § 505/1(e). Plaintiff Ewing, the Illinois Subclass, and Defendants are "persons" as defined in 815 Ill. Comp. Stat. § 505/1(c).

**ANSWER TO PARAGRAPH 354:** Paragraph 354 relates solely to Claim V (Violation of the Illinois Consumer Fraud Act), which the Court dismissed in its September 29, 2026 ruling on Defendants' Motion to Dismiss (ECF No. 101). Accordingly, no response is required.

355. Defendants are engaged in "trade" or "commerce," including the provision of services, as defined under 815 Ill. Comp. Stat. § 505/1(f). Defendants engage in the sale of "merchandise" (including services) as defined by 815 Ill. Comp. Stat. § 505/1(b) and (d).

**ANSWER TO PARAGRAPH 355:** Paragraph 355 relates solely to Claim V (Violation of the Illinois Consumer Fraud Act), which the Court dismissed in its September 29, 2026 ruling on Defendants' Motion to Dismiss (ECF No. 101). Accordingly, no response is required.

356. Defendants' conduct against Plaintiff Ewing and the Illinois Subclass is oppressive in that Plaintiff Ewing and the Illinois Subclass had no choice but to share their PII with Defendants in order to receive debt relief services. On information and belief, all financial services companies require this information. Moreover, Plaintiff Ewing and the Illinois Subclass were assured by Defendants that their PII would be secured.

**ANSWER TO PARAGRAPH 356:** Paragraph 356 relates solely to Claim V (Violation of the Illinois Consumer Fraud Act), which the Court dismissed in its September 29, 2026 ruling on Defendants' Motion to Dismiss (ECF No. 101). Accordingly, no response is required.

357. Defendants' failure to safeguard Plaintiff Ewing's and Illinois Subclass Members' PII—leaving it exposed to cybercriminals and other unauthorized actors—constitutes a substantial injury in that Plaintiff Ewing and the Illinois Subclass will not only have to spend the remainder of their lives at greater risk for identity theft and fraud (having to constantly monitor their accounts), but also live with the knowledge that their most intimate private information is subject to public view.

**ANSWER TO PARAGRAPH 357:** Paragraph 357 relates solely to Claim V (Violation of the Illinois Consumer Fraud Act), which the Court dismissed in its September 29, 2026 ruling on Defendants' Motion to Dismiss (ECF No. 101). Accordingly, no response is required.

358. Additionally, Defendants violated FTC guidelines by failing to promptly dispose of PII when no longer required to be stored; encrypt information stored on computer networks; understand vulnerabilities of their networks; implement policies to correct security problems; use an intrusion detection system to expose a breach as soon as it occurs; monitor all incoming traffic for activity indicating someone is attempting to hack their systems; watch for large amounts of data being transmitted from their systems; and have response plans ready in the event of a breach. These failures constitute unfair acts or practices, subjecting them to an ICFA claim. 15 U.S.C. § 45.

**ANSWER TO PARAGRAPH 358:** Paragraph 358 relates solely to Claim V (Violation of the Illinois Consumer Fraud Act), which the Court dismissed in its September 29, 2026 ruling on Defendants' Motion to Dismiss (ECF No. 101). Accordingly, no response is required.

359. Finally, Defendants violated the Personal Information Protection Act (PIPA) by failing to immediately notify Plaintiff Ewing and the Illinois Subclass that their PII was exposed during the Data Breach. 815 ILCS § 530/10 (a) and (b). This too constitutes an unlawful practice under ICFA. 815 ILCS § 530/20.

**ANSWER TO PARAGRAPH 359:** Paragraph 359 relates solely to Claim V (Violation of the Illinois Consumer Fraud Act), which the Court dismissed in its September 29, 2026 ruling on Defendants' Motion to Dismiss (ECF No. 101). Accordingly, no response is required.

360. These actions also constitute deceptive and unfair acts or practices because Defendants knew the facts about their inadequate data security and failure to comply with

applicable state and federal laws and industry standards would be unknown to and not easily discoverable by Plaintiff Ewing and the Illinois Subclass.

**ANSWER TO PARAGRAPH 360:** Paragraph 360 relates solely to Claim V (Violation of the Illinois Consumer Fraud Act), which the Court dismissed in its September 29, 2026 ruling on Defendants' Motion to Dismiss (ECF No. 101). Accordingly, no response is required.

361. Defendants knew the facts about their inadequate data security and failure to comply with applicable state and federal laws and industry standards would defeat Plaintiff Ewing's and Illinois Subclass Members' reasonable expectations about the security of their PII.

**ANSWER TO PARAGRAPH 361:** Paragraph 361 relates solely to Claim V (Violation of the Illinois Consumer Fraud Act), which the Court dismissed in its September 29, 2026 ruling on Defendants' Motion to Dismiss (ECF No. 101). Accordingly, no response is required.

362. Defendants intended that Plaintiff Ewing and the Illinois Subclass rely on their deceptive and unfair acts and practices and the concealment and omission of material facts in connection with Defendants' offering of goods and services.

**ANSWER TO PARAGRAPH 362:** Paragraph 362 relates solely to Claim V (Violation of the Illinois Consumer Fraud Act), which the Court dismissed in its September 29, 2026 ruling on Defendants' Motion to Dismiss (ECF No. 101). Accordingly, no response is required.

363. Defendants' wrongful practices were and are injurious to the public because those practices were part of Defendants' generalized course of conduct that applied to the Illinois Subclass. Plaintiff Ewing and the Illinois Subclass have been adversely affected by Defendants' conduct and the public was and is at risk as a result thereof.

**ANSWER TO PARAGRAPH 363:** Paragraph 363 relates solely to Claim V (Violation of the Illinois Consumer Fraud Act), which the Court dismissed in its September 29, 2026 ruling on Defendants' Motion to Dismiss (ECF No. 101). Accordingly, no response is required.

364. In sum, Defendants' numerous failures in safeguarding Plaintiff Ewing's and Illinois Subclass Members' PII violates ICFA.

**ANSWER TO PARAGRAPH 364:** Paragraph 364 relates solely to Claim V (Violation of the Illinois Consumer Fraud Act), which the Court dismissed in its September 29, 2026 ruling on Defendants' Motion to Dismiss (ECF No. 101). Accordingly, no response is required.

365. As a result, Plaintiff Ewing and the Illinois Subclass have suffered and will suffer injury, including but not limited to: (a) the compromise, publication, theft, and/or unauthorized use of their PII; (b) out-of-pocket costs associated with the prevention, detection, recovery, and remediation from identity theft and fraud; (c) lost opportunity costs and lost wages associated with efforts expended and the loss of productivity from addressing and attempting to mitigate the actual and future consequences of the Data Breach, including but not limited to efforts spent researching how to prevent, detect, contest, and recover from identity theft and fraud; (d) the continued risk to the publication of their PII, which remains in the possession of Defendants and is subject to further breaches so long as Defendants fail to undertake appropriate measures to protect Personal Information in their possession; and (e) current and future costs in terms of time, effort, and money that will be expended to prevent, detect, contest, remediate, and repair the impact of the Data Breach for the remainder of the lives of Plaintiff Ewing and the Illinois Subclass.

**ANSWER TO PARAGRAPH 365:** Paragraph 365 relates solely to Claim V (Violation of the Illinois Consumer Fraud Act), which the Court dismissed in its September 29, 2026 ruling on Defendants' Motion to Dismiss (ECF No. 101). Accordingly, no response is required.

366. Defendants' failure to safeguard Plaintiff Ewing's and Class Members' PII in violation of FTC guidelines and PIPA was the direct and proximate cause of damages incurred by Plaintiff Ewing and the Illinois Subclass.

**ANSWER TO PARAGRAPH 366:** Paragraph 366 relates solely to Claim V (Violation of the Illinois Consumer Fraud Act), which the Court dismissed in its September 29, 2026 ruling on Defendants' Motion to Dismiss (ECF No. 101). Accordingly, no response is required.

367. Pursuant to 815 Ill. Comp. Stat. § 505/10a(a), Plaintiff Ewing and the Illinois Subclass seek actual and compensatory damages, injunctive relief, and court costs and attorneys' fees as a result of Defendants' violations of the CFA.

**ANSWER TO PARAGRAPH 367:** Paragraph 367 relates solely to Claim V (Violation of the Illinois Consumer Fraud Act), which the Court dismissed in its September 29, 2026 ruling on Defendants' Motion to Dismiss (ECF No. 101). Accordingly, no response is required.

**CLAIM VI – Violation of the Illinois Uniform Deceptive Trade Practices Act (815 Ill. Comp. Stat. § 510/2, et seq.) (On Behalf of Plaintiff Ewing and the Illinois Subclass Against All Defendants)**

368. Plaintiff Ewing repeats and realleges the allegations contained in paragraphs 1 through 293 as if fully set forth herein, and brings this claim on behalf of herself and the Illinois Subclass.

**ANSWER TO PARAGRAPH 368:** Paragraph 368 relates solely to Claim VI (Violation of the Illinois Uniform Deceptive Trade Practices Act), which the Court dismissed in its September 29, 2026 ruling on Defendants' Motion to Dismiss (ECF No. 101). Accordingly, no response is required.

369. Defendants are "persons" as defined by 815 Ill. Comp. Stat. §§ 510/1(5).

**ANSWER TO PARAGRAPH 369:** Paragraph 369 relates solely to Claim VI (Violation of the Illinois Uniform Deceptive Trade Practices Act), which the Court dismissed in its September

29, 2026 ruling on Defendants' Motion to Dismiss (ECF No. 101). Accordingly, no response is required.

370. Defendants engaged in deceptive trade practices in the conduct of their business, in violation of 815 Ill. Comp. Stat. §§ 510/2(a), including:

a) Representing that goods or services have characteristics that they do not have;

b) Representing that goods or services are of a particular standard, quality, grade if they are of another; or

c) Advertising goods or services with intent not to sell them as advertised; and

d) Engaging in other conduct that creates a likelihood of confusion or misunderstanding.

**ANSWER TO PARAGRAPH 370:** Paragraph 370 relates solely to Claim VI (Violation of the Illinois Uniform Deceptive Trade Practices Act), which the Court dismissed in its September 29, 2026 ruling on Defendants' Motion to Dismiss (ECF No. 101). Accordingly, no response is required.

371. Defendants' deceptive trade practices include:

a) Failing to implement and maintain reasonable security and privacy measures to protect Plaintiff Ewing's and Illinois Subclass Members' PII, which was a direct and proximate cause of the Data Breach;

b) Failing to identify foreseeable security and privacy risks, remediate identified security and privacy risks, and adequately improve security and privacy measures following previous cybersecurity incident, which was a direct and proximate cause of the Data Breach;

c) Failing to comply with common law and statutory duties pertaining to the security and privacy of Plaintiff Ewing's and Illinois Subclass Members' PII, including duties imposed by the FTC Act, 15 U.S.C. § 45, the Illinois Insurance Information and Privacy Protection Act, 215 Ill.

Comp. Stat. § 5/1014, Illinois laws regulating the use and disclosure of Social Security Numbers, 815 Ill. Comp. Stat § 505/2RR, and the Illinois Uniform Deceptive Trade Practices Act, 815 Ill. Comp. Stat. § 510/2(a), which was a direct and proximate cause of the Data Breach;

d) Misrepresenting that they would protect the privacy and confidentiality of Plaintiff Ewing's and Illinois Subclass Members' PII, including by implementing and maintaining reasonable security measures;

e) Misrepresenting that they would comply with common law and statutory duties pertaining to the security and privacy of Plaintiff Ewing's and Illinois Subclass Members' PII, including duties imposed by the FTC Act, 15 U.S.C. § 45, Illinois laws regulating the use and disclosure of Social Security Numbers, 815 Ill. Comp. Stat § 505/2RR, and the Illinois Uniform Deceptive Trade Practices Act, 815 Ill. Comp. Stat. § 510/2(a);

f) Failing to timely and adequately notify Plaintiff Ewing and Illinois Subclass Members of the Data Breach;

g) Omitting, suppressing, and concealing the material fact that they did not reasonably or adequately secure Plaintiff Ewing's and Illinois Subclass Members' PII; and

h) Omitting, suppressing, and concealing the material fact that they did not comply with common law and statutory duties pertaining to the security and privacy of Plaintiff Ewing's and Illinois Subclass Members' PII, including duties imposed by the FTC Act, 15 U.S.C. § 45, Illinois laws regulating the use and disclosure of Social Security Numbers, 815 Ill. Comp. Stat § 505/2RR, and the Illinois Uniform Deceptive Trade Practices Act, 815 Ill. Comp. Stat. § 510/2(a).

**ANSWER TO PARAGRAPH 371:** Paragraph 371 relates solely to Claim VI (Violation of the Illinois Uniform Deceptive Trade Practices Act), which the Court dismissed in its September

29, 2026 ruling on Defendants' Motion to Dismiss (ECF No. 101). Accordingly, no response is required.

372. Defendants' representations and omissions were material because they were likely to deceive reasonable consumers about the adequacy of Defendants' data security and ability to protect the confidentiality of consumers' PII.

**ANSWER TO PARAGRAPH 372:** Paragraph 372 relates solely to Claim VI (Violation of the Illinois Uniform Deceptive Trade Practices Act), which the Court dismissed in its September 29, 2026 ruling on Defendants' Motion to Dismiss (ECF No. 101). Accordingly, no response is required.

373. The above unfair and deceptive practices and acts by Defendants were immoral, unethical, oppressive, and unscrupulous. These acts caused substantial injury to Plaintiff Ewing and Illinois Subclass Members that they could not reasonably avoid; this substantial injury outweighed any benefits to consumers or to competition.

**ANSWER TO PARAGRAPH 373:** Paragraph 373 relates solely to Claim VI (Violation of the Illinois Uniform Deceptive Trade Practices Act), which the Court dismissed in its September 29, 2026 ruling on Defendants' Motion to Dismiss (ECF No. 101). Accordingly, no response is required.

374. As a direct and proximate result of Defendants' unfair, unlawful, and deceptive trade practices, Plaintiff Ewing and Illinois Subclass Members have suffered and will continue to suffer injury, ascertainable losses of money or property, and monetary and non-monetary damages, including from fraud and identity theft; time and expenses related to monitoring their financial accounts for fraudulent activity; an increased, imminent risk of fraud and identity theft; and loss of value of their PII.

**ANSWER TO PARAGRAPH 374:** Paragraph 374 relates solely to Claim VI (Violation of the Illinois Uniform Deceptive Trade Practices Act), which the Court dismissed in its September 29, 2026 ruling on Defendants' Motion to Dismiss (ECF No. 101). Accordingly, no response is required.

375. Plaintiff Ewing and Illinois Subclass Members seek all monetary and non-monetary relief allowed by law, including injunctive relief and reasonable attorney's fees.

**ANSWER TO PARAGRAPH 375:** Paragraph 375 relates solely to Claim VI (Violation of the Illinois Uniform Deceptive Trade Practices Act), which the Court dismissed in its September 29, 2026 ruling on Defendants' Motion to Dismiss (ECF No. 101). Accordingly, no response is required.

**CLAIM VII – Violation of the California Consumer Privacy Act of 2018 ("CCPA") Cal. Civ. Code § 1798, et seq. (On Behalf of Plaintiff Meza and Adam and the California Subclass Against All Defendants)**

376. Plaintiffs Meza and Adam re-allege and incorporate by reference all preceding allegations contained in paragraphs 1 to 293, as if fully set forth herein, and brings this claim on behalf of themselves and the California Subclass (the "Class" for the purposes of this count).

**ANSWER TO PARAGRAPH 376:** To the extent Paragraph 376 relates to Plaintiff Adam, no response is required because the Court has compelled Plaintiff Adam's claims to individual arbitration and stayed those claims, and Defendants respond without waiver of their right to arbitrate. Defendants restate and incorporate by reference their responses to Paragraphs 1 through 293 as if fully set forth herein. Defendants admit that Plaintiffs Meza and Adam purport to bring this claim on behalf of themselves and a putative California Subclass, but deny that any class may properly be certified and deny that Plaintiffs are entitled to any relief.

377. The California Consumer Privacy Act ("CCPA"), Cal. Civ. Code § 1798.150(a), creates a private cause of action for violations of the CCPA. Section 1798.150(a) specifically provides:

> Any consumer whose nonencrypted and nonredacted personal information, as defined in subparagraph (A) of paragraph (1) of subdivision (d) of Section 1798.81.5, is subject to an unauthorized access and exfiltration, theft, or disclosure as a result of the business's violation of the duty to implement and maintain reasonable security procedures and practices appropriate to the nature of the information to protect the personal information may institute a civil action for any of the following:
>
> (A) To recover damages in an amount not less than one hundred dollars ($100) and not greater than seven hundred and fifty ($750) per consumer per incident or actual damages, whichever is greater.
>
> (B) Injunctive or declaratory relief.
>
> (C) Any other relief the court deems proper.

**ANSWER TO PARAGRAPH 377:** Paragraph 377 purports to quote and characterize Cal. Civ. Code § 1798.150(a), which speaks for itself, and Defendants refer to the statute for its complete and accurate contents and deny any characterization inconsistent therewith. Paragraph 377 otherwise states legal conclusions to which no response is required. To the extent a response is required, Defendants deny that Plaintiffs or putative Class Members are entitled to any relief under the statute.

378. Defendant Set Forth is a "business" under Civil Code § 1798.140(d) in that it is a corporation organized for profit or financial benefit of its shareholders or other owners, with gross revenue in excess of $25 million.

**ANSWER TO PARAGRAPH 378:** Paragraph 378 states legal conclusions to which no response is required. To the extent a response is required, Defendants deny that Set Forth is a "business" within the meaning of Cal. Civ. Code § 1798.140(d) with respect to the information at issue. Defendants deny the remaining allegations in Paragraph 378.

379. Defendant Centrex is a "business" under Civil Code § 1798.140(d) in that it annually buys, sells, or shares the personal information of 100,000 or more consumers or households.

**ANSWER TO PARAGRAPH 379:** Paragraph 379 states legal conclusions to which no response is required. To the extent a response is required, Centrex denies that it is a "business" within the meaning of Cal. Civ. Code § 1798.140(d) with respect to the information at issue. Defendants deny the remaining allegations in Paragraph 379.

380. Plaintiffs Meza and Adam and Class Members are covered "consumers" under § 1798.140(i) in that they are natural persons who are California residents.

**ANSWER TO PARAGRAPH 380:** To the extent Paragraph 380 relates to Plaintiff Adam, no response is required because the Court has compelled Plaintiff Adam's claims to individual arbitration and stayed those claims, and Defendants respond without waiver of their right to arbitrate. Paragraph 380 states legal conclusions to which no response is required. To the extent a response is required, Defendants lack knowledge or information sufficient to form a belief as to the consumer status and residency of Plaintiffs Meza and Adam and putative Class Members and therefore deny the allegations in Paragraph 380.

381. Plaintiffs Meza's and Adams' and Class Members' personal information, as defined by Civil Code section 1798.140(v)(1), was subject to unauthorized access and exfiltration, theft, or disclosure. The Data Breach described herein exposed, without limitation, names, addresses, and Social Security numbers.

**ANSWER TO PARAGRAPH 381:** To the extent Paragraph 381 relates to Plaintiff Adam, no response is required because the Court has compelled Plaintiff Adam's claims to individual

arbitration and stayed those claims, and Defendants respond without waiver of their right to arbitrate. Defendants deny the allegations in Paragraph 381.

382. Defendants maintained Plaintiffs Meza's and Adam's and Class Members' PII in a form that allowed criminals to access it.

**ANSWER TO PARAGRAPH 382:** To the extent Paragraph 382 relates to Plaintiff Adam, no response is required because the Court has compelled Plaintiff Adam's claims to individual arbitration and stayed those claims, and Defendants respond without waiver of their right to arbitrate. Defendants deny the allegations in Paragraph 382.

383. Defendants knew or should have known that their computer systems and data security practices were inadequate to safeguard the Class Members' personal information and that the risk of a data breach or theft was highly likely. Defendants failed to implement and maintain reasonable security procedures and practices appropriate to the nature of the information to protect the personal information of Plaintiffs Meza and Adam and the Class Members. Specifically, Defendants subjected Plaintiffs Meza's and Adam's and the Class Members' nonencrypted and nonredacted personal information to an unauthorized access and exfiltration, theft, or disclosure as a result of the Defendants' violation of the duty to implement and maintain reasonable security procedures and practices appropriate to the nature of the information, as described herein.

**ANSWER TO PARAGRAPH 383:** To the extent Paragraph 383 relates to Plaintiff Adam, no response is required because the Court has compelled Plaintiff Adam's claims to individual arbitration and stayed those claims, and Defendants respond without waiver of their right to arbitrate. Defendants deny the allegations in Paragraph 383.

384. As a direct and proximate result of Defendants' violation of their duty, the unauthorized access and exfiltration, theft, or disclosure of Plaintiffs Meza's and Adam's and Class

Members' personal information included exfiltration, theft, or disclosure through Defendants' servers, systems, and website, and/or the dark web, where hackers further disclosed the personal identifying information alleged herein.

**ANSWER TO PARAGRAPH 384:** To the extent Paragraph 384 relates to Plaintiff Adam, no response is required because the Court has compelled Plaintiff Adam's claims to individual arbitration and stayed those claims, and Defendants respond without waiver of their right to arbitrate. Defendants deny the allegations in Paragraph 384.

385. As a direct and proximate result of Defendant's acts, Plaintiffs Meza and Adam and the Class Members were injured and lost money or property, including but not limited to the loss of Plaintiffs Meza's and Adam's and Class Members' legally protected interest in the confidentiality and privacy of their personal information, stress, fear, and anxiety, nominal damages, and additional losses described above.

**ANSWER TO PARAGRAPH 385:** To the extent Paragraph 385 relates to Plaintiff Adam, no response is required because the Court has compelled Plaintiff Adam's claims to individual arbitration and stayed those claims, and Defendants respond without waiver of their right to arbitrate. Defendants deny the allegations in Paragraph 385.

386. Consistent with Civil Code Section 1798.150(b), Plaintiff Meza's counsel sent a CCPA Notice Letter to Defendant Set Forth's registered service agents via certified mail on October 24, 2025.

**ANSWER TO PARAGRAPH 386:** Set Forth admits that it received correspondence from counsel for Plaintiff Meza purporting to provide notice under Cal. Civ. Code § 1798.150(b). Defendants deny the remaining allegations in Paragraph 386.

387. Consistent with Civil Code Section 1798.150(b), Plaintiff Adam's counsel sent a CCPA Notice Letter to Defendant Set Forth's registered service against via certified mail on November 18, 2024.

**ANSWER TO PARAGRAPH 387:** To the extent Paragraph 387 relates to Plaintiff Adam, no response is required because the Court has compelled Plaintiff Adam's claims to individual arbitration and stayed those claims, and Defendants respond without waiver of their right to arbitrate. Set Forth admits that it received correspondence from counsel for Plaintiff Adam purporting to provide notice under Cal. Civ. Code § 1798.150(b). Defendants deny the remaining allegations in Paragraph 387.

388. Consistent with Civil Code Section 1798.150(b), Plaintiff Meza's counsel will send a CCPA Notice Letter to Defendant Centrex's registered service agents via certified mail.

**ANSWER TO PARAGRAPH 388:** Centrex lacks knowledge or information sufficient to form a belief as to what counsel for Plaintiff Meza intends to do and therefore denies those allegations. Centrex admits that it received correspondence from counsel for Plaintiff Meza purporting to provide notice under Cal. Civ. Code § 1798.150(b). Defendants deny the remaining allegations in Paragraph 387.

389. Consistent with Civil Code Section 1798.150(b), Plaintiff Adam's counsel will send a CCPA Notice Letter to Defendant Centrex's registered service agents via certified mail.

**ANSWER TO PARAGRAPH 389:** To the extent Paragraph 389 relates to Plaintiff Adam, no response is required because the Court has compelled Plaintiff Adam's claims to individual arbitration and stayed those claims, and Defendants respond without waiver of their right to arbitrate. Centrex lacks knowledge or information sufficient to form a belief as to what counsel for Plaintiff Adam intends to do and therefore denies those allegations. Centrex admits that it received

correspondence from counsel for Plaintiff Adam purporting to provide notice under Cal. Civ. Code § 1798.150(b). Defendants deny the remaining allegations in Paragraph 387.

390. Defendant Set Forth failed to respond to Plaintiff Adam's CCPA Notice Letter within 30 days of the mailing of such CCPA Notice Letter, precluding any defense by Defendant Set Forth as to it having cured the CCPA violations described within, consequently, Plaintiff Adam seeks actual damages and statutory damages of no less than $100 and up to $750 per customer record subject to the Data Breach on behalf of the California Subclass as authorized by the CCPA.

**ANSWER TO PARAGRAPH 390:** To the extent Paragraph 390 relates to Plaintiff Adam, no response is required because the Court has compelled Plaintiff Adam's claims to individual arbitration and stayed those claims, and Defendants respond without waiver of their right to arbitrate. Paragraph 390 states legal conclusions to which no response is required. To the extent a response is required, Defendants deny the allegations in Paragraph 390.

391. If Defendant Centrex has not rectified or otherwise cured the CCPA violations described within, which would require retrieving the PII and securing the PII from continuing and future use, within 30 days of delivery of such CCPA Notice Letter, Plaintiffs Meza and Adam will amend this complaint to seek actual damages and statutory damages of no less than $100 and up to $750 per customer record subject to the Data Breach on behalf of the California Subclass as authorized by the CCPA from Defendant Centrex.

**ANSWER TO PARAGRAPH 391:** Paragraph 391 is conditional and speculative and states legal conclusions to which no response is required. To the extent a response is required, Centrex denies that it committed any violation of the CCPA, denies that there is anything to "rectif[y]" or "cure," denies that Plaintiffs Meza and Adam or any putative Class Member is entitled to actual or statutory damages from Centrex, and denies the remaining allegations in

Paragraph 391. To the extent Paragraph 391 relates to Plaintiff Adam, no response is required because the Court has compelled Plaintiff Adam's claims to individual arbitration and stayed those claims.

392. Accordingly, Plaintiffs Meza and Adam and the Class Members by way of this complaint seek actual damages and injunctive relief pursuant to Cal. Civ. Code Section 1798.150(a) as a result of Defendants' violations described herein.

**ANSWER TO PARAGRAPH 392:** To the extent Paragraph 392 relates to Plaintiff Adam, no response is required because the Court has compelled Plaintiff Adam's claims to individual arbitration and stayed those claims, and Defendants respond without waiver of their right to arbitrate. Defendants admit that Plaintiffs Meza and Adam purport to seek the relief described in Paragraph 392, but deny that they or any putative Class Member is entitled to any relief and deny the remaining allegations in Paragraph 392.

**CLAIM VIII – Violation of the California Customer Records Act ("CCRA") Cal. Civ. Code § 1798.80, et seq. (On Behalf of Plaintiffs Meza and Adam and the California Subclass Against All Defendants)**

393. Plaintiffs Meza and Adam, re-allege and incorporate by reference all preceding allegations contained in paragraphs 1 to 293, as if fully set forth herein, and brings this claim on behalf of themselves and the California Subclass (the "Class" for the purposes of this count).

**ANSWER TO PARAGRAPH 393:** Paragraph 393 relates solely to Claim VIII (Violation of the California Customer Records Act). In its September 29, 2026 ruling, the Court dismissed that claim as asserted by Plaintiff Meza and compelled the claims of Plaintiff Adam to individual arbitration, staying those claims. Accordingly, no response is required. To the extent a response is required, Defendants restate and incorporate by reference their responses to Paragraphs 1 through 293 as if fully set forth herein, and Defendants deny the allegations in Paragraph 393.

394. "[T]o ensure that personal information about California residents is protected," the California legislature enacted Cal. Civ. Code § 1798.81.5, which requires that any business that "owns, licenses, or maintains personal information about a California resident shall implement and maintain reasonable security procedures and practices appropriate to the nature of the information, to protect the personal information from unauthorized access, destruction, use, modification, or disclosure."

**ANSWER TO PARAGRAPH 394:** Paragraph 394 relates solely to Claim VIII (Violation of the California Customer Records Act). In its September 29, 2026 ruling, the Court dismissed that claim as asserted by Plaintiff Meza and compelled the claims of Plaintiff Adam to individual arbitration, staying those claims. Accordingly, no response is required. To the extent a response is required, Defendants deny the allegations in Paragraph 394.

395. Defendants are businesses that own, maintain or license personal information, within the meaning of Cal. Civ. Code § 1798.81.5, about Plaintiff Meza and Class Members.

**ANSWER TO PARAGRAPH 395:** Paragraph 395 relates solely to Claim VIII (Violation of the California Customer Records Act). In its September 29, 2026 ruling, the Court dismissed that claim as asserted by Plaintiff Meza and compelled the claims of Plaintiff Adam to individual arbitration, staying those claims. Accordingly, no response is required. To the extent a response is required, Defendants deny the allegations in Paragraph 395.

396. Defendants violated Cal. Civ. Code § 1798.81.5 by failing to implement reasonable measures to protect Class Members' PII.

**ANSWER TO PARAGRAPH 396:** Paragraph 396 relates solely to Claim VIII (Violation of the California Customer Records Act). In its September 29, 2026 ruling, the Court dismissed that claim as asserted by Plaintiff Meza and compelled the claims of Plaintiff Adam to individual

arbitration, staying those claims. Accordingly, no response is required. To the extent a response is required, Defendants deny the allegations in Paragraph 396.

397. Businesses that own or license computerized data that includes personal information are required to notify California residents when their PII has been acquired (or has reasonably believed to have been acquired) by unauthorized persons in a data security breach “in the most expedient time possible and without unreasonable delay.” Cal. Civ. Code § 1798.82. Among other requirements, the security breach notification must include “the types of personal information that were or are reasonably believed to have been the subject of the breach.” Cal. Civ. Code § 1798.82.

**ANSWER TO PARAGRAPH 397:** Paragraph 397 relates solely to Claim VIII (Violation of the California Customer Records Act). In its September 29, 2026 ruling, the Court dismissed that claim as asserted by Plaintiff Meza and compelled the claims of Plaintiff Adam to individual arbitration, staying those claims. Accordingly, no response is required. To the extent a response is required, Defendants deny the allegations in Paragraph 397.

398. Defendants are businesses that own or license computerized data that includes personal information as defined by Cal. Civ. Code § 1798.82.

**ANSWER TO PARAGRAPH 398:** Paragraph 398 relates solely to Claim VIII (Violation of the California Customer Records Act). In its September 29, 2026 ruling, the Court dismissed that claim as asserted by Plaintiff Meza and compelled the claims of Plaintiff Adam to individual arbitration, staying those claims. Accordingly, no response is required. To the extent a response is required, Defendants deny the allegations in Paragraph 398.

399. Plaintiffs Meza's and Adam's and Class Members' PII includes personal information identified in Cal. Civ. Code § 1798.82(h) such as their names, and Social Security numbers, and is thereby covered by Cal. Civ. Code § 1798.82.

**ANSWER TO PARAGRAPH 399:** Paragraph 399 relates solely to Claim VIII (Violation of the California Customer Records Act). In its September 29, 2026 ruling, the Court dismissed that claim as asserted by Plaintiff Meza and compelled the claims of Plaintiff Adam to individual arbitration, staying those claims. Accordingly, no response is required. To the extent a response is required, Defendants deny the allegations in Paragraph 399.

400. Plaintiffs Meza and Adam and Class Members are "customers" within the meaning of Cal. Civ. Code § 1798.80(c), as their personal information was provided to Defendants for the purpose of utilizing Defendants' services.

**ANSWER TO PARAGRAPH 400:** Paragraph 400 relates solely to Claim VIII (Violation of the California Customer Records Act). In its September 29, 2026 ruling, the Court dismissed that claim as asserted by Plaintiff Meza and compelled the claims of Plaintiff Adam to individual arbitration, staying those claims. Accordingly, no response is required. To the extent a response is required, Defendants deny the allegations in Paragraph 400.

401. The Data Breach constituted a breach of Defendants' security systems, networks, and servers.

**ANSWER TO PARAGRAPH 401:** Paragraph 401 relates solely to Claim VIII (Violation of the California Customer Records Act). In its September 29, 2026 ruling, the Court dismissed that claim as asserted by Plaintiff Meza and compelled the claims of Plaintiff Adam to individual arbitration, staying those claims. Accordingly, no response is required. To the extent a response is required, Defendants deny the allegations in Paragraph 401.

402. Because Defendants reasonably believed that Plaintiffs Meza's and Adam's and Class Members' PII was acquired by unauthorized persons during the Data Breach, Defendants had an obligation to disclose the data breach in a timely and accurate fashion as mandated by Cal. Civ. Code § 1798.82.

**ANSWER TO PARAGRAPH 402:** Paragraph 402 relates solely to Claim VIII (Violation of the California Customer Records Act). In its September 29, 2026 ruling, the Court dismissed that claim as asserted by Plaintiff Meza and compelled the claims of Plaintiff Adam to individual arbitration, staying those claims. Accordingly, no response is required. To the extent a response is required, Defendants deny the allegations in Paragraph 402.

403. Defendants unreasonably delayed informing Plaintiffs Meza and Adam and Class Members about the breach of security of their PII after they knew the breach had occurred.

**ANSWER TO PARAGRAPH 403:** Paragraph 403 relates solely to Claim VIII (Violation of the California Customer Records Act). In its September 29, 2026 ruling, the Court dismissed that claim as asserted by Plaintiff Meza and compelled the claims of Plaintiff Adam to individual arbitration, staying those claims. Accordingly, no response is required. To the extent a response is required, Defendants deny the allegations in Paragraph 403.

404. Upon information and belief, no law enforcement agency instructed Defendants that notification to Class Members would impede an investigation.

**ANSWER TO PARAGRAPH 404:** Paragraph 404 relates solely to Claim VIII (Violation of the California Customer Records Act). In its September 29, 2026 ruling, the Court dismissed that claim as asserted by Plaintiff Meza and compelled the claims of Plaintiff Adam to individual arbitration, staying those claims. Accordingly, no response is required. To the extent a response is required, Defendants deny the allegations in Paragraph 404.

405. Thus, by failing to disclose the Data Breach in a timely and accurate manner, Defendants also violated Cal. Civ. Code § 1798.82.

**ANSWER TO PARAGRAPH 405:** Paragraph 405 relates solely to Claim VIII (Violation of the California Customer Records Act). In its September 29, 2026 ruling, the Court dismissed that claim as asserted by Plaintiff Meza and compelled the claims of Plaintiff Adam to individual arbitration, staying those claims. Accordingly, no response is required. To the extent a response is required, Defendants deny the allegations in Paragraph 405.

406. Pursuant to Cal. Civ. Code § 1798.84, "[a]ny waiver of a provision of this title is contrary to public policy and is void and unenforceable," "[a]ny customer injured by a violation of this title may institute a civil action to recover damages," and "[a]ny business that violates, proposed to violate, or has violated this title may be enjoined."

**ANSWER TO PARAGRAPH 406:** Paragraph 406 relates solely to Claim VIII (Violation of the California Customer Records Act). In its September 29, 2026 ruling, the Court dismissed that claim as asserted by Plaintiff Meza and compelled the claims of Plaintiff Adam to individual arbitration, staying those claims. Accordingly, no response is required. To the extent a response is required, Defendants deny the allegations in Paragraph 406.

407. As a direct and proximate result of Defendants' violations of Cal. Civ. Code §§ 1798.81.5 and 1798.82, Plaintiff Meza and Class Members were (and continue to be) injured and suffered (and will continue to suffer) damages, as described above.

**ANSWER TO PARAGRAPH 407:** Paragraph 407 relates solely to Claim VIII (Violation of the California Customer Records Act). In its September 29, 2026 ruling, the Court dismissed that claim as asserted by Plaintiff Meza and compelled the claims of Plaintiff Adam to individual

arbitration, staying those claims. Accordingly, no response is required. To the extent a response is required, Defendants deny the allegations in Paragraph 407.

408. Plaintiffs Meza and Adam and Class Members seek relief under Cal. Civ. Code § 1798.84, including, but not limited to, actual damages, any applicable statutory damages, and equitable and injunctive relief.

**ANSWER TO PARAGRAPH 408:** Paragraph 408 relates solely to Claim VIII (Violation of the California Customer Records Act). In its September 29, 2026 ruling, the Court dismissed that claim as asserted by Plaintiff Meza and compelled the claims of Plaintiff Adam to individual arbitration, staying those claims. Accordingly, no response is required. To the extent a response is required, Defendants deny the allegations in Paragraph 408.

**CLAIM IX – Violation of the Unfair Competition Law ("UCL") Cal. Bus. and Prof. Code § 17200 et seq. (On Behalf of Plaintiffs Meza and Adam and the California Subclass Against All Defendants)**

409. Plaintiffs Meza and Adam re-allege and incorporate by reference all preceding allegations contained in paragraphs 1 to 293, as if fully set forth herein, and brings this claim on behalf of themselves and the California Subclass (the "Class" for the purposes of this count).

**ANSWER TO PARAGRAPH 409:** Paragraph 409 relates solely to Claim IX (Violation of the California Unfair Competition Law). In its September 29, 2026 ruling, the Court dismissed that claim as asserted by Plaintiff Meza and compelled the claims of Plaintiff Adam to individual arbitration, staying those claims. Accordingly, no response is required. To the extent a response is required, Defendants restate and incorporate by reference their responses to Paragraphs 1 through 293 as if fully set forth herein, and Defendants deny the allegations in Paragraph 409.

410. Plaintiffs Meza and Adam plead this claim for equitable relief, including restitution and injunctive relief, in the alternative to their claims for damages.

**ANSWER TO PARAGRAPH 410:** Paragraph 410 relates solely to Claim IX (Violation of the California Unfair Competition Law). In its September 29, 2026 ruling, the Court dismissed that claim as asserted by Plaintiff Meza and compelled the claims of Plaintiff Adam to individual arbitration, staying those claims. Accordingly, no response is required. To the extent a response is required, Defendants deny the allegations in Paragraph 410.

411. The UCL proscribes "any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising." Cal. Bus. & Prof. Code § 17200.

**ANSWER TO PARAGRAPH 411:** Paragraph 411 relates solely to Claim IX (Violation of the California Unfair Competition Law). In its September 29, 2026 ruling, the Court dismissed that claim as asserted by Plaintiff Meza and compelled the claims of Plaintiff Adam to individual arbitration, staying those claims. Accordingly, no response is required. To the extent a response is required, Defendants deny the allegations in Paragraph 411.

412. Defendants' actions as alleged herein constitute an "unlawful" practice as encompassed by Cal. Bus. & Prof. Code §§ 17200 et seq. because Defendants' actions: (a) violated the California Consumer Records Act, Cal. Civ. Code §§ 1798.80 et seq., (b) violated the CCPA, Cal. Civ. Code §§ 1798.100 et seq., (c) constituted negligence; and (d) violated federal law and regulations, including the FTC Act.

**ANSWER TO PARAGRAPH 412:** Paragraph 412 relates solely to Claim IX (Violation of the California Unfair Competition Law). In its September 29, 2026 ruling, the Court dismissed that claim as asserted by Plaintiff Meza and compelled the claims of Plaintiff Adam to individual arbitration, staying those claims. Accordingly, no response is required. To the extent a response is required, Defendants deny the allegations in Paragraph 412.

413. Defendants' actions as alleged herein also constitute an "unfair" practice as encompassed by Cal. Bus. & Prof. Code §§ 17200 et seq., because they offend established public policy and are immoral, unethical, oppressive, unscrupulous, and substantially injurious. The harm caused by Defendants' wrongful conduct outweighs any utility of such conduct and has caused—and will continue to cause—substantial injury to the Class, including Plaintiffs Meza and Adam. There were ample reasonably available alternatives that would have furthered Defendants' legitimate business practices, including using industry-standard technologies to protect data (e.g., two-factor authorization, effective encryption and anonymization, compartmentalization of sensitive data, software patches, limiting how much data any user may access, and the purging of data no longer necessary for Defendants' services). Defendants also unreasonably delayed in notifying Plaintiffs Meza and Adam and Class Members regarding the unauthorized release and disclosure of their PII. Additionally, Defendants' conduct was "unfair" because it violated the legislatively declared policies reflected by California's strong data-breach and online-privacy laws, including the California Consumer Records Act, Cal. Civ. Code §§ 1798.80, et seq., the CCPA, Cal. Civ. Code §§ 1798.100, et seq., and the California constitutional right to privacy, Cal. Const. Art. 1, § 1.

**ANSWER TO PARAGRAPH 413:** Paragraph 413 relates solely to Claim IX (Violation of the California Unfair Competition Law). In its September 29, 2026 ruling, the Court dismissed that claim as asserted by Plaintiff Meza and compelled the claims of Plaintiff Adam to individual arbitration, staying those claims. Accordingly, no response is required. To the extent a response is required, Defendants deny the allegations in Paragraph 413.

414. The harm from Defendants' conduct was not reasonably avoidable by consumers. Plaintiffs Meza and Adam and Class Members were required to provide their PII to receive

Defendants' debt relief services. Plaintiffs Meza and Adam and Class Members did not know of, and had no reasonable means of discovering, that their information would be exposed to hackers through inadequate data security measures.

**ANSWER TO PARAGRAPH 414:** Paragraph 414 relates solely to Claim IX (Violation of the California Unfair Competition Law). In its September 29, 2026 ruling, the Court dismissed that claim as asserted by Plaintiff Meza and compelled the claims of Plaintiff Adam to individual arbitration, staying those claims. Accordingly, no response is required. To the extent a response is required, Defendants deny the allegations in Paragraph 414.

415. There were reasonably available alternatives that would have furthered Defendants' business interests of electronically transferring their customers' information while protecting PII.

**ANSWER TO PARAGRAPH 415:** Paragraph 415 relates solely to Claim IX (Violation of the California Unfair Competition Law). In its September 29, 2026 ruling, the Court dismissed that claim as asserted by Plaintiff Meza and compelled the claims of Plaintiff Adam to individual arbitration, staying those claims. Accordingly, no response is required. To the extent a response is required, Defendants deny the allegations in Paragraph 415.

416. A reasonable person would regard Defendants' derelict data security and the Data Breach as important, material facts that could and should have been disclosed.

**ANSWER TO PARAGRAPH 416:** Paragraph 416 relates solely to Claim IX (Violation of the California Unfair Competition Law). In its September 29, 2026 ruling, the Court dismissed that claim as asserted by Plaintiff Meza and compelled the claims of Plaintiff Adam to individual arbitration, staying those claims. Accordingly, no response is required. To the extent a response is required, Defendants deny the allegations in Paragraph 416.

417. As a direct and proximate result of Defendants' unlawful and unfair conduct, Plaintiffs Meza and Adam lost money or property because their sensitive personal information experienced a diminution of value and because they devoted additional time to monitoring their financial accounts for fraudulent activity. Plaintiffs Meza and Adam face ongoing and impending damages related to theft of their PII.

**ANSWER TO PARAGRAPH 417:** Paragraph 417 relates solely to Claim IX (Violation of the California Unfair Competition Law). In its September 29, 2026 ruling, the Court dismissed that claim as asserted by Plaintiff Meza and compelled the claims of Plaintiff Adam to individual arbitration, staying those claims. Accordingly, no response is required. To the extent a response is required, Defendants deny the allegations in Paragraph 417.

418. Defendants' wrongful practices constitute a continuing course of unfair competition because, on information and belief, Defendants have failed to remedy their lax security practices. Plaintiffs Meza and Adam and the Class seek equitable relief pursuant to Cal. Bus. & Prof. Code § 17203 to end Defendants' wrongful practices and require Defendants to maintain adequate and reasonable security measures to protect the PII of Plaintiffs Meza and Adam and the Class.

**ANSWER TO PARAGRAPH 418:** Paragraph 418 relates solely to Claim IX (Violation of the California Unfair Competition Law). In its September 29, 2026 ruling, the Court dismissed that claim as asserted by Plaintiff Meza and compelled the claims of Plaintiff Adam to individual arbitration, staying those claims. Accordingly, no response is required. To the extent a response is required, Defendants deny the allegations in Paragraph 418.

419. Plaintiffs Meza and Adam and Class Members lack an adequate remedy at law because the injuries here include an imminent risk of identity theft and fraud that can never be fully remedied through damages, ongoing identity theft and fraud.

**ANSWER TO PARAGRAPH 419:** Paragraph 419 relates solely to Claim IX (Violation of the California Unfair Competition Law). In its September 29, 2026 ruling, the Court dismissed that claim as asserted by Plaintiff Meza and compelled the claims of Plaintiff Adam to individual arbitration, staying those claims. Accordingly, no response is required. To the extent a response is required, Defendants deny the allegations in Paragraph 419.

420. Further, if an injunction is not issued, Plaintiffs Meza and Adam and the Class will suffer irreparable injury. The risk of another such breach is real, immediate, and substantial. Defendants have still not provided adequate information on the cause and scope of the Data Breach. Plaintiffs Meza and Adam and Class Members lack an adequate remedy at law that will reasonably protect against the risk of a further breach.

**ANSWER TO PARAGRAPH 420:** Paragraph 420 relates solely to Claim IX (Violation of the California Unfair Competition Law). In its September 29, 2026 ruling, the Court dismissed that claim as asserted by Plaintiff Meza and compelled the claims of Plaintiff Adam to individual arbitration, staying those claims. Accordingly, no response is required. To the extent a response is required, Defendants deny the allegations in Paragraph 420.

421. Plaintiffs Meza and Adam and the Class also seek an order requiring Defendants to make full restitution of all monies they received through their wrongful conduct, along with all other relief permitted under Cal. Bus. & Prof. Code §§ 17200 et seq.

**ANSWER TO PARAGRAPH 421:** Paragraph 421 relates solely to Claim IX (Violation of the California Unfair Competition Law). In its September 29, 2026 ruling, the Court dismissed

that claim as asserted by Plaintiff Meza and compelled the claims of Plaintiff Adam to individual arbitration, staying those claims. Accordingly, no response is required. To the extent a response is required, Defendants deny the allegations in Paragraph 421.

## RESPONSE TO PLAINTIFFS' PRAYER FOR RELIEF

Defendants deny that Plaintiffs or any putative Class Member is entitled to any of the relief requested in the unnumbered "WHEREFORE" paragraph following Paragraph 421 of the Complaint, including subparagraphs A through F and the subparts of subparagraph C, or to any relief whatsoever. Defendants deny that any class should be certified or that Plaintiffs' counsel should be appointed to represent any class. To the extent the Prayer for Relief seeks relief on dismissed claims or on behalf of Plaintiffs whose claims have been compelled to arbitration, no response is required; to the extent a response is required, Defendants deny that such relief is available.

## RESPONSE TO PLAINTIFFS' JURY DEMAND

Plaintiffs' jury demand does not require a response. To the extent a response is required, Defendants deny that Plaintiffs are entitled to a jury trial on any claim or issue that has been dismissed, that is subject to arbitration, or that is not triable of right by a jury, including claims for equitable or injunctive relief.

## AFFIRMATIVE AND ADDITIONAL DEFENSES

Without assuming any burden of proof, persuasion, or production that they would not otherwise bear under applicable law, and subject to and without waiving the denials and other statements set forth above, Defendants assert the following affirmative and additional defenses to the Complaint. These defenses are asserted as to the claims that survived the Court's September 29, 2026 ruling and, to the extent any dismissed claim is repleaded or revived, as to such claims.

Defendants reserve the right to amend this Answer to assert additional defenses, counterclaims, cross-claims, or third-party claims as they become known through discovery or further investigation.

**FIRST DEFENSE**
**(Failure to State a Claim)**

The Complaint fails, in whole or in part, to state a claim upon which relief can be granted against Defendants. Defendants expressly preserve, without waiver, each of the arguments raised in Defendants' Motion to Dismiss (ECF No. 101) and supporting briefs (ECF Nos. 102, 121), including that the negligence claim is barred by the economic loss doctrine, that the Complaint fails to allege any specific conduct by Centrex, and that neither Set Forth nor Centrex is a "business" within the meaning of the CCPA.

**SECOND DEFENSE**
**(Lack of Article III Standing)**

Plaintiffs and some or all putative Class Members lack standing under Article III of the United States Constitution because they have not suffered a concrete and particularized injury in fact that is fairly traceable to any act or omission of Defendants and redressable by a favorable decision. Among other things, the mere risk of future identity theft or misuse, time spent on voluntary monitoring, alleged diminution in value of personal information, spam communications, and generalized anxiety do not constitute cognizable injuries. Plaintiffs further lack standing to pursue injunctive or declaratory relief because they cannot show a real and immediate threat of future injury attributable to Defendants' current practices.

**THIRD DEFENSE**
**(Arbitration and Class Action Waiver)**

The claims of Plaintiffs Adam and Bellefeuille are subject to binding individual arbitration agreements, which the Court has enforced. The claims of any putative Class Member who entered into an Account Agreement or other agreement with Set Forth containing an arbitration provision

and/or class action waiver are likewise subject to mandatory individual arbitration and may not be litigated in this Court or on a class basis. Defendants do not waive, and expressly preserve, their right to compel arbitration of any such claims.

**FOURTH DEFENSE**
**(Statute of Limitations and Statute of Repose)**

The claims of Plaintiffs and putative Class Members are barred, in whole or in part, to the extent they are based on acts, omissions, or injuries occurring outside the applicable limitations or repose periods, including 735 ILCS 5/13-202, 735 ILCS 5/13-205, and Cal. Civ. Proc. Code §§ 338 and 340, or any other applicable statute of limitations or repose under the law governing any putative Class Member's claim.

**FIFTH DEFENSE**
**(No Duty)**

Defendants owed no legal duty to Plaintiffs or putative Class Members who had no relationship with them, who did not provide information to them, or who were unaware of their existence, including Plaintiffs Cooper, Ewing, Meza, and Moses as alleged in the Complaint. In particular, Centrex owed no duty to any Plaintiff or putative Class Member: no Plaintiff alleges any relationship with Centrex, and the Complaint alleges that the Data Breach occurred on the Set Forth platform, not on any system operated by Centrex. Further, Section 5 of the FTC Act, 15 U.S.C. § 45, FTC guidance, and voluntary industry frameworks do not create a private right of action or establish a standard of care enforceable by Plaintiffs.

**SIXTH DEFENSE**
**(Separate Entities; No Collective Liability)**

Set Forth and Centrex are separate and distinct legal entities. Plaintiffs' undifferentiated allegations against "Defendants" do not establish any act or omission by Centrex that caused or contributed to the Data Breach or to any alleged injury, and liability, if any, must be determined separately as to each Defendant based on its own conduct. Neither Defendant is vicariously liable

for the acts or omissions of the other, and Plaintiffs may not recover from Centrex for any act or omission of Set Forth, or from Set Forth for any act or omission of Centrex.

**SEVENTH DEFENSE**
**(Reasonable Care and Compliance with Applicable Law and Standards)**

At all relevant times, Defendants exercised reasonable care, acted in good faith, and implemented and maintained reasonable security procedures and practices appropriate to the nature of the information maintained on the Set Forth platform, in compliance with applicable federal and state laws, regulations, and industry standards. The occurrence of a criminal cyberattack does not establish negligence or a failure to maintain reasonable security.

**EIGHTH DEFENSE**
**(No Causation)**

Plaintiffs' and putative Class Members' alleged injuries, if any, were not proximately or actually caused by any act or omission of Defendants or by the Data Breach. Among other things, the alleged fraudulent charges, account compromises, spam communications, and other events alleged in the Complaint involve information (such as debit card, CashApp, PayPal, email, telephone, and bank account information) that Plaintiffs do not allege was involved in the Data Breach, arose from Plaintiffs' own transactions with non-parties (such as Plaintiff Ewing's loan application with Lightstream Loan Company), or are attributable to other Data Breaches, publicly available information, or other sources unrelated to Defendants.

**NINTH DEFENSE**
**(No Cognizable Damages)**

Plaintiffs and putative Class Members have not sustained any cognizable injury or damages. Any alleged damages are speculative, conjectural, uncertain, or not recoverable as a matter of law. To the extent any Plaintiff's alleged fraudulent charges were reversed, cancelled, reimbursed, or unsuccessful, as the Complaint alleges for Plaintiffs Bellefeuille, Girven, and Gravely, such Plaintiffs suffered no actual loss.

**TENTH DEFENSE**
**(Intervening and Superseding Cause)**

Any injuries or damages allegedly sustained by Plaintiffs or putative Class Members were caused by the independent, intervening, and superseding criminal acts of unknown third parties over whom Defendants had no control and for whose conduct Defendants are not responsible, which break any causal chain between Defendants' conduct and Plaintiffs' alleged injuries.

**ELEVENTH DEFENSE**
**(Failure to Mitigate)**

Plaintiffs and putative Class Members failed to take reasonable steps to mitigate their alleged damages, if any, including by failing to enroll in the complimentary credit monitoring and identity protection services offered by Set Forth in the Notice Letter, failing to follow the protective steps recommended in the Notice Letter, and failing to promptly report or dispute suspicious activity. Any recovery must be barred or reduced accordingly.

**TWELFTH DEFENSE**
**(Comparative Fault and Contributory Negligence)**

Any injuries or damages allegedly sustained by Plaintiffs or putative Class Members were caused, in whole or in part, by their own negligence, fault, or conduct, including the disclosure of personal or financial information to third parties (such as Plaintiff Ewing's provision of banking information to an individual who contacted her in connection with a loan application), the failure to safeguard account credentials, devices, and email and telephone accounts, and responding to phishing or other fraudulent communications. Under 735 ILCS 5/2-1116 and other applicable law, any Plaintiff or putative Class Member whose contributory fault exceeds 50% of the proximate cause of the injury is barred from recovery, and any recovery by any other Plaintiff or putative Class Member must be diminished in proportion to the fault attributable to that person.

**THIRTEENTH DEFENSE**
**(Fault of Third Parties and Apportionment)**

Any injuries or damages allegedly sustained by Plaintiffs or putative Class Members were caused, in whole or in part, by the acts or omissions of third parties for whom Defendants are not responsible, including the criminal actors responsible for the Data Breach, the debt relief service providers and other entities that collected and transmitted information, and the perpetrators of other unrelated Data Breaches. Defendants' liability, if any, must be limited to each Defendant's own proportionate share of fault, and neither Defendant is liable for the acts or omissions of the other, including as provided by 735 ILCS 5/2-1117.

**FOURTEENTH DEFENSE**
**(Assumption of Risk)**

The claims of Plaintiffs and putative Class Members are barred, in whole or in part, by the doctrines of express and/or implied assumption of risk, to the extent they knowingly and voluntarily provided personal information through online channels, disclosed information to third parties, or engaged in conduct with knowledge of the risks of unauthorized access and misuse of such information.

**FIFTEENTH DEFENSE**
**(Consent and Contractual Terms)**

The claims of Plaintiffs and putative Class Members are barred, in whole or in part, by their consent to the collection, use, storage, and disclosure of their information in accordance with the applicable Account Agreements, privacy policies, and other disclosures, and by the terms of those agreements, including any limitations of liability, disclaimers, and allocations of responsibility for data security contained therein.

**SIXTEENTH DEFENSE**
**(Economic Loss Doctrine)**

Plaintiffs' negligence claim is barred, in whole or in part, by the economic loss doctrine, because Plaintiffs seek to recover purely economic losses in tort without any personal injury or

damage to other property. Defendants acknowledge the Court's September 29, 2026 ruling on this issue and assert this defense to preserve it for further proceedings, including any appeal.

**SEVENTEENTH DEFENSE**
**(CCPA — Not a Covered Business; Service Provider Status)**

Defendants are not liable under the CCPA, Cal. Civ. Code § 1798.150, because, with respect to the personal information at issue, neither Set Forth nor Centrex is a "business" within the meaning of Cal. Civ. Code § 1798.140(d). Defendants acknowledge the Court's ruling at the pleading stage and assert this defense to preserve it for determination on a full factual record.

**EIGHTEENTH DEFENSE**
**(CCPA — Failure to Satisfy Statutory Prerequisites; Cure)**

Plaintiff Meza and putative California Subclass Members are barred from recovering statutory damages against Centrex under Cal. Civ. Code § 1798.150 because they failed to satisfy the pre-suit notice and cure requirements of Cal. Civ. Code § 1798.150(b).

**NINETEENTH DEFENSE**
**(CCPA — Reasonable Security, Encryption, and Covered Information)**

Plaintiff Meza's CCPA claim fails because Defendants implemented and maintained reasonable security procedures and practices appropriate to the nature of the information; because Plaintiffs cannot establish that their nonencrypted and nonredacted "personal information," as defined in Cal. Civ. Code § 1798.81.5(d)(1)(A), was subject to unauthorized access and exfiltration, theft, or disclosure; and because any such access was not "a result of" any violation of either Defendant's duty to maintain reasonable security. The CCPA's private right of action does not permit claims based on violations of any other provision of the CCPA or of any other law.

**TWENTIETH DEFENSE**
**(Extraterritoriality and Choice of Law)**

The claims of Plaintiff Meza and putative California Subclass Members under California law are barred, in whole or in part, by the presumption against extraterritorial application of

California statutes, to the extent the conduct alleged occurred outside California, including in Illinois. The claims of putative Class Members residing in other states are governed by the laws of those states, which vary materially and preclude class treatment.

**TWENTY-FIRST DEFENSE**
**(Class Certification — Typicality, Adequacy, Commonality, Predominance, and Superiority)**

This action may not be maintained as a class action because Plaintiffs cannot satisfy the requirements of Federal Rule of Civil Procedure 23(a) and (b). Among other things: (a) Plaintiffs' claims are not typical of the claims of the putative classes, because Plaintiffs' relationships with Defendants (customer versus non-customer), the information allegedly involved, their alleged injuries, and their mitigation conduct vary materially; (b) Plaintiffs are not adequate class representatives, because their claims are subject to unique defenses, including arbitration (Plaintiffs Adam and Bellefeuille), lack of causation, lack of injury, and failure to mitigate, and because conflicts exist between customer and non-customer class members and between class members who suffered no injury and those alleging actual fraud; (c) individualized questions of injury, causation, damages, mitigation, consent, comparative fault, arbitration, and choice of law predominate over any common questions; (d) the proposed classes are overbroad, are not ascertainable, and include members who lack standing or suffered no injury; and (e) a class action is not superior to other available methods of adjudication.

**TWENTY-SECOND DEFENSE**
**(Arbitration of Absent Class Members' Claims)**

To the extent any class is certified, it may not include any person who agreed to arbitrate disputes with Set Forth or who waived the right to participate in a class action, and Defendants reserve their right to move to compel arbitration of the claims of any such person.

**TWENTY-THIRD DEFENSE**
**(Injunctive and Equitable Relief Unavailable)**

Plaintiffs and putative Class Members are not entitled to injunctive or other equitable relief because they have an adequate remedy at law, cannot demonstrate irreparable harm, lack standing to seek prospective relief, and cannot show that any alleged future harm would be caused or redressed by Defendants' current or future data security practices, as opposed to the Data Breach itself. Requests for lifetime credit monitoring, identity theft insurance, and the other injunctive relief described in the Complaint are also unduly burdensome, beyond the scope of any viable claim, and moot to the extent Defendants have already offered complimentary credit monitoring and identity protection services.

**TWENTY-FOURTH DEFENSE**
**(Setoff, Credit, and No Double Recovery)**

Any recovery by Plaintiffs or putative Class Members must be reduced, offset, or barred to the extent of any amounts received from any other source on account of the same alleged injuries, including reimbursements or reversals of charges by financial institutions, credit monitoring or identity protection services provided at no cost, insurance, settlements with or recoveries from any other person or entity (including in connection with other Data Breaches), and any amounts recovered under any other theory or claim. Plaintiffs may not obtain duplicative recovery for the same alleged injury, including both statutory and actual damages under the CCPA and damages under other claims.

**TWENTY-FIFTH DEFENSE**
**(Waiver, Estoppel, Ratification, and Laches)**

The claims of Plaintiffs and putative Class Members are barred, in whole or in part, by the doctrines of waiver, estoppel, ratification, acquiescence, and laches, including to the extent they continued to use services after receiving notice of the Data Breach or accepted the benefits of services provided.

**TWENTY-SIXTH DEFENSE**
**(Release, Accord and Satisfaction, and Prior Adjudication)**

The claims of Plaintiffs and putative Class Members are barred, in whole or in part, to the extent they have been released, settled, compromised, or adjudicated in any other proceeding, including any other action or arbitration arising from the Data Breach or from any other Data Breaches involving the same information.

**TWENTY-SEVENTH DEFENSE**
**(Emotional Distress and Non-Economic Damages Not Recoverable)**

Plaintiffs and putative Class Members may not recover damages for emotional distress, anxiety, fear, loss of privacy, or other non-economic harm on their negligence claim absent a contemporaneous physical injury or impact or other circumstances recognized under applicable law, and they have not alleged or suffered any such injury.

**TWENTY-EIGHTH DEFENSE**
**(Nominal Damages and Lost Time Not Recoverable)**

Plaintiffs and putative Class Members may not recover nominal damages on their negligence claim, which requires proof of actual damages, and the value of time allegedly spent responding to the Data Breach is not a cognizable element of damages under applicable law.

**TWENTY-NINTH DEFENSE**
**(No Punitive or Exemplary Damages)**

Plaintiffs have not pleaded, and are not entitled to, punitive or exemplary damages. Defendants did not act willfully, wantonly, maliciously, or with reckless disregard for the rights of others. Any award of punitive, exemplary, or excessive statutory damages would violate Defendants' rights under the Due Process Clause of the Fourteenth Amendment to the United States Constitution and the corresponding provisions of the Illinois and California Constitutions.

**THIRTIETH DEFENSE**
**(Due Process Limits on Aggregate Statutory Damages)**

Any award of statutory damages under the CCPA on a class-wide basis that is grossly disproportionate to any actual harm suffered would violate the Due Process Clause of the Fourteenth Amendment to the United States Constitution and the Excessive Fines Clause of the Eighth Amendment.

**THIRTY-FIRST DEFENSE**
**(Reservation of Additional Defenses)**

Defendants have not knowingly or intentionally waived any applicable defense and reserve the right to assert and rely upon such other and further defenses, including those that may be available under the laws of other jurisdictions, as may become available or apparent during discovery or further investigation, and to amend this Answer accordingly.

**PRAYER FOR RELIEF**

WHEREFORE, Defendants respectfully requests that the Court enter judgment in their favor and against Plaintiffs as follows:

1. That Plaintiffs take nothing by the Complaint and that all claims against Defendants be dismissed with prejudice;
2. That the Court deny certification of any class or subclass;
3. That the claims of Plaintiffs Adam and Bellefeuille, and of any putative Class Member subject to an arbitration agreement, proceed, if at all, only in individual arbitration;
4. That Defendants be awarded their costs incurred in defending this action, and such attorneys' fees as may be permitted by law; and
5. That the Court grant Defendants such other and further relief as the Court deems just and proper.

## JURY DEMAND

Pursuant to Federal Rule of Civil Procedure 38, Defendants hereby demand a trial by jury on all claims and issues so triable, without waiver of their right to arbitrate the claims of any Plaintiff or putative Class Member subject to an arbitration agreement.

Dated: November 20, 2026

Respectfully submitted,

*/s/ Seth M. Erickson*

Seth M. Erickson
TROUTMAN PEPPER LOCKE LLP
111 S. Wacker, Suite 4100
Chicago, IL 60606
Telephone: (312) 759-5930
seth.erickson@troutman.com

Ronald I. Raether, Jr. (pro hac vice)
TROUTMAN PEPPER LOCKE LLP
100 Spectrum Center Drive, Suite 1500
Irvine, CA 92614
Telephone: (949) 622-2722
Ronald.Raether@troutman.com

Joshua Daniel Davey (pro hac vice)
TROUTMAN PEPPER LOCKE LLP
301 S. College St., 34th Floor
Charlotte, NC 28202
Telephone: (704) 916-1503
Joshua.Davey@troutman.com

Timothy J. St. George (pro hac vice)
TROUTMAN PEPPER LOCKE LLP
1001 Haxall Point
Richmond, VA 23219
Telephone: (804) 697-1254
timothy.stgeorge@troutman.com

*Attorneys for Defendants Set Forth LLC, d/b/a Forth, and Centrex Software, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on November 20, 2026, I electronically filed the foregoing *Defendants Set Forth and Centrex's Answer and Affirmative Defenses to Plaintiffs' Consolidated Class Action Complaint* with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all counsel of record.

*/s/ Seth M. Erickson*
Seth M. Erickson